## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | **Case No. 16-34028** |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

### NOTICE OF PROPOSED FINAL ORDER (I) APPROVING POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION, AND (IV) MODIFYING AUTOMATIC STAY

PLEASE TAKE NOTICE that in preparation for the final hearing on the Debtor's *Emergency Motion for Order (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Modifying Automatic Stay* to be held on Friday, January 31, 2017, the Debtor hereby files its Proposed Final Order (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Modifying Automatic Stay (the "Final Order"). Attached as **Exhibit A** is a copy of the proposed Final Order.

PLEASE TAKE FURTHER NOTICE that a redlined version of the proposed Final Order reflecting changes from the Interim Order entered on December 6, 2016 [ECF No. 129] is attached hereto as **Exhibit B**.

Dated: January 30, 2017        Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/  Charles M. Rubio*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Christopher R. Murray
TBA No. 24081057
cmurray@diamondmccarthy.com
Two Houston Center
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Counsel for Northstar*
*Offshore Group, LLC, Debtor and*
*Debtor-in-Possession*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | **Case No. 16-34028** |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

**FINAL ORDER (I) APPROVING POSTPETITION FINANCING,**
**(II) GRANTING LIENS AND PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE**
**PROTECTION, AND (IV) MODIFYING AUTOMATIC STAY**

Upon the emergency motion (the "Motion"),[1] dated December 2, 2016, of Northstar Offshore Group, LLC, debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), for entry of interim and final orders pursuant to sections 105, 107(b), 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (as amended, the "Local Bankruptcy Rules"), (a) authorizing the Debtor to (i) obtain postpetition financing up to an aggregate principal amount of $16 million (the "Financing") pursuant to that certain Superpriority Secured Debtor-in-Possession Credit Agreement, dated as of December 6, 2016, among Debtor, as borrower (the "Borrower"), Arena Limited DIP I, LLC and the financial institutions from time to time parties thereto as lenders (each individually a "DIP Lender," and collectively, the "DIP Lenders"), Arena Limited DIP I, LLC, as administrative and collateral

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Credit Agreement (as defined below), as applicable.

agent for the DIP Lenders (the "DIP Agent" together with the DIP Lenders, the "DIP Secured Parties"), a copy of which in substantially final form is attached as an exhibit to the Motion (as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Credit Agreement"); together with all agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, including the agreements related to the Financing, (the "DIP Loan Documents"); (ii) grant (x) to the DIP Agent for the benefit of the DIP Secured Parties the DIP Liens on the Collateral to secure the DIP Obligations on a first priority priming basis and (y) to the DIP Secured Parties the DIP Superpriority Claims (as defined below) in respect of the DIP Obligations, subject to the terms and conditions hereof; (iii) modify the automatic stay to the extent provided for herein; and (iv) grant adequate protection to the Prepetition Secured Parties (as defined in the Motion); and (b) in accordance with Bankruptcy Rule 4001(c)(2), requesting that this Bankruptcy Court schedule a final hearing to consider entry of a final order approving the Motion and the relief requested therein on a final basis; and a hearing to consider approval of the Motion on an interim basis having been held on December 6, 2016 (the "First Interim Hearing") and December 29, 2016 (the "Second Interim Hearing", and together with the First Interim Hearing, the "Interim Hearings") and a hearing to consider approval of the Motion on a final basis having been held on January 13, January 16 and January 31, 2017 (the "Final Hearing" and collectively with the Interim Hearings, the "Hearings") and based upon all the pleadings filed with the Bankruptcy Court, the evidence presented at the Hearings and the entire record herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor and the Debtor's estate and creditors; and the Debtor having provided notice of the Motion and of the Final Hearing pursuant to Bankruptcy Rule 4001(b);

and it appearing that due and proper notice of the Motion and the Final Hearing having been given under the circumstances; and upon the proceedings held before this Bankruptcy Court and after due deliberation and good and sufficient cause appearing therefor,

BASED UPON THE RECORD OF HEARINGS AND THE REPRESENTATIONS OF THE DEBTOR IN THE MOTION AND AT THE HEARINGS, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Filing Date.  On August 12, 2016 (the "Filing Date"), an involuntary petition for relief under chapter 11 of the Bankruptcy Code was filed against the Debtor.  On December 2, 2016, the Debtor consented to entry of an order for relief under chapter 11 of the Bankruptcy Code, and a voluntary chapter 11 case was commenced on December 2, 2016.  The Debtor is operating its businesses and managing its affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Jurisdiction; Venue.  The Bankruptcy Court has jurisdiction over the Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  Venue of the Chapter 11 Case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 107, 361, 362, 363, 364, 365 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Bankruptcy Rules.

C.    Entry of Interim Order.  On December 6, 2016, (the "Interim Order Entry Date") at the conclusion of the First Interim Hearing, the Court entered the Interim Order Approving Postpetition Financing, Granting Liens and Providing Superpriority Administrative Expense Status, Granting Adequate Protection, Modifying Automatic Stay and Scheduling a

Final Hearing [Docket No. 129] (the "First Interim Order"). On December 29, 2016, the Court entered a Second Interim Order Approving the Motion [Docket No. 215] (the "Second Interim Order"). On January 16, 2017, the Court entered the Third Interim Order (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay and (V) Scheduling a Final Hearing [Docket No. 282] (the "Third Interim Order, and together with the First Interim Order and the Second Interim Order, the "Interim Orders").

D.    Committee Formation. The official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee") was appointed on December 19, 2016.

E.    Stipulations Regarding DIP Loan Documents and DIP Secured Parties. In requesting the Financing, the Debtor acknowledges, represents, stipulates, and agrees that:

(a)    none of the DIP Secured Parties are control persons or insiders of the Debtor by virtue of determining to make any loan, providing the Financing or performing obligations under the DIP Loan Documents;

(b)    there exist no claims or causes of action against any of the DIP Secured Parties with respect to, in connection with, related to, or arising from the DIP Loan Documents that may be asserted by the Debtor;

(c)    the Debtor forever and irrevocably releases, discharges, and acquits the former, future or current DIP Secured Parties, the Approved Counterparties (as defined in the DIP Credit Agreement) and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal

4

advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "DIP Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Financing, the DIP Loan Documents, the DIP Obligations, and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing or the transactions contemplated hereunder or thereunder including, without limitation, (i) any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), except as permitted herein, so-called "lender liability," claims, counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and

5

causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Secured Parties.

F.     <u>Necessity of Financing</u>.     The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtor without granting the DIP Agent, for the benefit of the DIP Secured Parties, superpriority claims and priming liens and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this order (the "<u>Final Order</u>") and the DIP Loan Documents.  After considering all alternatives, the Debtor has concluded, in the exercise of its prudent business judgment, that the credit facility provided under the DIP Loan Documents represents the best and only working capital financing available to it at this time.  The Debtor has been unsuccessful in its attempts to find any alternative financing.  Additionally, the terms of the Financing are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

G.     <u>Purpose of Financing</u>.  The Debtor requires the Financing described in the Motion and as expressly provided in the DIP Loan Documents to: (i) pay costs, fees and expenses associated with or payable under the Financing under the terms of this Final Order; (ii) pay professional fees subject to the Approved Budget (as defined below); (iii) provide ongoing working capital requirements of the Debtor and to pay fees, costs, expenses and other administrative expenses relating to the Chapter 11 Case, in each case, subject to any necessary Bankruptcy Court approvals and consistent with the Approved Budget subject to any Budget

Variances (defined below); and (iv) make the currently identified capital expenditures and other payments of post-petition payables as permitted under the DIP Loan Documents, in each case subject to the conditions as set forth herein and in the DIP Loan Documents and consistent in all material respects with the Approved Budget and any Budget Variances.

      H.    Adequate Protection.  The First Lien Secured Parties are entitled to receive adequate protection to the extent of any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral) pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code (as applicable to the First Lien Secured Parties, the "First Lien Adequate Protection Obligations," Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, the First Lien Secured Parties  shall receive postpetition replacement liens, superpriority adequate protection claims, and reasonable professional fees and expenses in accordance with the terms of this Final Order.  As additional adequate protection, the Bank, for the benefit of itself and the First Lien Secured Parties, will receive certain interest and professional fees paid by the Debtor during the Chapter 11 Case, as described below. Furthermore, the Bank will be entitled to certain reporting from the Debtor.  As set forth later in this Order, the payment of interest and professional fees is subject to recharacterization based on the § 506 secured status of the claims.   The Second Lien Secured Parties are not entitled to adequate protection because there is no value in the Prepetition Collateral beyond the amount the Debtor owes to the First Lien Secured Parties.

      I.    Approved Budget.  Attached hereto as Exhibit A is the budget setting forth the Debtor's anticipated cash receipts and expenditures for each week through April 16, 2017 (the "Amended Budget").  The "Approved Budget" means the Initial Approved Budget (attached to the First Interim Order), the Amended Budget (attached hereto), and the thirteen-week

budgets, in form and substance acceptable to the DIP Agent, entered into in accordance with the terms of the DIP Credit Agreement.  The Approved Budget shall reflect the Debtor's good-faith projection of all weekly cash receipts and disbursements in connection with the operation of the Debtor's business during such thirteen-week period, delivered pursuant to the terms of the DIP Credit Agreement, delivered by the Debtor to counsel for the DIP Agent and DIP Lenders and counsel for the Creditors' Committee.  The Debtor may enter amended Approved Budgets pursuant to the terms of the DIP Credit Agreement without the need for further notice and hearing or any order of this Bankruptcy Court.  The Debtor will provide notice of any Amended Budget to the U.S. Trustee, counsel for the Creditors' Committee, counsel for the Bank, counsel for the Fiscal Agent, counsel to Platinum Partners Credit Opportunities fund ("PPCO") and Platinum Partners Liquidity Opportunity fund ("PPLO"), and counsel to the Liquidators of Platinum Partners Value Arbitrage Fund, L.P.("PPVA").  The Approved Budget in effect as of entry of this Final Order is attached as **Exhibit A**.

J.     Derivative Contracts.  Good cause has been shown for (i) the Debtor to (1) enter into and perform under the Derivative Contracts with Approved Counterparties in the ordinary course of business; (2) honor, pay or otherwise satisfy all obligations under the Derivative Contracts as they come due; (3) pledge and transfer collateral in the form of *pari passu* DIP Liens to secure obligations under the Derivative Contracts; and (4) grant DIP Superpriority Claims on account of the Derivative Contracts *pari passu* with the DIP Superpriority Claims granted to the DIP Lenders; (ii) an Approved Counterparty to exercise all rights and remedies with respect to the DIP Collateral for the benefit of the Approved Counterparties following the occurrence of and during an Event of Default or Termination Event under, and as defined in, the Derivative Contracts; and (iii) the Approved Counterparties to set

off, net, recoup and apply any payment amounts that such Approved Counterparties would otherwise be obligated to pay the Debtor under the Derivative Contracts in accordance with the DIP Loan Documents and the Derivative Contracts.

K.      Good Cause.  Based upon the record presented to the Bankruptcy Court by the Debtor, it appears that the ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtor and the Debtor's estate and creditors.  The Debtor reasonably believes that the liquidity to be provided under the DIP Loan Documents will enable the Debtor to continue to operate its businesses in the ordinary course and preserve the value of its businesses.  Good cause has, therefore, been shown for the relief sought in the Motion.

L.      Good Faith.  The Financing and the DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtor and the DIP Secured Parties, and all of the obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Loan Documents shall be deemed to have been extended by each of the DIP Secured Parties in accordance with the DIP Loan Documents, in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits, and privileges of this Final Order regardless of whether this Final Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Case is subsequently converted or dismissed.

M.    <u>Consideration</u>.    The Debtor will receive and has received fair consideration and reasonably equivalent value in exchange for access to the Financing, and all other financial accommodations provided under the Financing, the DIP Loan Documents, the Interim Orders and this Final Order.

N.    <u>Entry of Final Order is in the Best Interests of the Estate</u>.  This Bankruptcy Court concludes that entry of this Final Order is in the best interests of the Debtor and the Debtor's estate and creditors as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing businesses during the pendency of this Chapter 11 Case.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Bankruptcy Court at the Hearings, and good and sufficient cause appearing therefor;

<b><u>IT IS HEREBY ORDERED</u>:</b>

1.    <u>Disposition</u>.  The Motion is granted on a final basis and on the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits.  This Final Order shall constitute findings of fact and conclusions of law.

2.    <u>Effectiveness</u>.  Subject to the terms hereof, this Final Order shall be immediately effective and enforceable upon the date this order is signed by the bankruptcy judge and entered on the docket in the Chapter 11 Case (the "<u>Final Order Entry Date</u>").

3.    <u>Authorization of the Financing and DIP Loan Documents</u>

(a)    The DIP Loan Documents executed after entry of the First Interim Order, as may be modified, and this Final Order shall govern the financial and credit

10

accommodations to be provided to the Debtor by the DIP Lenders in connection with the Financing.

(b)      The Borrower is hereby authorized on a final basis to borrow up to the principal amount of $16,000,000, all which shall be used by the Debtor as expressly permitted by the DIP Loan Documents, the Approved Budget and any Budget Variances. The Debtor is authorized to use proceeds of the Financing in accordance with the Approved Budget in an amount that would not cause either: (i) certain material line items other than Professional Fees from varying from the applicable Approved Budget by more than twenty percent (20%) for each week during any budget period or fifteen percent (15%) on a cumulative basis for that portion of the budget period then ended; or (ii) with respect to Professional Fees, the Debtor may vary from the applicable budget by no more than ten percent (10%) on a cumulative basis for that portion of the Budget (a "Budget Variance").  The variances described in the immediately preceding sentence shall be subject to carry forwards as provided in the DIP Credit Agreement.  The variance report showing budget to actual and any variance shall be delivered by the Debtor to the DIP Agent, the DIP Lenders, the Bank, counsel to the Creditors' Committee, and the Fiscal Agent in accordance with the terms of the DIP Credit Agreement.

(c)      In furtherance of the foregoing and without further approval of this Bankruptcy Court, the Debtor is authorized to, and, if so required under the terms of the DIP Loan Documents, perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all related fees and

expenses, that may be required or necessary for the Debtor's performance of its obligations under the Financing, including, without limitation:

(i)      the execution, delivery, and performance of the DIP Loan Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreements, and any mortgages contemplated thereby;

(ii)     subject to paragraph 11 hereof, the execution, delivery and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case in such form as agreed among the Debtor and the required other parties as set forth in more detail in paragraph 11 below;

(iii)    the non-refundable payment of the fees referred to in the DIP Loan Documents and described in more detail in the Motion, including the fees of the DIP Agent, and, subject to paragraph 7, costs and expenses payable under the DIP Loan Documents; and

(iv)     the performance of all other acts required under or in connection with the DIP Loan Documents.

(d)      All of the DIP Liens described herein shall be valid, enforceable, effective and perfected as of the Interim Order Entry Date and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements, or other agreements.

(e)      The DIP Loan Documents and DIP Obligations constitute valid, binding and non-avoidable obligations of the Debtor enforceable against each of its successors and assigns, and each person or entity party to the DIP Loan Documents in

12

accordance with their respective terms and the terms of the Interim Orders and this Final Order and shall survive conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or the dismissal of the Chapter 11 Case.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents, the Interim Orders or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

       4.       Carve-Out.  The Debtor's obligations to the DIP Secured Parties and the liens, security interests and superpriority claims granted herein and/or under the DIP Loan Documents, including the DIP Liens, the DIP Superpriority Claims and the Adequate Protection Claims, shall be subject and subordinate to the Carve-Out.  "Carve-Out" shall mean the sum of (i) fees and expenses incurred by bankruptcy professionals whose retention has been (x) approved by the Bankruptcy Court which are unpaid as of the delivery of the Carve-Out Trigger Notice (as defined below) and (y) provided for in the Approved Budget; (ii) fees and expenses in an amount not to exceed $250,000 incurred from and after the delivery of the Carve-Out Trigger Notice (as defined below) by bankruptcy professionals whose retention has been approved by the Bankruptcy Court (the "Post-Termination Fee Carve-Out"); and (iii) fees owed pursuant to 28 U.S.C. § 1930 or fees owed the clerk of the Bankruptcy Court.  "Carve-Out Trigger Notice" shall mean the written notice, including by email, delivered by the DIP Agent (at the direction of the DIP Lenders) to the Debtor, its counsel, the U.S. Trustee, counsel to the

Creditors' Committee, counsel to Bank, counsel to Fiscal Agent, counsel to PPCO and PPLO, and counsel to the Liquidators of PPVA, which notice may be delivered following the occurrence and continuation of an Event of Default or the Termination Date in accordance with the terms of the DIP Loan Documents.  Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the DIP Secured Parties or their respective officers, directors, employees, agents, advisers and counsel, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Credit Agreement in favor of the DIP Agent, for the benefit of the DIP Secured Parties.  For the avoidance of doubt and notwithstanding anything to the contrary herein, in the DIP Credit Agreement, or in any loan or financing documents, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, any prepetition secured obligations, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations or any prepetition secured obligations (other than the Senior Statutory Liens defined in paragraph 6(a) of this Final Order).  None of the proceeds of the Collateral or the DIP Loans shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the Financing.

    5. <u>DIP Lender Superpriority Claim</u>.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative

expense claims against the Debtor with priority over any and all other administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code (the "DIP Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Debtor and its estate and all proceeds thereof, excluding Avoidance Actions (as defined below) but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in the Interim Orders and this Final Order, without limitation, all Avoidance Proceeds (as defined below), subject only to the Carve-Out.

6.    DIP Liens.

(a)    As security for the DIP Obligations, effective and perfected as of the Interim Order Entry Date and without the necessity of the execution by the Debtor (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the Debtor of, or over, any DIP Collateral, the following security interests and liens, hereby are granted by the Debtor to each of the DIP Secured Parties (all property of the Debtor identified in subsections (i), (ii), and (iii) below being collectively referred to

15

as the "DIP Collateral"), subject only to the Carve-Out and any valid and enforceable lien, setoff, recoupment rights under state law, or otherwise (the "Statutory Liens"), solely to the extent such Statutory Liens are (i) valid, enforceable and non-avoidable as of the Petition Date, (ii) timely perfected before or after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (iii) senior in priority to the security interests and liens of the Prepetition Secured Parties (the "Senior Statutory Liens") (all such liens on and security interests in the DIP Collateral granted to the DIP Secured Parties, pursuant to the Interim Orders, this Final Order or the DIP Credit Documents, the "DIP Liens"):

(i)    First Lien on Unencumbered Property.    Pursuant to section 364(c)(2) of the Bankruptcy Code and subject to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) is not subject to valid, perfected, and non-avoidable liens, if any (collectively, "Unencumbered Property"), including (i) any unencumbered cash of the Debtor (wherever maintained) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and any claims and causes of the Debtor; (ii) any claims and causes of action against any

16

directors or officers of the Debtor as well as including any proceeds of, or property recovered in connection with, any successful claims and causes of action against any directors or officers of the Debtor; and (iii) excluding any claims and causes of action of the Debtor under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law (collectively, the "Avoidance Actions"), but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in the Interim Orders and this Final Order, any proceeds of, or property recovered in connection with, any successful Avoidance Action (whether by judgment, settlement or otherwise, and unencumbered or not, the "Avoidance Proceeds");

(ii)     Priming Liens Senior to Other Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code and subject to the Carve-Out and the Senior Statutory Liens, a valid, binding, continuing, enforceable, fully-perfected, first priority (subject to any Permitted Encumbrances, as defined in the DIP Credit Agreement) senior priming security interest in and lien upon all prepetition and postpetition property of the Debtor (including any cash collateral), whether now existing or hereafter acquired, excluding any Avoidance Actions but including, solely to the extent that all other DIP Collateral including Unencumbered Property is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in the Interim Orders and this Final Order, Avoidance Proceeds.  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising

from current and future liens of the Prepetition Secured Parties and shall be subject to the Carve-Out and the Senior Statutory Liens in all respects;

(iii)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code and subject to the Carve-Out and the Senior Statutory Liens, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all prepetition and postpetition property of the Debtor (other than the property described in clauses (i) or (ii) of this paragraph 6, as to which the liens and security interests in favor of the DIP Agent for the benefit of the DIP Secured Parties will be as described in such clauses) excluding any Avoidance Actions but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in this Final Order, Avoidance Proceeds, whether now existing or hereafter acquired; and

(iv)    <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor and their estates under section 551 of the Bankruptcy Code or (b) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtor, unless such claims are entitled to priority under applicable non-bankruptcy law.  For the avoidance of doubt, the DIP Liens shall be subject to the Carve-Out and the Senior Statutory Liens in all respects.

(b)     The DIP Liens shall be effective immediately upon the Interim Order Entry Date.

(c)     The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the Interim Order Entry Date without the necessity of execution by the Debtor or any other parties (including the Debtor's banks) of mortgages, security agreements, pledge agreements, financing agreements, financing statements, deposit control agreements, or other agreements or documents, such that no additional steps need be taken by the DIP Secured Parties to perfect such liens and security interests.  Subject to applicable non-bankruptcy law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of the DIP Secured Parties, a first-priority lien on and security interest in the Debtor's interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by the Debtor in favor of the DIP Agent, for the benefit of the DIP Secured Parties, in accordance with the terms of the DIP Loan Agreement and the other DIP Loan Documents.

(d)     The DIP Liens, DIP Superpriority Claims, and other rights, benefits, and remedies granted under the Interim Orders and this Final Order to the DIP

19

Secured Parties shall continue in the Chapter 11 Case, in any superseding case under the Bankruptcy Code resulting from conversion of the Chapter 11 Case (a "<u>Superseding Case</u>") and following any dismissal of the Chapter 11 Case, and such liens, security interests, and claims shall maintain their priority as provided in the Interim Orders and this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and all of the commitments thereunder have been terminated in accordance with the DIP Loan Documents.

7.     <u>Fees and Expenses of DIP Agent and DIP Lenders</u>.  The Debtor shall no later than fourteen (14) days after the Debtor's receipt of a summary statement setting forth the applicable timekeepers, as well as the hours worked by and expenses incurred by such timekeepers, in connection with the Chapter 11 Case (with copies provided via electronic mail to the U.S. Trustee and counsel for the Creditors' Committee, and counsel to Bank, counsel to Fiscal Agent and counsel to PPCO and PPLO, and counsel to PPVA's liquidators (collectively, the "<u>Fee Notice Parties</u>")), indefeasibly pay or reimburse, as and when due the DIP Agent and the DIP Lenders for their respective reasonable fees and out-of-pocket costs, expenses and charges (collectively, the "<u>Lender Professional Fees</u>"), including the reasonable prepetition and postpetition fees, costs, and expenses of Andrews Kurth Kenyon LLP as counsel to DIP Agent and any other advisors or professionals retained by the DIP Agent or DIP Lenders.  The Debtor and the Fee Notice Parties may object to the reasonableness of the fees, costs and expenses included in any such professional fee invoice; <u>provided</u> that, any such objection shall be barred and deemed waived unless filed with this Bankruptcy Court and served on the applicable professional by 12:00 p.m., prevailing Central Time, on the date that is no later than fourteen (14) days after the objecting party's receipt of the applicable professional fee invoice.  If such

objection is timely received, the Debtor shall promptly pay the portion of such invoice not subject to such objection, and this Bankruptcy Court shall determine any such objection unless otherwise resolved by the applicable parties.  Any hearing on an objection to payment of any fees, costs, and expenses of the DIP Agent or the DIP Lenders set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses which are the subject of such objection and whether the DIP Agent and DIP Lenders are entitled to such fees, costs and expenses under the Interim Orders or this Final Order.  For the avoidance of doubt, none of the fees, costs, and expenses of the DIP Agent and the DIP Lenders shall be subject to Bankruptcy Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Bankruptcy Court.  All fees, costs and expenses payable under the DIP Loan Documents to the DIP Secured Parties shall be included and constitute part of the DIP Obligations and be secured by the DIP Liens.  Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Secured Parties under and in connection with negotiation and preparation of the DIP Loan Documents, whether incurred prior to or after the Filing Date, including, without limitation, the legal fees and expenses of any professionals retained by the DIP Agent in accordance with the DIP Loan Documents, shall be deemed fully earned, indefeasibly paid, non-refundable, irrevocable, and non-avoidable on the date due and payable pursuant to the terms of the DIP Loan Documents and, irrespective of any subsequent order approving or denying the Financing or any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code.

8.      <u>First Lien Secured Parties Adequate Protection</u>.

(a)    <u>First Lien Adequate Protection Liens</u>.  To the extent there is a diminution in value of the interests of the First Lien Secured Parties in their Prepetition Collateral (including Cash Collateral) from and after the Involuntary Petition Date resulting from the use, sale, or lease by the Debtor of the applicable collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the First Lien Secured Parties' prepetition liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("<u>Diminution in Prepetition First Lien Collateral Value</u>"), the Bank, for the benefit of all the First Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral (such adequate protection replacement liens, the "<u>First Lien Adequate Protection Liens</u>"), which First Lien Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, Senior Statutory Liens and the Carve-Out and shall be senior in priority to the prepetition liens of the First Lien Secured Parties.  The First Lien Adequate Protection Liens and the First Lien Adequate Protection Superpriority Claim (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtor, and (C) shall

be valid and enforceable against any trustee or any other estate representative appointed in this case or any Superseding Case, and/or upon the dismissal of the case.

(b)     First Lien Adequate Protection Superpriority Claims.   To the extent of Diminution in Value of the Prepetition First Lien Collateral, the First Lien Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "First Lien Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claims, any super-priority adequate protection claims of holders of Senior Statutory Liens and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from and having recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof; provided, however, that the First Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the First Lien Adequate Protection Superpriority Claims unless and until all DIP Obligations have been paid in full.

(c)     First Lien Secured Parties' Interest and Professional Fees.   As further adequate protection for the Bank (on behalf of itself and the other First Lien Secured Parties), and without limiting any rights of the Bank under section 506(b) of the Bankruptcy Code which are preserved, and in consideration, and as a requirement, for

23

obtaining the consent of the Bank (on behalf of itself and the First Lien Secured Parties) to the entry of the Interim Orders and this Final Order and the Debtor's consensual use of cash collateral, the Debtor shall (i) pay or reimburse in cash all reasonable, documented fees, costs, expenses, and charges of the Bank and its respective professionals; provided that the Debtor's obligation under this Final Order to pay the fees, costs, expenses, and charges of the Bank and its respective professionals shall not exceed $30,000 (the "Bank's Budgeted Fees") in cash in the aggregate each month during the pendency of this Chapter 11 Case such that to the extent that the Bank's Budgeted Fees exceed $30,000 in a calendar month, the amount in excess of the Bank's Budgeted Fees shall accrue and be payable the next calendar month and to the extent that the Bank's Budgeted Fees are less than $30,000 in any calendar month, the difference shall accrue and be available for payment of such fees in subsequent calendar months (plus up to an additional $20,000 incurred in fees, costs and expenses from the Voluntary Petition Date through the First Interim Hearing); provided further that the Bank reserves and nothing in the Interim Orders or this Final Order shall prejudice its right to seek, as additional adequate protection, payment or reimbursement of any reasonable, documented fees, costs, expenses, and charges of the Bank and its respective professionals that the Debtor is not obligated to pay pursuant to the Interim Orders or this Final Order; provided further that the Bank is subject to the same compensation procedures as the DIP Agent as set forth in paragraph 7 hereof and in addition shall file on the docket a summary notice setting forth the fees and expenses paid and providing notice that any party in interest can request in writing additional details on such fees and expenses (provided that such information may be redacted so as to protect the attorney-client privilege and work product privilege) and

any party in interest desiring to object to such fees and expenses shall file an objection within 14 days of the filing of the notice, (ii) pay interest on the amounts advanced (current and future) under the Letter of Credit Loan Agreement, with such interest commencing from the Voluntary Petition Date at the non-default rate, and (iii) pay 1/3 of the monthly contractual fee for Letter of Credit commitments in the amount (currently approximately $47,700 per month) with such amount accruing commencing on the Voluntary Petition Date; provided further that to the extent that it is held by final non-appealable order that the party receiving any cash payment of interest, fees and expenses pursuant to this paragraph as adequate protection, is an under secured creditor pursuant to Section 506(b) such payments shall be reapplied to reduce the principal amount of the obligations outstanding under the Letter of Credit Loan Agreement, provided that the First Lien Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

(d)    <u>Right to Seek Additional Adequate Protection</u>.  Notwithstanding any other provision hereof, the grant of adequate protection to the First Lien Secured Parties pursuant hereto is without prejudice to the right of the Bank to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the First Lien Secured Parties under their prepetition agreements or under equity or law, and the Bank and First Lien Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under their prepetition agreements and/or equity or law in

25

connection with all termination events and defaults and events of default under such agreements.

9.      Reporting.   The Debtor shall deliver to the Bank, the Fiscal Agent and counsel to PPCO and PPLO, counsel to the Creditors' Committee, and counsel to PPVA's liquidators, at the same time and by the same method as to the DIP Agent, all information, reports, documents and other material that the Debtor is required to provide the DIP Agent pursuant to the DIP Loan Documents, including without limitation pursuant to Sections 6.1, 6.15, 6.2(g), and 6.3 of the DIP Credit Agreement.   Moreover, the Creditors' Committee's professionals, including its proposed financial advisor, FTI Consulting, Inc., shall have reasonable direct access to information from the Debtor's advisors (subject to a confidentiality agreement), including, but not limited to, Netherland Sewell and Associates, Inc., provided that a representative of the Debtor is present.

10.     Fieldwood Receivables.   To the extent that the Debtor and Fieldwood Energy, LLC ("Fieldwood") agree that an amount is due and owing to Fieldwood (an "Agreed Fieldwood Receivable"), Fieldwood is required to setoff or recoup (as appropriate) any and all Agreed Fieldwood Receivables against amounts owed to the Debtor, without further order of this Court.

11.     Amendments, Consents, Waivers, and Modifications.   The Debtor, with the express written consent of the DIP Agent, acting at the direction of the required DIP Lenders, and, to the extent required by the DIP Credit Agreement, may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents that are not materially adverse to the Debtor without the need for further notice and hearing or any order of this Bankruptcy Court; provided, however, that, without the consent of this Bankruptcy Court on notice and a hearing, no such amendments, consents, waivers or modifications shall (i) shorten the maturity of the

Financing, (ii) increase the commitments thereunder or the rate of interest payable under the DIP Loan Documents, (iii) require the payment of any new or additional fee, or (iv) amend the Events of Default or covenants in the DIP Loan Documents to be materially more restrictive to the Debtor.  The Debtor will provide notice of the amendment to the U.S. Trustee, counsel to the Creditors' Committee, counsel to Bank, counsel to Fiscal Agent, counsel to PPCO and PPLO, and counsel to the Liquidators of PPVA.  No consent shall be implied by any other action, inaction, or acquiescence of any of the DIP Secured Parties.

            12.    <u>Perfection of DIP Liens</u>.

            (a)    The DIP Agent is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case, without the necessity to pay any mortgage recording fee or similar fee or tax.  Whether or not the DIP Agent on behalf of the DIP Secured Parties in its sole discretion, chooses to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, and upon an Event of Default, the Debtor shall have no further consent over the disposition of the DIP Collateral that is held by third parties (including the Debtor's banks) as directed by the DIP Agent.  The Debtor shall, if requested, execute and deliver to the DIP Agent all such agreements, financing statements, instruments and

other documents as the DIP Agent may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens and all such documents will be deemed to have been recorded and filed as of the Filing Date.

(b)     A certified copy of the Interim Orders and this Final Order may be filed by the DIP Agent with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of the Interim Orders or this Final Order for filing and recording.

13.     <u>Access to Collateral</u>.   Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Secured Parties contained in the Interim Orders, this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) Business Days' written notice to the landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Loan Documents or a default by the Debtor of any of its obligations under the Interim Orders or this Final Order has occurred and is continuing, the DIP Agent (i) may, only subject to any separate agreement by and between the applicable landlord or licensor (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) subject to applicable law, shall be entitled to all of the Debtor's rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade-names, copyrights, licenses, patents or any other similar assets of the Debtor, which are owned by or subject to a lien or license of any third party and which are used by the Debtor in its businesses,

in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder.  To the extent applicable law prohibits the forgoing access or use of rights, the DIP Agent shall have the right to an expedited hearing on five (5) Business Days' notice to obtain Bankruptcy Court authorization to obtain such access and/or use of such rights.  Nothing herein shall require the Debtor or the DIP Agent to assume or assign any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent in this paragraph.

14.     Automatic Stay Modified.  The automatic stay provisions of section 362 of the Bankruptcy Code hereby are vacated and modified without the need for any further order of this Bankruptcy Court to:

(a)     whether or not an Event of Default under the DIP Loan Documents has occurred, (i) require proceeds from Collateral and other collections received by the Debtor to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Secured Parties under the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents, and (ii) require mandatory prepayments in accordance with the requirements of the DIP Loan Documents, in each case, without further order of this Bankruptcy Court; and

(b)     immediately upon the occurrence and during the continuation of a Termination Event (as defined in DIP Loan Documents), allow the DIP Agent (acting at the direction of the required DIP Lenders) to deliver a written notice of its intention to declare a termination of the Debtor's ability and rights to access or use proceeds of the Financing (any such declaration, a "Termination Declaration").   The Termination

Declaration shall be given by written notice (including electronic mail) to the Debtor, the U.S. Trustee, the Creditors' Committee, counsel to Bank, counsel to Fiscal Agent and counsel to PPCO and PPLO and counsel to PPVA's liquidators and filed on the docket (the date any such Termination Declaration is given shall be referred to herein as the "Termination Declaration Date").  Upon the Termination Declaration Date, unless such Termination Event is waived in writing (including via email) by the DIP Agent in its sole discretion (acting at the direction of the required DIP Lenders), cured by the Debtor, or otherwise stayed or invalidated by this Bankruptcy Court, the authority and approval of the Debtor to access or use the Financing and the commitment of the DIP Secured Parties to provide such financing pursuant to the Interim Orders or this Final Order shall automatically terminate.  Unless there is a Bankruptcy Court order entered within 7 days after the Termination Declaration Date providing otherwise, the DIP Agent and DIP Secured Parties are authorized to exercise any and all rights and remedies in accordance with the terms of the DIP Loan Documents, and to take all actions required or permitted by the DIP Loan Documents without necessity of further Bankruptcy Court orders.

15.     <u>Derivative Contracts</u>.  The Debtor is authorized to: (a) enter into and perform under the Derivative Contracts in the ordinary course of business; (b) honor, pay, or otherwise satisfy all obligations under the Derivative Contracts as they come due; (c) pledge and transfer DIP Collateral in the form of DIP Liens to secure the obligations under the Derivative Contracts *pari passu* with the DIP Liens granted to the DIP Lenders; and (d) grant DIP Superpriority Claims *pari passu* with the DIP Superpriority Claims of the DIP Lenders to the Approved Counterparties to the Derivative Contracts on account of the obligations under the Derivative Contracts.

16.    As security and assurance of the Approved Counterparties, and in exchange for providing benefits to the Debtor in accordance with the Interim Orders and this Final Order:

(a)    the Approved Counterparties are hereby granted, effective as of the Interim Order Entry Date and without the necessity of the execution by the Debtor or the filing of security agreements, pledge agreements, mortgages, financing statements, or otherwise, enforceable DIP Liens, permitted by the Interim Orders and this Final Order with respect to the obligations under the Derivative Contracts *pari passu* with the DIP Liens granted to the DIP Lenders;

(b)    the obligations under the Derivative Contracts shall constitute DIP Superpriority Claims against the Debtor *pari passu* with the DIP Superpriority Claim granted to the DIP Lenders; and

(c)    the Approved Counterparties may setoff, net, recoup and apply any payment, settlement payment, termination values, termination payments, and any other amounts that such Approved Counterparty would be entitled to receive from the Debtor or otherwise be obligated to pay to the Debtor under any Derivative Contract in accordance with the terms of each of such Derivative Contracts and the DIP Loan Documents, including but not limited to setoff, netting, recoupment and application of the foregoing against any and all obligations of the Debtor under the Derivative Contracts and the DIP Loan Documents in accordance with the terms of such Derivative Contract and the DIP Loan Documents to reduce permanently the DIP Obligations; provided, that upon the occurrence and during the continuation of an Event of Default or a Termination Event under a Derivative Contract, any Approved Counterparty may terminate, liquidate, or unwind its Derivative Contract and setoff, recoup and net transactions thereunder upon notice by such Approved Counterparty to the Debtor in accordance with the applicable Derivative Contract; provided, however, any setoff, recouping or netting against obligations under the DIP Loan Documents in connection with the termination, liquidation, or unwind of a Derivative Contract will only be permitted after five (5) business days prior written notice from the Approved Counterparty to the DIP Agent and the Debtor (unless the Debtor and DIP Agent otherwise agree in writing)

17.    If any or all of the provisions of this Final Order are stayed, modified in a manner adverse to an Approved Counterparty, or vacated or if the Interim Orders or this Final Order otherwise terminates, such stay, modification, vacation, or termination will not affect (a)

the validity of any indebtedness, obligation, or liability incurred by the Debtor to each of the Approved Counterparties before the receipt of written notice by the Approved Counterparties of the effective date of such stay, modification, vacation, or termination; (b) the validity or enforceability of the security interests, administrative claims, and netting and termination rights authorized or created hereby or pursuant to the Derivative Contracts, or any related documents; and (c) the rights of the Approved Counterparties to exercise remedies as set forth in the Derivative Contracts, and each Approved Counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

18.     In accordance with the notice and other requirements of paragraph 14 of this Final Order, the automatic stay provided in section 362 of the Bankruptcy Code is hereby modified to the extent necessary to:

> (a)     permit immediate and unconditional exercise and enforcement of rights and remedies by (i) in respect of the DIP Collateral, any Approved Counterparty (including, but not limited to, the foreclosure on the DIP Liens in order to collect from the Debtor amounts that may be owed to the Approved Counterparty under the Derivative Contract) and (ii) the Approved Counterparty, upon the occurrence of an Event of Default or a Termination Event under the Derivative Contract (including, but not limited to, the suspension, termination, liquidation, or acceleration thereof and setoff, netting, recoupment and application of any payment, settlement payment, termination values, termination payments, and any other amounts that such Approved Counterparty would be entitled to receive from or otherwise be obligated to pay to the Debtor under any Derivative Contract), and the Approved Counterparties' rights thereunder shall not be modified, stayed, avoided, or otherwise limited by order of this Court or any court proceeding under the Bankruptcy Code. The Debtor waives the right and shall not seek relief, including under section 105(a) or section 549 of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of Approved Counterparties under the Derivative Contract or this Final Order, including, without limitation, the right of the Approved Counterparties to setoff, net, recoup and apply any payment amounts that such Approved Counterparties would otherwise be obligated to pay to the Debtor under the Derivative Contracts against amounts owed by the Debtor under the DIP Loan Documents and other

obligations in accordance with each of the Derivative Contracts and the DIP Loan Documents;

(b)        permit an Approved Counterparty to take all actions to validate and perfect the liens and security interests granted hereunder and under the DIP Loan Documents, including by filing or recording financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction.  For the avoidance of doubt, whether or not the Approved Counterparty chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted under the Interim Orders and this Final Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, as of the Interim Order Entry Date; and

(c)        provide that an Approved Counterparty's rights, powers, privileges and remedies under the applicable Derivative Contract may not be modified, stayed, avoided or otherwise limited by further order of this Court or any court proceeding under the Bankruptcy Code.

19.        Notwithstanding any provision of the DIP Loan Documents or the Derivative Contracts to the contrary, any counterparty to the Debtor under a Derivative Contract that is a DIP Lender as of the date that such counterparty enters into any transaction under such Derivative Contract shall be an Approved Counterparty for purposes of the Interim Orders and this Final Order and enjoy the DIP Superiority Claims, DIP Liens, automatic stay relief, and other rights and protections afforded by the Interim Orders and this Final Order in respect of each such transaction (without giving effect to any amendment, extension, increase or other modification, including, without limitation, "blending," that occurs on or after the date on which such counterparty ceases to be a DIP Lender) until the earliest of (a) the termination of such transaction and the satisfaction of all obligations arising thereunder in full in cash, and (b) other arrangements satisfactory to such Approved Counterparty having been made, in each case regardless of whether such counterparty ceases to be a DIP Lender while such transaction remains outstanding.

33

20.     <u>Subsequent Reversal or Modification</u>.   This Final Order is entered pursuant to, *inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Secured Parties all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder or under the Interim Orders or this Final Order by the Debtor to the DIP Secured Parties prior to the date of receipt by the DIP Agent of written notice of the effective date of such action, (ii) the payment of any fees required under the Interim Orders, this Final Order or the DIP Loan Documents, and/or (iii) the validity and enforceability of any lien, claim, obligation, right, remedy or priority authorized or created under the Interim Orders, this Final Order or pursuant to the DIP Loan Documents as of such date.  Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to any of the DIP Secured Parties, prior to written notice being delivered to the DIP Agent of the effective date of such action, shall be governed in all respects by the provisions of this Final Order, and the DIP Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

21.     <u>Restriction on Use of DIP Lenders' Funds</u>.   Notwithstanding anything herein to the contrary, no Collateral, proceeds thereof, proceeds of the Financing, or any portion of the Carve-Out may be used by the Debtor, the Debtor's estate, the Creditors' Committee, any trustee or examiner appointed in the Chapter 11 Case or any chapter 7 trustee, or any other person, party or entity to, in any jurisdiction anywhere in the world, directly or indirectly to (a) request authorization to obtain postpetition financing (whether equity or debt) or other

financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (i) from the DIP Agent or (ii) if such financing is sufficient to indefeasibly pay all DIP Obligations in full in cash and such financing is immediately so used; (b) assert, join, commence, support, investigate, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the DIP Releasees, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any action arising under the Bankruptcy Code against a DIP Releasee; (ii) any so-called "lender liability" claims and causes of action against a DIP Releasee; (iii) any action with respect to the legality, enforceability, validity, extent, perfection, and priority of the DIP Obligations, the DIP Superpriority Claims, the DIP Loan Documents, or the legality, enforceability, validity, extent, perfection, and priority of the DIP Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counter claims or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation, in each case solely against or with respect to the DIP Liens, DIP Obligations, or the DIP Superpriority Claims, in whole or in part; (v) appeal or otherwise challenge the Interim Orders or this Final Order, the DIP Loan Documents, or any of the transactions contemplated herein or therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP Secured Parties' rights in respect of their respective liens on and security interests in the Collateral or any of their rights, powers, or benefits hereunder or in the DIP Loan Documents anywhere in the world; (c) seek to modify any of the rights granted to the DIP Secured Parties

hereunder or under the DIP Loan Documents and/or (d) pay any claim of a prepetition creditor except as permitted under the DIP Loan Documents in accordance with the Approved Budget.

22.     <u>Collateral Rights</u>.   Except as expressly permitted in the Interim Orders, this Final Order or the DIP Loan Documents, in the event that any person or entity that holds a lien on or security interest in Collateral of the Debtor's estate, that is junior and/or subordinate to the DIP Liens receives or is paid the proceeds of such Collateral, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents, and termination of the commitments under the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral of the Debtor's estate, in trust for the DIP Lenders, and shall immediately turnover such proceeds to the DIP Agent for application in accordance with the DIP Loan Documents, the Interim Orders and this Final Order.

23.     <u>Prohibition on Additional Liens</u>.   Except as provided in the DIP Loan Documents, the Interim Orders or this Final Order, the Debtor shall be enjoined and prohibited from, at any time during the Chapter 11 Case until such time as the DIP Obligations have been indefeasibly paid in full, granting liens on or security interests in the Collateral or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are junior to, senior to, or *pari passu* with the DIP Liens or the Adequate Protection Liens.

24.     <u>No Waiver</u>.   This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that any of the DIP Secured Parties or any other parties-in-interest, including the Creditors' Committee, may have to bring or be heard on any matter brought before this Bankruptcy Court.

25.    <u>Sale/Conversion/Dismissal/Plan</u>.

(a)    No order providing for either the sale of the ownership of the stock of the Debtor or the sale of all or substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code shall be entered by the Bankruptcy Court unless, in connection and concurrently with any such event, (i) the proceeds of such sale shall be used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations and the commitments under the DIP Loan Documents are terminated; (ii) such sale is expressly permitted under the DIP Loan Documents; or (iii) DIP Agent otherwise consents.

(b)    If an order dismissing or converting the Chapter 11 Case under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered:

i.    Unless otherwise agreed to by the DIP Agent, such order shall provide that, in each case subject to the Carve-Out and the Senior Statutory Liens, (i) the DIP Liens, the DIP Superpriority Claim, the DIP Obligations and the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in the Interim Orders and this Final Order until all DIP Obligations hereunder are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents, (ii) to the extent permitted by applicable law, this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens and the DIP Superpriority Claims, and (iii) all postpetition indebtedness,

obligation or liability incurred by the Debtor to the DIP Secured Parties prior to the date of such order, including, without limitation, the DIP Obligations, shall be governed in all respects by the provisions of this Final Order and the DIP Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligation or liability.

   ii.  Unless otherwise agreed to by the Bank, such order shall provide that, in each case subject to the Carve-Out, the Senior Statutory Liens, any superpriority administrative claims awarded any holder of a Senior Statutory Lien and the DIP Obligations, (i) the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superpriority Claims, and all other adequate protection provided to the First Lien Secured Parties under the Interim Orders and this Final Order shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in the Interim Orders and this Final Order until all First Lien Adequate Protection Obligations have been paid and satisfied in full in cash and the Bank has been released of any obligation related to letters of credit issued by the Bank or such obligations have been otherwise terminated, (ii) to the extent permitted by applicable law, this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the claims, liens and security interests referred to in clause (i) above, and (iii) all postpetition indebtedness, obligation or liability incurred by the Debtor to the First Lien Secured Parties prior to the date of such order,

including, without limitation, the First Lien Adequate Protection Obligations, shall be governed in all respects by the provisions of this Final Order; and

26.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, the Interim Orders, any other order of this Bankruptcy Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents or words of similar import, the terms and provisions of this Final Order shall govern.

27.    <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

28.    <u>Rights Under Sections 363(k) and 1129(b)</u>.  The full amount of the DIP Obligations may be used to "credit bid" for the assets and property of the Debtor as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of the DIP Loan Documents without the need for further Bankruptcy Court order authorizing the same and whether such sale is effectuated through section 363(k) and/or section 1129(b) of the Bankruptcy Code or otherwise because, among other things, the denial of such rights would result in the DIP Obligations not receiving the indubitable equivalent of their claims.

29.    <u>Preservation of Prepetition Priorities</u>.  Nothing in this Final Order is intended to change or otherwise modify the prepetition priorities among prepetition secured creditors of the Debtor, including (i) any operators' or nonoperators' lien or recoupment rights to the extent their liens or rights are valid, enforceable, nonavoidable and perfected, and (ii) any claims of the lienholders or any other mechanic or materialmen or mineral lien claimants to the

extent their liens are valid, enforceable, non-avoidable and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and nothing in this Order, including the granting of adequate protection liens or DIP Liens, shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved.   This preservation of prepetition priorities expressly includes lien, setoff, recoupment, contract, and other security rights under any operating agreements without prejudice to the Debtor's right to request assumption or rejection such operating agreements and the counterparties' rights to seek orders compelling assumption or rejection of such operating agreements.

         30.    <u>Lienholders</u>.   Notwithstanding anything to the contrary in this Order, to the extent that any holder of a Statutory Lien (a "<u>Statutory Lienholder</u>") has a valid prepetition lien on any collateral, such interest shall be entitled to adequate protection, to secure payment of an amount equal to the diminution in value of such Statutory Lienholder's interest in such collateral, as follows: (i) subject and subordinate to the DIP Liens and Carve-Out in all respects (unless such Statutory Lien is a Senior Statutory Lien, in which case it is not subordinate to the DIP Liens or Carve-Out), postpetition replacement liens against such collateral (and the proceeds thereof) on which such Statutory Lienholder holds a valid prepetition lien in the same priority of such valid prepetition lien; (ii) subject and subordinate to the DIP Superpriority Claims and Carve-Out in all respects, superpriority adequate protection claims against the Debtor, including, without limitation, the proceeds of property recovered in respect of any Avoidance Actions; and (iii) reasonable professional fees, expenses, and disbursements to the extent allowed under § 506(b) of the Bankruptcy Code after application to and approval by the Court, with all parties' rights to object to any such fees, expenses and disbursements expressly reserved.

31.     <u>Proofs of Claim</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Bankruptcy Court, neither the DIP Agent nor any of the DIP Lenders shall be required to file proofs of claim in the Chapter 11 Case for any claim allowed herein in relation to the DIP Credit Agreement and DIP Loan Documents.  Notwithstanding any order entered by the Bankruptcy Court in relation to the establishment of a bar date to the contrary, the DIP Agent is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Chapter 11 Case for any claim allowed herein in relation to the DIP Loan Documents.

32.     <u>Reservation of Rights for Department of the Interior</u>.  Notwithstanding any other provisions of the Interim Orders or this Final Order, nothing in this Final Order or its implementing documents including, without limitation, the DIP Credit Agreement or the interim or final Approved Budget, shall limit or affect in any way the rights of the Department of the Interior or the obligations of the Debtor with respect to the Debtor's decommissioning obligations, including its monitoring and maintenance obligations and financial assurance obligations, associated with its interests in each of its federal oil and gas leases, grants of right-of-way and rights-of-use and easements on the Outer Continental Shelf.  Nothing in this Final Order, or the amounts set forth in the Debtor's interim of final cash collateral budgets, are intended to pre-determine, limit or affect, in any way, the Debtor's decommissioning obligations.

33a.     <u>OCS Leases</u>.  Notwithstanding anything to the contrary in the Motion or this Final Order, to the extent the provisions of this Final Order constitute a finding that a pre-petition lien encumbering any interest of the Debtor in any lease, rights-of-use and easement, or pipeline rights-of-way granted by the United States pursuant to the Outer Continental Shelf Lands Act (the "<u>OCSLA</u>"), 43 U.S.C. § 1331, et seq., is valid and enforceable, (a) such

prepetition liens are imposed with the same extent, validity and priority as the prepetition liens which existed in favor of the Prepetition Secured Parties pursuant to their respective loan and security documents, and (b) the provisions of this Final Order are without prejudice to the United States' ability to challenge the extent or validity of such pre-petition lien(s) pursuant to the OCSLA and Title 30, Code of Federal Regulations.

33b.   <u>United States' Rights of Setoff and Recoupment</u>.   Notwithstanding anything to the contrary in the Motion or this Final Order, subject to Section 553 of the Bankruptcy Code and applicable law, nothing in this Final Order is intended to limit, impact or affect in any way any rights to setoff or recoupment that the United States may have, all of which are expressly preserved.

34.   <u>McMoRan Interests</u>.   Notwithstanding anything to the contrary in this Order, nothing in this Order shall encumber, grant priming or priority security rights in, or otherwise alter, reduce, subordinate, or prejudice McMoRan Oil & Gas, LLC's working interest and share of production from High Island A 571 (OCS G02391).

35.   <u>Best Efforts</u>.   If requested to do so by the DIP Agent, the Debtor shall use its best efforts (subject to applicable law, including, without limitation, the Debtor's fiduciary duties thereunder) to assist and cooperate with the sale of the Collateral.

36.   <u>Independent Director</u>.   The Debtor shall use its best efforts to appoint, within ten (10) days of the entry of this Order, an independent director with significant experience in the exploration and production sector, satisfactory to the DIP Lenders and the Creditors' Committee, and to be compensated by the Debtor; provided, however, that the Debtor, the DIP Lenders, and the Creditors' Committee can agree to extend this time period.

37.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

38.     <u>No Consent</u>.   No action, inaction or acquiescence by the DIP Secured Parties, including funding the Debtor's ongoing operations under the Interim Orders or this Final Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Secured Parties to a charge against the Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.   None of the DIP Secured Parties shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral; provided, however, that the DIP Secured Parties shall first satisfy the DIP Obligations from the proceeds of Unencumbered Property (if any) before satisfying the DIP Obligations from the other DIP Collateral.

39.     <u>Waiver</u>.  No person or entity shall be entitled, directly or indirectly, to, except as expressly provided by paragraphs 4 and 37 of this Final Order with respect to the Carve-Out, charge or recover from the Collateral in any proceeding, including a case under Chapter 7 of the Bankruptcy Code, whether by operation of section 506(c) of Bankruptcy Code, sections 105 or 552(b) of the Bankruptcy Code, or any other legal or equitable doctrine (including without limitation, unjust enrichment) or otherwise, or direct the exercise of remedies or seek (whether by order of this Bankruptcy Court or otherwise) to marshal or otherwise control the disposition of Collateral or Property after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents or this Final Order.

40.     <u>Adequate Notice</u>.  The notice given by the Debtor of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Local Bankruptcy Rules.

41.     <u>Binding Effect Successors and Assigns</u>.  The DIP Loan Documents and the provisions of the Interim Orders and this Final Order, including all findings herein, shall be binding upon all parties-in-interest in this Chapter 11 Case, including, without limitation, the DIP Secured Parties, the Creditors' Committee or any examiner appointed in this Chapter 11 Case, and the Debtor, and its respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in this Chapter 11 Case, in any Superseding Case, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP Secured Parties and the Debtor, and their respective successors and assigns, <u>provided</u>, <u>however</u>, that the agreement of the DIP Secured Parties to extend financing under the DIP Loan Documents, in each case, shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estate of the Debtor.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory note, or otherwise) or in exercising any rights or remedies as and when permitted pursuant to the Interim Orders, this Final Order or the DIP Loan Documents, the DIP Secured Parties shall not (i) be deemed to be in control of the operations of the Debtor, or (ii) owe any fiduciary duty to the Debtor, or its creditors, shareholders, or estate.  Each stipulation, admission and agreement contained in part D of the First Interim Order and part E of this Final Order shall also be binding upon all persons and entities under all circumstances and for all purposes.

42.     <u>Retention of Jurisdiction</u>.  This Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

43.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  Any party-in-interest including the Debtor and any official committee appointed in this

Chapter 11 Case shall have until 60 days after the entry of this Order (the "Investigation Termination Date") to file, on behalf of the Debtor's estate, and to serve upon the Bank any claims, causes of action or proceedings arising from or related to the extent, priority or validity of the liens securing the claim of the Bank (a "Challenge").  If, with respect to the Bank, (i) a Challenge is not filed and properly served on the Bank on or before the Investigation Termination Date, (ii) a final order is entered denying a Challenge in its entirety, or (iii) an order is entered resolving any Challenge, then the Debtor, all official committees, and any other party in interest (including without limitation a receiver, administrator, examiner or trustee appointed in this Case or in any jurisdiction) without further action by this Court or any party in interest (including without limitation a receiver, administrator, or trustee appointed in this Case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge and the prepetition loan by the Bank shall be allowed in full, as a secured claim, without defense, offset, counterclaim or reduction, and not subject to subordination on any basis; subject only to the DIP Liens, the Carve-Out and Senior Statutory Liens, and the Prepetition Liens shall be deemed first priority, valid, enforceable, perfected, unavoidable and not subject to subordination or recharacterization under applicable nonbankruptcy law or the Bankruptcy Code, provided that such liens are subject in all respects to the DIP Liens, Carve-Out and Senior Statutory Liens, in each case without further notice to or order of the Court.  In the event of a successful Challenge, the Court shall fashion an appropriate remedy.

Dated:      Houston, Texas
            January __, 2017

_____

**THE HONORABLE MARVIN ISGUR**
**UNITED STATES BANKRUPTCY JUDGE**

Exhibit A

Amended Budget



**Northstar Offshore Group, LLC**
**13 Week DIP Budget for Period Beginning 1/16/2017**
**LLS Strip Price as of January 13, 2017**

EXHIBIT 43a

NORTHSTAR OFFSHORE GROUP, LLC

**DIP Budget Dated:**
1/20/2017

LLS Strip Price as of January 13, 2017

| | Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week Ended | 1/16/2017 1/22/2017 | 1/23/2017 1/29/2017 | 1/30/2017 2/5/2017 | 2/6/2017 2/12/2017 | 2/13/2017 2/19/2017 | 2/20/2017 2/26/2017 | 2/27/2017 3/5/2017 | 3/6/2017 3/12/2017 | 3/13/2017 3/19/2017 | 3/20/2017 3/26/2017 | 3/27/2017 4/2/2017 | 4/3/2017 4/9/2017 | 4/10/2017 4/16/2017 | |
| **Production (Gross Receipts)** | | | | | | | | | | | | | | | |
| Oil (Bbls) | | 29,109 | – | – | – | – | 23,396 | – | – | – | – | 21,455 | – | – | 73,960 |
| $/Bbl | | $38.87 | | | | | $52.16 | | | | | $52.52 | | | |
| Gas (MMBtu) | | – | 133,472 | – | – | – | – | 171,458 | – | – | – | 165,039 | – | – | 469,969 |
| $/MMBtu | | | $3.08 | | | | | $2.97 | | | | $2.95 | | | |
| NGL (Gallons) | | – | – | – | – | – | – | – | – | – | – | – | – | – | |
| $/Gallon | | – | – | – | – | – | – | – | – | – | – | – | – | – | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Gross Oil Revenue | | 1,131,587 | – | – | – | – | 1,220,446 | – | – | – | 1,126,883 | – | – | – | 3,478,917 |
| Gross Gas Revenue | | – | 410,872 | – | – | – | – | 509,843 | – | – | – | 487,411 | – | – | 1,408,126 |
| Gross NGL Revenue | | – | – | – | – | – | – | – | – | – | – | – | – | – | |
| Pref Right Exercise | | – | – | – | – | – | – | 1,400,000 | – | – | – | – | – | – | 1,400,000 |
| JIB Receivables | | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 68,182 | 886,364 |
| A/R - Past Due | | – | – | – | – | 50,000 | – | 110,000 | – | 110,000 | – | 110,000 | – | 110,000 | 490,000 |
| Hedge Settlement | | – | – | 8,300 | – | – | – | 10,370 | – | – | – | 530 | – | – | 19,200 |
| **TOTAL CASH RECEIPTS** | **$** | 1,199,769 **$** | 479,054 **$** | 76,482 **$** | 68,182 **$** | 118,182 **$** | 1,288,628 **$** | 2,098,395 **$** | 68,182 **$** | 178,182 **$** | 1,195,065 **$** | 666,123 **$** | 68,182 **$** | 178,182 **$** | 7,682,607 |
| CASH RECEIPTS - ACCRUED AND UNCOLLECTED | **$** | 312,584 **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – | |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| Surety Bond Premium / Gap Period Payment Placeholder | | – | – | – | 253,875 | – | – | – | – | – | 50,000 | – | 473,375 | – | 777,250 |
| G&A Expenses | | – | 75,000 | – | 50,000 | – | 75,000 | – | 50,000 | – | – | 75,000 | – | 50,000 | 375,000 |
| Payroll | | – | 150,000 | – | 150,000 | – | 150,000 | – | 150,000 | – | – | 150,000 | – | 150,000 | 900,000 |
| Louisiana Royalty | | – | 120,869 | – | – | – | 117,450 | – | – | – | 103,356 | – | – | – | 341,675 |
| Federal Royalty | | – | 205,074 | – | – | – | 191,982 | – | – | – | 185,242 | – | – | – | 581,898 |
| Partner Distribution | | – | 134,034 | – | – | – | 103,383 | – | – | – | 99,285 | – | – | – | 336,702 |
| Ad Valorem Taxes / Leasehold | | – | – | 30,000 | – | – | – | 5,000 | – | – | – | 1,400 | – | – | 36,400 |
| Severance Taxes | | – | 75,000 | – | – | – | 74,457 | – | – | – | 71,385 | – | – | – | 220,842 |
| SEMS Audit | | – | – | 10,000 | – | – | – | 75,000 | – | – | – | – | – | – | 85,000 |
| Total Field LOE A/P Paid | | 575,000 | 181,843 | – | 652,536 | 213,382 | – | 1,350,739 | – | 213,382 | – | 1,350,739 | – | – | 4,537,621 |
| Total CapEx A/P Paid | | – | 1,750,000 | 800,000 | 350,000 | 528,450 | 410,000 | 300,000 | – | 440,000 | – | – | – | – | 4,578,450 |
| **TOTAL OPERATING EXPENSES** | **$** | 575,000 **$** | 2,691,820 **$** | 840,000 **$** | 1,456,411 **$** | 741,832 **$** | 1,121,871 **$** | 1,730,739 **$** | 200,000 **$** | 653,382 **$** | 509,268 **$** | 1,577,139 **$** | 473,375 **$** | 200,000 | 12,770,838 |
| OPERATING EXPENSES - ACCRUED AND UNPAID | **$** | 1,161,706 **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – | |
| **CHAPTER 11 RELATED EXPENSES** | | | | | | | | | | | | | | | |
| U.S. Trustee | | – | – | – | – | – | – | – | – | – | – | 13,000 | – | – | 13,000 |
| 1st Lien Interest | | – | – | 48,000 | – | – | – | 48,000 | – | – | – | 48,000 | – | – | 144,000 |
| 1st Lien Professional Fees | | – | – | 30,000 | – | – | – | 30,000 | – | – | – | 30,000 | – | – | 90,000 |
| 2nd Lien Professional Fees | | – | – | 30,000 | – | – | – | 30,000 | – | – | – | 30,000 | – | – | 90,000 |
| Creditors Committee Professional Fees | | – | – | 125,000 | – | – | – | 125,000 | – | – | – | 125,000 | – | – | 375,000 |
| Debtor Professional Fees | | 18,750 | 66,350 | 80,750 | 57,300 | 29,300 | 12,500 | 74,500 | 32,100 | 12,500 | 123,300 | 82,500 | 30,000 | 12,500 | 632,350 |
| Debtor Legal Fees | | – | 52,000 | – | 52,000 | – | 52,000 | – | 52,000 | – | 259,000 | – | – | – | 467,000 |
| DIP Interest Expense & Lender Fees | | – | – | – | – | – | – | – | – | – | – | 97,500 | – | – | 97,500 |
| DIP Lender Expenses | | – | 121,085 | 15,000 | 75,000 | – | – | 90,000 | – | – | – | 90,000 | – | – | 391,085 |
| **TOTAL CHAPTER 11 RELATED EXPENSES** | **$** | 18,750 **$** | 239,435 **$** | 328,750 **$** | 184,300 **$** | 29,300 **$** | 64,500 **$** | 397,500 **$** | 84,100 **$** | 12,500 **$** | 382,300 **$** | 516,000 **$** | 30,000 **$** | 12,500 | 2,299,935 |
| CHAPTER 11 RELATED EXPENSES - ACCRUED AND UNPAID | **$** | 1,132,909 **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – **$** | – | |

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BEGINNING CASH** | | 1,297,985 | 1,904,004 | 1,151,803 | 59,535 | 87,006 | 34,055 | 136,312 | 106,468 | 590,550 | 102,850 | 1,506,346 | 79,330 | 144,137 | |
| CF AFTER DEBT SERVICE & NON-OP EXPENSES | | 606,019 | (2,452,202) | (1,092,268) | (1,572,529) | (652,950) | 102,257 | (29,844) | (215,918) | (487,700) | 303,497 | (1,427,017) | (435,193) | (34,318) | |
| **ENDING CASH** | **$** | 1,904,004 **$** | 1,151,803 **$** | 59,535 **$** | 87,006 **$** | 34,055 **$** | 136,312 **$** | 106,468 **$** | 590,550 **$** | 102,850 **$** | 1,506,346 **$** | 79,330 **$** | 144,137 **$** | 109,819 | |
| **DIP BORROWINGS** | | | | | | | | | | | | | | | |
| Beginning DIP Balance | **$** | 2,300,000 **$** | 2,300,000 **$** | 4,000,000 **$** | 4,000,000 **$** | 5,600,000 **$** | 6,200,000 **$** | 6,200,000 **$** | 6,200,000 **$** | 6,200,000 **$** | 6,900,000 **$** | 6,900,000 **$** | 8,000,000 **$** | 8,500,000 | |
| Draw/(Repayment) of DIP | **$** | – **$** | 1,700,000 **$** | – **$** | 1,600,000 **$** | 600,000 **$** | – **$** | – **$** | – **$** | 700,000 **$** | – **$** | 1,100,000 **$** | 500,000 **$** | – | |
| **ENDING DIP BALANCE** | **$** | 2,300,000 **$** | 4,000,000 **$** | 4,000,000 **$** | 5,600,000 **$** | 6,200,000 **$** | 6,200,000 **$** | 6,200,000 **$** | 6,200,000 **$** | 6,900,000 **$** | 6,900,000 **$** | 8,000,000 **$** | 8,000,000 **$** | 8,500,000 **$** | 8,500,000 |

FOOTNOTES:
A: SEMS Audit appears in Cash Disbursements line item SEMS Audit in a combination of weeks 3 and 7
B: OSRP is in place and is included as part of the ordinary and ongoing LOE
C: OSFR Policy is a 5 year policy that will renew in October 2017 and falls outside the time period of this Budget
D: Amounts reserved for INC & corrosion remediation and P&A projects are $1.7MM & $450,000. Such amount will also be available for any other/additional monitoring and maintenance obligations or
   P&A obligations of the Debtor, as necessary, subject to the reservation of rights of all parties as to the amount that may be required for compliance with any such Decommissioning Obligations.



**NORTHSTAR**
OFFSHORE GROUP, LLC

*11 Greenway Plaza, Suite 2800*
Houston, Texas 77046
Main (713) 626 – 9696  Fax (713) 626 – 3444

**01/20/2017 PROPOSED BUDGET CHANGES**

I.   **ACCRUED RECEIPTS/DISBURSEMENTS**
   a. Receipts and disbursements accrued during the period beginning 12/8/2016 and
      ending 1/15/2017, are represented in the following line items in the following
      amounts:
      i.   CASH RECEIPTS – ACCRUED AND UNCOLLECTED - $312,584
      ii.  OPERATING EXPENSES – ACCRUED AND UNPAID - $1,161,706
      iii. CHAPTER 11 RELATED EXPENSES – ACCRUED AND UNPAID -
           $1,132,909

II.  **PERMANENT VARIANCES**
   a. The following changes were made on a permanent basis:
      i.   Creditors Committee Professional Fees increased from $30,000 per month
           to $125,000 per month

III. **PRICING**
   a. Pricing updated to reflect NYMEX strip pricing dated 1/13/2017

IV.  **CAPITAL PROJECTS**
   a. HI A443 A5ST2
      i.   Timing of CapEx payments changed to reflect current operational
           expectations; total project cost remains unchanged
   b. Maintenance Capital Projects
      i.   Payment timing changed to reflect current operational expectations
      ii.  MP 256 project cost adjusted to exclude SEMS Audit, now shown in
           separate line item

V.   **ADDITIONAL ITEMS**
   a. SEMS AUDIT line item added per DOI request
      i.   Amount totaling $85,000 shown in weeks 3 and 7

**Exhibit B**

**Redlined Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | **Case No. 16-34028** |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

~~INTERIM~~
**FINAL ORDER (I) APPROVING POSTPETITION FINANCING,**
**(II) GRANTING LIENS AND PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE**
**PROTECTION, AND (IV) MODIFYING AUTOMATIC STAY ~~AND (V)~~**
~~**SCHEDULING A FINAL HEARING**~~

Upon the emergency motion (the "Motion"),[1] dated December 2, 2016, of Northstar

Offshore Group, LLC, debtor and debtor-in-possession (the "Debtor") in the above-captioned

chapter 11 case (the "Chapter 11 Case"), for entry of interim and final orders pursuant to sections

105, 107(b), 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§

101–1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local

Rules of the United States Bankruptcy Court for the Southern District of Texas (as amended, the

"Local Bankruptcy Rules"), (a) authorizing the Debtor to (i) obtain postpetition financing up to

an aggregate principal amount of $16 million (the "Financing") pursuant to that certain

Superpriority Secured Debtor -in -Possession Credit ~~Facility~~Agreement, dated as of December 6,

2016, among Debtor, as borrower (the "Borrower"), Arena Limited ~~SPV~~DIP I, LLC and the

financial  institutions from time to time parties thereto as lenders (each individually a "DIP

Lender," and collectively, the "DIP Lenders"), Arena Limited ~~SPV~~DIP I, LLC, as administrative

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Credit Agreement (as defined below), as applicable.

and collateral agent for the DIP Lenders (the "DIP Agent" together with the DIP Lenders, the "DIP Secured Parties"), a copy of which in substantially final form is attached as an exhibit to the Motion (as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Credit Agreement"); together with all agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, including the agreements related to the Financing, (the "DIP Loan Documents"); (ii) grant (x) to the DIP Agent for the benefit of the DIP Secured Parties the DIP Liens on the Collateral to secure the DIP Obligations on a first priority priming basis and (y) to the DIP Secured Parties the DIP Superpriority Claims (as defined below) in respect of the DIP Obligations, subject to the terms and conditions hereof; (iii) modify the automatic stay to the extent provided for herein; and (iv) grant adequate protection to the Prepetition Secured Parties (as defined in the Motion); and (b) in accordance with Bankruptcy Rule 4001(c)(2), requesting that this Bankruptcy Court schedule a final hearing (the "Final Hearing") to consider entry of a final order (a "Final Order") approving the Motion and the relief requested therein on a final basis; and a hearing to consider approval of the Motion on an interim basis having been held on December 6, 2016 (the "Interim HearingFirst Interim Hearing") and December 29, 2016 (the "Second Interim Hearing", and together with the First Interim Hearing, the "Interim Hearings") and a hearing to consider approval of the Motion on a final basis having been held on January 13, January 16 and January 31, 2017 (the "Final Hearing" and collectively with the Interim Hearings, the "Hearings") and based upon all the pleadings filed with the Bankruptcy Court, the evidence presented at the Interim HearingHearings and the entire record herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor and the Debtor's estate and creditors; and the Debtor having provided notice of the

Motion and of the ~~Interim~~Final Hearing pursuant to Bankruptcy Rule 4001(b); and it appearing that due and proper notice of the Motion and the ~~Interim~~Final Hearing having been given under the circumstances; and upon the proceedings held before this Bankruptcy Court and after due deliberation and good and sufficient cause appearing therefor,

BASED UPON THE RECORD OF ~~THE INTERIM HEARING~~HEARINGS AND THE REPRESENTATIONS OF THE DEBTOR IN THE MOTION AND AT THE ~~INTERIM HEARING~~HEARINGS, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Filing Date.  On August 12, 2016 (the "Filing Date"), an involuntary petition for relief under chapter 11 of the Bankruptcy Code was filed against the Debtor.  On December 2, 2016, the Debtor consented to entry of an order for relief under chapter 11 of the Bankruptcy Code, and a voluntary chapter 11 case was commenced on December 2, 2016.  The Debtor is operating its businesses and managing its affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      Jurisdiction; Venue.  The Bankruptcy Court has jurisdiction over the Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  Venue of the Chapter 11 Case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 107, 361, 362, 363, 364, 365 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Bankruptcy Rules.

C.      Entry of Interim Order.  On December 6, 2016, (the "Interim Order Entry Date") at the conclusion of the First Interim Hearing, the Court entered the Interim Order Approving Postpetition Financing, Granting Liens and Providing Superpriority Administrative

Expense Status, Granting Adequate Protection, Modifying Automatic Stay and Scheduling a Final Hearing [Docket No. 129] (the "First Interim Order"). On December 29, 2016, the Court entered a Second Interim Order Approving the Motion [Docket No. 215] (the "Second Interim Order"). On January 16, 2017, the Court entered the Third Interim Order (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay and (V) Scheduling a Final Hearing [Docket No. 282] (the "Third Interim Order, and together with the First Interim Order and the Second Interim Order, the "Interim Orders").

D. ~~C.~~ Committee Formation. ~~No~~The official committee of unsecured creditors ~~or any statutory committee~~ pursuant to section 1102 of the Bankruptcy Code (~~a~~the "Creditors' Committee") ~~has yet been~~was appointed ~~in any of this Chapter 11 Case.~~on December 19, 2016.

E. ~~D.~~ Stipulations Regarding DIP Loan Documents and DIP Secured Parties. In requesting the Financing, ~~subject to entry of the Final Order,~~ the Debtor acknowledges, represents, stipulates, and agrees that:

(a)     none of the DIP Secured Parties are control persons or insiders of the Debtor by virtue of determining to make any loan, providing the Financing or performing obligations under the DIP Loan Documents;

(b)     ~~as of the date hereof,~~ there ~~exists~~exist no claims or causes of action against any of the DIP Secured Parties with respect to, in connection with, related to, or arising from the DIP Loan Documents that may be asserted by the Debtor;

(c)     the Debtor forever and irrevocably releases, discharges, and acquits the former, future or current DIP Secured Parties, the Approved Counterparties (as defined in the DIP Credit Agreement) and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "DIP Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Financing, the DIP Loan Documents, the DIP Obligations, and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing or the transactions contemplated hereunder or thereunder including, without limitation, (i) any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), except as permitted herein, so-called "lender liability," claims,

counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Secured Parties.

F. E. Necessity of Financing. The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents. A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtor without granting the DIP Agent, for the benefit of the DIP Secured Parties, superpriority claims and priming liens and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this order (the "Interim Final Order") and the DIP Loan Documents. After considering all alternatives, the Debtor has concluded, in the exercise of its prudent business judgment, that the credit facility provided under the DIP Loan Documents represents the best and only working capital financing available to it at this time. The Debtor has been unsuccessful in its attempts to find any alternative financing. Additionally, the terms of the Financing are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

G. F. Purpose of Financing. The Debtor requires the Financing described in the Motion and as expressly provided in the DIP Loan Documents to: (i) pay costs, fees and

expenses associated with or payable under the Financing under the terms of this ~~Interim~~Final Order; (ii) pay professional fees subject to the Approved Budget (as defined below); (iii) provide ongoing working capital requirements of the Debtor and to pay fees, costs, expenses and other administrative expenses relating to the Chapter 11 Case, in each case, subject to any necessary Bankruptcy Court approvals and consistent with the Approved Budget subject to any Budget Variances (defined below); and (iv) make the currently identified capital expenditures and other payments of post-petition payables as permitted under the DIP Loan Documents, in each case subject to the conditions as set forth herein and in the DIP Loan Documents and consistent in all material respects with the Approved Budget and any Budget Variances.

H.    ~~G.~~ Adequate Protection.   The ~~Prepetition~~First Lien Secured Parties are ~~each~~ entitled to receive adequate protection to the extent of any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral) pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code (as applicable to the First Lien Secured Parties, the "First Lien Adequate Protection Obligations," ~~and as applicable to the Second Lien Secured Parties, the "Second Lien Adequate Protection Obligations," and together, the "Adequate Protection Obligations").~~ Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, the ~~Prepetition~~First Lien Secured Parties   shall receive postpetition replacement liens, superpriority adequate protection claims, and reasonable professional fees and expenses in accordance with the terms of this ~~Interim~~Final Order.   As additional adequate protection, the Bank, for the benefit of itself and the First Lien Secured Parties, will receive certain interest and professional fees paid by the Debtor during the Chapter 11 Case, as described below.   ~~As additional adequate protection, the Fiscal Agent, for the benefit of itself and the Second Lien Secured Parties, will receive certain professional fees paid by the Debtor during the~~

Chapter 11 Case, as described below.   Furthermore, the Bank and the Fiscal AgentFurthermore, the Bank will be entitled to certain reporting from the Debtor.   As set forth later in this Order, the payment of interest and professional fees is subject to recharacterization based on the § 506 secured status of the claims.   The Second Lien Secured Parties are not entitled to adequate protection because there is no value in the Prepetition Collateral beyond the amount the Debtor owes to the First Lien Secured Parties.

I.   H. Approved Budget.  Attached hereto as Exhibit A is a summary of the budget setting forth the Debtor's anticipated cash receipts and expenditures duringfor each week through January 15,April 16, 2017 (the "Initial ApprovedAmended Budget").  The "Approved Budget" shall meanmeans the Initial Approved Budget, together with (attached to the First Interim Order), the Amended Budget (attached hereto), and the thirteen-week budgetbudgets, in form and substance acceptable to the DIP Agent, entered into in accordance with the terms of the DIP Credit Agreement.  The (such budget, together with the Initial Approved Budget, the "Approved Budget"), which shall reflect the Debtor's good-faith projection of all weekly cash receipts and disbursements in connection with the operation of the Debtor's business during such thirteen-week period, delivered pursuant to the terms of the DIP Credit Agreement, delivered by the Debtor to counsel for the DIP Agent and DIP Lenders.  Although the budget runs through January 15, 2017, it is subject to revision at a hearing scheduled for 10:30 a.m. on December 29, 2016. and counsel for the Creditors' Committee.  The Debtor may enter amended Approved Budgets pursuant to the terms of the DIP Credit Agreement without the need for further notice and hearing or any order of this Bankruptcy Court.  The Debtor will provide notice of any Amended Budget to the U.S. Trustee, counsel for the Creditors' Committee, counsel for the Bank, counsel for the Fiscal Agent, counsel to Platinum Partners Credit Opportunities fund

("PPCO") and Platinum Partners Liquidity Opportunity fund ("PPLO"), and counsel to the Liquidators of Platinum Partners Value Arbitrage Fund, L.P.("PPVA"). The Approved Budget in effect as of entry of this Final Order is attached as **Exhibit A.**

J.   I. Derivative Contracts.  Good cause has been shown for (i) the Debtor to (1) enter into and perform under the Derivative Contracts with Approved Counterparties in the ordinary course of business; (2) honor, pay or otherwise satisfy all obligations under the Derivative Contracts as they come due; (3) pledge and transfer collateral in the form of *pari passu* DIP Liens to secure obligations under the Derivative Contracts; and (4) grant DIP Superpriority Claims on account of the Derivative Contracts *pari passu* with the DIP Superpriority Claims granted to the DIP Lenders; (ii) an Approved Counterparty to exercise all rights and remedies with respect to the DIP Collateral for the benefit of the Approved Counterparties following the occurrence of and during of an Event of Default or Termination Event under, and as defined in, the Derivative Contracts; and (iii) the Approved Counterparties to set off, net, recoup and apply any payment amounts that such Approved Counterparties would otherwise be obligated to pay the Debtor under the Derivative Contracts in accordance with the DIP Loan Documents and the Derivative Contracts.

K.   J. Good Cause.  Based upon the record presented to the Bankruptcy Court by the Debtor, it appears that the ability of the Debtor to obtain sufficient working capital and liquidity under the DIP LoadLoan Documents is vital to the Debtor and the Debtor's estate and creditors.  The Debtor reasonably believes that the liquidity to be provided under the DIP Loan Documents will enable the Debtor to continue to operate its businesses in the ordinary course and preserve the value of its businesses.  Good cause has, therefore, been shown for the relief sought in the Motion.

L.    ~~K.~~ Good Faith.  The Financing and the DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtor and the DIP Secured Parties, and all of the obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Loan Documents shall be deemed to have been extended by each of the DIP Secured Parties in accordance with the DIP Loan Documents, in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits, and privileges of this ~~Interim~~Final Order regardless of whether this ~~Interim~~Final Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 ~~Cases are~~Case is subsequently converted or dismissed.

M.    ~~L.~~ Consideration.  The Debtor will receive and has received fair consideration and reasonably equivalent value in exchange for access to the Financing, and all other financial accommodations provided under the Financing, the DIP Loan Documents, the Interim Orders and this ~~Interim~~Final Order.

N.    ~~M. Immediate~~ Entry of ~~Interim Order.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder on an interim basis is necessary to avoid immediate and irreparable harm to the Debtor.~~  Final Order is in the Best Interests of the Estate.   This Bankruptcy Court concludes that entry of this ~~Interim~~Final Order is in the best interests of the Debtor and the Debtor's estate and creditors as its implementation will, among other things, allow for the continued flow of supplies and

services to the Debtor necessary to sustain the operation of the Debtor's existing businesses during the pendency of this Chapter 11 Case.   Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Bankruptcy Court at the ~~Interim Hearing~~Hearings, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.      <u>Disposition</u>.  The Motion is granted on ~~an interim~~a final basis and on the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits.    This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law.

2.      <u>Effectiveness</u>.  Subject to the terms hereof, this ~~Interim~~Final Order shall be immediately effective and enforceable upon the date this order is signed by the bankruptcy judge and entered on the docket in the Chapter 11 Case (the "~~Interim~~Final Order Entry Date").

3.      <u>Authorization of the Financing and DIP Loan Documents</u>

(a)      ~~(b)~~ The ~~Debtor is hereby authorized to execute and enter into the DIP Loan Documents.   The DIP Loan Documents and this Interim~~DIP Loan Documents executed after entry of the First Interim Order, as may be modified, and this Final Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lenders in connection with the Financing.

(b)      ~~(c)~~ The Borrower is hereby authorized on ~~an interim~~a final basis to borrow up to the principal amount of $~~3,000,000,~~16,000,000, all which shall be used by the Debtor as expressly permitted by the DIP Loan Documents, the Approved Budget and any Budget Variances.   The Debtor is authorized to use proceeds of the Financing in accordance with the Approved Budget in an amount that would not cause either: (i)

~~-11-~~11

certain material line items other than Professional Fees from varying from the applicable Approved Budget by more than twenty percent (20%) for each week during any budget period or fifteen percent (15%) on a cumulative basis for that portion of the budget period ~~than~~then ended; or (ii) with respect to ~~Professionals~~Professional Fees, the Debtor may vary from the applicable budget by no more than ten percent (10%) on a cumulative basis for that portion of the Budget (a "Budget Variance").   The variances described in the immediately preceding sentence shall be subject to carry forwards as provided in the DIP Credit Agreement.   The ~~first~~ variance report showing budget to actual and any variance shall be delivered by the Debtor to the DIP Agent, the DIP Lenders, the Bank, counsel to the Creditors' Committee, and the Fiscal Agent in accordance with the terms of the DIP Credit Agreement.

(c)      ~~(d)~~ In furtherance of the foregoing and without further approval of this Bankruptcy Court, the Debtor is authorized to, and, if so required under the terms of the DIP Loan Documents, perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all related fees and expenses, that may be required or necessary for the Debtor's performance of ~~their~~its obligations under the Financing, including, without limitation:

(i)      the execution, delivery, and performance of the DIP Loan Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreements, and any mortgages contemplated thereby;

(ii)      subject to paragraph ~~13~~11 hereof, the execution, delivery and performance of one or more amendments, waivers, consents, or other

modifications to and under the DIP Loan Documents, in each case in such form as agreed among the Debtor and the required other parties as set forth in more detail in ~~Paragraph 13~~paragraph 11 below;

       (iii)    the non-refundable payment of the fees referred to in the DIP Loan Documents and described in more detail in the Motion, including the fees of the DIP Agent, and, subject to paragraph 7, costs and expenses payable under the DIP Loan Documents; and

       (iv)    the performance of all other acts required under or in connection with the DIP Loan Documents.

       (d)    ~~(e)~~ All of the DIP Liens described herein shall be valid, enforceable, effective and perfected as of the Interim Order Entry Date and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements, or other agreements.

       (e)    ~~(f)~~ The DIP Loan Documents and DIP Obligations constitute valid, binding and non-avoidable obligations of the Debtor enforceable against each of its successors and assigns, and each person or entity party to the DIP Loan Documents in accordance with their respective terms and the terms of ~~this~~the Interim Orders and this Final Order and shall survive conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or the dismissal of the Chapter 11 Case.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents, the Interim Orders or this ~~Interim~~Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable,

contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

4.     Carve-Out.  The Debtor's obligations to the DIP Secured Parties and the liens, security interests and superpriority claims granted herein and/or under the DIP Loan Documents, including the DIP Liens, the DIP Superpriority Claims and the Adequate Protection Claims, shall be subject and subordinate to the Carve-Out.  "Carve-Out" shall mean the sum of (i) fees and expenses incurred by bankruptcy professionals whose retention has been (x) approved by the Bankruptcy Court which are unpaid as of the delivery of the Carve -Out Trigger Notice (as defined below) and (y) provided for in the Approved Budget; (ii) fees and expenses in an amount not to exceed $250,000 incurred from and after the delivery of the Carve -Out Trigger Notice (as defined below) by bankruptcy professionals whose retention has been approved by the Bankruptcy Court (the "Post-Termination Fee Carve -Out"); and (iii) fees owed pursuant to 28 U.S.C. § 1930 or fees owed the clerk of the Bankruptcy Court.  "Carve -Out Trigger Notice" shall mean the written notice, including by email, delivered by the DIP Agent (at the direction of the DIP Lenders) to the Debtor, its counsel, the U.S. Trustee, and the counsel to the Creditors' Committee, if any, appointed in the Chapter 11 Case, counsel to Bank, counsel to Fiscal Agent, counsel to Platinum Partners Credit Opportunities fund ("PPCO") and Platinum Partners Liquidity Opportunity fund ("PPLO")PPCO and PPLO, and counsel to the Liquidators of Platinum Partners Value Arbitrage Fund, L.P. ("PPVA")PPVA, which notice may be delivered following the occurrence and continuation of an Event of Default or the Termination Date in accordance with the terms of the DIP Loan Documents.  Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any

party in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the DIP Secured Parties or their respective officers, directors, employees, agents, advisers and counsel, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Credit Agreement in favor of the DIP Agent, for the benefit of the DIP Secured Parties.  For the avoidance of doubt and notwithstanding anything to the contrary herein, in the DIP Credit Agreement, or in any loan or financing documents, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, any prepetition secured obligations, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations or any prepetition secured obligations (other than the Senior Statutory Liens defined in paragraph 6(a) of this ~~Interim~~Final Order).  None of the proceeds of the Collateral or the DIP Loans shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the Financing.

5.       DIP Lender Superpriority Claim.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against the Debtor with priority over any and all other administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328,

330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code (the "DIP Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Debtor and its estate and all proceeds thereof, excluding Avoidance Actions (as defined below) but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in ~~this~~the Interim Orders and this Final Order, without limitation, all Avoidance Proceeds (as defined below), subject only to the Carve -Out.

6.    DIP Liens.

(a)            As security for the DIP Obligations, effective and perfected as of ~~entry of this~~the Interim Order Entry Date and without the necessity of the execution by the Debtor (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the Debtor of, or over, any DIP Collateral, the following security interests and liens, hereby are granted by the Debtor to each of the DIP Secured Parties (all property of the Debtor identified in ~~clauses (a~~subsections (i), (~~b~~ii), and (~~c~~iii) below being collectively referred to as the "DIP Collateral"), subject only to the Carve -Out and any valid and enforceable lien, setoff, recoupment  rights under state law, or otherwise (the "Statutory Liens"), solely to the extent such Statutory Liens are (i) valid, enforceable and non-avoidable as of the Petition Date, (ii) timely perfected before or after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (iii) senior in priority to

the security interests and liens of the Prepetition Secured Parties (the "Senior Statutory Liens") (all such liens on and security interests in the DIP Collateral granted to the DIP Secured Parties, pursuant to ~~this~~the Interim Orders, this Final Order~~,~~ or the DIP Credit Documents, the "DIP Liens"):

        (i)      First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code and subject to the Carve -Out, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) is not subject to valid, perfected, and non-avoidable liens, if any (collectively, "Unencumbered Property"), including (i) any unencumbered cash of the Debtor (wherever maintained) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and any claims and causes of the Debtor; (ii) any claims and causes of action against any directors or officers of the Debtor as well as including any proceeds of, or property recovered in connection with, any successful claims and causes of action against any directors or officers of the Debtor; and (iii) excluding any claims and causes of action of the Debtor under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law

(collectively, the "Avoidance Actions"), but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in ~~this~~the Interim Orders and this Final Order, any proceeds of, or property recovered in connection with, any successful Avoidance Action (whether by judgment, settlement or otherwise, and unencumbered or not, the "Avoidance Proceeds")~~.~~;

(ii)     Priming Liens Senior to Other Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code and subject to the Carve -Out and the Senior Statutory Liens, a valid, binding, continuing, enforceable, fully-perfected, first priority (subject to any Permitted Encumbrances, as defined in the DIP Credit Agreement) senior priming security interest in and lien upon all prepetition and postpetition property of the Debtor (including any cash collateral), whether now existing or hereafter acquired, excluding any Avoidance Actions but including, solely to the extent that all other DIP Collateral including Unencumbered Property is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in the Interim Orders and this Final Order, Avoidance Proceeds.  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties and shall be subject to the Carve -Out and the Senior Statutory Liens in all respects;

(iii)     Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code and subject to the Carve -Out and the Senior Statutory Liens, a valid, binding, continuing, enforceable, fully-perfected junior

security interest in and lien upon all prepetition and postpetition property of the Debtor (other than the property described in clauses (i) or (ii) of this paragraph 6, as to which the liens and security interests in favor of the DIP Agent for the benefit of the DIP Secured Parties, will be as described in such clauses) excluding any Avoidance Actions but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in this ~~Interim~~Final Order, Avoidance Proceeds, whether now existing or hereafter acquired; and

(iv)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor and their estates under section 551 of the Bankruptcy Code or (b) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtor, unless such claims are entitled to priority under applicable non-bankruptcy law.  For the avoidance of doubt, the DIP Liens shall be subject to the Carve -Out and the Senior Statutory Liens in all respects.

<u>(b)</u>     ~~(c)~~The DIP Liens shall be effective immediately upon the Interim Order Entry Date.

<u>(c)</u>     ~~(d)~~The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the Interim Order Entry Date without the necessity of execution by the Debtor or any other parties (including the Debtor's banks) of mortgages, security agreements, pledge agreements, financing agreements, financing

statements, deposit control agreements, or other agreements or documents, such that no additional steps need be taken by the DIP Secured Parties to perfect such liens and security interests.   Subject to entry of the Final Order, and subject to applicable non-bankruptcy law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of the DIP Secured Parties, a first-priority lien on and security interest in the Debtor's interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by the Debtor in favor of the DIP Agent, for the benefit of the DIP Secured Parties, in accordance with the terms of the DIP Loan Agreement and the other DIP Loan Documents.

(d)        (e) The DIP Liens, DIP Superpriority Claim Claims, and other rights, benefits, and remedies granted under this the Interim Orders and this Final Order to the DIP Secured Parties shall continue in the Chapter 11 Case, in any superseding case under the Bankruptcy Code resulting from conversion of the Chapter 11 Case (a "Superseding Case") and following any dismissal of the Chapter 11 Case, and such liens, security interests, and claims shall maintain their priority as provided in this the Interim Orders and this Final Order until all the DIP Obligations have been indefeasibly paid in

full in cash and completely satisfied and all of the commitments thereunder have been terminated in accordance with the DIP Loan Documents.

7.     Fees and Expenses of DIP Agent and DIP Lenders.  The Debtor shall no later than fourteen (14) days after the Debtor's receipt of a summary statement setting forth the applicable timekeepers, as well as the hours worked by and expenses incurred by such timekeepers, in connection with the Chapter 11 Case (with copies provided via electronic mail to the U.S. Trustee and counsel for the Creditors' Committee, if any, and counsel to Bank, counsel to Fiscal Agent and counsel to PPCO and PPLO, and counsel to PPVA's liquidators (collectively, the "Fee Notice Parties")), indefeasibly pay or reimburse, as and when due the DIP Agent and the DIP Lenders for their respective reasonable fees and out-of-pocket costs, expenses and charges (collectively, the "Lender Professional Fees"), including the reasonable prepetition and postpetition fees, costs, and expenses of Andrews Kurth Kenyon LLP as counsel to DIP Agent and any other advisors or professionals retained by the DIP Agent or DIP Lenders.  The Debtor and the Fee Notice Parties may object to the reasonableness of the fees, costs and expenses included in any such professional fee invoice; provided that, any such objection shall be barred and deemed waived unless filed with this Bankruptcy Court and served on the applicable professional by 12:00 p.m., prevailing Central Time, on the date that is no later than fourteen (14) days after the objecting party's receipt of the applicable professional fee invoice.  If such objection is timely received, the Debtor shall promptly pay the portion of such invoice not subject to such objection, and this Bankruptcy Court shall determine any such objection unless otherwise resolved by the applicable parties.  Any hearing on an objection to payment of any fees, costs, and expenses of the DIP Agent or the DIP Lenders set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees,

costs, and expenses which are the subject of such objection and whether the DIP Agent and DIP Lenders are entitled to such fees, costs and expenses under ~~this~~the Interim Orders or this Final Order.  For the avoidance of doubt, none of the fees, costs, and expenses of the DIP Agent and the DIP Lenders shall be subject to Bankruptcy Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Bankruptcy Court.  All fees, costs and expenses payable under the DIP Loan Documents to the DIP Secured Parties shall be included and constitute part of the DIP Obligations and be secured by the DIP Liens.  Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Secured Parties under and in connection with negotiation and preparation of the DIP Loan Documents, whether incurred prior to or after the Filing Date, including, without limitation, the legal fees and expenses of any professionals retained by the DIP Agent in accordance with the DIP Loan Documents, shall be deemed fully earned, indefeasibly paid, non-refundable, irrevocable, and non-avoidable on the date due and payable pursuant to the terms of the DIP Loan Documents and, irrespective of any subsequent order approving or denying the Financing or any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code.

8.      First Lien Secured Parties Adequate Protection.

(a)      First Lien Adequate Protection Liens.  To the extent there is a diminution in value of the interests of the First Lien Secured Parties in their Prepetition Collateral (including Cash Collateral) from and after the Involuntary Petition Date resulting from the use, sale, or lease by the Debtor of the applicable collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the First Lien Secured Parties' prepetition liens thereto and to

the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a)
of the Bankruptcy Code ("Diminution in Prepetition First Lien Collateral Value"), the
Bank, for the benefit of all the First Lien Secured Parties, is hereby granted, subject to the
terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the
Bankruptcy Code, replacement Liens upon all of the DIP Collateral (such adequate
protection replacement liens, the "First Lien Adequate Protection Liens"), which First
Lien Adequate Protection Liens on such DIP Collateral shall be subject and subordinate
only to the DIP Liens, Senior Statutory Liens and the Carve-Out and shall be senior in
priority to the prepetition liens of the First Lien Secured Parties.  The First Lien Adequate
Protection Liens and the First Lien Adequate Protection Superpriority Claim (as defined
below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code
or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the
"equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be
subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the
benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or
otherwise or (y) any intercompany or affiliate liens or claims of the Debtor, and (C) shall
be valid and enforceable against any trustee or any other estate representative appointed
in this case or any Superseding Case, and/or upon the dismissal of the case.

        (b)    First Lien Adequate Protection Superpriority Claims.  To the extent
of Diminution in Value of the Prepetition First Lien Collateral, the First Lien Secured
Parties are hereby further granted allowed superpriority administrative claims (such
adequate protection superpriority claims, the "First Lien Adequate Protection
Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority

over all administrative expense claims and unsecured claims against the Debtor and its
estate, now existing or hereafter arising, of any kind or nature whatsoever, including,
without limitation, administrative expenses of the kind specified in or ordered pursuant to
sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d),
726 (to the extent permitted by law), 1113, and 1114 and any other provision of the
Bankruptcy Code, junior only to the DIP Superpriority Claims, any super-priority
adequate protection claims of holders of Senior Statutory Liens and the Carve-Out to the
extent provided herein and in the DIP Loan Documents, and payable from and having
recourse to all prepetition and postpetition property of the Debtor and all proceeds
thereof; provided, however, that the First Lien Secured Parties shall not receive or retain
any payments, property, or other amounts in respect of the First Lien Adequate Protection
Superpriority Claims unless and until all DIP Obligations have been paid in full.

(c)    First Lien Secured Parties' Interest and Professional Fees.  As
further adequate protection for the Bank (on behalf of itself and the other First Lien
Secured Parties), and without limiting any rights of the Bank under section 506(b) of the
Bankruptcy Code which are preserved, and in consideration, and as a requirement, for
obtaining the consent of the Bank (on behalf of itself and the First Lien Secured Parties)
to the entry of the Interim Orders and this Final Order and the Debtor's consensual use of
cash collateral, the Debtor shall (i) pay or reimburse in cash all reasonable, documented
fees, costs, expenses, and charges of the Bank and its respective professionals; provided
that the Debtor's obligation under this InterimFinal Order to pay the fees, costs, expenses,
and charges of the Bank and its respective professionals shall not exceed $30,000 (the
"Bank's Budgeted Fees") in cash in the aggregate each month during the period from the

~~Voluntary Petition Date (plus up to~~ pendency of this Chapter 11 Case such that to the extent that the Bank's Budgeted Fees exceed $30,000 in a calendar month, the amount in excess of the Bank's Budgeted Fees shall accrue and be payable the next calendar month and to the extent that the Bank's Budgeted Fees are less than $30,000 in any calendar month, the difference shall accrue and be available for payment of such fees in subsequent calendar months (plus up to an additional $20,000 incurred in fees, costs and expenses from the Voluntary Petition Date through the ~~Interim Hearing) through the earlier of (i) the date first set for the Final Hearing, and (ii) the date that is thirty (30) days after the Voluntary Petition Date (the "Interim Period"~~ First Interim Hearing); provided further that the Bank reserves and nothing in ~~this~~ the Interim Orders or this Final Order shall prejudice its right to seek, as additional adequate protection,  payment or reimbursement~~, through the Final Order or otherwise,~~ of any reasonable, documented fees, costs, expenses, and charges of the Bank and its respective professionals that the Debtor is not obligated to pay pursuant to ~~this~~ the Interim Orders or this Final Order; provided further that the Bank is subject to the same compensation procedures as the DIP Agent as set forth in paragraph 7 hereof and in addition shall file on the docket a summary notice setting forth the fees and expenses paid and providing notice that any party in interest can request in writing additional details on such fees and expenses (provided that such information may be redacted so as to protect the attorney-client privilege and work product privilege) and any party in interest desiring to object to such fees and expenses shall file an objection within 14 days of the filing of the notice, (ii) pay interest on the amounts advanced (current and future) under the Letter of Credit Loan Agreement, with such interest commencing from the Voluntary Petition Date at the

non-default rate, and (iii) pay 1/3 of the monthly contractual fee for Letter of Credit commitments in the amount (currently approximately $47,700 per month) with such amount accruing commencing on the Voluntary Petition Date; provided further that to the extent that it is held by final non-appealable order that the party receiving any cash payment of interest, fees and expenses pursuant to this paragraph as adequate protection, is an under secured creditor pursuant to Section 506(b) such payments shall be reapplied to reduce the principal amount of the obligations outstanding under the Letter of Credit Loan Agreement, provided that the First Lien Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

(d)    <u>Right to Seek Additional Adequate Protection</u>.  Notwithstanding any other provision hereof, the grant of adequate protection to the First Lien Secured Parties pursuant hereto is without prejudice to the right of the Bank to seek, including in connection with the Final Order, modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the First Lien Secured Parties under their prepetition agreements or under equity or law, and the Bank and First Lien Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under their prepetition agreements and/or equity or law in connection with all termination events and defaults and events of default under such agreements.

9.      Second Lien Secured Parties Adequate Protection.

(a)      Second Lien Adequate Protection Liens.  To the extent there is a diminution in value of the interests of the Second Lien Secured Parties in their Prepetition Collateral (including Cash Collateral) from and after the Involuntary Petition Date resulting from the use, sale, or lease by the Debtor of the applicable collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the granting of the First Lien Adequate Protection Liens, the granting of the First Lien Adequate Protection Superpriority Claims, the subordination of the Second Lien Secured Parties' prepetition liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("Diminution in Second Lien Collateral Value"), the Fiscal Agent, for the benefit of all the Second Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement liens upon all of the DIP Collateral (such adequate protection replacement liens, the "Second Lien Adequate Protection Liens"), which Second Lien Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Senior Statutory Liens, the First Lien Adequate Protection Liens, the Carve-Out, and to the extent required by the Intercreditor Agreement the prepetition liens securing the Prepetition First Lien Obligations.  The Second Lien Adequate Protection Liens and the Second Lien Adequate Protection Superpriority Claim (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or pari passu with, (x) any lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtor, and (C) shall be valid and enforceable

against any trustee or any other estate representative appointed in this case or any Superseding Case, and/or upon the dismissal of the case.

(b)    Second Lien Adequate Protection Superpriority Claim. To the extent of Diminution in Value of the Prepetition Second Lien Collateral, the Second Lien Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "Second Lien Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claims, the First Lien Adequate Protection Superpriority Claims, any super-priority adequate protection claims of holders of Senior Statutory Liens and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from and having recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof; provided, however, that the Second Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Second Lien Adequate Protection Superpriority Claims unless and until all DIP Obligations have been paid in full.

(c)    Fiscal Agent Professional Fees. As further adequate protection for the Fiscal Agent (on behalf of itself and the other Second Lien Secured Parties), and without limiting any rights of the Fiscal Agent under section 506(b) of the Bankruptcy Code which are preserved, and in consideration, and as a requirement, for obtaining the consent of the Fiscal Agent (on behalf of itself and the Second Lien Secured Parties) to the entry of the Interim Order

and the Debtor's consensual use of cash collateral, the Debtor shall pay or reimburse in cash all reasonable, documented fees, costs, expenses, and charges of the Fiscal Agent and its respective professionals; provided that, without limiting the Fiscal Agent's right to seek additional adequate protection in the Final Order or otherwise, the Debtor's obligation under this Interim Order to pay the fees, costs, expenses, and charges of professionals of the Fiscal Agent and its respective professionals shall not exceed $30,000 in cash in the aggregate each month during the Interim Period plus up to $20,000 incurred in fees, costs and expenses from the Voluntary Petition Date through the Interim Hearing; provided further that the Fiscal Agent reserves and nothing in this Interim Order shall prejudice its right to seek, as additional adequate protection,  payment or reimbursement, through the Final Order or otherwise, of any reasonable, documented fees, costs, expenses, and charges of the Fiscal Agent and its respective professionals that the Debtor is not obligated to pay pursuant to this Interim Order; provided further that the Fiscal Agent is subject to the same compensation procedures as the DIP Agent as set forth in paragraph 7 hereof and in addition shall file on the docket a summary notice setting forth the fees and expenses paid and providing notice that any party in interest can request in writing additional details on such fees and expenses (provided that such information may be redacted so as to protect the attorney-client privilege and work product privilege) and any party in interest desiring to object to such fees and expenses shall file an objection within 14 days of the filing of the notice; provided further that to the extent that it is held by final non appealable order that the party receiving any cash payment of interest, fees and expenses pursuant to this paragraph as adequate protection is an under secured creditor pursuant to Section 506(b) such payments shall be reapplied to reduce the principal amount of the obligations outstanding under the Second Lien Loan Documents, provided that the Second Lien Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

(d)      Right to Seek Additional Adequate Protection.   Notwithstanding any other provision hereof, the grant of adequate protection to the Second Lien Secured Parties pursuant hereto is without prejudice to the right of the Fiscal Agent to seek, including in connection with the Final Order, modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest such modification.   Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Second Lien Secured Parties under their prepetition agreements or under equity or law, and the Fiscal Agent and Second Lien Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under their prepetition agreements and/or equity or law in connection with all termination events and defaults and events of default under such agreements.

9.      1. Reporting.   As further adequate protection, the The Debtor shall deliver to the Bank, the Fiscal Agent and counsel to PPCO and PPLO, counsel to the Creditors' Committee, and counsel to PPVA's liquidators, at the same time and by the same method as to the DIP Agent, all information, reports, documents and other material that the Debtor is required to provide the DIP Agent pursuant to the DIP Loan Documents, including without limitation pursuant to Sections 6.1 and 6.1, 6.15, 6.2(g), and 6.3 of the DIP Credit Agreement.   Moreover, the Creditors' Committee's professionals, including its proposed financial advisor, FTI Consulting, Inc., shall have reasonable direct access to information from the Debtor's advisors (subject to a confidentiality agreement), including, but not limited to, Netherland Sewell and Associates, Inc., provided that a representative of the Debtor is present.

10.      2. Fieldwood Receivables.   To the extent that the Debtor and Fieldwood Energy, LLC ("Fieldwood") agree that an amount is due and owing to Fieldwood (an "Agreed

Fieldwood Receivable"), Fieldwood is ~~authorized~~required to setoff or recoup (as appropriate) any

and all Agreed Fieldwood Receivables against amounts owed to the Debtor, without further order

of this

Court.

11.   ~~3.~~ Amendments, Consents, Waivers, and Modifications.  The Debtor, with

the express written consent of the DIP Agent, acting at the direction of the required DIP Lenders,

and, to the extent required by the DIP Credit Agreement, may enter into any amendments,

consents, waivers, or modifications to the DIP Loan Documents that are not materially adverse to

the Debtor without the need for further notice and hearing or any order of this Bankruptcy Court;

provided, however, that, without the consent of this Bankruptcy Court on notice and a hearing,

no such amendments, consents, waivers or modifications shall (i) shorten the maturity of the

Financing, (ii) increase the commitments thereunder or the rate of interest payable under the DIP

Loan Documents, (iii) require the payment of any new or additional fee, or (iv) amend the Events

of Default or covenants in the DIP Loan Documents to be materially more restrictive to the

Debtor.  The Debtor will provide notice of the amendment to the U.S. Trustee, counsel to the

Creditors' Committee, counsel to Bank, counsel to Fiscal Agent, counsel to PPCO and PPLO,

and counsel to the Liquidators of PPVA.  No consent shall be implied by any other action,

inaction, or acquiescence of any of the DIP Secured Parties.

12.   ~~4.~~ Perfection of DIP Liens.

(a)       The DIP Agent is hereby authorized, but not required, to

file or record financing statements, trademark filings, copyright filings, mortgages,

notices of lien or similar instruments in any jurisdiction, or take possession of or control

over, or take any other action in order to validate and perfect the liens and security

interests granted to them hereunder, in each case, without the necessity to pay any

mortgage recording fee or similar fee or tax.  Whether or not the DIP Agent on behalf of the DIP Secured Parties in its sole discretion, ~~choose~~chooses to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, and upon an Event of Default, the Debtor shall have no further consent over the disposition of the DIP Collateral that is held by third parties (including the Debtor's banks) as directed by the DIP Agent.  The Debtor shall, if requested, execute and deliver to the DIP Agent all such agreements, financing statements, instruments and other documents as the DIP Agent may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens and all such documents will be deemed to have been recorded and filed as of the Filing Date.

(b)        ~~(a)~~ A certified copy of the Interim Orders and this Final Order may be filed by the DIP Agent with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of ~~this~~the Interim Orders or this Final Order for filing and recording.

13.        ~~5.~~ Access to Collateral.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Secured Parties contained in ~~this~~the Interim Orders, this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) Business Days' written notice to the landlord, lienholder, licensor, or other third party owner of any leased

or licensed premises or intellectual property that an Event of Default under the DIP Loan Documents or a default by the Debtor of any of its obligations under ~~this~~the Interim Orders or this Final Order has occurred and is continuing, the DIP Agent (i) may, only subject to any separate agreement by and between the applicable landlord or licensor (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) subject to applicable law, shall be entitled to all of the Debtor's rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade-names, copyrights, licenses, patents or any other similar assets of the Debtor, which are owned by or subject to a lien or license of any third party and which are used by the Debtor in its businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder.  To the extent applicable law prohibits the forgoing access or use of rights, the DIP Agent shall have the right to an expedited hearing on five (5) Business Days' notice to obtain Bankruptcy Court authorization to obtain such access and/or use of such rights.  Nothing herein shall require the Debtor or the DIP Agent to assume or assign any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent in this paragraph.

14. ~~6.~~ Automatic Stay Modified.  The automatic stay provisions of section 362 of the Bankruptcy Code hereby are vacated and modified without the need for any further order of this Bankruptcy Court to:

(a) whether or not an Event of Default under the DIP Loan Documents has occurred, (i) require proceeds from Collateral and other collections received by the Debtor to be deposited in accordance with the requirements of the DIP Loan Documents,

and to apply any amounts so deposited and other amounts paid to or received by the DIP Secured Parties under the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents, and (ii) require mandatory prepayments in accordance with the requirements of the DIP Loan Documents, in each case, without further order of this Bankruptcy Court; and

(b)     immediately upon the occurrence and during the continuation of a Termination Event (as defined in DIP Loan Documents), allow the DIP Agent (acting at the direction of the required DIP Lenders) to deliver a written notice of its intention to declare a termination of the Debtor's ability and rights to access or use  proceeds of the Financing (any such declaration, a "Termination Declaration").   The Termination Declaration shall be given by written notice (including electronic mail) to the Debtor, the U.S. Trustee, the Creditors' Committee, if any, counsel to the Bank, counsel to the Fiscal Agent and counsel to PPCO and PPLO and counsel to PPVA's liquidators and filed on the docket (the date any such Termination Declaration is given shall be referred to herein as the "Termination Declaration Date").  Upon the Termination Declaration Date, unless such Termination Event is waived in writing (including via email) by the DIP Agent in its sole discretion (acting at the direction of the required DIP Lenders), cured by the Debtor, or otherwise stayed or invalidated by this Bankruptcy Court, the authority and approval of the Debtor to access or use the Financing and the commitment of the DIP Secured Parties to provide such financing pursuant to thisthe Interim Orders or this Final Order shall automatically terminate.   Unless there is a Bankruptcy Court order entered within 7 days after the Termination Declaration Date providing otherwise, the DIP Agent and DIP Secured Parties are authorized to exercise any and all rights and remedies in accordance

with the terms of the DIP Loan Documents, and to take all actions required or permitted by the DIP Loan Documents without necessity of further Bankruptcy Court orders.

15.    7. Derivative Contracts.  The Debtor is authorized to: (a) enter into and perform under the Derivative Contracts in the ordinary course of business; (b) honor, pay, or otherwise satisfy all obligations under the Derivative Contracts as they come due; (c) pledge and transfer DIP Collateral in the form of DIP Liens to secure the obligations under the Derivative Contracts *pari passu* with the DIP Liens granted to the DIP Lenders; and (d) grant DIP Superpriority Claims *pari passu* with the DIP Superpriority Claims of the DIP Lenders to the Approved Counterparties to the Derivative Contracts on account of the obligations under the Derivative Contracts.

16.    8. As security and assurance of the Approved Counterparties, and in exchange for providing benefits to the Debtor in accordance with this the Interim Orders and this Final Order:

(a)    (a)    the Approved Counterparties are hereby granted, effective as of the entry of this Interim Order Entry Date and without the necessity of the execution by the Debtor or the filing of security agreements, pledge agreements, mortgages, financing statements, or otherwise, enforceable DIP Liens, permitted by this the Interim Orders and this Final Order with respect to the obligations under the Derivative Contracts *pari pasupassu* with the DIP Liens granted to the DIP Lenders;

(b)    (b)    the obligations under the Derivative Contracts shall constitute DIP Superpriority Claims against the Debtor *pari passu* with the DIP Superpriority Claim granted to the DIP Lenders; and

(c)    (c)    the Approved Counterparties may setoff, net, recoup and apply any payment, settlement payment, termination values, termination payments, and any other amounts that such Approved Counterparty would be entitled to receive from the Debtor or otherwise be obligated to pay to the Debtor under any Derivative Contract in accordance with the terms of each of such Derivative Contracts  and the DIP Loan Documents, including but not limited to setoff, netting, recoupment and application of the foregoing against any and all obligations of the Debtor under the Derivative Contracts and the DIP Loan Documents in accordance with the

terms of such Derivative Contract and the DIP Loan Documents to reduce permanently the DIP Obligations; provided, that upon the occurrence and during the continuation of an Event of Default or a Termination Event under a Derivative Contract, any Approved Counterparty may terminate, liquidate, or unwind its Derivative Contract and setoff, recoup and net transactions thereunder upon notice by such Approved Counterparty to the Debtor in accordance with the applicable Derivative Contract; provided, however, any setoff, recouping or netting against obligations under the DIP Loan Documents in connection with the termination, liquidation, or unwind of a Derivative Contract will only be permitted after five (5) business days prior written notice from the Approved Counterparty to the DIP Agent and the Debtor (unless the Debtor and DIP Agent otherwise agree in writing)

17.        9. If any or all of the provisions of this ~~Interim~~Final Order are stayed, modified in a manner adverse to an Approved Counterparty, or vacated or if ~~this~~the Interim Orders or this Final Order otherwise terminates, such stay, modification, vacation, or termination will not affect (a) the validity of any indebtedness, obligation, or liability incurred by the Debtor to each of the Approved Counterparties before the receipt of written notice by the Approved Counterparties of the effective date of such stay, modification, vacation, or termination; (b) the validity or enforceability of the security interests, administrative claims, and netting and termination rights authorized or created hereby or pursuant to the Derivative Contracts, or any related documents; and (c) the rights of the Approved Counterparties to exercise remedies as set forth in the Derivative Contracts, and each Approved Counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

18.        10. In accordance with the notice and other requirements of paragraph ~~16~~14 of this ~~Interim~~Final Order, the automatic stay provided in section 362 of the Bankruptcy Code is hereby modified to the extent necessary to:

(a)        (a)        permit immediate and unconditional exercise and enforcement of rights and remedies by (i) in respect of the DIP Collateral, any Approved Counterparty (including, but not limited to, the foreclosure on the DIP Liens in order to collect from the Debtor amounts that may be owed to the Approved Counterparty under the Derivative Contract) and

(ii) the Approved Counterparty, upon the occurrence of an Event of Default or a Termination Event under the Derivative Contract (including, but not limited to, the suspension, termination, liquidation, or acceleration thereof and setoff, netting, recoupment and application of any payment, settlement payment, termination values, termination payments, and any other amounts that such Approved Counterparty would be entitled to receive from or otherwise be obligated to pay to the Debtor under any Derivative Contract), and the Approved Counterparties' rights thereunder shall not be modified, stayed, avoided, or otherwise limited by order of this Court or any court proceeding under the Bankruptcy Code.  The Debtor waives the right and shall not seek relief, including under section 105(a) or section 549 of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of Approved Counterparties under the Derivative Contract or this ~~Interim~~Final Order, including, without limitation, the right of the Approved Counterparties to setoff, net, recoup and apply any payment amounts that such Approved Counterparties would otherwise be obligated to pay to the Debtor under the Derivative Contracts against amounts owed by the Debtor under the DIP Loan Documents and other obligations in accordance with each of the Derivative Contracts and the DIP Loan Documents;

(b)        ~~(b)~~ permit an Approved Counterparty to take all actions to validate and perfect the liens and security interests granted hereunder and under the DIP Loan Documents, including by filing or recording financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction.  For the avoidance of doubt, whether or not the Approved Counterparty chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted under ~~this~~the Interim Orders and this Final Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, as of the ~~entry of this~~ Interim Order Entry Date; and

(c)        ~~(c)~~ provide that an Approved ~~Counterparties'~~Counterparty's rights, powers, privileges and remedies under the applicable Derivative Contract may not be modified, stayed, avoided or otherwise limited by further order of this Court or any court proceeding under the Bankruptcy Code.

19.        ~~11.~~ Notwithstanding any provision of the DIP Loan Documents or the Derivative Contracts to the contrary, any counterparty to the Debtor under a Derivative Contract that is a DIP Lender as of the date that such counterparty enters into any transaction under such Derivative Contract shall be an Approved Counterparty for purposes of ~~this~~the Interim Orders

and this Final Order and enjoy the DIP Superiority Claims, DIP Liens, automatic stay relief, and other rights and protections afforded by the Interim Orders and this InterimFinal Order in respect of each such transaction (without giving effect to any amendment, extension, increase or other modification, including, without limitation, "blending," that occurs on or after the date on which such counterparty ceases to be a DIP Lender) until the earliest of (a) the termination of such transaction and the satisfaction of all obligations arising thereunder in full in cash, and (b) other arrangements satisfactory to such Approved Counterparty having been made, in each case regardless of whether such counterparty ceases to be a DIP Lender while such transaction remains outstanding.

20.    12. Subsequent Reversal or Modification.  This InterimFinal Order is entered pursuant to, *inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Secured Parties all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this InterimFinal Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder or under the Interim Orders or this Final Order by the Debtor to the DIP Secured Parties prior to the date of receipt by the DIP Agent of written notice of the effective date of such action, (ii) the payment of any fees required under thisthe Interim Orders, this Final Order or the DIP Loan Documents, and/or (iii) the validity and enforceability of any lien, claim, obligation, right, remedy or priority authorized or created under thisthe Interim Orders, this Final Order or pursuant to the DIP Loan Documents as of such date. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to any of the DIP Secured Parties, prior to written notice being delivered to the DIP Agent of the effective date of such action, shall be governed in

all respects by the original provisions of this ~~Interim Order unless the Final Order has been entered, in which case the Final Order shall govern~~Final Order, and the DIP Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

21. ~~13.~~ Restriction on Use of DIP Lenders' Funds. Notwithstanding anything herein to the contrary, no Collateral, proceeds thereof, proceeds of the Financing, or any portion of the Carve-Out may be used by the Debtor, the Debtor's estate, ~~any~~the Creditors' Committee, any trustee or examiner appointed in the Chapter 11 Case or any chapter 7 trustee, or any other person, party or entity to, in any jurisdiction anywhere in the world, directly or indirectly to (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (i) from the DIP Agent or (ii) if such financing is sufficient to indefeasibly pay all DIP Obligations in full in cash and such financing is immediately so used; (b) assert, join, commence, support, investigate, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the DIP Releasees, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any action arising under the Bankruptcy Code against a DIP Releasee; (ii) any so-called "lender liability" claims and causes of action against a DIP Releasee; (iii) any action with respect to the legality, enforceability, validity, extent, perfection, and priority of the DIP Obligations, the DIP Superpriority Claims, the DIP Loan Documents, or the legality, enforceability, validity, extent, perfection, and priority of the DIP Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether

equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counter claims or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation, in each case solely against or with respect to the DIP Liens, DIP Obligations, or the DIP Superpriority Claims, in whole or in part; (v) appeal or otherwise challenge thisthe Interim Orders or this Final Order, the DIP Loan Documents, or any of the transactions contemplated herein or therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP Secured Parties' rights in respect of their respective liens on and security interests in the Collateral or any of their rights, powers, or benefits hereunder or in the DIP Loan Documents anywhere in the world; (c) seek to modify any of the rights granted to the DIP Secured Parties hereunder or under the DIP Loan Documents  and/or (d) pay any claim of a prepetition creditor except as permitted under the DIP Loan Documents in accordance with the Approved Budget.

22.    14. Collateral Rights.  Except as expressly permitted in thisthe Interim Orders, this Final Order or the DIP Loan Documents, in the event that any person or entity that holds a lien on or security interest in Collateral of the Debtor's estate, that is junior and/or subordinate to the DIP Liens receives or is paid the proceeds of such Collateral, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents, and termination of the commitments under the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral of the Debtor's estate, in trust for the DIP Lenders, and shall immediately turnover such proceeds to the DIP Agent for application in accordance with the DIP Loan Documents, the Interim Orders and this InterimFinal Order.

23.   15. Prohibition on Additional Liens.  Except as provided in the DIP Loan Documents, the Interim Orders or this Interim Final Order, the Debtor shall be enjoined and prohibited from, at any time during the Chapter 11 Case until such time as the DIP Obligations have been indefeasibly paid in full, granting liens on or security interests in the Collateral or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are junior to, senior to, or *pari passu* with the DIP Liens or the Adequate Protection Liens.

24.   16. No Waiver.  This Interim Final Order shall not be construed in any way as a waiver or relinquishment of any rights that any of the DIP Secured Parties or any other parties-in-interest, including the Creditors' Committee, may have to bring or be heard on any matter brought before this Bankruptcy Court.

25.   17. Sale/Conversion/Dismissal/Plan.

(a)        No order providing for either the sale of the ownership of the stock of the Debtor or the sale of all or substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code shall be entered by the Bankruptcy Court unless, in connection and concurrently with any such event, (i) the proceeds of such sale shall be used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations and the commitments under the DIP Loan Documents are terminated; (ii) such sale is expressly permitted under the DIP Loan Documents; or (iii) DIP Agent otherwise consents.

(b)        If an order dismissing or converting the Chapter 11 Case under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered:

i.    ~~i.~~    Unless otherwise agreed to by the DIP Agent, such order shall provide that, in each case subject to the Carve-Out and the Senior Statutory Liens, (i) the DIP Liens, the DIP Superpriority Claim, the DIP Obligations and the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in ~~this~~the Interim Orders and this Final Order until all DIP Obligations hereunder are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents, (ii) to the extent permitted by applicable law, this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens and the DIP Superpriority Claims, and (iii) all postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Secured Parties prior to the date of such order, including, without limitation, the DIP Obligations, shall be governed in all respects by the ~~original~~ provisions of this ~~Interim Order unless the Final Order has been entered, in which case the Final Order shall govern,~~Final Order and the DIP Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligation or liability.

ii.    ~~ii.~~    Unless otherwise agreed to by the Bank, such order shall provide that, in each case subject to the Carve-Out, the Senior Statutory Liens, any superpriority administrative claims awarded any holder of a Senior Statutory Lien and the DIP Obligations, (i) the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superpriority Claims, and all other adequate protection

provided to the First Lien Secured Parties under ~~this~~the Interim Orders and this Final Order~~,~~ shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in ~~this~~the Interim Orders and this Final Order until all First Lien Adequate Protection Obligations have been paid and satisfied in full in cash and the Bank has been released of any obligation related to letters of credit issued by the Bank or such obligations have been otherwise terminated, (ii) to the extent permitted by applicable law, this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the claims, liens and security interests referred to in clause (i) above, and (iii) all postpetition indebtedness, obligation or liability incurred by the Debtor to the First Lien Secured Parties prior to the date of such order, including, without limitation, the First Lien Adequate Protection Obligations, shall be governed in all respects by the ~~original~~ provisions of this ~~Interim Order unless the Final Order has been entered, in which case the Final Order shall govern; and~~ Final Order; and

~~iii.~~    ~~Unless otherwise agreed to by the Fiscal Agent, such order shall provide that, in each case subject to the Carve-Out, the DIP Obligations, the Senior Statutory Liens, any superpriority administrative claims awarded any holder of a Senior Statutory Lien and the First Lien Adequate Protection Obligations, (i) the Second Lien Adequate Protection Liens, the Second Lien Adequate Protection Superpriority Claims, and all other adequate protection provided to the Second Lien Secured Parties under this Interim Order, shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order until all Second Lien~~

~~Adequate Protection Obligations have been paid and satisfied in full in cash, (ii) to the extent permitted by applicable law, this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the claims, liens and security interests referred to in clause (i) above, and (iii) all postpetition indebtedness, obligation or liability incurred by the Debtor to the Second Lien Secured Parties prior to the date of such order, including, without limitation, the Second Lien Adequate Protection Obligations, shall be governed in all respects by the original provisions of this Interim Order unless the Final Order has been entered, in which case the Final Order shall govern.~~

26.    ~~18.~~ <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, <u>the Interim Orders,</u> any other order of this Bankruptcy Court, or any other agreements, on the one hand, and (b) the terms and provisions of this ~~Interim~~<u>Final</u> Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents or words of similar import, the terms and provisions of this ~~Interim~~<u>Final</u> Order shall govern.

27.    ~~19.~~ <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

28.    ~~20.~~ <u>Rights Under Sections 363(k) and 1129(b)</u>.  The full amount of the DIP Obligations may be used to "credit bid" for the assets and property of the Debtor as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of the DIP Loan Documents without the need for further Bankruptcy Court order authorizing the same and whether such sale is effectuated through section 363(k) and/or section 1129(b) of the Bankruptcy

Code or otherwise because, among other things, the denial of such rights would result in the DIP Obligations not receiving the indubitable equivalent of their claims.

29. 21. Preservation of Prepetition Priorities. Nothing in this Final Order is intended to change or otherwise modify the prepetition priorities among prepetition secured creditors of the Debtor, including (i) any operators' or nonoperators' lien or recoupment rights to the extent their liens or rights are valid, enforceable, nonavoidable and perfected, and (ii) any claims of the lienholders or any other mechanic or materialmen or mineral lien claimants to the extent their liens are valid, enforceable, non-avoidable and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and nothing in this Order, including the granting of adequate protection liens or DIP Liens, shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved. This preservation of prepetition priorities expressly includes lien, setoff, recoupment, contract, and other security rights under any operating agreements without prejudice to the Debtor's right to request assumption or rejection such operating agreements and the counterparties' rights to seek orders compelling assumption or rejection of such operating agreements."

30. 22. Lienholders. Notwithstanding anything to the contrary in this Order, to the extent that any holder of a Statutory Lien (a "Statutory Lienholder") has a valid prepetition lien on any collateral, such interest shall be entitled to adequate protection, to secure payment of an amount equal to the diminution in value of such Statutory Lienholder's interest in such collateral, as follows: (i) subject and subordinate to the DIP Liens and Carve-Out in all respects (unless such Statutory Lien is a Senior Statutory Lien, in which case it is not subordinate to the DIP Liens or Carve-Out), postpetition replacement liens against such collateral (and the proceeds thereof) on which such Statutory Lienholder holds a valid prepetition lien in the same priority of

-45-45

such valid prepetition lien; (ii) subject and subordinate to the DIP Superpriority Claims and Carve-Out in all respects, superpriority adequate protection claims against the Debtor, including, without limitation, the proceeds of property recovered in respect of any Avoidance Actions; and (iii) reasonable professional fees, expenses, and disbursements to the extent allowed under § 506(b) of the Bankruptcy Code after application to and approval by the Court, with all parties' rights to object to any such fees, expenses and disbursements expressly reserved.

31.   23. Proofs of Claim.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Bankruptcy Court, neither the DIP Agent or nor any of the DIP Lenders shall be required to file proofs of claim in the Chapter 11 Case for any claim allowed herein in relation to the DIP Credit Agreement and DIP Loan Documents. Notwithstanding any order entered by the Bankruptcy Court in relation to the establishment of a bar date to the contrary, the DIP Agent is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Chapter 11 Case for any claim allowed herein in relation to the DIP Loan Documents.

32.   24. Reservation of Rights for Department of the Interior.  Notwithstanding any other provisions of this the Interim Orders or this Final Order, nothing in this Interim Order or the annexed cash collateral budget is intended to impact or permit the Debtor to violate 28 U.S.C § 959(b) or limit, Final Order or its implementing documents including, without limitation, the DIP Credit Agreement or the interim or final Approved Budget, shall limit or affect, in any way the rights of the Department of the Interior ("Interior") or the obligations of the Debtor with respect to the Debtor's decommissioning obligations, including the Debtor's its monitoring and maintenance obligations and financial assurance obligations (collectively, the "Decommissioning Obligations"), associated with the Debtor's interest in all its interests in each of its active and

inactive federal oil and gas leases, pipeline rightsgrants of right-of-way and rights -of -use and easementeasements on the Outer Continental Shelf.  Nothing in this InterimFinal Order, or the amounts set forth in the Debtor's interim orof final cash collateral budgets, are intended to pre-determine, limit or affect, in any way, the Debtor's Decommissioning Obligationsdecommissioning obligations.

        33a.    OCS Leases.  Notwithstanding anything to the contrary in the Motion or this Final Order, to the extent the provisions of this Final Order constitute a finding that a pre-petition lien encumbering any interest of the Debtor in any lease, rights-of-use and easement, or pipeline rights-of-way granted by the United States pursuant to the Outer Continental Shelf Lands Act (the "OCSLA"), 43 U.S.C. § 1331, et seq., is valid and enforceable, (a) such prepetition liens are imposed with the same extent, validity and priority as the prepetition liens which existed in favor of the Prepetition Secured Parties pursuant to their respective loan and security documents, and (b) the provisions of this Final Order are without prejudice to the United States' ability to challenge the extent or validity of such pre-petition lien(s) pursuant to the OCSLA and Title 30, Code of Federal Regulations.

        33b.    United States' Rights of Setoff and Recoupment.  Notwithstanding anything to the contrary in the Motion or this Final Order, subject to Section 553 of the Bankruptcy Code and applicable law, nothing in this Final Order is intended to limit, impact or affect in any way any rights to setoff or recoupment that the United States may have, all of which are expressly preserved.

        34.    McMoRan Interests.  Notwithstanding anything to the contrary in this Order, nothing in this Order shall encumber, grant priming or priority security rights in, or

otherwise alter, reduce, subordinate, or prejudice McMoRan Oil & Gas, LLC's working interest and share of production from High Island A 571 (OCS G02391).

35.    25. Best Efforts.  If requested to do so by the DIP Agent, the Debtor shall use its best efforts (subject to applicable law, including, without limitation, the Debtor's fiduciary duties thereunder) to assist and cooperate with the sale of the Collateral.

36.    Independent Director.  The Debtor shall use its best efforts to appoint, within ten (10) days of the entry of this Order, an independent director with significant experience in the exploration and production sector, satisfactory to the DIP Lenders and the Creditors' Committee, and to be compensated by the Debtor; provided, however, that the Debtor, the DIP Lenders, and the Creditors' Committee can agree to extend this time period.

37.    26. Headings.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Final Order.

27.    Further Interim Hearing Date.  The Court will conduct a Further Interim Hearing on December 29, 2016 at 10:30 a.m. before Marvin Isgur at the United States Bankruptcy Court for the Southern District of Texas.  At the Further Interim Hearing, the Court will only (i) consider objections to budgeted items; and (ii) set a date for a Final Hearing.  The Debtor must file an amended budget by 5:00 p.m. on December 19, 2016.

38.    28. No Consent.  No action, inaction or acquiescence by the DIP Secured Parties, including funding the Debtor's ongoing operations under this the Interim Orders or this Final Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Secured Parties to a charge against the Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  None of the DIP Secured Parties shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the

Collateral. The "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent with respect to the DIP Loan Documents and/or the; provided, however, that the DIP Secured Parties shall first satisfy the DIP Obligations from the proceeds of Unencumbered Property (if any) before satisfying the DIP Obligations from the other DIP Collateral.

39. 29. Waiver.  No person or entity shall be entitled, directly or indirectly, to, except as expressly provided by paragraphparagraphs 4 and 37 of this InterimFinal Order with respect to the Carve-Out, charge or recover from the Collateral in any proceeding, including a case under Chapter 7 of the Bankruptcy Code, whether by operation of section 506(c) of Bankruptcy Code, sections 105 or 552(b) of the Bankruptcy Code, or any other legal or equitable doctrine (including without limitation, unjust enrichment) or otherwise, or direct the exercise of remedies or seek (whether by order of this Bankruptcy Court or otherwise) to marshal or otherwise control the disposition of Collateral or Property after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents or this InterimFinal Order.

40. 30. Adequate Notice.  The notice given by the Debtor of the InterimFinal Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Local Bankruptcy Rules. Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtor shall promptly mail copies of this Interim Order and notice of the Final Hearing to  any person included on the master service list approved or established in this case within five (5) Business Days of entry of the Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Bankruptcy Court.

41.    31. Binding Effect Successors and Assigns.  The DIP Loan Documents and the provisions of this the Interim Orders and this Final Order, including all findings herein, shall be binding upon all parties-in-interest in this Chapter 11 Case, including, without limitation, the DIP Secured Parties, any the Creditors' Committee or any examiner appointed in this Chapter 11 Case, and the Debtor, and its respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in this Chapter 11 Case, in any Superseding Case, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP Secured Parties and the Debtor, and their respective successors and assigns, provided, however, that the agreement of the DIP Secured Parties to extend financing under the DIP Loan Documents,  in each case, shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estate of the Debtor.   In determining to make any loan (whether under the DIP Credit Agreement, a promissory note, or otherwise) or in exercising any rights or remedies as and when permitted pursuant to this the Interim Orders, this Final Order or the DIP Loan Documents, the DIP Secured Parties shall not (i) be deemed to be in control of the operations of the Debtor, or (ii) owe any fiduciary duty to the Debtor, or its creditors, shareholders, or estate.  Each stipulation, admission and agreement contained in part D of this the First Interim Order and part E of this Final Order shall also be binding upon all persons and entities under all circumstances and for all purposes.

42.    32. Retention of Jurisdiction.  This Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.,  This Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

43.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.  Any party-in-interest including the Debtor and any official committee appointed in this Chapter 11 Case shall have until 60 days after the entry of this Order (the "Investigation Termination Date") to file, on behalf of the Debtor's estate, and to serve upon the Bank any claims, causes of action or proceedings arising from or related to the extent, priority or validity of the liens securing the claim of the Bank (a "Challenge"). If, with respect to the Bank, (i) a Challenge is not filed and properly served on the Bank on or before the Investigation Termination Date, (ii) a final order is entered denying a Challenge in its entirety, or (iii) an order is entered resolving any Challenge, then the Debtor, all official committees, and any other party in interest (including without limitation a receiver, administrator, examiner or trustee appointed in this Case or in any jurisdiction) without further action by this Court or any party in interest (including without limitation a receiver, administrator, or trustee appointed in this Case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge and the prepetition loan by the Bank shall be allowed in full, as a secured claim, without defense, offset, counterclaim or reduction, and not subject to subordination on any basis; subject only to the DIP Liens, the Carve-Out and Senior Statutory Liens, and the Prepetition Liens shall be deemed first priority, valid, enforceable, perfected, unavoidable and not subject to subordination or recharacterization under applicable nonbankruptcy law or the Bankruptcy Code, provided that such liens are subject in all respects to the DIP Liens, Carve-Out and Senior Statutory Liens, in each case without further notice to or order of the Court.  In the event of a successful Challenge, the Court shall fashion an appropriate remedy.

Dated: Dated: Houston, Texas
December January ___, 2016 2017

**THE HONORABLE MARVIN ISGUR**
**UNITED STATES BANKRUPTCY JUDGE**