**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | Case No. 16-34028 |
| **GROUP, LLC,** | § | |
| | § | |
| | § | **(Chapter 11)** |
| DEBTOR. | § | **(Emergency Hearing Requested)** |

**EMERGENCY MOTION FOR ENTRY OF ORDER AMENDING FINAL ORDER
(I) APPROVING POSTPETITION FINANCING, (II) GRANTING LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(III) GRANTING ADEQUATE PROTECTION, AND
<u>(IV) MODIFYING AUTOMATIC STAY</u>**
[Related to Dkt 326]

A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 27, 2017 AT 1:30 P.M. IN COURTROOM 404, UNITED STATES BANKRUTPCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK, HOUSTON, TX 77002.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Northstar Offshore Group, LLC, the above-captioned debtor (the "Debtor"), files this emergency motion (the "Emergency Motion") seeking entry of an order, substantially in the form attached hereto (the "Order") amending the *Final Order (I) Approving Postpetition Financing, (II) Granting Liens And Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, And (IV) Modifying Automatic Stay* [Dkt. 326] (the "Final DIP Order")[1] and authorizing the Debtor and the DIP Lenders to amend the DIP Loan Documents.

## PRELIMINARY STATEMENT

1. The DIP Agent has asserted an Event of Default has occurred under the DIP Credit Agreement. The Debtor and the DIP Agent have been in discussions to resolve the asserted Event of Default. In addition to resolving the asserted Event of Default, the Debtor seeks to amend the DIP Credit Agreement to modify the milestones to avoid another Event of Default in the near future.

2. The Debtor is actively pursuing a sale of substantially all of its assets. To facilitate this process, the Debtor seeks to modify the milestones and extend the maturity date in the DIP Credit Agreement to give the Debtor the time it needs to conduct a sale process to maximize the value of its assets. That sale process anticipates the retention of Parkman Whaling, an investment banking firm, to manage the sale process.[2] The revised milestones are reasonable and will put the Debtor on a clear path to exit the Chapter 11 Case. The Debtor anticipates filing a motion for approval of sale procedures in the coming weeks.

---

[1] Capitalized terms used but not defined herein have the meanings assigned to such term in the Final DIP Order.

[2] The Debtor's current investment banker, M1 Energy Capital Management, LLC, was retained with a goal of recapitalizing the Debtor as part of a reorganization. In light of the Debtor's decision to pursue a sale of substantially all of its assets, the Debtor's advisory needs have changed. The Debtor anticipates filing a motion to retain Parkman Whaling in the coming days.

3. As a result of the asserted Event of Default, the Debtor does not have access to any additional financing under the DIP Credit Agreement. The relief requested in this Motion will resolve the asserted Event of Default and allow the Debtor to immediately draw $1,000,000 it needs for operating expenses. It also gives the Debtor access to an additional $1,000,000 over the amounts currently available under the DIP Credit Agreement. This additional funding can be used by the Debtor to get through the longer sale process contemplated under the amendment.

## JURISDICTION

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code.

## RELEVANT BACKGROUND

5. On February 5, 2017, this Court entered the Final DIP Order.

6. On March 15, 2017, Arena Limited DIP I, LLC (the "DIP Agent") sent Northstar the Limited Termination Notice. In the Limited Termination Notice, the DIP Agent asserted that an Event of Default occurred under Section 7.12(b) of the Credit Agreement. This Event of Default is based on the DIP Agent's assertion that the Debtor's not having received an anticipated $1,400,000 payment in connection with the West Cameron Preferential Right as set forth in the Amended Budget caused the Debtor to exceed the permissible variance interval for the line item in the Amended Budget for receipts.

7. The DIP Credit Agreement contains certain case milestones that the Debtor must satisfy to avoid another Event of Default. The case milestones include filing a plan and disclosure statement by April 3, 2017 *See* DIP Credit Agreement, § 6.18(a). This milestone

requires that the plan provides for the payment in full of the obligations under the DIP Credit Agreement on the effective date of such plan. *Id.* In light of the ongoing efforts to sell substantially all of the assets, the Debtor believes it is unlikely to satisfy this milestone, in which case the DIP Lenders could declare an Event of Default.

8. The Debtor has been in discussions with the DIP Agent to resolve the alleged Event of Default, modify the milestones, extend the maturity date and amend the budget. The Debtor and the DIP Agent have reached an agreement on a proposed amendment to the DIP Loan Documents that resolves the Event of Default asserted under the Limited Termination Notice, modifies the milestones and provides a clear path for the Debtor to exit the Chapter 11 Case.

## RELIEF REQUESTED

9. Debtor seeks entry of an order substantially in the form attached hereto that amends the Final DIP Order and authorizes the Debtor to amend the DIP Loan Documents (the "Third Amendment") consistent with the following terms:

| Provision | Description |
|---|---|
| Milestones | The Third Amendment shall provide that Section 6.18 of the DIP Credit Agreement be revised to replace the existing Milestones with the following:<br><br>(a) On or before April 12, 2017, the Debtor shall have filed with the Bankruptcy Court a motion to (i) sell substantially all of its assets (the "Sale Transaction") and (ii) approve bidding procedures related thereto (the "Sale Motion") in form and substance acceptable to the DIP Agent which shall provide that the proceeds of such sale shall be used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations;<br><br>(b) On or before March 27, 2017, the Debtor shall have filed with the Bankruptcy Court a motion seeking to retain Parkman Whaling as financial advisors to manage the proposed sale process; |

|  | |
|---|---|
|  | (c)  On or before May 17, 2017, the Bankruptcy Court shall have entered an order, in form and substance acceptable to the DIP Agent, approving bid procedures and a timeline for the Sale Transaction (the "Approved Bid Procedures");<br><br>(d)  On or before April 24, 2017, the Bankruptcy Court shall have entered an order, in form and substance acceptable to the DIP Agent, approving the retention of Parkman Whaling;<br><br>(e)  On or before June 5, 2017, the Debtor shall identify a stalking horse purchaser or purchasers for the Sale Transaction in accordance with the Approved Bid Procedures and such stalking horse bid(s) shall be sufficient to indefeasibly pay in full in cash and completely satisfy the DIP Obligations;<br><br>(f)  On or before July 5, 2017, the Debtor shall have conducted an auction, to the extent necessary, in accordance with the Approved Bid Procedures;<br><br>(g)  On or before July 17, 2017, the Bankruptcy Court shall have entered an order, in form and substance acceptable to the DIP Agent, approving the Sale Transaction which shall provide for the indefeasible payment in full in cash and complete satisfaction of the DIP Obligations;<br><br>(h)  On or before August 1, 2017, the Sale Transaction shall have closed and the proceeds of such sale shall have been used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations. |
| Credit Bid | The Approved Bid Procedures shall provide, among other things, the ability for the DIP Agent to credit bid any or all obligations under the DIP Credit Agreement.  Additionally, the Approved Bid Procedures shall make clear that the DIP Agent and DIP Lenders are authorized, but not obligated, to negotiate with and provide financing to any potential bidders and are free to discuss the terms of any financing with any potential bidder. |
| Maturity Date | The Third Amendment shall provide for the dates for "Maturity Date" and "Extended Maturity Date" set forth in the DIP Credit Agreement to be extended by 60 days. |
| APE Report Covenants | The Third Amendment shall amend the financial covenant set forth in Section 7.12(d) to provide the PV-10 of the Debtor's Proved Developed Producing Reserves as set forth in the APE Report to be not less than $18,000,000 as calculated using the five-year NYMEX strip price.  The Third Amendment shall add a new financial covenant in Section 7.12 requiring an updated APE Report as of June 1, 2017 due June 15, 2017 to provide the PV-10 of the Debtor's Proved Developed Producing Reserves as set forth in the updated APE Report to be not less than |

| | |
|---|---|
| | $18,000,000 as calculated using the five-year NYMEX strip price. The definition of APE Report for purposes of the DIP Loan Documents and as defined in Section 6.2(g) of the DIP Credit Agreement shall be revised to utilize "Adjusted Strip Prices" which means, the average closing settlement price for crude oil and natural gas futures contracts for the 2017 calendar year, and, the twelve month average closing settlement price for each of the succeeding four calendar years thereafter, in each case as published by NYMEX, provided that in any event, appropriate adjustments are made to account for severance and ad valorem taxes, gathering, transportation and marketing costs as well as historical basis differentials. |
| Overriding Royalty Interest | Upon execution of the Third Amendment, the Debtor will convey to the DIP Lenders or each such DIP Lender's designee an overriding royalty interest equal to 2.0% of Debtor's interest in High Island A-443, West Cameron 20 and Main Pass 64 (the "ORRIs"), the form and structure of which will be in a form acceptable to the DIP Agent. The ORRIs will be effective April 1, 2017 and will be paid in the ordinary course of business. Upon the full repayment of the DIP Obligations, one-half (1.0%) of the ORRIs held by the DIP Lenders shall revert back to the then owner of High Island A-443, West Cameron 20 and Main Pass 64. |
| Production Funding Date Loan Conditions | The Third Amendment shall provide that the conditions for the Production Funding Date Loan are revised as follows: (i) $1,000,000 will be available upon completion of the recompletion project on High Island A-443 (OCS-G3241) Well# A-5 ST2 BP2 (the "HI A-443 Recompletion") and the Debtor providing evidence satisfactory to the DIP Agent in its sole discretion that the average daily production over the prior thirty (30) days period is in excess of 700 BOE per day, (ii) $500,000 will be available upon completion of the HI A-443 Recompletion and the recompletion project on West Cameron 20 ("WC20 Recompletion" and together with the 443 Recompletion, the "Recompletion Projects")) and the Debtor providing evidence satisfactory to the DIP Agent in its sole discretion that the combined average daily production over the prior fifteen (15) days period from the Recompletion Projects is in excess of 240 BOE per day, and (iii) $500,000 will be available upon completion of the HI A-443 Recompletion and the WC20 Recompletion and the Debtor providing evidence satisfactory to the DIP Agent in its sole discretion that the combined average daily production from the Recompletion Projects over the prior thirty (30) days period is in excess of 900 BOE per day. |
| Additional Loan | An additional $1,000,000 will be available under the Third Amendment upon the Debtor entering into hedging arrangements acceptable to the DIP Agent with such hedges covering 50% of projected oil and gas production volumes over the ensuing five month period. |
| Fees | The Debtor is authorized to pay the DIP Agent the following as a |

| | |
|---|---|
| | condition to entry of the Third Amendment consisting of (i) $150,000 covenant default waiver fee; and (ii) $35,000 for a work fee for engineering due diligence to be undertaken by the DIP Agent in conjunction with potentially serving as a stalking horse bidder for the Sale Transaction plus $10,000 a month going forward payable on the first of the month. |
| Interest Rate | The Third Amendment shall provide for section 2.6 of the DIP Credit Agreement to be amended to provide for 14.5% non-default cash interest rate and a default cash interest rate equal to 18%. |
| Waiver of Default and Advancement of Funds | Upon entry of the Order and conditioned on the Debtor filing a lawsuit against Castex Offshore Inc. for recovery of amounts owed in connection with the West Cameron Block 96 Unit, the Event of Default set forth in the Limited Termination Declaration shall be waived and the DIP Lenders shall advance within one Business Day the remaining $1,000,000 of availability of the Funding Date Loan, provided that the Debtor and DIP Agent reserve all of their respective rights relating to any subsequent Defaults or Events of Default under the Loan Documents. |
| Castex Preferential Right | The Third Amendment shall amend Section 2.5 to require the Debtor to prepay the DIP Obligations in an amount equal to fifty percent (50%) of the net proceeds from Castex related to West Cameron Block 96 Unit, and the remaining fifty percent (50%) of the net proceeds may be used by the Debtor in accordance with the DIP Loan Documents and the budget. |
| Main Pass 256/257 Lease Expiration | The DIP Lenders acknowledge that the Main Pass 256/257 lease is set to expire in July 2017 and that the Debtor has no obligation to further consult with the DIP Agent under Section 7.21(e) of the DIP Credit Agreement or take any action to prevent the expiration of such lease. |
| Amended Budget | The revised Amended Budget is attached as Exhibit A to the Order. |

## BASIS FOR REQUESTED RELIEF

10. The Final DIP Order provides the following with respect to entering into amendments to the DIP Loan Documents:

> The Debtor, with the express written consent of the DIP Agent, acting at the direction of the required DIP Lenders, and, to the extent required by the DIP Credit Agreement, may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents that are not materially adverse to the Debtor without the need for further notice and hearing or any order of this Bankruptcy Court; provided, however, that, without the consent of this Bankruptcy Court on notice and a hearing, no such amendments, consents, waivers or modifications shall (i) shorten the maturity of the Financing, (ii) increase the commitments thereunder or the rate of interest payable under the

DIP Loan Documents, (iii) require the payment of any new or additional fee, or (iv) amend the Events of Default or covenants in the DIP Loan Documents to be materially more restrictive to the Debtor.

Final DIP Order, ¶ 11a. The Debtor seeks authority to enter into the Amendment pursuant to Paragraph 11a of the Final DIP Order.

11. The Court should authorize a debtor to amend its debtor-in-possession financing when it is an exercise of the debtor's sound and reasonable business judgment; is in the best interest of the estate and its creditors; necessary to preserve the asserts of the estate; is fair, reasonable and adequate given the circumstances, and negotiated in good faith and at arm's length. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). All of these conditions are satisfied here.

12. In connection with the amendment, the DIP Lenders have agreed waive the Event of Default. This will allow the Debtor to immediately access to the remaining $1,000,000 of the Funding Date Loan available under the DIP Credit Agreement. The Debtor needs immediate access to this $1,000,000 to ensure that the Debtor is able to continue operating during the Chapter 11 Case and to preserve the value of its estate for the benefit of all parties-in-interest.

13. The amendment also addresses the case milestones. The Debtor will likely not satisfy the current case milestones in the DIP Credit Agreement, which would result in another Event of Default. The Debtor has negotiated alternative milestones tied to a sale process. The Debtor believes that the sales process is the best way to administer its assets and ultimately lead to an exit from the Chapter 11 Case. As part of the sale process, the Debtor will seek authority to retain Parkman Whaling to assist the Debtor in conducting the sale process. The Debtor believes that Parkman Whaling has the experience and capability to assist the Debtor with the sale process and satisfy the revised milestones.

14. The Debtor has contacted Eleanor Fiduciary Services and New Mountain Finance

Corporation to determine whether any alternative financing is available. The Debtor has concluded that neither party is in prepared to advance $1,000,000 the Debtor requires on an immediate basis. The Debtor continues to be open to other financing opportunities and will explore any other viable opportunities with case constituents and third parties.

## **EMERGENCY CONSIDERATION**

15.  The Debtor requests emergency consideration of this Motion because under the Notice of Limited Termination the Debtor does not have access to any additional financing under the DIP Credit Agreement. Without the advancement of an additional $1,000,000 during the week of March 27, 2017, the Debtor will not have sufficient funds to continue operating and will need to shut in production. The shut in will cause irreparable harm to the Debtor's estate.

[Remainder of Page Intentionally Left Blank]

## CONCLUSION

WHEREFORE, premises considered, the Debtor respectfully requests that the Court enter the Order, substantially in the form attached hereto as, approving the relief requested in the Motion, and grant such other and further relief as the Court may deem just and proper.

Dated: March 22, 2017

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Christopher R. Murray
TBA No. 24081057
cmurray@diamondmccarthy.com
Two Houston Center
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Counsel for Northstar Offshore Group, LLC, Debtor and Debtor-in-Possession*

Certificate of Conference

      Undersigned counsel has conferred with Tad Davidson, counsel to the DIP Agent, regarding the relief requested and the timing for the hearing on the Emergency Motion and Mr. Davidson is available to attend the hearing scheduled for Monday, March 27 at 1:30 p.m.

                                  */s/ Charles M. Rubio*