UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| NORTHSTAR OFFSHORE GROUP, LLC, | § § § § | Case No. 16-34028 |
| | § | (Chapter 11) |
| DEBTOR. | § § | |

**MOTION FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO NPI CONVERSION AGREEMENT OUTSIDE THE ORDINARY COURSE OF BUSINESS**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 29, 2017 AT 1:30 P.M. IN COURTROOM 404, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK, HOUSTON, TX 77002.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Northstar Offshore Group, LLC (the "Debtor"), files this *Motion For Order Authorizing Debtor to Enter into NPI Conversion Agreement Outside the Ordinary Course of Business* (the "Motion") and respectfully states as follows:

**RELIEF REQUESTED**

1.     Pursuant to 11 U.S.C. § 363(b) and (f), the Debtor seeks entry of an order, substantially in the form attached hereto, authorizing the Debtor to enter into an agreement outside the ordinary course of business with NOG Royalty Holdings, LP ("NOG") to convert an existing net-profits interest into an overriding royalty interest.  The conversion will entail a

termination of the existing net profits interest and a simultaneous assignment of the overriding royalty interest. Like the net profits interest, the overriding royalty interest will be free and clear of all Encumbrances on the Properties (as such terms are defined below). Any and all Encumbrances on the Debtor's interest in the Properties will remain (net of the conveyed ORRI) with the same validity, enforceability, priority, force, and effect as existed immediately prior to the conversion.

## JURISDICTION

2.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested in this Motion are §§ 105(a), 363(b), and 363(f) under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

## CASE BACKGROUND

5.  The Debtor is an independent oil and gas exploration and production ("E&P") company that focuses on acquisitions, workovers and recompletions, development drilling, and low-risk exploration in the shallow waters of the Gulf of Mexico. A detailed discussion of the Debtor's operations and financial condition can be found in the *Declaration of Avery C. Alcorn in Support of First Day Pleadings* [ECF Nos. 106 & 298] (as supplemented, the "Alcorn Declaration").

6.  On August 12, 2016 ("Involuntary Petition Date"), Montco Oilfield Contractors, LLC, Alliance Offshore, LLC, and Alliance Energy Services, LLC ("Petitioning Creditors") filed an involuntary petition for relief under chapter 11 of the Bankruptcy Code against the Debtor thereby commencing the above-captioned case ("Chapter 11 Case").

7. On December 2, 2016 ("Voluntary Petition Date"), the Debtor filed a voluntary petition [ECF No. 88], and the Court entered an order for relief [ECF No. 131].

8. During the time period between the Involuntary Petition Date and the Voluntary Petition Date, the Debtor continued to operate its business under § 303(f) of the Bankruptcy Code.

9. On December 19, 2016, the U.S. Trustee filed a notice of appointment of an official committee of unsecured creditors (the "Committee") [ECF No. 186]. The U.S. Trustee filed an amended notice of appointment on December 22, 2016 [ECF No. 192]. The Committee has retained DLA Piper LLP as its counsel and FTI as its financial advisor.

10. Since the Voluntary Petition Date, the Debtor has continued in possession and management of its business and properties as a debtor-in-possession.

## FACTUAL BACKGROUND

A. **The NPI Conveyance**

11. On September 22, 2014, the Debtor and NOG entered into a Conveyance of Net Profits Interest agreement ("NPI Conveyance"), a copy of which is attached as **Exhibit A**. Under the NPI Conveyance, the Debtor granted NOG a 17.5% net profits interest (the "NPI") in three of Northstar's outer continental shelf oil, gas and mineral leases: Main Pass 256 (OCS-G 34386), Main Pass 257 (OCS-G 34387) and Viosca Knoll 697 (OCS-G 34870) (collectively, the "Properties"). The NPI is calculated by subtracting direct costs and direct taxes from the gross proceeds from the sale of hydrocarbons produced on the Properties.[1]

12. Compared to industry norms, the NPI is quite large on a percentage basis. And, as a result of the current commodity price environment and the related well economics, the

---

[1] This is a summary of the relevant terms in the NPI Conveyance. Reference is made to the NPI Conveyance for a full description of the NPI.

Debtor has not drilled any wells on the Properties because it is not economical to do so with the NPI burdening the same. The size of the NPI inhibits the Properties' marketability, since potential purchasers are less willing to purchase a property if 17.5% of the net profits therefrom must be paid to a third-party.

13. Because NOG supports the potential development of the Properties, it is willing reduce the percentage interest burden on the Properties associated with the NPI (and convert the NPI into an overriding royalty interest), in order to increase the Properties' marketability and the potential for future drilling and production of hydrocarbons.

### B. The Conversion Agreement

14. Pursuant to the parties' *Agreement for Conversion and Partial Re-Assignment of Net Profits Interest, and Simultaneous Assignment and Grant of Overriding Royalty Interest* (the "Conversion Agreement"), the NPI will be converted into (and the Debtor will correspondingly convey to NOG) a 4% (of 8/8ths) overriding royalty interest (the "ORRI"). A copy of the Conversion Agreement is attached as **Exhibit B**.

15. The ORRI, unlike the NPI, will be free of all costs of ownership and operation of the Properties, except for certain taxes.[2] Thus, an operator on the Properties will have to pay NOG 4% of the gross proceeds of hydrocarbons produced instead of 17.5% of the net profits. The ORRI does not permit NOG to take hydrocarbons in kind. Even when costs are taken into account, the Debtor believes that the ORRI will result in an operator paying out less money than it would pay under the NPI, and the burden associated with the ORRI will be easier for industry

---

[2] An overriding royalty is by nature an interest in oil and gas produced at the surface, free of the expense of production. 2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418.1 at 352-53 (2012). By contrast, a net profits interest is a percentage of the "net profits" and bears the risk that production will be insufficient to cover costs. *See id*. at § 424.1.

participants to evaluate and understand. This will encourage the development—and by extension, the value—of the Properties for the Debtor.

## BASIS FOR RELIEF REQUESTED

### A. Entry into the Conveyance Agreement is an Exercise of the Debtor's Reasonable Business Judgment

16. Bankruptcy Code section 363(b) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105 authorizes this Court "to issue any order … necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105.

17. A debtor's decision to enter into a contact outside the ordinary course of business will be approved if the decision is based on a "sound business reason." *The Institutional Creditors of Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). The Bankruptcy Court "has considerable discretion in deciding whether to approve or disapprove of the use of estate property . . . in light of sound business justification." *In re Walter*, 83 B.R. 14, 17 (9th Cir. B.A.P. 1988) (citing *In re Lionel Corp.*, 722 F.2d at 1066; *In re Continental Airlines, Inc.*, 780 F.2d at 1223).

18. The Debtor has determined that, in the exercise of its business judgment, entering into the Conversion Agreement will result in an immediate and substantial benefit to the Debtor's estate. The Conversion Agreement will allow the Debtor to convert an onerous NPI into a smaller percentage interest that will be easier for market participants to evaluate and understand. This will greatly increase the marketability of the Properties. Moreover, under the Conversion Agreement, the Debtor does not have to pay any cash consideration to NOG to

receive this benefit. The Debtor believes that entering into the Conversion Agreement will increase the proceeds derived from the sale of Properties and thus maximize recoveries for the creditors of its estate.

19.   Accordingly, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to enter into the Conversion Agreement.

### B.   The Conversion of the NPI Should Be Made Free and Clear

20.   Because the Conversion Agreement involves a conveyance of interests to NOG – that are carved out of the Debtor's working interest/operating interest in the Properties – NOG requires that the Conversion, including the conveyance of the ORRI will be free and clear of any and all liens, claims, or encumbrances that have been placed on the Properties after NOG was originally conveyed the NPI. Accordingly, the Debtor seeks to convey and transfer the ORRI free and clear of any liens, claims or encumbrances on the Debtor's interest in the Properties.

21.   Section 363(f) of the Bankruptcy Code provides that:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)   such entity consents;

(3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)   such interest is in bona fide dispute; or

(5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that because § 363(f) is written in the disjunctive, a court may approve a sale "free and clear" if at least one of the requirements is met).

22. Transferring the ORRI free and clear of all liens, claims, or encumbrances on or in the Debtor's interest in the Properties is appropriate. The transfer of the ORRI occurs with the simultaneous termination of the NPI. Any liens, claims, or encumbrances will remain on the Debtor's interest in the Properties which will no longer be burdened with the NPI. The liens, claims and encumbrances will remain on the Debtor's remaining interest in the Properties (net of the conveyed ORRI) with the same validity, enforceability, priority, force, and effect as existed immediately prior to the closing of the Conversion Agreement (and the conveyance of the ORRI). Any holders of liens, claims, or encumbrances are adequately protected because the conversion of the NPI into the ORRI is designed to enhance the value of the Debtor's interest in the Properties.

23. The Debtor is not aware of any liens on the Properties except those of Arena Limited DIP I, LLC, the DIP agent, First National Bank of Central Texas, the first-lien lender, and Eleanor Fiduciary Services LLC, fiscal agent for the second-lien lender.[3] These lienholders will be adequately protected by the enhancement in value in the Debtor's interest in the Properties. Thus, the proposed conversion satisfies § 363(f) of the Bankruptcy Code. Moreover, any lienholder that receives notice of the conversion and which fails to object to the conversion free and clear of liens should be deemed to consent to the sale, thereby complying with § 363(f)(2) of the Bankruptcy Code.

---

[3] Nothing in this Motion shall be construed as an admission concerning the amount, scope, validity, or priority of any liens.

### C. The Automatic Fourteen-Day Stay under Bankruptcy Rule 6004(h) Should Be Waived

24. Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to § 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

25. Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See generally* 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

26. Because of Debtor's ongoing sale process, the Debtor must close on the conversion promptly after all closing conditions have been met or waived. Thus, waiver of any applicable stays is appropriate in this circumstance.

*[Remainder of page intentionally left blank]*

## CONCLUSION

27. The Debtor respectfully requests that this Court enter an order substantially in the form of the proposed order attached hereto and grant any other appropriate relief.

Dated: June 1, 2017

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Christopher R. Murray
TBA No. 24081057
cmurray@diamondmccarthy.com
Two Houston Center
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Counsel for Northstar Offshore Group, LLC, Debtor and Debtor-in-Possession*

### Certificate of Conference

Undersigned counsel has conferred with counsel to Arena Limited DIP I, LLC and counsel to First National Bank of Central Texas regarding the relief requested herein. Arena Limited DIP I, LLC does not object to the requested relief. First National Bank of Central Texas supports the requested relief.

*/s/ Charles M. Rubio*