**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **Northstar Offshore Group, LLC** | § | |
| | § | **Case No. 16-34028-MI** |
| Debtor. | § | |
| | § | |
| | § | |
| | § | |

**LIMITED OBJECTION TO EMERGENCY MOTION FOR ENTRY OF ORDER
AMENDING (I) BIDDING PROCEDURES ORDER AND (II) FINAL DIP ORDER
AND RESERVATION OF RIGHTS [DOCKET NO. 626]**

First National Bank of Central Texas ("FNBCT") files this *Limited Objection to Emergency Motion for Entry of Order Amending (I) Bidding Procedures Order and (II) Final DIP Order AND Reservation of Rights [Docket No. 626]* and would show:

1.      Northstar Offshore Group, LLC ("Debtor") filed the *Emergency Motion for Entry of Order Amending (I) Bidding Procedures Order and (II) Final DIP Order [Docket No. 626]* (the "Emergency Motion").  In the Emergency Motion, the Debtor proposes that the Court (i) authorize an amendment to the bidding procedures, including the extension of certain deadlines, (ii) approve a form of Asset Purchase Agreement ("APA") with the DIP Agent which is substantially different from the form previously approved by this Court, (iii) give the DIP Agent Stalking Horse status and protections and (iv) amend certain deadlines or milestones in the Final DIP Order.

2.      Pre-petition, FNBCT had a first priority lien on certain of Debtor's assets, including accounts receivables, and the proceeds therefrom.  Additionally, as a result of the Final DIP Financing Order, as amended, FNBCT also has adequate protection liens on substantially all assets of the Debtor and super-priority administrative claims as adequate protection for the use of

its cash collateral and as a result of the priming debtor-in-possession financing obtained by Debtor.

3.      FNBCT has consistently worked with the Debtor to reach a consensual process to sell all or substantially all of the assets of the Debtor.  That cooperation has continued in the days leading up to and after the filing of the Emergency Motion.[1]  Many of FNBCT's issues have been addressed by Debtor.   However, not all concerns have been appropriately addressed resulting in the necessity for the filing of this *Limited Objection and Reservation of Rights* by FNBCT.

4.      If approved, deadline for the submission of bids, to object to the sale, to conduct an auction, to hold the hearing and to close will all be modified.  FNBCT generally does not object to such extensions, with one exception.  The undersigned counsel has a previously scheduled evidentiary hearing on July 24, 2017 in San Antonio and would request that the auction be scheduled for July 25 or such other later date which is acceptable to the Court.  The undersigned has been integrally involved in all steps of the sale process.  As is evident with the APA currently before the Court, it is reasonable to anticipate that the terms and conditions of any proposed bid will continue to evolve and potentially modify the rights and remedies available to FNBCT.  Further, FNBCT has been approached regarding potentially providing funding to a potential bidder.  As both a creditor and potential lender, FNBCT would prefer to have the undersigned present at the auction.  A one day delay in the auction should not cause any harm to any other party-in-interest.

---

[1] Capitalized terms used herein and not defined herein have the meaning ascribed to them in the Emergency Motion.

4850-3175-6619.1
735723\000002
06/29/2017 9:04 AM

5.     FNBCT has both general and specific concerns with the APA attached to the Emergency Motion.  In general, the ability of the DIP Agent to terminate the APA at no cost[2] essentially creates an option rather than a binding agreement on the part of the DIP Agent to perform. If the DIP Agent wants stalking horse protection, then it should be required to act as a stalking horse and close if it is the highest and best bid.

6.     FNBCT also objects to the "partial" credit bid.[3]  Section 28 of the *Final Order (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Modifying Automatic Stay* [Docket No. 326] (the "Final DIP Order") provides that "the full amount of the DIP Obligations" may be used to credit bid.   No information is provided to the creditors regarding the amounts (if any) which will remain owing under the DIP.   On information and belief, if the APA as drafted is approved, it is likely that the Debtor will still owe hundreds of thousands of dollars on the DIP, and will continue to accrue interest and expenses to the DIP Agent and will continue to be under the threat of adverse actions by the DIP Agent.

7.     Specifically:

a.     FNBCT objects to the sale of cash[4] which creates the very real possibility that the Debtor will be left with producing assets and on-going obligations and no source of payment.  FNBCT would request that Section 1.3(n) be struck.  In the alternative, FNBCT would request that the Court provide that the amount of the Purchase Price be increased by the amount of cash "purchased".

---

[2] Section 11.3(c) provides that Buyer shall "forfeit to Seller any cash deposit as liquidated damages" in the event that the Agreement is terminated.  This is illusory protection as the DIP Agent is not posting any cash.  At a minimum, the DIP Agent should be required to waive an amount of the DIP equal to the cash deposit which would be required of any other bidder.

[3] Section 2.1

[4] Section 1.3(n).

b.      FNBCT objects to the sale of all "right, title, interest in and to all fees, rentals, proceeds, claims, refunds, causes of action, rights of recovery, rights of indemnity, rights of insurance, audit rights, trade credits, accounts, receivable [*sic*], note receivables, settlement, deposits, checks in process of collection, cash equivalents, funds and other payments, revenues, escrow accounts and escrow holdback, right to the return or use of deposits and retainers and other rights and economic benefits of every kind and character accruing or payable to Seller, related to the Properties."[5]  In essence, the APA as currently drafted would leave most liabilities associated with the Properties with the Debtor and its creditors and eliminate any right of setoff or recoupment against such claims.  Further, there is no value allocated to these assets listed in Section 1.3(o).  FNBCT would request that 1.3(o) be struck.  In the alternative, the Court should require that the APA provide a process for this Court to estimate the value of the assets included in Section 1.3(o) at the Sale Hearing and require that the amount of the Purchase Price be increased by such amount.  In the further alternative, FNBCT would request that the DIP Agent assume any and all liabilities (regardless of when incurred) in connection with the Properties.

c.      FNBCT objects to a credit bid on causes of action[6] "whether or not related to the Properties".  The Final DIP Order only grants a lien on proceeds of Avoidance Actions and then only to the extent that "all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens. . .".  *See* Section 6(a)(ii) of the Final DIP Order.  The DIP Agent cannot credit bid and acquire assets on which it does not have a first and prior lien. The proposed APA does not dispose of "all other DIP Collateral", thus is it not possible to determine what claim (if any) the DIP Agent even has to proceeds of Avoidance Actions, as defined in the Final DIP Order.  What is clear is that the DIP Agent does not have a lien on the causes of action

---

[5] Section 1.3(o)

[6] Section 1.3(p).  There is no definition of "causes of action"  in the proposed APA.

4850-3175-6619.1
735723\000002
06/29/2017 9:04 AM

themselves.    Further, there is no record before the Court which would support an allocated value of $10,000[7] for "Seller's Interest in Claims Causes of Action [*sic*]".   FNBCT would request that Section 1.3(p) be struck.

d.      The APA permits Assets to be "removed" from the transaction with a commensurate reduction of the Purchase Price[8].   The DIP Agent should not be permitted to have stalking horse status with the ability to change the Purchase Price without approval of this court upon notice to all parties-in-interest, even after the Bid Deadline or the Auction.   Further, if this Court is inclined to allow modifications to the APA solely "as agreed to by the Parties", any election to remove an asset and reduce the Purchase Price should be made well before the Bid Deadline.   FNBCT would request that the APA should be modified to remove Section 3.4(b)(iii).

e.      Section 4.23 lists the bonds that have been posted by Seller or a third person "for which, upon Closing, Buyer must replace or to which Buyer will be bound or to which the Assets will be subject (unless replacement is not required by BOEM due to the financial condition of Buyer."  Schedule 4.23 lists the "Performance Bond covering South Marsh Island 41, OCS-G 1192, Bond Number SUR0030276.  That is the $6,131,417.00 bond issued by Argonaut to JX Nippon and which is ultimately supported by FNBCT.  Schedule 4.23 also lists the Argonaut Performance Bond SUR0020375 in the amount of $7,760,805.10 issued to Fieldwood.  That bond is also ultimately supported by FNBCT.  There is no specific requirement that the Buyer provide evidence at Closing that it has obtained replacement bonds in favor of third parties as required by Section 4.23.  Further, even if the APA was amended to require evidence of replacement bonds at Closing, the Debtor can waive such conditions to Closing.  The

---

[7] Schedule 2.2.
[8] Section 3.4(b)(iii)

4850-3175-6619.1
735723\000002
06/29/2017 9:04 AM

APA should be modified to provide that the contractually required replacement bonds are a non-waivable condition to Closing.

8.     While FNBCT has filed this Limited Objection and Reservation of Rights to the Emergency Motion out of an abundance of caution and to provide notice of the limited issues it believes the Court should consider, counsel for FNBCT is willing to continue to work with counsel for the Debtor and the DIP Agent in an attempt to address and resolve FNBCT's concerns with the Emergency Motion.  FNBCT understands that Debtor is negotiating with various constituencies in the case regarding the Emergency Motion and that the form of the order on the Emergency Motion as well as the form of the APA is continuing to be negotiated.  As a result, FNBCT reserves its rights to assert other and further objections to the Emergency Motion, the proposed order thereon, and the form of the associated APA as necessary at the hearing on the Emergency Motion.

WHEREFORE, FNBCT requests that the Court condition approval of the Emergency Motion (and the associated form of APA) on the form of Order on the Emergency Motion appropriately addressing the concerns of FNBCT as set out above or raised at the hearing on the Emergency Motion.  FNBCT also requests such other and further relief to which it may be justly entitled.

4850-3175-6619.1
735723\000002
06/29/2017 9:04 AM

Dated:  June 29, 2017

Respectfully submitted,

DYKEMA COX SMITH
112 E. Pecan St., Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)


By:     /s/  Deborah D. Williamson
        Deborah D. Williamson
        Texas State Bar No. 21617500

**ATTORNEYS FOR FIRST NATIONAL BANK
OF CENTRAL TEXAS**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system on this 29th day of June, 2017.

/s/  Deborah D. Williamson
Deborah D. Williamson


7