**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | **Case No. 16-34028** |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

**DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION UNDER
<u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>**


**WINSTON & STRAWN LLP**

Lydia T. Protopapas
Texas Bar No. 00797267
Southern Dist. of Texas Bar No. 21378
Jason W. Billeck
Texas Bar No. 24001740
Southern Dist. of Texas Bar No. 23802
1111 Louisiana, 25th Floor
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile:  (713) 651-2700

*Counsel for Northstar Offshore Group, LLC*

Dated:  October 23, 2017

## TABLE OF CONTENTS

**SECTION 1.** DEFINITIONS AND INTERPRETATION ....................................... 1

    A.    Definitions. ......................................................................................... 1

    B.    Interpretation; Application of Definitions and Rules of Construction. ...................... 10

    C.    Controlling Document. ........................................................................ 10

**SECTION 2.** PROFESSIONAL FEE CLAIMS AND ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ............................................................................. 11

  2.1. *Administrative Expense Claims.* ............................................................ 11

  2.2. *Professional Fee Claims.* ..................................................................... 11

  2.3. *Gap Period Claims.* ............................................................................ 11

  2.4. *Priority Tax Claims.* ........................................................................... 12

  2.5. *Other Priority Claims.* ........................................................................ 12

**SECTION 3.** CLASSIFICATION OF CLAIMS AND INTERESTS ........................... 12

  3.1. *Classification in General.* ..................................................................... 12

  3.2. *Summary of Classification.* ................................................................... 12

  3.3. *Special Provision Governing Unimpaired Claims.* ...................................... 13

  3.4. *Elimination of Vacant Classes.* ............................................................. 13

  3.5. *Voting Classes; Presumed Acceptance by Non-Voting Classes.* ..................... 13

  3.6. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.* 13

  3.7. *Controversy Concerning Impairment.* ..................................................... 14

**SECTION 4.** TREATMENT OF CLAIMS AND INTERESTS ................................ 14

  4.1. *First Lien Claims (Class 1).* .................................................................. 14

  4.2. *Second Lien Claims (Class 2).* ............................................................... 14

  4.3. *M&M Lien Claims (Class 3).* ................................................................. 15

  4.4. *General Unsecured Claims (Class 4).* ...................................................... 15

  4.5. *Equity Interests (Class 5).* .................................................................... 16

**SECTION 5.** MEANS OF IMPLEMENTATION .............................................. 16

  5.1. *Authority.* ........................................................................................ 16

  5.2. *Litigation Trust.* ................................................................................ 17

  5.3. *Corporate Action.* .............................................................................. 19

  5.4. *Withholding and Reporting Requirements.* ............................................... 19

  5.5. *Closing of the Chapter 11 Case.* ............................................................ 20

**SECTION 6.** CORPORATE GOVERNANCE ................................................. 20

6.1. ***Board of Directors and Officers.*** ......................................................................... 20

6.2. ***Wind Down.*** ................................................................................................................ 20

6.3. ***LLC Agreement.*** ......................................................................................................... 20

**SECTION 7.** DISTRIBUTIONS ............................................................................................ 20

7.1. ***Distribution Record Date.*** ........................................................................................ 20

7.2. ***Date of Distributions.*** ................................................................................................ 21

7.3. ***Delivery of Distributions.*** ......................................................................................... 21

7.4. ***Manner of Payment Under the Plan.*** ...................................................................... 21

7.5. ***Minimum Cash Distributions.*** .................................................................................. 21

7.6. ***Setoffs.*** ......................................................................................................................... 22

7.7. ***Payment of Disputed Claims.*** .................................................................................... 22

7.8. ***Allocation of Distributions Between Principal and Interest.*** .............................. 22

**SECTION 8.** PROCEDURES FOR DISPUTED CLAIMS ................................................. 22

8.1. ***Allowance of Claims.*** .................................................................................................. 22

8.2. ***Objections to Claims.*** ................................................................................................. 22

8.3. ***Estimation of Claims.*** ................................................................................................ 22

8.4. ***No Distributions Pending Allowance.*** ..................................................................... 23

8.5. ***Preservation of Claims and Right to Settle Claims.*** ............................................. 23

**SECTION 9.** EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 23

9.1. ***Rejection of Executory Contracts and Unexpired Leases.*** .................................... 23

9.2. ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.*** ................. 24

9.3. ***APA.*** .............................................................................................................................. 24

9.4. ***Modifications, Amendments, Supplements, Restatements, or Other Agreements.*** ......... 24

9.5. ***Insurance Policies.*** ..................................................................................................... 25

9.6. ***Reservation of Rights.*** ............................................................................................... 25

**SECTION 10.** CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................... 25

10.1. ***Conditions Precedent to the Effective Date.*** ........................................................ 25

10.2. ***Waiver of Conditions Precedent.*** ........................................................................... 26

10.3. ***Effect of Failure of Conditions to Effective Date.*** ............................................... 26

**SECTION 11.** EFFECT OF CONFIRMATION ................................................................... 26

11.1. ***Vesting of Assets.*** ...................................................................................................... 26

11.2. ***Release of Liens.*** ....................................................................................................... 26

11.3. ***Subordinated Claims.*** ............................................................................................... 26

11.4. ***Binding Effect.*** .......................................................................................................... 27

11.5. *Term of Injunctions or Stays.* .................................................................. 27

11.6. *Injunction Against Interference with the Plan.* ........................................ 27

11.7. *Releases by the Debtor.* ............................................................................ 27

11.8. *Releases by Holders of Claims and Interests.* .......................................... 28

11.9. *Exculpation.* ............................................................................................. 28

11.10. *Retention of Causes of Action/Reservation of Rights.* ........................... 29

11.11. *Solicitation of the Plan.* ......................................................................... 30

11.12. *Plan Supplement.* .................................................................................. 30

11.13. *Corporate Action.* ................................................................................. 30

**SECTION 12.** RETENTION OF JURISDICTION .................................................. 30

**SECTION 13.** MISCELLANEOUS PROVISIONS ................................................. 32

13.1. *Modification of the Plan.* ......................................................................... 32

13.2. *Revocation or Withdrawal of the Plan.* .................................................... 32

13.3. *Payment of Statutory Fees.* ...................................................................... 33

13.4. *Dissolution of the Committee.* .................................................................. 33

13.5. *Substantial Consummation.* ..................................................................... 33

13.6. *Severability of Plan Provisions.* ............................................................... 33

13.7. *Governing Law.* ....................................................................................... 33

13.8. *Time.* ....................................................................................................... 33

13.9. *Immediate Binding Effect.* ........................................................................ 34

13.10. *Successors and Assigns.* ......................................................................... 34

13.11. *Exhibits/Schedules* ................................................................................ 34

13.12. *Entire Agreement* ................................................................................... 34

13.13. *Notices* .................................................................................................. 34

**SECTION 1. DEFINITIONS AND INTERPRETATION**

A.      **Definitions.**

      1.1.      ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Case pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(a)(2) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred from and after the Voluntary Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

      1.2.      ***Administrative Expense Claims Bar Date*** means the first Business Day that is thirty (30) days following the Effective Date, except as otherwise specifically set forth in the Plan.

      1.3.      ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 90 days following the Effective Date, except as otherwise specifically set forth in the Plan; *provided, however,* that the Administrative Claims Objection Bar Date may be extended pursuant to an Order of the Bankruptcy Court upon a motion filed by the Debtor after notice and a hearing.

      1.4.      ***Allowed*** means, with reference to any Claim, (a) any Claim against the Debtor that has been listed in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and for which no contrary proof of Claim has been filed; (b) any Claim listed on the Schedules or included in a timely filed proof of Claim as to which no objection to allowance has been, or subsequently is, interposed in accordance with Section 8.2 of the Plan or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; (c) any Claim listed on the Schedules or included in a timely filed proof of Claim as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder; or (d) any Claim expressly allowed by a Final Order or pursuant to the terms of the Plan.

      1.5.      ***Allowed Administrative Expense and Priority Claims*** means Allowed Administrative Expense Claims, Allowed Gap Period Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims.

      1.6.      ***APA*** means that certain Asset Purchase Agreement by and between the Debtor and the Buyer, which provides for the sale of substantially all of the Debtor's Property to the Buyer pursuant to the Sale Order.

      1.7.      ***Argonaut Claim*** means any Claim asserted directly or indirectly by Argonaut Insurance Company against the Debtor and/or the Estate with the exception of claims relating to bonds issued in favor of JX Nippon Oil Exploration (U.S.A.) Limited and/or Fieldwood Energy, LLC.

      1.8.      ***Available Cash*** means (i) all Cash of the Debtor realized from its business operations, the Sale, any other sale or disposition of any of its Property, the interest earned on

invested funds, or from any other source or otherwise, and (ii) all Cash recovered by the Litigation Trustee on Causes of Action and available for distribution, less (iii) the amount of Cash (a) necessary to satisfy or discharge Allowed Professional Fee Claims, Allowed Administrative Expense and Priority Claims and Allowed Secured Claims, to the extent such Claims have not been settled, released, or otherwise discharged, and (b) estimated and retained by the Debtor to (I) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, and (II) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code.  Available Cash shall include the applicable portions of (i) excess amounts retained for Disputed Claims that become available in accordance with Section 8 of the Plan or (ii) amounts represented by undeliverable distributions in accordance with Section 7.3 of the Plan.

1.9.     ***Avoidance Actions*** means all Causes of Action commenced, or that may be commenced, by the Debtor pursuant to sections 544, 545, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

1.10.     ***Bankruptcy Code*** means title 11 of the United States Code.

1.11.     ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas or such other court having jurisdiction over the Chapter 11 Case.

1.12.     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

1.13.     ***Business Day*** means any day other than a Saturday, Sunday, or "legal holiday" as defined by Bankruptcy Rule 9006(a).

1.14.     ***Buyer*** means Northstar Offshore Ventures LLC.

1.15.     ***Cash*** means legal tender of the United States of America.

1.16.     ***Cause of Action*** means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Voluntary Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law, including, without limitation: (a) any right of setoff, counterclaim, or recoupment, and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including Avoidance Actions); (c) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (d) any state law fraudulent transfer claim; and (e) any claim against the Debtor's current or former managers, officers, or directors for damage to the Debtor or the Estate, including for breach of any duty owed to the Debtor or the Estate by any of its current or former managers, officers, or

directors; *provided, however,* that Causes of Action shall not include the right to object to Claims and Interests.

1.17.    ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code which was initially commenced in the Bankruptcy Court as an involuntary proceeding on August 12, 2016 and styled *In re Northstar Offshore Group, LLC*, Case No. 16-34028.

1.18.    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.19.    ***Claims Objection Bar Date*** means, with respect to a Claim, the first Business Day that is 90 days after the later of (a) the Effective Date or (b) the date that a proof of Claim is filed or amended, or a Claim is otherwise asserted or amended in writing, by or on behalf of a holder of such Claim; *provided, however,* that the Claims Objection Bar Date may be extended pursuant to an Order of the Bankruptcy Court upon a motion filed by the Debtor.

1.20.    ***Class*** means any group of Claims or Interests classified by the Plan pursuant to section 1122 of the Bankruptcy Code.

1.21.    ***Committee*** means the statutory committee of unsecured creditors appointed in the Chapter 11 Case.

1.22.    ***Confirmation*** means the signature of the Confirmation Order by the Bankruptcy Court.

1.23.    ***Confirmation Date*** means the date on which the Bankruptcy Court signs the Confirmation Order.

1.24.    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.25.    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be consistent in all respects with this Plan.

1.26.    ***D&O Policy*** means any insurance policy for directors, members, trustees, and officers liability maintained by the Debtor or the Estate as of the Effective Date, including, but not limited to, the ACE Express Private Company Management Indemnity Package issued to the Debtor by Westchester Fire Insurance Company.

1.27.    ***Debtor*** means Northstar Offshore Group, LLC, before, on, and after the Effective Date.

1.28.    ***DIP Agent*** means Arena Limited DIP I, LLC in its capacity as agent under the DIP Credit Agreement, and any predecessor or successor in interest thereto.

1.29.    ***DIP Credit Agreement*** has the meaning assigned in the Final DIP Order.

1.30.    ***Disallowed*** means disallowed by a Final Order of the Bankruptcy Court.

1.31.    ***Disclosure Statement*** means the disclosure statement for the Plan, which is prepared and distributed in accordance with sections 1125 and/or 1126(b) of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, and/or other applicable law.

1.32.    ***Disputed Claim*** means, with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, on or before the Confirmation Date; or (b) for which a proof of Claim or Interest for payment has been made, to the extent the Debtor or any Party in Interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.33.    ***Distribution Date*** means the date or dates, including the Initial Distribution Date, as determined by the Debtor in accordance with the terms of the Plan, on which the Debtor makes a distribution to holders of Allowed Claims.

1.34.    ***Distribution Record Date*** means the Effective Date of the Plan.

1.35.    ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.36.    ***Eleanor*** means Eleanor Fiduciary Services, LLC in its capacity as Fiscal Agent and Collateral Agent under the Fiscal Agency Agreement, together with any of its successors or assigns.

1.37.    ***Eleanor Gift Distribution*** means any Cash to which Eleanor and/or any holder of a Second Priority Note is entitled as the holder of an Allowed Second Lien Claim, which Cash shall be distributed Pro Rata as follows:  first to holders of Allowed Professional Fee Claims, if any, second to holders of Allowed Administrative Expense and Priority Claims (in accordance with the priority scheme of the Bankruptcy Code), if any, and third to holders of Allowed General Unsecured Claims; *provided, however*, that after all Allowed Professional Fee Claims, Allowed Administrative Expense and Priority Claims and Allowed General Unsecured Claims have otherwise been satisfied, settled, released, and/or discharged, any remaining Available Cash shall be distributed to Eleanor.

1.38.    ***Equity Interests*** means Class A Preferred Units in the Debtor, Class B Preferred Units in the Debtor, and Common Units in the Debtor held by the Platinum Equity Holders.

1.39.    ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.40.    ***Exculpated Parties*** means (a) the Debtor; (b) the Debtor's current and former officers, directors, and managers; (c) each of the foregoing Persons' respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, affiliates, and its and their subsidiaries, principals, partners, parents,

equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, restructuring advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such; and (d) the Committee and each of the Committee's agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case solely in their capacity as such. Notwithstanding the foregoing, the Platinum Equity Holders and all current and former members, managers, directors, and/or officers thereof are expressly excluded from this definition notwithstanding the fact that such Persons may have also been shareholders, members, managers, directors, and/or officers of the Debtor.

1.41.   ***Executory Contract*** means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

1.42.   ***Final DIP Order*** means that certain *Final Order (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Modifying Automatic Stay* (ECF No. 326) signed by the Bankruptcy Court on February 2, 2017.

1.43.   ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion has been or may be filed with respect to such order or judgment pursuant to sections 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024.

1.44.   ***First Lien Claim*** means a Secured Claim arising in connection with the Letter of Credit Loan Agreement and/or the Letter of Credit Note.

1.45.   ***Fiscal Agency Agreement*** means that certain Amended and Restated Fiscal Agency Agreement, dated as of September 18, 2014, among Holdings, as the Company, P Administrative Services, LLC (predecessor to Eleanor), as Fiscal Agent and Collateral Agent, and each of the guarantors party thereto (including the Debtor).

1.46.   ***FNBCT*** means the First National Bank of Central Texas.

1.47.   ***FNBCT Gift Distribution*** means any Cash to which FNBCT is entitled as the holder of an Allowed First Lien Claim, which Cash shall be distributed Pro Rata as follows:  first to holders of Allowed Professional Fee Claims, if any, second to holders of Allowed

Administrative Expense and Priority Claims (in accordance with the priority scheme of the Bankruptcy Code), if any, and third to holders of Allowed General Unsecured Claims.

1.48.    ***Gap Period*** means the period of time beginning on the Involuntary Petition Date and concluding on the Voluntary Petition Date.

1.49.    ***Gap Period Claim*** means a Claim arising in the ordinary course of the Debtor's business or financial affairs during the Gap Period and entitled to priority under section 507(a)(1)(3) of the Bankruptcy Code.

1.50.    ***General Unsecured Claim*** means any Claim against the Debtor which is not an Administrative Expense Claim, a Professional Fee Claim, a Gap Period Claim, a Priority Tax Claim, an Other Priority Claim, or a Secured Claim.   For the avoidance of doubt, General Unsecured Claims include deficiency Claims.

1.51.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code

1.52.    ***Holdings*** means Northstar GOM Holdings Group, LLC.

1.53.    ***Impaired***, with respect to a Claim, Interest, or Class of Claims or Interests, has the meaning set forth in sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.54.    ***Indenture*** means that certain Indenture, dated as of September 18, 2014, between Holdings, as Issuer, U.S. Bank National Association, as Trustee and Collateral Agent, and each of the guarantors party thereto (including the Debtor), which was subsequently replaced by the Fiscal Agency Agreement.

1.55.    ***Initial Distribution*** means the first distribution that the Debtor makes to holders of Allowed Claims.

1.56.    ***Initial Distribution Date*** means the date selected by the Debtor on or as soon as reasonably practicable after the Effective Date.

1.57.    ***Interest*** means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all common stock or units, preferred stock or units, or other instruments evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interests in the Debtor, that existed immediately before the Effective Date.

1.58.    ***Involuntary Petition Date*** means August 12, 2016.

1.59.    ***Letter of Credit Loan Agreement*** means that certain Loan Agreement, dated as of April 2, 2015, by and between Holdings, as Borrower, the Debtor, as Guarantor, and FNBCT, as Bank, the obligations under which are secured by a first lien and security interest in favor of FNBCT on all assets of Holdings and the Debtor.

1.60.  **Letter of Credit Note** means the promissory note issued primarily for and by Holdings in favor of FNBCT in the principal amount of $30 million, with an interest rate of 6% per annum and a maturity date of March 31, 2017, and secured by a first lien and security interest in favor of FNBCT on all assets of Holdings and the Debtor.

1.61.  **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.62.  **Litigation Trust** means a trust to be established on the Effective Date to hold and prosecute the Causes of Action pursuant to the Litigation Trust Agreement.

1.63.  **Litigation Trust Agreement** means the agreement governing the Litigation Trust to be created pursuant to Section 5.2 of the Plan.

1.64.  **Litigation Trust Committee** means the committee which, pursuant to the terms of the Litigation Trust Agreement, shall oversee the Litigation Trust and the Litigation Trustee.

1.65.  **Litigation Trustee** means James Katchadurian of CR3 Partners, LLC in his capacity as administrator of the Litigation Trust, or any of his successors in interest in such capacity, pursuant to the Litigation Trust Agreement.

1.66.  **Liquidation** means the proposed liquidation of the Debtor pursuant to and in accordance with this Plan.

1.67.  **LLC Agreement** means that certain Amended and Restated Limited Liability Company Agreement of the Debtor dated February 13, 2012, and all subsequent amendments thereto.

1.68.  **M&M Lien** means a mechanic's or materialman's lien and/or mineral lien on the Property that is not a Senior Statutory Lien but that is otherwise (a) valid, enforceable, and non-avoidable as of the Voluntary Petition Date and perfected under non-bankruptcy law; and (b) timely perfected as permitted by section 546(b) of the Bankruptcy Code.

1.69.  **M&M Lien Claim** means a Secured Claim arising in connection with an M&M Lien that is not payable by the Buyer pursuant to the Sale Order.

1.70.  **Order** means a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

1.71.  **Other Priority Claim** means a Claim against the Debtor, other than an Administrative Expense Claim, Professional Fee Claim, Gap Period Claim, or Priority Tax Claim, which is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.72.  **Party in Interest** means a Person with a legal, equitable, or beneficial interest at issue in the Chapter 11 Case.

1.73.  **Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other entity.

-7-

1.74.   **Plan** means this chapter 11 plan of liquidation, including the exhibits hereto (including the Plan Supplement), as may be amended or modified from time to time in accordance with the terms hereof.

1.75.   **Plan Supplement** means a supplemental appendix to the Plan containing, among other things, the Litigation Trust Agreement and the list of Causes of Action to be retained by the Debtor and/or the Litigation Trust; *provided, that* through the Effective Date, the Debtor shall have the right to amend the Plan Supplement as long as such amendment is consistent with the Plan in all respects.

1.76.   **Platinum Equity Holders** means Holdings; PPVA Oil and Gas, LLC; PPCO; Platinum Partners Liquid Opportunity Master Fund LP; and PPVA.

1.77.   **Post-August 30, 2016 PPVA** means PPVA on and after August 30, 2016, which is the date on which Matthew James Wright and Christopher Barnett Kennedy of RHSW (Caribbean) Limited were appointed as joint official liquidators for PPVA.

1.78.   **Post-December 19, 2016 PPCO** means PPCO on and after December 19, 2016, which is the date on which of Bart Schwartz was appointed as receiver for PPCO.

1.79.   **PPVA** means Platinum Partners Value Arbitrage Fund, LP.

1.80.   **PPCO** means Platinum Partners Credit Opportunities Master Fund LP.

1.81.   **Priority Tax Claim** means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.82.   **Pro Rata** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

1.83.   **Professional** means (a) any professional retained in the Chapter 11 Case pursuant to an Order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code, (b) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code, or (c) any Person whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to section 1129(a)(4) of the Bankruptcy Code.

1.84.   **Professional Fee Claim** means a Claim for services rendered or costs incurred by a Professional on or after the Voluntary Petition Date through the Effective Date.

1.85.   **Property** means all property of the Estate and the Debtor, whether tangible or intangible, and, without limitation, any and all real or personal property, including all Cash and cash equivalents, licenses, certifications, tax refunds, accounts receivable, inventory, Causes of Action, and equipment.

1.86.   **Released Parties** means collectively: (a) the Debtor; (b) the Committee; (c) the DIP Agent; (d) the Buyer; (e) Eleanor; (f) New Mountain Finance Corporation; (g) Post-August 30, 2016 PPVA; (h) Post-December 19, 2016 PPCO; and (i) with respect to each of the foregoing

entities in clauses (a) through (h), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts, or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, restructuring advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees in their capacity as such; *provided, however,* that, for the avoidance of doubt, the Platinum Equity Holders and all current and former members, managers, directors, and/or officers thereof, and each of their successors, assigns, heirs, executors, estates, agents, servants, and professionals, are expressly excluded from this definition notwithstanding the fact that such Persons may have also been shareholders, members, managers, directors, and/or officers of the Debtor, and/or predecessors of Post-August 30, 2016 PPVA and Post-December 19, 2016 PPCO.

1.87.   ***Sale*** means the sale of substantially all of the Debtor's Property to the Buyer pursuant to the Sale Order.

1.88.   ***Sale Order*** means that certain *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (ECF No. 792) signed by the Bankruptcy Court on August 2, 2017.

1.89.   ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.90.   ***Second Lien Claim*** means any Secured Claim arising in connection with the Indenture, the Fiscal Agency Agreement, and/or the Second Priority Notes.

1.91.   ***Second Priority Notes*** means the 12% Second Priority Senior Secured Notes due September 18, 2019 issued by Holdings in the principal amount of $80 million pursuant to the Indenture and the Fiscal Agency Agreement.

1.92.   ***Secured Claim*** means a Claim to the extent (a) secured by property of the Debtor or the Estate, the amount of which is equal to or less than the value of such property (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.93.   ***Senior Statutory Lien*** shall have the meaning assigned to it in Paragraph 6(a) of the Final DIP Order.

1.94.   ***Tax*** means any federal, state, local, or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under § 59A of the Internal Revenue Code of 1986, as amended), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including

any interest, penalty, or addition thereto, whether disputed or not, and including any liability under Treasury Regulation § 1.1502-6 or any analogous or similar state, local, or non-U.S. law or regulation.

1.95. ***Unexpired Lease*** means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.96. ***Unimpaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.97. ***U.S. Trustee*** means the office of the United States Trustee for Region 7 located at 515 Rusk, Houston, Texas 77002.

1.98. ***Voluntary Petition Date*** means December 2, 2016.

**B.     Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or on those terms and conditions, and in each case shall include any amendment, restatement, or other modification made in accordance herewith; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.     Controlling Document.**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however,* that if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2. PROFESSIONAL FEE CLAIMS AND ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor agree to a different treatment, the Debtor shall pay to each holder of an Allowed Administrative Expense Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided by Section 2.2 hereof, requests for payment of Administrative Expense Claims must be filed and served on the Debtor no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve requests for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor or its Estate, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.

The Debtor must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.2.    *Professional Fee Claims.*

All Professionals seeking an award by the Bankruptcy Court of a Professional Fee Claim shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date.  Except to the extent that a holder of an Allowed Professional Fee Claim and the Debtor agree to a different treatment, the Debtor shall pay to each holder of a Professional Fee Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, Cash in such amounts as are Allowed by the Bankruptcy Court upon the later of (a) the Effective Date and (b) within five (5) days of the date upon which the Order relating to any such Allowed Professional Fee Claim is entered.

2.3.    *Gap Period Claims.*

Except to the extent that a holder of an Allowed Gap Period Claim and the Debtor agree to a different treatment, each holder of an Allowed Gap Period Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, at the sole option of the Debtor, (a) Cash in an amount equal to such Allowed Gap Period Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date and (ii) the first Business

Day after the date that is thirty (30) calendar days after the date such Gap Period Claim becomes an Allowed Gap Period Claim; or (b) such lesser amount as to which the holder of an Allowed Gap Period Claim may agree, in writing.

2.4.   ***Priority Tax Claims.***

Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtor agree to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, at the sole option of the Debtor, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; *provided, however*, that the Debtor may elect to provide the holder of Allowed Priority Tax Claim with regular installment payments pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (b) such lesser amount as to which the holder of an Allowed Priority Tax Claim may agree, in writing.

2.5.   ***Other Priority Claims.***

Except to the extent that a holder of an Allowed Other Priority Claim and the Debtor agree to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, at the sole option of the Debtor, (a) Cash in an amount equal to such Allowed Other Priority Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Other Priority Claim becomes an Allowed Other Priority Claim; or (b) such lesser amount as to which the holder of an Allowed Other Priority Claim may agree, in writing.

## SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS

3.1.   ***Classification in General.***

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided, however,* that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, discharged, or otherwise settled prior to the Effective Date.

3.2.   ***Summary of Classification.***

The following table designates the Classes of Claims against and Interests in the Debtor, and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, Gap Period Claims, Priority Tax Claims, and Other Priority Claims have not been classified and are therefore excluded from the

Classes of Claims and Interests set forth in this Section 3.  All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | First Lien Claims | Impaired | Yes |
| 2 | Second Lien Claims | Impaired | Yes |
| 3 | M&M Lien Claims | Unimpaired | No (deemed to accept) |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

3.3.    ***Special Provision Governing Unimpaired Claims.***

Except as otherwise provided herein, nothing under the Plan shall affect the rights of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.4.    ***Elimination of Vacant Classes.***

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.5.    ***Voting Classes; Presumed Acceptance by Non-Voting Classes.***

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

3.6.    ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.***

The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify the Plan in accordance with Section 13.1 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

-13-

3.7.    ***Controversy Concerning Impairment.***

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## SECTION 4. TREATMENT OF CLAIMS AND INTERESTS

4.1.    ***First Lien Claims (Class 1).***

(a)    <u>Classification</u>:  Class 1 consists of the First Lien Claims.

(b)    <u>Allowance</u>:  Notwithstanding any other provision of this Plan to the contrary, on the Effective Date, the First Lien Claims shall be Allowed as Secured Claims pursuant to section 506(b) of the Bankruptcy Code having first lien priority on account of unpaid principal, accrued and unpaid interest, letters of credit obligations, plus additional amounts for unpaid Additional Obligations (as defined below) on account of any fees, costs, expenses, disbursements, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtor's obligations pursuant to the Letter of Credit Loan Agreement, the Letter of Credit Note, and/or the Final DIP Order (the foregoing, collectively, "<u>Additional Obligations</u>"), in each case, not subject either in whole or in part to offset, disallowance, or avoidance under chapter 5 of the Bankruptcy Code or otherwise, or any legal, contractual, or equitable theory for Claims or Causes of Action (including, without limitation, subordination, recharacterization, recoupment, or unjust enrichment) that any Person, including, but not limited to, the Debtor and its Estate, may be entitled to assert against FNBCT or the First Lien Claim.

(c)    <u>Treatment</u>:  Except to the extent that the holder of an Allowed First Lien Claim agrees to a less favorable treatment, the holder of an Allowed First Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed First Lien Claim, one of the following treatments, at the discretion of the Debtor: (i) payment of such Allowed First Lien Claim in full in Cash, including the payment of any interest required under section 506(b) of the Bankruptcy Code; or (ii) payment of such Allowed First Lien Claim in full in equal installments over a period not to exceed five (5) years after the Effective Date, with interest (if applicable) at a rate to be determined by the Bankruptcy Court; *provided, however,* that any Cash or other distribution to which the holder of an Allowed First Lien Claim is entitled pursuant to this paragraph shall be distributed as an FNBCT Gift Distribution.

(d)    <u>Voting</u>:  Class 1 is Impaired, and the holders of the First Lien Claims are entitled to vote to accept or reject the Plan.

4.2.    ***Second Lien Claims (Class 2).***

(a)    <u>Classification</u>:  Class 2 consists of the Second Lien Claims.

-14-

(b)     Treatment:  To the extent that a Second Lien Claim is determined to be an Allowed Second Lien Claim, the holder of such Allowed Second Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Second Lien Claim, one of the following treatments, at the discretion of the Debtor: (i) payment of such Allowed Second Lien Claim in full in Cash, including the payment of any interest required under section 506(b) of the Bankruptcy Code; (ii) payment of such Allowed Second Lien Claim in full in equal installments over a period not to exceed five (5) years after the Effective Date, with interest (if applicable) at a rate to be determined by the Bankruptcy Court; (iii) such other treatment necessary to satisfy section 1129(b)(2)(A) of the Bankruptcy Code; or (iv) such other treatment as may be agreed to by the holder of an Allowed Second Lien Claim; *provided, however,* that any Cash or other distribution to which the holder of an Allowed Second Lien Claim is entitled pursuant to this paragraph shall be distributed as an Eleanor Gift Distribution.  To the extent that all or any portion of a Second Lien Claim is determined to be an Allowed General Unsecured Claim, the holder of such Second Lien Claim shall be entitled to the treatment accorded to Class 4.

(c)     Voting:  Class 2 is Impaired, and the holders of the Second Lien Claims are entitled to vote to accept or reject the Plan.

### 4.3.    *M&M Lien Claims (Class 3).*

(a)     Classification:  Class 3 consists of the M&M Lien Claims.

(b)     Treatment:  Except to the extent that the holder of an Allowed M&M Lien Claim agrees to a less favorable treatment, the holder of an Allowed M&M Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed M&M Lien Claim, at the discretion of the Debtor: (i) payment of such Allowed M&M Lien Claim in full in Cash, including the payment of any interest required under section 506(b) of the Bankruptcy Code; (ii) payment of such Allowed M&M Lien Claim in full in equal installments over a period not to exceed five (5) years after the Effective Date, with interest (if applicable) at a rate to be determined by the Bankruptcy Court; or (iii) such other treatment necessary to satisfy section 1129(b)(2)(A) of the Bankruptcy Code.

(c)     Voting:  Class 3 is Unimpaired, and the holders of the M&M Lien Claims are deemed to accept the Plan.

### 4.4.    *General Unsecured Claims (Class 4).*

(a)     Classification:  Class 4 consists of the General Unsecured Claims.

(b)     Treatment:  Provided that there are no holders of Allowed Professional Fee Claims or Allowed Administrative Expense and Priority Claims or Allowed Secured Claims whose claims have not been settled, satisfied, discharged, and/or released, the holders of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed

General Unsecured Claims, their Pro Rata share of the FNBCT Gift Distribution, if any, the Eleanor Gift Distribution, if any, and/or Available Cash, if any.

(c)    <u>Voting</u>:  Class 4 is Impaired, and the holders of the General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.5.    ***Equity Interests (Class 5).***

(a)    <u>Classification</u>:  Class 5 consists of the Equity Interests.

(b)    <u>Treatment</u>:  On the Effective Date, all Equity Interests shall be deemed cancelled, and the holders of Equity Interests shall not receive or retain any property under the Plan on account of such Interests.

(c)    <u>Voting</u>:  Class 5 is Impaired, and the holders of the Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of the Equity Interests are not entitled to vote to accept or reject the Plan.

## SECTION 5. MEANS OF IMPLEMENTATION

5.1.    ***Authority.***

The Debtor shall have the authority and right, without the need for Bankruptcy Court approval (unless otherwise expressly indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(a)    except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any and all Claims against the Debtor;

(b)    make distributions to holders of Allowed Claims in accordance with the Plan;

(c)    exercise its reasonable business judgment to direct and control the wind down, liquidation, sale, and/or abandonment of the remaining Property of the Debtor under the Plan and in accordance with applicable law as necessary to maximize distributions to holders of Allowed Claims;

(d)    prosecute all Causes of Action on behalf of the Debtor, elect not to pursue any such Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Debtor may determine is in the best interests of the Debtor and the holders of Allowed Claims; *provided, however,* that the Debtor shall transfer all Causes of Action to the Litigation Trust pursuant to Section 5.2 herein;

(e)    make payments to professionals who will continue to perform in their current capacities;

(f)     retain professionals to assist in performing duties under the Plan;

(g)     maintain books, records, and accounts;

(h)     obtain any prudent or necessary insurance;

(i)     invest its Cash and any income earned thereon;

(j)     incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals;

(k)     administer tax obligations, including (i) filing tax returns and paying tax obligations; (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of the Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of the Debtor ending after the Voluntary Petition Date through the Liquidation, as determined under applicable tax laws; and (iii) representing the interest and account of the Debtor or its Estate before any taxing authority in all matters, including, without limitation, any action, suit, proceeding, or audit;

(l)     prepare and file any and all informational returns, reports, statements, returns, or disclosures relating to the Debtor that are required hereunder by any Governmental Unit or applicable law;

(m)     pay statutory fees in accordance with Section 13.3 of the Plan; and

(n)     perform other duties and functions.

5.2.    ***Litigation Trust.***

(a)     <u>Transfer of Causes of Action</u>. On the Effective Date, the Debtor and the Estate shall preserve, irrevocably transfer, and assign all Causes of Action to the Litigation Trust, with good, clean title to such property, free and clear of all Liens, charges, Claims, claims, encumbrances, Interests, and interests.  On the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all Causes of Action, as well as the rights and powers of the Estate applicable to the Causes of Action, shall automatically vest in the Litigation Trust.  The Litigation Trust shall be established for the sole purpose of prosecuting the Causes of Action and distributing the proceeds thereof in accordance with the Plan and the Litigation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business.

(b)     <u>Management and Oversight</u>. The Litigation Trust shall be administered by the Litigation Trustee and overseen by the Litigation Trust Committee, the latter of which shall be identified prior to the conclusion of the Confirmation Hearing.

(c)     <u>Beneficiaries and Distributions</u>.  Upon the creation of the Litigation Trust, holders of Allowed Claims shall become the beneficiaries of the Litigation Trust pursuant to the Litigation Trust Agreement, as their respective interests may appear in

accordance with the terms of the Plan.  The Litigation Trustee may, pursuant to the Litigation Trust Agreement and the Plan, make interim distributions to holders of Allowed Claims in the exercise of reasonable business judgment.  Upon the settlement, conclusion of litigation, and collection of all of the Causes of Action in the Litigation Trust, after the payment of all costs and expenses of collection, the Litigation Trustee must distribute the corpus of the Litigation Trust Pro Rata to the holders of Allowed Claims in accordance with the Plan and the Litigation Trust Agreement.

(d)     Authority.  The Litigation Trustee shall, subject to the terms of the Litigation Trust Agreement and the Litigation Trust Committee, have full power, authority, and standing to prosecute, compromise, or otherwise resolve the Causes of Action.  The Litigation Trust, acting by and through the Litigation Trustee pursuant to the Litigation Trust Agreement, shall be authorized to exercise and perform all rights and powers held by the Debtor and the Estate with respect to the Litigation Trust, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, representative appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Estate, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Causes of Action.  Neither the Debtor nor the Estate shall be subject to any counterclaims with respect to the Causes of Action.

(e)     Retention of Professionals.  The Litigation Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties on such terms as the Litigation Trustee deems appropriate without Bankruptcy Court approval.  The Litigation Trustee may retain any Professional who represented any Party in Interest in the Chapter 11 Case if he deems it an appropriate exercise of his business judgment.

(f)     Funding.  In no event later than ten (10) days after the Effective Date, pursuant to Paragraph 2.1(iv) of the APA, the Buyer shall transfer $150,000.00 in Cash to the Debtor or the Litigation Trust to pay the expenses of the Litigation Trustee and his professionals for administering the Litigation Trust and prosecuting the Causes of Action in accordance with the Plan and the Litigation Trust Agreement.  The Litigation Trustee may be able to supplement this initial funding through settlement payments and the collection of judgments, by borrowing funds to finance litigation, or by retaining contingent fee counsel.

(g)     Party in Interest.  For the avoidance of doubt, the Litigation Trust is a Party in Interest with respect to all objections to any Claim relating to a Cause of Action and all compromises of such objections.

(h)    <u>Binding Effect of Litigation Trust Agreement</u>.  For the avoidance of doubt, the Debtor, the Litigation Trustee, and the Litigation Trust Committee shall be bound by the terms of the Litigation Trust Agreement.

5.3.    ***Corporate Action.***

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Litigation Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtor, or any other Person.  All matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect without any requirement of further action by the Debtor or the Estate.

Upon the Effective Date or as soon as reasonably practicable thereafter, the existing board of managers of the Debtor shall be dissolved without any further action required on the part of such entities, their members, their managers, or their officers, and any all remaining officers or managers of the Debtor shall be dismissed without any further action required on their part.  The members, managers, and officers of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of this Section 5.3.

The authorizations and approvals contemplated by this Section 5.3 shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

5.4.    ***Withholding and Reporting Requirements.***

(a)    <u>Withholding Rights</u>.  In connection with the Plan, any party making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any Taxes, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    <u>Forms</u>.  Any Person entitled to receive a distribution under the Plan shall, upon request, deliver to the Debtor an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt and so notifies the Debtor.  If such request is made by the Debtor and such Person fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall

irrevocably revert to the Debtor, and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtor and its Property.

### 5.5. *Closing of the Chapter 11 Case.*

When (a) all Disputed Claims have become Allowed Claims or Disallowed Claims, (b) the Litigation Trust has been dissolved pursuant to the Litigation Trust Agreement, (c) all remaining Available Cash has been distributed in accordance with the Plan, and (d) the Chapter 11 Case has been fully administered, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6. CORPORATE GOVERNANCE

### 6.1. *Board of Directors and Officers.*

On the Effective Date, James Katchadurian of CR3 Partners, LLC shall be appointed as the sole officer and manager of the Debtor.  The Debtor shall elect such additional manager(s) and officer(s) as it deems necessary to implement the Plan and the actions contemplated herein.

### 6.2. *Wind Down.*

After the Effective Date, pursuant to the Plan, the Debtor shall, in an expeditious but orderly manner, wind down, sell, and otherwise liquidate and convert its Property to Cash, with no objective to continue or conduct a trade or business except to the extent reasonably necessary to and consistent with the Liquidation and orderly wind down of the Debtor, and shall not unduly prolong the duration of the Liquidation and the wind down.

Upon a certification to be filed with the Bankruptcy Court by the Debtor of (a) all distributions having been made, (b) completion of all duties of the Debtor and the Litigation Trust under the Plan, and (c) entry of a final decree closing the Chapter 11 Case, the Debtor shall be deemed to be dissolved without any further action, including the filing of any documents with the secretary of state for the state in which the Debtor is formed or any other jurisdiction.

### 6.3. *LLC Agreement.*

As of the Effective Date, the LLC Agreement shall be amended to the extent necessary to carry out the provisions of the Plan.  The amended LLC Agreement and any other necessary corporate documents shall be contained in the Plan Supplement.

## SECTION 7. DISTRIBUTIONS

### 7.1. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its respective agents shall be deemed closed, and there shall be no further changes in the record holders of any Claims or Interests.  The Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

7.2.    ***Date of Distributions.***

Except as otherwise provided herein, the Debtor shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date.  Thereafter, the Debtor shall from time to time determine the subsequent Distribution Dates, subject to the provisions of this Plan; *provided, that,* other than as discussed below, the Debtor is required to distribute to the holders of Allowed Claims, at least annually, all Available Cash on hand.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Debtor shall retain an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  For the avoidance of doubt, to the extent a holder of a Disputed Claim has filed duplicative claims (in the judgment of the Debtor), the Debtor shall be required to retain an amount equal to only one of the Disputed Claims.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Debtor shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim.

7.3.    ***Delivery of Distributions.***

In the event that any distribution to any holder of a Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtor has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Distribution Date. After such date, all unclaimed property or interests in property shall be redistributed (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to holders of Allowed Claims pursuant to the Plan without need for a further order by the Bankruptcy Court, and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

7.4.    ***Manner of Payment Under the Plan.***

At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer.

7.5.    ***Minimum Cash Distributions.***

The Debtor shall have no obligation to make a distribution that is less than Fifty Dollars ($50.00) in Cash.

7.6.    ***Setoffs.***

Except for Claims that are expressly Allowed hereunder, the Debtor may, but shall not be required to, set off against any Claim or Interest (for purposes of determining the Allowed amount of such Claim or Interest on which distribution shall be made) any claims of any nature whatsoever that the Debtor may have against the holder of such Claim or Interest; *provided, that* neither the Debtor's failure to enforce such a setoff nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right the Debtor may have against the holder of such Claim or Interest.

7.7.    ***Payment of Disputed Claims.***

As Disputed Claims are resolved pursuant to Section 8 hereof, the Debtor shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.  Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Debtor in the Debtor's sole discretion.

7.8.    ***Allocation of Distributions Between Principal and Interest.***

Except as otherwise provided in the Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan comprises both indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim, and then to accrued but unpaid interest.

## SECTION 8. PROCEDURES FOR DISPUTED CLAIMS

8.1.    ***Allowance of Claims.***

After the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until (a) such Claim is deemed Allowed under this Plan or the Bankruptcy Code, or (b) the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

8.2.    ***Objections to Claims.***

As of the Effective Date, only the Debtor may interpose and prosecute objections to Claims.  The Debtor must serve and file such objections on or before (a) the Claims Objection Bar Date or (b) such later date as ordered by the Bankruptcy Court.

8.3.    ***Estimation of Claims.***

On or before the Claims Objection Bar Date or such later date as ordered by the Bankruptcy Court, the Debtor may request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the

Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.

All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 8.4.   *No Distributions Pending Allowance.*

If the Debtor files an objection to a Claim as set forth in Section 8.2, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.5.   *Preservation of Claims and Right to Settle Claims.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims and Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, without the approval of the Bankruptcy Court, subject to the terms of Section 8.2 hereof, the Confirmation Order, the Litigation Trust Agreement, and any other contract, instrument, release, indenture, or other agreement entered into in connection herewith.

## SECTION 9. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1.   *Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, including Section 9.5 herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) is subject to a pending motion to assume as of the Effective Date; (b) was previously assumed or assumed and assigned to a third party during the pendency of the Chapter 11 Case, including, but not limited to, the Executory Contracts and Unexpired Leases assumed and assigned to the Buyer in connection with the Sale; (c) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (d) is a D&O Policy or an insurance policy; or (e) is the APA.

9.2.   ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.***

Unless an Order of the Bankruptcy Court otherwise provides for an earlier date, any proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Clerk of the Court and the Debtor no later than thirty (30) days after the Confirmation Date.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtor no later than the deadline to file objections to the Plan pursuant to the Bankruptcy Code and Bankruptcy Rules.

Any holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which a proof of Claim is not timely filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim or (b) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claim arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and unenforceable against the Debtor, the Estate, or the Property, and shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by Order of the Bankruptcy Court.

9.3.   ***APA.***

The Debtor's assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Buyer's rights and obligations, including any cure obligations assumed by the Buyer pursuant to the APA, with respect to any Executory Contract or Unexpired Lease assigned to the Buyer pursuant to the terms of the APA and the Sale Order.  For the avoidance of doubt, the APA is being assumed and ratified by the Debtor and will remain enforceable by the parties thereto.

9.4.   ***Modifications, Amendments, Supplements, Restatements, or Other Agreements.***

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contracts or Unexpired Leases, or the validity, priority, or amount of any Claims that may arise in connection therewith.

9.5.    ***Insurance Policies.***

To the extent any insurance policy of the Debtor is an Executory Contract, the Debtor shall assume each such insurance policy, including any D&O Policy, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless (a) the Debtor previously rejected such insurance policy pursuant to an Order of the Bankruptcy Court or (b) such insurance policy is the subject of a motion to reject pending on the Effective Date.  Coverage for defense and indemnity under any D&O Policy shall remain available to all Persons falling within the definition of "Insured" in such D&O Policy.

9.6.    ***Reservation of Rights.***

Neither the exclusion nor the inclusion of any contract or lease in the APA or the Sale Order, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that the Debtor or the Estate has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, assignment, or rejection, the Debtor shall have sixty (60) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## SECTION 10. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

10.1.    ***Conditions Precedent to the Effective Date.***

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred, and the Confirmation Order shall not be subject to any stay;

(b)    all ancillary documents necessary to implement and confirm the Plan shall have been approved by the Debtor or waived in writing;

(c)    all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan shall have been effected or executed and delivered; and

(d)    all governmental and third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

10.2.    *Waiver of Conditions Precedent.*

Each of the conditions precedent in Section 10.1, other than the condition set forth in Section 10.1(a), may be waived in writing by the Debtor.

10.3.    *Effect of Failure of Conditions to Effective Date.*

Unless otherwise extended by the Debtor, if the Effective Date does not occur within thirty (30) days of the Confirmation Date, or if the Confirmation Order is vacated, (a) no distributions shall be made, (b) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) all of the Debtor's obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity, or to prejudice in any manner the rights of the Debtor or any other entity in any further proceedings involving the Debtor or otherwise.

## SECTION 11. EFFECT OF CONFIRMATION

11.1.    *Vesting of Assets.*

On the Effective Date, except as provided pursuant to this Plan and the Confirmation Order, and pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Debtor's Estate shall vest in the Debtor and/or the Litigation Trust, as applicable, for the purpose of liquidating the Estate and consummating the Plan.

11.2.    *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or documents created pursuant to the Plan or the Sale, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Property of the Debtor or the Estate shall be fully released, settled, and compromised in exchange for any right to a distribution from the Debtor as provided in this Plan, and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any Property of the Debtor or the Estate shall revert to the Debtor.

11.3.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise; *provided, however,* that pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to re-classify any Claim or Interest in accordance with any contractual, legal, or equitable subordination right relating thereto.

11.4.   ***Binding Effect.***

(a)     Subject to Section 11.4(b) below, confirmation of the Plan does not provide the Debtor with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan.

(b)     Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

11.5.   ***Term of Injunctions or Stays.***

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case, under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the date indicated in the order providing for such injunction or stay and the date the Chapter 11 Case is closed.

11.6.   ***Injunction Against Interference with the Plan.***

From and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, Cause of Action, interest, or remedy released or to be released pursuant to the Plan or the Confirmation Order.

11.7.   ***Releases by the Debtor.***

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties in facilitating and implementing the Liquidation, and the waiver and/or subordination of certain Claims by certain of the Released Parties as memorialized by the Eleanor Gift Distribution and the FNBCT Gift Distribution, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtor and the Estate from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), remedies, losses, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtor or the Estate, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, (a) the Debtor; (b) the Chapter 11 Case; (c) the purchase, sale, or rescission of the purchase or sale of any security of the Debtor; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan; (e) the business or contractual**

arrangements between any Debtor and any Released Party; (f) the Liquidation; (g) the restructuring of any Claim or Interest before or during the Chapter 11 Case; (h) the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, or preparation thereof; (i) the solicitation of votes with respect to the Plan; or (j) any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes fraud, gross negligence, or willful misconduct.

11.8.   *Releases by Holders of Claims and Interests.*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate and implement the Liquidation, and the waiver and/or subordination of certain Claims by certain of the Released Parties against the Debtor, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed forever released and discharged, to the maximum extent permitted by law and approved by the Bankruptcy Court, by (a) the holders of all Claims or Interests who elect to execute a release in favor of such Released Parties on their respective Ballots, (b) the holders of all Claims or Interests that are Unimpaired under the Plan, (c) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, and (d) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, in each case from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), remedies, losses, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtor or its Estate, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, (a) the Debtor; (b) its Estate; (c) the Chapter 11 Case; (d) the purchase, sale, or rescission of the purchase or sale of any security of the Debtor; (e) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan; (f) the business or contractual arrangements between the Debtor and any Released Party; (g) the Liquidation; (h) the restructuring of any Claim or Interest before or during the Chapter 11 Case; (i) the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, or preparation thereof; (j) the solicitation of votes with respect to the Plan; or (k) any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence, or willful misconduct.

11.9.   *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action (including

**Avoidance Actions), remedy, loss, and liability for any claim in connection with or arising out of (a) the administration of the Chapter 11 Case; (b) the negotiation and pursuit of the Disclosure Statement, the Liquidation, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (c) the funding of the Plan; (d) the occurrence of the Effective Date; (e) the administration of the Plan or the property to be distributed under the Plan; or (f) the transactions in furtherance of any of the foregoing;** *provided, however,* **that the exculpation provided in this paragraph shall not apply to an Exculpated Party's fraud, gross negligence, or willful misconduct.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

   11.10.   *Retention of Causes of Action/Reservation of Rights.*

   (a)   Except as otherwise provided herein, including Sections 11.6, 11.7, 11.8, and 11.9, pursuant to section 1123(b) of the Bankruptcy Code, the Debtor or the Litigation Trust, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person without the approval of the Bankruptcy Court, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a crossclaim, counterclaim, and/or Claim for setoff seeking affirmative relief against the Debtor, or its officers, directors, or representatives; and (ii) the turnover of any Property of the Debtor or the Estate; *provided, however,* that the Debtor and the Litigation Trust shall not retain any Claims or Causes of Action against the Released Parties (other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence, or willful misconduct, which Claims or Causes of Action are hereby preserved).  The Debtor or the Litigation Trust, as applicable, may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor, the Estate, and the Parties in Interest.

   (b)   Except as otherwise provided herein, including Sections 11.6, 11.7, 11.8, and 11.9, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately before the Voluntary Petition Date against or with respect to any Claim left Unimpaired by the Plan; *provided, however,* that the Debtor and the Litigation Trust shall not retain any Claims or Causes of Action against the Released Parties (other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence, or willful misconduct, which Claims or Causes of Action are hereby preserved).  The Debtor or the Litigation Trust, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that they had immediately before the Voluntary Petition Date with respect to any Claim left Unimpaired by the Plan as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim

left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor or the Litigation Trust, as applicable, to the same extent as if the Chapter 11 Case had not been commenced.

### 11.11. *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

### 11.12. *Plan Supplement.*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court no less than five (5) days before the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours and will also be posted at http://cases.primeclerk.com/northstar.

### 11.13. *Corporate Action.*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtor and any corporate or limited liability company action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, managers, directors, officers, members, or partners of the Debtor.  The authorizations and approvals contemplated by this Section 11.13 shall be effective notwithstanding any requirements under non-bankruptcy law.

## SECTION 12. RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)      to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation, or payment of Claims or Interests resulting therefrom;

(b)      to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)      to ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished as provided herein;

(d)      to consider Claims or Interests and the allowance, classification, priority, compromise, estimation, or payment of Claims or Interests;

(e)      to enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)      to issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other Order;

(g)      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, or to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, the Plan Supplement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)      to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by Professionals before the Confirmation Date;

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the APA, the Sale Order, the Plan, the Confirmation Order, or any other agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to take any action and issue any Order as may be necessary to construe, interpret, enforce, implement, execute, or consummate the Plan or to maintain the integrity of the Plan following consummation;

(k)      to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, or similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(l)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)      to adjudicate, decide, or resolve any Causes of Action (including Avoidance Actions);

(o)      to adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(p)     to resolve any cases, controversies, suits, disputes, or Causes of Action (including Avoidance Actions) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid;

(q)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(r)     to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, any bar date established in the Chapter 11 Case, or any deadline for responding or objecting to the amount of a payment to cure a monetary default to permit the Debtor to assume or assign an Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(s)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(t)     to enter a final decree closing the Chapter 11 Case;

(u)     to enforce all Orders previously entered by the Bankruptcy Court;

(v)     to recover all Property of the Debtor and the Estate, wherever located; and

(w)     to hear and determine any rights, Claims, or Causes of Action (including Avoidance Actions) held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13. MISCELLANEOUS PROVISIONS

### 13.1.   *Modification of the Plan.*

This Plan may be altered, amended, modified, or supplemented by the Debtor before or after the Confirmation Date in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  A holder of an Allowed Claim or Allowed Interest that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

### 13.2.   *Revocation or Withdrawal of the Plan.*

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, or (iv) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

### 13.3.   *Payment of Statutory Fees.*

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtor.  Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law, and the Debtor shall continue to file reports to show the calculation of such fees for the Debtor's Estate until the Chapter 11 Case is closed under section 350(a) of the Bankruptcy Code.

### 13.4.   *Dissolution of the Committee.*

On the Effective Date, the Committee shall dissolve automatically, and the members of the Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date by the Committee and any professionals and/or advisors to the Committee.

### 13.5.   *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

### 13.6.   *Severability of Plan Provisions.*

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.7.   *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### 13.8.   *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.9. ***Immediate Binding Effect.***

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable, and deemed binding upon, and inure to the benefit of, the Debtor, the Litigation Trust, the holders of Claims and Interests (irrespective of whether holders of such Claims and Interests are deemed to have accepted the Plan), the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

13.10. ***Successors and Assigns.***

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or permitted assign, if any, of each Person.

13.11. ***Exhibits/Schedules***

All exhibits and schedules to the Plan, the Plan Supplement, and the Exhibits to the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein.

13.12. ***Entire Agreement***

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.13. ***Notices***

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission or e-mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Northstar Offshore Group, LLC
> 11 Greenway Plaza, Suite 2800
> Houston, Texas 77046
> Telephone: (713) 626-9696
> Attn:   Avery C. Alcorn
>           James Katchadurian
> Email: AAlcorn@nstaroffshore.com
>           James.Katchadurian@cr3partners.com

> with a copy to:

> Winston & Strawn LLP
> 1111 Louisiana, 25th Floor
> Houston, TX 77002

Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Attn:   Lydia T. Protopapas, Esq.
        Jason W. Billeck, Esq.
Email: LProtopapas@winston.com
       JBilleck@winston.com


After the Effective Date, the Debtor has authority to send a notice to Persons that, to continue to receive documents pursuant to Bankruptcy Rule 2002, must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtor is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have filed such renewed requests.

Dated: October 23, 2017                    Respectfully submitted,

                                           Northstar Offshore Group, LLC

                                           By: */s/ Avery C. Alcorn*
                                           Name: Avery C. Alcorn
                                           Title: Chief Financial Officer and Senior
                                           Vice President