IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | **Case No. 16-34028** |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

**DEBTOR'S MOTION FOR ENTRY OF ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) DETERMINING DATES, PROCEDURES, AND FORMS APPLICABLE TO SOLICITATION PROCESS, (III) ESTABLISHING VOTE TABULATION PROCEDURES, AND (IV) ESTABLISHING OBJECTION DEADLINE AND SCHEDULING HEARING <u>TO CONSIDER CONFIRMATION OF PLAN</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE BY NOVEMBER 20, 2017. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MOTION ON NOVEMBER 21, 2017, AT 1:30 P.M. IN COURTROOM 404, 4TH FLOOR, 515 RUSK, HOUSTON, TEXAS 77002.**

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Northstar Offshore Group, LLC (the "Debtor") files this *Motion for Entry of an Order (I) Approving Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Plan* (the "Motion"), and respectfully represents as follows:

## I.   JURISDICTION

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.       The statutory predicates for the relief sought herein are sections 105(a), 1125(b) and 1126(b) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.   RELEVANT BACKGROUND[1]

3.       On August 12, 2016 (the "Involuntary Petition Date"), Alliance Offshore, LLC, Alliance Energy Services, LLC, and Montco Oilfield Contractors, LLC filed an involuntary chapter 11 petition for relief against the Debtor (ECF No. 1) (the "Involuntary Petition") under section 303 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

4.       On September 29, 2016, the Debtor responded to the Involuntary Petition by filing a Motion for Abstention Under 11 U.S.C. § 305(A), and, in the Alternative, Answer, Affirmative

---

[1] Capitalized terms used but not defined herein shall be given the meaning ascribed to them in the *Debtor's First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Plan"), filed contemporaneously herewith.

Defenses, and Request for Discovery (ECF No. 38) (the "Abstention Motion").  The Abstention

Motion requested, *inter alia*, that the Bankruptcy Court suspend proceedings on the Involuntary

Petition while the Debtor attempted to achieve an out-of-court restructuring of its debts.  *See id.* at

¶ 2.  The Bankruptcy Court set trial on the Involuntary Petition for November 30, 2016 and denied

the Abstention Motion as moot.  ECF No. 45.  The trial date was subsequently continued until

December 9, 2016.  ECF No. 82.

5.     After the Involuntary Petition Date but before the Voluntary Petition Date (as

defined herein) (the "Gap Period"), the Debtor continued to operate its business in the ordinary

course under section 303(f) of the Bankruptcy Code.  As part of the Debtor's efforts to restructure

its debts out of court, a sale process was undertaken with assistance from Imperial Capital, LLC,

but no sale was consummated at that time.

6.     The Debtor's efforts to undertake a workout outside of chapter 11 were ultimately

unsuccessful.  As a result, on December 2, 2016 (the "Voluntary Petition Date"), the Debtor agreed

to convert the involuntary case to a voluntary case by filing a voluntary petition for relief (ECF

No. 88) (the "Voluntary Petition") under chapter 11 of the Bankruptcy Code.  The Debtor's chapter

11 case, styled *In re Northstar Offshore Group, LLC*, Case No. 16-34028 (the "Chapter 11 Case"),

is currently pending before the Bankruptcy Court.

7.     On December 6, 2016, the Bankruptcy Court designated this Chapter 11 Case as

Complex.  ECF. No. 131.

8.     No trustee or examiner has been appointed in this Chapter 11 Case.

9.     On December 6, 14, 15, and 29, 2016, the Court entered a series of orders allowing

the Debtor to continue to operate during the Chapter 11 Case.  ECF Nos. 124 (granting Debtor

authority to pay certain royalties and severance taxes that accrued during the Gap Period), 125

(authorizing Debtor to honor its obligations to its employees), 162 (authorizing Debtor to pay premiums in connection with certain surety bonds), 172 (establishing procedures for adequate assurance of payment to Debtor's utility providers), 173 (authorizing Debtor to continue operating its existing cash management system in the ordinary course), 216 (authorizing Debtor to retain and compensate professionals retained in the ordinary course of the Debtor's business), 217 (establishing procedures for monthly and interim compensation of professionals retained in the Chapter 11 Case).

10.     On December 19, 2016, the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors (the "Creditors' Committee"), and subsequently filed an amended notice of appointment on December 22, 2016.  ECF Nos. 186, 192. The members of the Committee are Montco Oilfield Contractors, B & J Martin, Inc., Alliance Energy Services, LLC, Fieldwood Energy LLC, R & R Energy Services LLC, Wood Group PSN, Inc., and Offshore Contract Services, LLC.  The Committee retained FTI Consulting, Inc. as its financial advisor and DLA Piper LLP as its counsel.  ECF Nos. 344, 345.

11.     On August 3, 2017, the Debtor completed the sale of substantially all of its assets (the "Transferred Assets") to Northstar Offshore Ventures LLC ("NOV").  ECF Nos. 792, 800. At present, the Debtor's sole remaining purpose relates to the winding down of its affairs pursuant to the Bankruptcy Code.  The Debtor's former employees are now employed by NOV and provide services to the Debtor under a Transition Services Agreement between the Debtor and NOV.

12.     Several of the Debtor's properties (the "Excluded Assets") were excluded from the sale to NOV.  *See* ECF No. 792-1, Schedule 1.3(n).  The Debtor serves as operator on only one of the Excluded Assets, the West Cameron 2 or "Creole" property, which it leases from the State of Louisiana.  All other Excluded Assets are non-operated properties in which the Debtor holds only

a working interest.  The Excluded Assets (including Creole) result in negative cash flow to the estate due to various obligations that encumber them, including tax and plugging and abandonment ("P&A") obligations.  As a result, the Debtor believes that the Excluded Assets have a zero or negative value to the Estate and recently moved to reject and abandon various agreements associated with them, including the Creole property.  *See* ECF Nos. 828, 891.

13.     The primary source of recovery for creditors comes from actions which will be pursued against:  (i) recipients of avoidable transfers; (ii) recoveries from claims based on Director and Officer liability; (iii) cash resulting from the sale of substantially all of its assets; and (iv) collections from accounts receivable.  The Plan filed by the Debtor contemporaneously with this Motion provides for the distribution of these amounts in accordance with the priority scheme contained in the Bankruptcy Code and pursuant to further orders of the Court.

14.     Contemporaneously with the filing of this Motion, the Debtor has filed the *First Amended Disclosure Statement for Debtor's First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* dated as of October 23, 2017 (as modified, amended, or supplemented from time to time and including all exhibits and supplements, the "Disclosure Statement").  The hearing to consider the adequacy of the Disclosure Statement is scheduled for November 21, 2017 at 1:30 p.m., prevailing Central Time.

15.     The Plan contains certain release, exculpation, and injunction provisions, and also entitles the Debtor to automatically reduce claims by the amount of postpetition payments made to the holders of such claims.  Accordingly, the Disclosure Statement includes the following language:

ALL HOLDERS OF CLAIMS, INTERESTS OR EXPENSES ARE PARTICULARLY URGED TO READ CAREFULLY THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN SECTIONS 11.6, 11.7, 11.8, AND 11.9 OF THE PLAN BECAUSE SUCH PROVISIONS AFFECT NOT ONLY SUCH HOLDERS' RIGHTS AND

CLAIMS AGAINST THE DEBTOR BUT ALSO SUCH HOLDERS' RIGHTS AND CLAIMS
AGAINST CERTAIN NON-DEBTOR PERSONS IDENTIFIED IN SUCH SECTIONS.

### III.    REQUESTED RELIEF

16.    By this Motion, the Debtor requests, among other things, that the Court enter an

order (the "Solicitation Procedures Order") (i) approving the adequacy of the Disclosure

Statement, (ii) approving the dates, procedures, and forms applicable to the plan solicitation,

noticing, and implementation process, including (a) confirming the authority of the Solicitation

Agent and setting a voting deadline, (b) approving the forms of ballots to be used for voting

on the Plan, (c) approving the notice procedures applicable to holders of unliquidated and

disputed claims, holders of claims that are not impaired by the Plan, and holders of claims

who  are  deemed to reject the Plan, (iii) approving certain vote tabulation procedures, and (iv)

establishing  the deadline for filing objections to the Plan and scheduling the hearing to consider

confirmation  of the Plan.

### A.  Approval of the Disclosure Statement

17.    Pursuant to Bankruptcy Code § 1125, a debtor must provide its impaired creditors

and equity holders with "adequate information" regarding the debtor's proposed chapter 11 plan.

Specifically, § 1125(a)(1) provides:

> "adequate information" means information of a kind, and in sufficient detail,
> as far as is reasonably practicable in light of the nature and history of the debtor
> and the condition of the debtor's books and records, including a discussion
> of the potential material federal tax consequences of the plan to the debtor,
> any successor to the debtor, and a hypothetical reasonable investor typical
> of the holders of claims or interests in the case, that would enable such a
> hypothetical investor of the class to make an informed judgment about the plan,
> . . . .

11 U.S.C. § 1125(a)(1).  Thus, a disclosure statement must, as a whole, provide information that

is reasonably sufficient to permit informed judgments by impaired creditors and equity interest

holders entitled to vote on the chapter 11 plan. *See In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) (stating that "[t]he determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court," and applying an "adequate information" standard based on whether a disclosure statement was "adequate to enable a reasonable creditor to make an informed decision about the Plan"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y 1988) (adequacy of disclosure statement "is to be determined on a case - specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed parties").

18.     The Debtor believes the Disclosure Statement contains "adequate information" within the meaning of Bankruptcy Code section 1125(a)(1).    Specifically, the Disclosure Statement contains information concerning, *inter alia*, (i) the Debtor, (ii) events leading up to the involuntary and voluntary bankruptcy filings, (iii) the Debtor's assets and liabilities, (iv) events subsequent to the involuntary and voluntary petition dates, (v) the Plan, (vi) distributions proposed to be made under the Plan, (vii) the projected recoveries by creditors under the Plan, (viii) financial projections, (ix) risk factors affecting the Plan, (x) the projected recoveries to creditors under a hypothetical chapter 7 case, (xi) potential avoidance actions, (xii) means of implementing the Plan, and (xiii) certain potential federal tax consequences.    Therefore, the Debtor requests that the Court approve the Disclosure Statement pursuant to Bankruptcy Code § 1125.

### B. Approval of Dates, Procedures, and Forms Applicable to Solicitation Process

#### i. Solicitation Agent

19.     On December 6, 2016, the Bankruptcy Court entered several procedural orders, including an order authorizing the Debtor to employ Prime Clerk, LLC as Claims, Noticing and Solicitation Agent ("Prime Clerk" or "Solicitation Agent").  ECF No. 126.  The Debtor proposes to solicit votes on and provide notice of the Plan, including mailing solicitation packages and notices, receiving and tabulating ballots cast on the Plan, and certifying to the Court the results of the balloting, through Prime Clerk.  The Debtor requests that the Court confirm the authority of Prime Clerk to perform such services.

#### ii. Voting Record Date

20.     Bankruptcy Rule 3018(a) provides that the record date for determining the holders of stock, bonds, debentures, notes and other securities entitled to receive the materials specified in Bankruptcy Rule 30l7(d), including ballots, is the "date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  *See* FED. R. BANKR. P. 3018(a).  The Debtor requests that the Voting Record Date be set as the first day of the hearing on the Disclosure Statement on November 21, 2017 and that the Voting Record Date apply to  all creditors.

#### iii. Voting Deadline

21.     Pursuant to Bankruptcy Rule 3017(c), at the time of or before the approval of the disclosure statement "the court shall fix a time within which the holders of claims and interests may accept or reject the plan . . . ."  FED. R. BANKR. P. 3017(c).  The Debtor requests that the Court establish December 19, 2017, 12:00 p.m. (prevailing Central Time), as the deadline by which  all ballots must be received by Prime Clerk (the "Voting Deadline").    The Debtor also

requests that it be permitted, in its sole discretion, to extend the Voting Deadline as facts and circumstances may require without further order of the Court.

### iv.  Ballots

22.     Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting a plan of liquidation should conform substantially to Official Form No. 14.  The forms of ballots attached hereto as **Exhibits A-C** are derived from Official Form No. 14.  The appropriate ballot forms, as applicable, will be distributed to classes entitled to vote to accept or reject the Plan.

### v.  Solicitation of Votes

23.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and/or interests upon approval of a disclosure statement.   Unless otherwise ordered, such materials include the plan or a court approved summary of the plan, the court approved disclosure statement, notice of the voting deadline and any other information as the court may direct.  FED. R. BANKR. P. 3017(d).

24.     In accordance with Bankruptcy Rule 3017(d), on the date of entry of the Solicitation Procedures Order (the "Solicitation Commencement Date"), the Debtor proposes to transmit by first class mail to each of the holders of claims in classes entitled to vote on the Plan a solicitation package containing:

> (a) notice of the confirmation hearing and objection deadline (as provided below);
>
> (b) the Disclosure Statement;
>
> (c) the Plan (appended to the Disclosure Statement);
>
> (d) an appropriate ballot(s);
>
> (e) a postage-prepaid pre-addressed return envelope; and
>
> (f)  such other information as the Court may direct or approve

(collectively, the "Solicitation Package").  The Debtor proposes that the Disclosure Statement and the Plan be served on parties in interest by the Solicitation Agent in electronic format (CD ROM or flash drive) based on the master service list maintained by the Solicitation Agent.  Any party may request a paper copy of the Disclosure Statement and Plan by contacting the Solicitation Agent.

25.     The Debtor proposes that the following holders of claims be permitted to vote on the Plan and thus receive the Solicitation Package: holders of claims in Classes 1 (First Lien Claims), 2 (Second Lien Claims), and 4 (General Unsecured Claims), but only holders of claims in such classes who:

(a) have timely filed proofs of claim in the amounts asserted in such proofs of claim, provided that such proofs of claim (a) have not been disallowed by an order of the Court, (b) are not the subject of a pending objection to the entirety of the claim, (c) have not been reduced by order of the Court or are not subject to an objection pending before the Court for reduction (with voting permitted only in the reduced or proposed reduced amount and/or classification), (d) do not allege claims that are wholly unliquidated (with voting permitted only with respect to the amount thereof that is fixed), or

(b) have not filed timely proofs of claim but whose claims are scheduled in the Debtor's schedules, or any amendments thereto, but are not designated therein as contingent, unliquidated or disputed or listed therein as zero or unknown in amount, in the amounts set forth in the schedules, or any amendments thereto.

26.     To avoid duplication and reduce expenses, the Debtor proposes that voting creditors who have filed duplicate claims for the same underlying liability that are classified in the same class, whether or not an objection to the duplicative claim is pending, should be entitled to receive only one Solicitation Package and one ballot for voting their claims with respect to that class.  In addition, the Debtor proposes that voting creditors who filed amended claims after the applicable bar date should be entitled to vote only the claim amount evidenced by their initial amended proof of claim, unless the amended claim has been disallowed.

### vi.  Treatment of Unliquidated or Disputed Claims

27.     Pursuant to Bankruptcy Code § 1126(a), only holders of allowed claims or interests are entitled to vote to accept or reject a plan.  Pursuant to Bankruptcy Rule 3018(a), a court may, after notice and hearing, temporarily allow a claim or interest for voting purposes.

28.     The Debtor proposes that any claim that is asserted in (a) a proof of claim as wholly unliquidated, or for $0.00, (b) an untimely proof of claim, or (c) a proof of claim as to which an objection to the entirety of the claim is pending (collectively, the "Disputed Claimants") not be permitted to vote on the Plan except as provided herein.  For the sake of clarity, claims scheduled as contingent, unliquidated, or disputed, or for $0.00, for which no valid proof of claim has been filed, are not entitled to vote.

29.     The Debtor proposes to distribute to each of the Disputed Claimants a package that includes the following:

> (a) a notice in substantially the form attached hereto as **Exhibit D** (the "Notice of Disputed Claim Status");
>
> (b) the Disclosure Statement;
>
> (c) the Plan (appended to the Disclosure Statement); and
>
> (d) such other information as the Court may direct or approve (collectively, the "Disputed Claimant Package").

30.     The Notice of Disputed Claim Status will inform the Disputed Claimants that their claims have been designated as wholly unliquidated or disputed.  The Notice of Disputed Claim Status also informs such claimants that absent having filed a motion seeking to be temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018 Motion"), in the manner and by the deadline described below, they are precluded from submitting a vote with respect to their wholly unliquidated or disputed claim.  Such claimants will be instructed in the

notice to contact the Solicitation Agent to request a ballot for any such claim if a Rule 3018 Motion is timely filed.

31.     The Debtor requests that the Court set December 4, 2017, at 12:00 p.m. (prevailing Central Time) as the deadline for Rule 3018 Motions to be filed with the Court and served upon the Solicitation Agent and the other notice parties listed in the Notice of Disputed Claim Status (the "Rule 3018 Motion Deadline").  Any party timely filing and serving a Rule 3018 Motion will be provided a ballot and be permitted to cast a provisional vote to accept or reject the Plan.  If and to the extent that the Debtor and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline, then at the confirmation hearing, the Debtor will request that the Court determine whether the provisional ballot should be counted as a vote on the Plan. Such a procedure will help ensure an efficient tabulation of ballots to be completed accurately by the confirmation hearing. Moreover, setting the date of the confirmation hearing as the date for hearing any Rule 3018 Motions will permit the Court to avoid holding separate hearings on such motions.

32.     Nothing in these procedures is intended to affect the Debtor's right to object to any proof of claim.  With respect to any such objection, the Debtor reserves the right to request, on notice, that any vote cast by the holder of the disputed claim be disallowed and not counted in determining whether the requirements of Bankruptcy Code § 1126(c) have been met.  In the absence of any such request, the holder of a disputed claim will be entitled to vote in accordance with its proof of claim.

### vii.  Notices of Non-Voting Status

33.     Holders of three kinds of expenses and claims are not entitled to vote under the Plan.  First, in compliance with § 1123(a)(1) of the Bankruptcy Code and as reflected in the Plan, Administrative Expenses and Priority Tax Claims are not classified under the Plan.  *See* 11 U.S.C.

§ 1123(a)(1) (prohibiting classification of administrative and priority claims).  These unclassified claims are not entitled to vote on the Plan as the Bankruptcy Code requires that they not be compromised under a plan.   Second, Class 3 (the M&M Lien Claims) is unimpaired and conclusively deemed to accept the Plan pursuant to Bankruptcy Code § 1126(f) and, as such, is not entitled to vote on the Plan.  Third, Class 5 (Equity Interests) is conclusively presumed to reject the Plan pursuant to Bankruptcy Code § 1126(g), and, as such, is not entitled to vote on the Plan.

34.     The Debtor proposes to send notices of non-voting status to holders of claims who are not entitled to vote on the Plan.  Holders of Administrative Claims and Priority Tax Claims (if any) will receive a notice in substantially the form attached hereto as **Exhibit E** (the "Notice of Non-Voting Status for Administrative and Priority Tax Claims"), together with the Disclosure Statement and Plan.  The Notice of Non-Voting Status summarizes the treatment of Administrative Claims and Priority Tax Claims under the Plan.   In addition, the Notice of Non-Voting Status provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) information regarding the confirmation hearing, and (d) directions for filing objections to confirmation of the Plan.

35.     Holders of unimpaired claims (Class 3) will receive a notice substantially in the form attached hereto as **Exhibit F** (the "Notice of Non-Voting Status for Unimpaired Claims"), together with the Disclosure Statement and Plan.  The Notice of Non-Voting Status for Unimpaired Claims summarizes the treatment of unimpaired claims under the Plan.   In addition, the Notice of Non-Voting Status provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) information regarding the confirmation hearing, and (d) directions for filing objections to the confirmation of the Plan.

36.     Holders of claims which will be cancelled (Class 5) and are thus conclusively presumed to reject the Plan pursuant to Bankruptcy Code § 1126(g) will receive a notice substantially in the form attached hereto as **Exhibit G** (the "Notice of Non-Voting Status for Impaired Claims"), together with the Disclosure Statement and Plan.  The Notice of Non-Voting Status provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) information regarding the confirmation hearing, and (d) directions for filing objections to confirmation of the Plan.

### viii.   When No Notice or Transmittal is Necessary

37.     The Debtor proposes that no Solicitation Packages or other notices need be transmitted to any person to whom the Debtor mailed a notice of the commencement of the case and first meeting of creditors or a notice of the bar date for filing proofs of claim if either of such notices was returned marked "undeliverable" or "moved no forwarding address" or for a similar reason, unless the Debtor has been informed in writing by such person of that person's new address.

### ix.   Informational Mailing of Solicitation Packages

38.     The Solicitation Packages and all forms of ballots and notices proposed herein will be mailed for informational purposes to the U.S. Trustee and the Securities and Exchange Commission.

### C.  Approval of Voting Tabulation Procedures

39.     To avoid uncertainty, to provide guidance to the Debtor and the Solicitation Agent,  and to avoid the potential for inconsistent results, the Debtor requests that the Court establish the guidelines set forth below for tabulating the votes to accept or reject the Plan.

### i. Votes Counted

40.     Subject to paragraph 43 below, the Debtor proposes that any ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

41.     Debtor proposes that each Holder of a Claim or Equity Interest in a Voting Class shall be entitled to vote the amount of its Claim or Equity Interest as of the Voting Record Date. Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the rights of the Debtor in any other context, each Claim within a Voting Class will be temporarily allowed in an amount equal to the amount of such Claim as set forth in Debtor's Schedules of Assets and Liabilities (the "Schedules"), provided that:

> (a) If a Claim is deemed allowed under the Plan or by order of the Court, Such Claim is allowed for voting purposes in the amount set forth in the Plan or the order, as applicable;
>
> (b) If a Claim for which a Proof of Claim has been timely filed is for unknown or undetermined amounts or is wholly unliquidated or contingent (as determined on the face of the Claim or after a reasonable review of the supporting documentation by the Solicitation Agent) and such Claim has not been allowed, such Claim will be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, and accorded one vote and valued at an amount equal to one dollar ($1.00), unless such Claim is disputed as set forth in paragraph (f) below;
>
> (c) If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution, unless the Court, prior to the Voting Deadline, enters an order disallowing such Claim;
>
> (d) If a Proof of Claim was timely filed in an amount that is liquidated and matured, or liquidated and matured in part (as determined on the face of the Claim or after a reasonable review of the supporting documentation by the Solicitation Agent), such

Claim is temporarily allowed in the liquidated and matured amount set forth on the Proof of Claim, unless such Claim is disputed as set forth in paragraph (f) below;

(e) If a Claim is listed in the Schedules as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the amount that is liquidated, matured, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

(f) If Debtor has filed and served an objection or request for estimation as to a Claim at least fourteen (14) calendar days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except (i) for voting purposes only, to the extent and manner as set forth in such objection or (ii) as otherwise ordered by the Court upon ruling on a Rule 3018 Motion;

(g) Claims scheduled as contingent, unliquidated, or disputed, or for $0.00, for which no proof of claim has been filed, are not entitled to vote on the Plan.

(h) If a Proof of Claim has been amended by a later-filed Proof of Claim, the earlier-filed Claim will not be entitled to vote, regardless of whether Debtor has objected to such earlier filed Claim;

(i) Notwithstanding anything to contrary contained herein, any Claim that has been satisfied by Debtor will be disallowed for voting purposes;

(j) If a Holder of Claims has timely filed multiple Proofs of Claim on account of multiple debts of Debtor in a single Class, such Holder may have these Claims aggregated so they only have one vote for the total amount of their Claims within such Class; and

(k) If a Holder of Claims has timely filed multiple Proofs of Claim on account of a single debt of Debtor, such Holder shall have only one allowed Claim for voting purposes, regardless of whether Debtor has objected to such duplicate Claim.

42.    The Debtor proposes that the following procedures shall apply for tabulating votes:

(a) If a Class contains Claims or Equity Interests eligible to vote and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Equity Interests in such Class shall be deemed to have accepted the Plan;

(b) If a Holder of a Claim or Equity Interest casts more than one Ballot voting the same Claim or Equity Interest before the Voting Deadline, the last received, validly executed Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots;

(c) Holders of Claims or Equity Interests must vote all of their Claims or Equity Interests within a particular Class to either accept or reject the Plan, and may not split their votes within a particular Class, and thus a Ballot (or group of Ballots cast by a single Holder) within a particular Class that partially accepts and partially rejects the Plan shall not be counted;

(d) Except as otherwise provided in this Motion, for purposes of determining whether numerosity and Claim amount requirements of section 1126(c) of the Bankruptcy Code have been satisfied, Northstar will tabulate only those Ballots received by the Voting Deadline.

### ii.  Votes Not Counted

43.     The Debtor further proposes that the following ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a) any ballot received after the Voting Deadline unless the Debtor has granted an extension of the Voting Deadline with respect to such ballot;

(b) any ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c) any ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;

(d) any ballot cast for a filed proof of claim designated as contingent, unliquidated, or disputed, or as zero or unknown in amount, and for which no Rule 3018(a) Motion has been filed by the Rule 3018(a) Motion Deadline;

(e) any ballot timely received that is cast in a manner that indicates neither an acceptance nor rejection of the Plan or that indicates both an acceptance and rejection of the Plan;

(f) any unsigned ballot; or

(g) any ballot that is electronically submitted, unless otherwise permitted.

### iii.  Consent and Deemed Consent to Releases

44.     Section 11.8 of the Plan contains releases by the Holders of Claims and Interests of claims and causes of action against the Debtor, the Committee, the DIP Agent, the Buyer, Eleanor, New Mountain Finance Corporation, Post-August 30, 2016 PPVA, and Post-December 19, 2016 PPCO.  The ballots provide for acceptance or rejection of the Plan, and consent or non-consent to

the releases contained in Section 11.8 of the Plan. By submitting a ballot and not electing to withhold consent to the releases set forth in Section 11.8 by marking the appropriate box on the Ballot, the Debtor proposes that each claimant be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the releases set forth in Section 11.8 of the Plan.

### iv.  Changing Votes

45.    Notwithstanding Bankruptcy Rule 3018(a), whenever two or more ballots that comply with these procedures are cast voting the same claim prior to the Voting Deadline, the last dated valid ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots, without prejudice to the Debtor's right to object to the validity of the second ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the first dated valid ballot for all purposes. This procedure will spare the Court and the Debtor the time and expense of responding to motions brought pursuant to Bankruptcy Rule 3018(a) attempting to show cause for changing votes.

### v.  No Vote Splitting; Effect

46.    The Debtor proposes that the Court clarify that claim splitting is not permitted and order that creditors who vote must vote all of their claims within a particular class to either accept or reject the Plan.

47.    A split claim for these purposes does not include an undersecured creditor's claim comprised of a secured portion and an undersecured deficiency portion.

### vi.  Withdrawal of Ballots

48.     The Debtor proposes to permit any claimant who has delivered a valid ballot for the acceptance or rejection of the Plan to withdraw such acceptance or rejection by delivering a

written notice of withdrawal to Prime Clerk, as Solicitation Agent, at any time prior to the Voting Deadline.  A notice of withdrawal, to be valid, should (a) contain the description of the claim to which it relates and the aggregate principal amount represented by such claim, (b) be signed by the withdrawing party in the same manner as the ballot being withdrawn, (c) contain a certification that the withdrawing party owns the claim and possesses the right to withdraw the vote sought to be withdrawn and (d) be timely received by the Solicitation Agent.

### vii.   Voting By Electronic Means

49.     In addition to accepting Ballots by regular mail, overnight courier or hand delivery, the Debtor seeks authority to accept Ballots via electronic, online transmission through a customized electronic Ballot by utilizing the E-Ballot platform on Prime Clerk's website.  Holders may cast an E-Ballot and electronically sign and submit such electronic Ballot via the E-Ballot platform.  Instructions for casting an electronic Ballot can be found on the "E-Ballot" section of Prime Clerk's website.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any electronic Ballot submitted in this manner and the creditor's electronic signature will be deemed to be an original signature that is legally valid and effective.  For the avoidance of doubt, holders may only cast Ballots electronically via the E-Ballot platform.  Ballots submitted by electronic mail, facsimile, or any other means of electronic submission not specifically authorized by the solicitation procedures shall not be counted.[2]

### viii.   Non-Voting Classes

50.     To the extent a class has no members, such class shall not be counted for voting purposes.  If no votes to accept or reject the Plan are received by any members of a particular class, such class shall be deemed to have accepted the Plan.

---

[2] The e-ballots can be entered at cases.primeclerk.com/northstar.  For the avoidance of doubt, any party that submits a duplicate paper ballot and e-ballot, only the e-ballot will be counted.

### D. Establishment and Noticing of Plan Confirmation Hearing and Objection Deadline

51.      Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail to all creditors and indenture trustees of the time fixed for filing objections to, and the hearing to consider, confirmation of a chapter 11 plan.  Similarly, Bankruptcy Rule 2002(d) requires notice by mail to equity security holders, unless the court orders otherwise.

52.      On or before the Solicitation Commencement Date, the Solicitation Agent will serve the notice of the Plan Objection Deadline and the Confirmation Hearing (the "Confirmation Hearing Notice") on the creditor mailing matrix maintained in this bankruptcy case.  The Debtor requests that the Court schedule the hearing to consider confirmation of the Plan (the "Confirmation Hearing") on December 22, 2017, at 1:30 p.m. (prevailing Central Time), which date will allow sufficient notice in accordance with Bankruptcy Rule 2002(b). The Debtor also requests that the Court establish December 19, 2017, at 12:00 p.m. (prevailing Central Time) as the deadline for filing objections to the Plan (the "Plan Objection Deadline").

53.      Following the entry of the Solicitation Procedures Order, the Debtor will serve the notices required under Bankruptcy Rule 2002, including the mailing of Solicitation Packages.  Thus, assuming the entry of an order approving the Disclosure Statement on November 21, 2017 and the mailing of Solicitation Packages on November 21, 2017, a Plan Objection Deadline of December 19, 2017, and a Confirmation Hearing on December 22, 2017, would satisfy the requirements of Bankruptcy Rule 2002(b).

54.      Attached hereto as **Exhibit H** is a proposed form of the Confirmation Hearing Notice.  The Confirmation Hearing Notice provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) information regarding the Confirmation Hearing, and (d) directions for filing objections to the confirmation of the Plan by the Plan Objection

Deadline.

55.     As set forth above, the Confirmation Hearing Notice will be included in the Solicitation Packages mailed to holders of voting claims and to each person or entity set forth on the Service List maintained in this case.  The substance of the information contained in the Confirmation Hearing Notice is also included in the Notice of Non-Voting Status for Administrative and Priority Tax Claims, the Notice of Non-Voting Status for Unimpaired Claims, the Notice of Non-Voting Status for Impaired Claims, and the Notice of Disputed Claim Status.

56.     The Debtor believes that service of the Confirmation Hearing Notice as described above will provide sufficient notice to all parties in interest of the Plan Objection Deadline and the Confirmation Hearing.

## IV.     NOTICE

57.     Notice of this Motion has been given to those parties listed on the attached master service list, including but not limited to (i) counsel for the Committee; (ii) the United States Trustee for the Southern District of Texas; and (iii) the Securities and Exchange Commission, as provided in Bankruptcy Rule 3017.  The Debtor submits that no further notice is required.

## V.     NO PRIOR REQUEST

58.     No previous motion for the relief requested herein has been made to this or any other court.

## VI.     CONCLUSION

59. For the foregoing reasons, the Debtor respectfully requests that this Court enter an order substantially in the form of the order attached to this Motion as **Exhibit I** (a) approving the adequacy of the Disclosure Statement, (b) approving the dates, procedures, and forms applicable to the plan solicitation, noticing, and implementation process, (c) approving certain vote tabulation procedures, (d) establishing the deadline for filing objections to the Plan and scheduling the

hearing to consider confirmation of the Plan, all as more particularly described above, and (e) granting such other and further relief as the Court deems just.

Dated:  October 23, 2017

Respectfully submitted,

**WINSTON & STRAWN LLP**

*/s/ Lydia T. Protopapas*
Lydia T. Protopapas
Texas Bar No. 00797267
Southern Dist. of Texas Bar No. 21378
Jason W. Billeck
Texas Bar No. 24001740
Southern Dist. of Texas Bar No. 23802
1111 Louisiana, 25th Floor
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile:  (713) 651-2700

*Counsel for Northstar Offshore Group, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, Nita Moore, hereby certify that, on October 23, 2017, all counsel of record who are deemed to have consented to electronic service were served with a copy of this document via the Court's CM/ECF system.

*/s/ Nita Moore, Senior Paralegal*
Nita Moore
