

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
12/22/2017

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | **Case No. 16-34028** |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

**FINDING OF FACTS, CONCLUSIONS OF LAW, AND ORDER APPROVING**
**DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF**
<u>**THE BANKRUPTCY CODE**</u>

   WHEREAS Northstar Offshore Group, LLC, as debtor and debtor in possession

(the "<u>**Debtor**</u>"), in the above-captioned chapter 11 case, the "proponent of the plan" within the

meaning of section 1129 of title 11 of the United States Code (the "<u>**Bankruptcy Code**</u>") filed the

*Debtor's Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* on

November 22, 2017 [ECF No. 983]  (as may hereafter be amended or modified, the "<u>**Plan**</u>")[1] and

the *Second Amended Disclosure Statement for the Debtor's Second Amended Plan of Liquidation*,

dated November 22, 2017 [Docket No. 983] (the "<u>**Disclosure Statement**</u>"); and

   WHEREAS on November 22, 2017, the Bankruptcy Court entered an order

[Docket No. 981] (the "<u>**Disclosure Statement Order**</u>"), which, among other things, approved

the Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017,

and established (i) December 22, 2017, as the date for the commencement of the hearing to

consider confirmation of the Plan (the "<u>**Confirmation Hearing**</u>"), (ii) procedures for confirming

the Plan, including notice and objection procedures, and the method for notice of the

---

[1] Capitalized terms used in this Order and not otherwise defined herein shall have the meaning ascribed to them in the Plan.

Confirmation Hearing (the "**Confirmation Hearing Notice**"), and (iii) procedures for soliciting and tabulating votes with respect to the Plan (the "**Solicitation Procedures**"); and

WHEREAS on November 22, 2017, the Debtor, through its administrative agent, Prime Clerk LLC (the "**Solicitation Agent**"), caused the following materials (the "**Solicitation Packages**") to be transmitted as set forth in the *Certificate of Service of Calvin C. Liu* [Docket No. 996] (the "**Solicitation Affidavit**"), evidencing the timely service of the Disclosure Statement (with the Plan annexed thereto), and as provided by Bankruptcy Rule 3017(d), such service is adequate:

(i)     as to holders of voting Claims in Class 1 (First Lien Claims), Class 2 (Second Lien Claims), and Class 4 (General Unsecured Claims), as such holders received the Confirmation Hearing Notice, the Disclosure Statement (with the Plan annexed thereto), the Disclosure Statement Order, and an appropriate form of ballot and return envelope (each such ballot and return envelope being referred to as a "**Ballot**"); and

(ii)    as to holders of Claims or Interests, as applicable, in Class 3 (the M&M Lien Claims), as such holders received the Confirmation Hearing Notice, the Disclosure Statement (with the Plan annexed thereto), the Disclosure Statement Order, and a Notice of Non-Voting Status Unimpaired Claims; and

(iii)   as to holders of Claims or Interests, as applicable, in Class 5 (Equity Interests), as such holders received the Confirmation Hearing Notice, the Disclosure Statement (with the Plan annexed thereto), the Disclosure Statement Order, and a notice of Non-Voting Status for Impaired Claims; and

(iv)    as to holders of Administrative Claims and Priority Tax Claims, as such holders

2

received the Confirmation Hearing Notice, the Disclosure Statement (with the Plan annexed thereto), the Disclosure Statement Order, and a Notice of Non-Voting Status for Administrative and Priority Tax Claims; and

(v)      as to the enumerated list of notice parties (the "**Notice Parties**") identified in the Solicitation Affidavit and all parties who have requested notice in this chapter 11 case pursuant to Bankruptcy Rule 2002, as such parties received the Confirmation Hearing Notice, the Disclosure Statement (with the Plan annexed thereto), and the Disclosure Statement Order; and

WHEREAS certain objections to confirmation of the Plan (collectively, the "**Objections**") were filed: (1) Limited Objection and Reservation of Rights on Behalf of (I) Platinum Partners Credit Opportunities Fund, LP and (II) Platinum Partners Liquid Opportunities Master Fund, LP Regarding Debtor's Second Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code [Docket No. 1046]; (2) Limited Objection and Reservation of Rights of Platinum Partners Value Arbitrage Fund LP to Debtor's Second Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code [Docket No. 1050]; (3) Objection to Second Amended Chapter 11 Plan of Archrock Partners Operating, LLC and Archrock Services LP [Docket No. 1053]; (4) Objection to Debtor's Second Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code of Louisiana Department of Revenue [Docket No. 1054]; and

WHEREAS on December 21, 2017, the Solicitation Agent filed the *Certification of James Daloia with Respect to the Tabulation of Votes on the Debtor's Second Amended Plan of Liquidation* [Docket No. 1068] (the "**Voting Certification**") attesting to and certifying the method and results of the tabulation for the Classes of Claims (Class 1 (First Lien Claims), Class

2 (Second Lien Claims), and Class 4 (General Unsecured Claims)) entitled to vote to accept or reject the Plan; and

WHEREAS the Confirmation Hearing began on December 22, 2017, and the evidentiary record of the Confirmation Hearing was originally closed on that date; and

NOW, THEREFORE, based on the Voting Certification and the Solicitation Affidavit; and upon (i) the record of the Confirmation Hearing, including all the evidence proffered or adduced, the Objections filed in connection with the Plan, and the arguments of counsel made at the Confirmation Hearing, and any related status conferences, (ii) any post-hearing briefing of the parties, and (iii) the record of this chapter 11 case; and after due deliberation thereon and sufficient cause appearing therefore:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.

B.     <u>Jurisdiction, Venue, Core Proceeding</u>.   The Bankruptcy Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Bankruptcy Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

C. <u>Chapter 11 Petitions</u>.  August 12, 2016 (the "**Involuntary Petition Date**"), Alliance Offshore, LLC, Alliance Energy Services, LLC, and Montco Oilfield Contractors, LLC filed an involuntary chapter 11 petition for relief against the Debtor (ECF No. 1) (the "**Involuntary Petition**") with this Bankruptcy Court.  On December 2, 2016 (the "**Voluntary Petition Date**"), the Debtor agreed to convert the involuntary case to a voluntary case by filing a voluntary petition for relief (ECF No. 88) (the "**Voluntary Petition**") under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D. <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

E. <u>Burden of Proof</u>.  The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules by a preponderance of the evidence.  The Debtor has met its burden with respect to each element of sections 1129(a) and (b) of the Bankruptcy Code.

F. <u>Adequacy of the Disclosure Statement</u>.  Pursuant to the Disclosure Statement Order entered on November 22, 2017, the Bankruptcy Court approved the Disclosure Statement and found, among other things, that the Disclosure Statement contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code and authorized the Debtor to solicit acceptances and rejections of the Plan.  Prior to the transmission of the Disclosure Statement, the Debtor did not solicit acceptances of the Plan by any holder of Claims or Interests.

G.     Solicitation.    On or before May 4, 2017, the Debtor, through the Solicitation Agent, caused the Solicitation Packages to be transmitted and served in compliance with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and the Disclosure Statement Order.   As set forth in the Solicitation Affidavit, the Solicitation Packages were transmitted to and served on holders of Claims in Class 1, Class 2, and Class 4, in compliance with the Solicitation Procedures.   Each holder of a Claim or Interest in Class 1, Class 2, and Class 4 who was eligible to vote pursuant to the Solicitation Procedures received a Ballot.   The Debtor was not required to solicit votes from the holders of Claims in Class 3 (the M&M Lien Claims) (the "**Unimpaired Class**"), as such class is Unimpaired under the Plan.   The Debtor was not required to solicit votes from the holders of Interests in Class 5 (Equity Interests) (the "**Non-Voting Impaired Class**") as holders of Interests in such Class will not receive any recovery or retain any property under the Plan and are deemed to reject the Plan.   As described in and as evidenced by the Voting Certification, the transmittal and service of the Solicitation Packages (all of the foregoing, the "**Solicitation**") were timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required.   The Solicitation complied with the Solicitation Procedures, and was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order.

H.     Mailing of Confirmation Hearing Notice.    On November 22, 2017, the Debtor caused to be mailed the Confirmation Hearing Notice to the Notice Parties and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order.   The Debtor has given proper, adequate, and sufficient notice of the Plan, the Confirmation Hearing, the deadlines for filing objections to and voting on the Plan,

as required by the Bankruptcy Rules and the Disclosure Statement Order to all known holders of Claims and Interests and all Notice Parties.  No other or further notice was or shall be required.

I.  <u>Tabulation Results</u>. On December 21, 2017, the Solicitation Agent filed the Voting Certification certifying the method and results of the Ballots tabulated for Class 1 (First Lien Claims), Class 2 (Second Lien Claims), and Class 4 (General Unsecured Claims).  As set forth in the Voting Certification, 100% in amount and 1 in number of holders of Claims in Class 1 (First Lien Claims), 100% in amount and 1 in number of holders of Claims of Class 2 (Second Lien Claims), and 83.94% in amount and 44 of 53 in number of holders Class 4 (General Unsecured Claims) that voted on the Plan by the Voting Deadline voted to accept the Plan.

J.  Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, the Bankruptcy Court finds that holders in Class 1 (First Lien Claims) and Class 2 (Second Lien Claims) accepted the Plan (the "**<u>Impaired Accepting Classes</u>**").  All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order.

K.  <u>Bankruptcy Rule 3016(a)</u>.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the proponent of the Plan.  The Debtor appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**<u>Compliance with Requirements of Section 1129 of Bankruptcy Code</u>**

L.  <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and thereby satisfies section

1129(a)(1) of the Bankruptcy Code.  More particularly:

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative Expense Claims (Section 2.1 of the Plan), Professional Fee Claims (Section 2.2 of the Plan), Gap Period Claims (Section 2.3 of the Plan), Priority Tax Claims (Section 2.4 of the Plan), and Other Priority Claims (Section 2.5 of the Plan) which need not be classified, Section 3 of the Plan classifies five (5) Classes of Claims against and Interests in the Debtor.  To the extent there are no Allowed Claims or Interests in a given Class, such Class is deemed to be omitted with respect to the Debtor.  The Claims or Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Sections 3 and 4 of the Plan specify that holders of Claims in Class 3 (the M&M Lien Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Sections 3 and 4 of the Plan designate Class 1 (First Lien Claims), Class 2 (Second Lien Claims), Class 4 (General Unsecured Claims), and Class 5 (Equity Interest) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment of each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying

section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).   The Plan provides adequate and proper means for implementing the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation: (i) the appointment of James Katchadurian, as the sole officer and manager of the Debtor, to administer the Plan and wind-down the Debtor's estate; (ii) the creation of the Litigation Trust to resolve and settle Causes of Action; (iii) the rejection of Executory Contracts and Unexpired Leases; (iv) the release of Liens; (v) the provision of certain releases by the Debtor and by the holders of Claims and Interests; (vi) the exculpation of the Exculpated Parties; (vii) the preservation of certain Causes of Action; and (viii) the authorization of the Debtor to execute, deliver, file, or record documents necessary to implement the Plan.

(f)     Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).  The Debtor and its Estate will be liquidated in accordance with the Plan and therefore section 1123(a)(6) is not applicable.

(g)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).   The Plan discloses that James Katchadurian will serve as the sole director and officer of Northstar Offshore Group, LLC, and as the trustee of the Litigation Trust created under the Plan.  Mr. Katchadurian will serve in such capacities in connection with the wind-down of the Debtor's estate.  The Plan provisions concerning the selection and appointment of any officer, director, or manager under the Plan are consistent with the interests of creditors and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

(h)     Payments to Creditors Out of Individual's Earnings (11 U.S.C. § 1123(a)(7)).  The Debtor is not an "individual" (as that term is defined in the Bankruptcy Code) and, accordingly, section 1123(a)(8) of the Bankruptcy Code does not apply.

(i)      Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. §
1123(b)(1)).  As contemplated by section 1123(b)(1) of the Bankruptcy Code, and pursuant to
section 1124 of the Bankruptcy Code, Sections 3 and 4 of the Plan appropriately classify and
describe the treatment accorded Unimpaired Classes and Impaired Classes.

(j)      Assumption and Rejection (11 U.S.C. § 1123(b)(2)).  Section 9 of the Plan,
governing the assumption or rejection of Executory Contracts and Unexpired Leases, satisfies the
requirements of sections 365(b) of the Bankruptcy Code and 1123(b)(2) of the Bankruptcy Code.
Section 9.1 provides that each Executory Contract and Unexpired Lease not previously rejected,
assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365
and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) is
subject to a pending motion to assume as of the Effective Date; (b) was previously assumed or
assumed and assigned to a third party during the pendency of the Chapter 11 Case, including, but
not limited to, the Executory Contracts and Unexpired Leases assumed and assigned to the Buyer
in connection with the Sale; (c) is a contract, instrument, release, indenture, or other agreement or
document entered into in connection with the Plan; (d) is a D&O Policy or an insurance policy; or
(e) is the APA.

(k)      Retention of Causes of Action/Reservation of Rights (11 U.S.C.
§ 1123(b)(3)).  In compliance with section 1123(b)(3)(B) of the Bankruptcy Code, the Plan
preserves the Debtor's rights, claims, Causes of Action, rights of setoff or recoupment, or other
legal or equitable defenses that the Debtor had immediately before the Effective Date on behalf of
the Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable
non-bankruptcy law.  Section 5.2(a) provides that the Estate shall preserve, irrevocably transfer,
and assign all Causes of Action to the Litigation Trust.  On the Effective Date, in accordance with

section 1141 of the Bankruptcy Code, all Causes of Action, as well as the rights and powers of the Estate applicable to the Causes of Action, shall automatically vest in the Litigation Trust. Section 5.2(d) provides the Litigation Trustee shall, subject to the terms of the Litigation Trust Agreement and the Litigation Trust Committee, have full power, authority, and standing to prosecute, compromise, or otherwise resolve the Causes of Action. The Litigation Trust, acting by and through the Litigation Trustee pursuant to the Litigation Trust Agreement, shall be authorized to exercise and perform all rights and powers held by the Debtor and the Estate with respect to the Litigation Trust, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, representative appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Estate, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Causes of Action. Neither the Debtor nor the Estate shall be subject to any counterclaims with respect to the Causes of Action. Sections 8.2 and 8.5 provide the Debtor with the authority to object to and resolve any and all Claims and Causes of Action, subject to the transfer of Causes of Action to the Litigation Trust. Section 11.10 provides that the Debtor will not retain any Claims or Causes of Action against the Released Parties that are released pursuant to Sections 11.6, 11.7, 11.8, and 11.9 of the Plan or any Avoidance Actions.

(l)     Sale of Substantially All Assets (11 U.S.C. § 1123(b)(4)).  Section 1123(b)(4) of the Bankruptcy Code, which permits a plan to provide for the sale of all or substantially all of a debtor's property, is not applicable to the Chapter 11 Case as the Debtor successfully sold substantially all of its assets to the Buyer pursuant to the Order (I) Approving the

Sale of Substantially All of the Debtor's Assets Free and Clear of Claims, Liens, Interests, and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 792] (the "**Sale Order**").

(m)     Modification of Rights (11 U.S.C. § 1123(b)(5)).   Section 4 of the Plan provides for modifications of the rights of holders of Class 1 (First Lien Claims), Class 2 (Second Lien Claims), and Class 4 (General Unsecured Claims) and leaves Unimpaired the rights of holders of Claims in Class 3 (M&M Lien Claims).

(n)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).   The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and applicable law, including the release, injunction, and exculpation provisions set forth in Section 11 of the Plan.

(o)     Debtor Is Not An Individual (11 U.S.C. § 1123(c)).  The Debtor is not an individual and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

(p)     Cure of Defaults (11 U.S.C. § 1123(d)).   Section 9.1 of the Plan provides, pursuant to the APA, the Buyer will cure defaults associated with each Executory Contract to be assumed and assigned pursuant to the Plan and the Sale Order in accordance with the underlying agreements and applicable bankruptcy and non-bankruptcy law ("**Cure Amounts**"). Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

M.     Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code.  Specifically, the Debtor has complied with sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable non-bankruptcy law in transmitting the Plan, the Plan

Supplement, the Disclosure Statement, Ballots, the Voting Certification, and related documents and notices and in soliciting and tabulating the votes on the Plan.

      N.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate for the benefit of all holders of Claims and Interests.  The Plan (including all documents necessary to effectuate the Plan) was negotiated and formulated in good faith and at arm's length among the Debtor and parties in interest and each of their respective officers, directors, employees, advisors, and professionals. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtor's successful reorganization.  Further, the Debtor and the parties in interest or their respective officers, directors, employees, advisors, and professionals will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, including but not limited to the Plan Supplement documents and (b) take any actions authorized and directed or contemplated by this Confirmation Order or the Plan.

      O.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtor for services or for costs and expenses of professionals

in connection with the Chapter 11 Case, or in connection with the Plan and incidental to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

        P.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code.  Section 6.1 of the Plan provides that, from and after the Effective Date, James Katchadurian shall serve as the sole officer and manager of the Debtor.  The appointment of James Katchadurian is consistent with the interests of creditors and equity security holders and with public policy.

        Q.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for rate changes by the Debtor.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Case.

        R.      <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis included in the Disclosure Statement (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

        S.      <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Holders of Claims in Class 3 (M&M Lien Claims) are not Impaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Class 1 (First Lien Claims) and Class 2 (Second Lien Claims) have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without

regard to the votes of insiders of the Debtor.  Holders of Interests in Class 5 (Equity Interests) will not receive or retain any property on account of their Interests and, as such, Class 5 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

T.      Treatment of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expense Claims (Section 2.1 of the Plan), Professional Fee Claims (Section 2.2 of the Plan), and Gap Period Claims (Section 2.3 of the Plan) satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Other Priority Claims (Section 2.5 of the Plan) satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax Claims (Section 2.4 of the Plan) satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

U.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Holders of Class 1 (First Lien Claims), Class 2 (Second Lien Claims), and Class 4 (General Unsecured Claims) are Impaired, and at least one or more of those Impaired Classes voted to accept the Plan by the requisite amounts, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

V.      Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure Statement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) together with the record of the Chapter 11 Case and the evidence presented at the Confirmation Hearing, establishes that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind-down and liquidation of the Debtor's Estate, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W.      Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).  The Plan provides that all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on or before the Effective Date pursuant to Section 13.3 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

X.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtor has no retirees or retirement benefits.  Accordingly, section 1129(a)(13) is inapplicable to the Chapter 11 Case.

Y.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

Z.      Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15)).  The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

AA.     No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtor is a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

BB.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Class 5 (Equity Interests) is deemed to have rejected the Plan.  Notwithstanding the fact that Class 5 (Equity Interests) is deemed to have rejected the Plan, based upon the evidence and arguments presented at the Confirmation Hearing, the Plan does not discriminate unfairly, and is fair and equitable, with respect to the aforementioned Class, as required by sections 1129(b)(1) and 1129(b)(2) of the Bankruptcy Code, because there is (x) no holder of any interest that is junior to

Class 5 (Equity Interest) that is receiving or retaining property on account of its Interest, and (y) no holder of a Claim or Interest in a Class senior to such Class that is receiving more than a 100% recovery on account of its Claim or Interest. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Class 5 (Equity Interests).

CC. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in the Chapter 11 Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

DD. <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended (the "<u>Securities Act</u>") and no governmental entity has objected to the confirmation of the Plan on any such grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE. <u>Not A Small Business Case (11 U.S.C. § 1129(e))</u>. The provisions of section 1129(e) of the Bankruptcy Code apply only to "small business cases." The Debtor's Chapter 11 Case is not a "small business case" as defined in the Bankruptcy Code. Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in this case.

FF. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Bankruptcy Court in the Chapter 11 Case, including evidence presented at the Confirmation Hearing, the Debtor (i) has acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules governing the adequacy of disclosure in connection with all its respective activities relating to the solicitation of acceptances to the Plan and its participation in the activities described in section 1125 of the Bankruptcy Code and are not liable

at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, and the exculpation provisions set forth in Section 11.9 of the Plan.

GG.    Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    Implementation.  All documents and agreements necessary to implement the Plan, including all relevant and necessary documents and agreements that are necessary to implement the Plan (collectively, the "**Plan Documents and Agreements**"), are an essential element of the Plan, consummation of all of the Plan Documents and Agreements is in the best interests of the Debtor, the Debtor's Estate, and holders of Claims and Interests, and such Plan Documents and Agreements are hereby approved.  The Debtor has exercised reasonable business judgment in determining to enter into the Plan Documents and Agreements, and the Plan Documents and Agreements have been negotiated in good faith and at arm's length, are fair and reasonable, and are supported by reasonably equivalent value and fair consideration.

II.    Executory Contracts and Unexpired Leases.  The Debtor has exercised reasonable business judgment in determining whether to assume or reject Executory Contracts and Unexpired Leases pursuant to Section 9 of the Plan.  Each assumption or assumption and assignment of an executory contract pursuant to Section 9 of the Plan shall be legal, valid, and binding upon the Debtor, and its successors and assigns, and all non-Debtor parties and their successors and assigns to such executory contract, all to the same extent as if such assumption or

18

assumption and assignment were effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.

JJ.     <u>Injunction, Exculpation, and Releases</u>.     The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Plan, releases, and exculpation set forth in the Plan, including in Sections 11.5, 11.6, 11.7, 11.8, and 11.9 of the Plan, respectively, because, among other things, these provisions are an integral part of the Plan and are necessary and appropriate for the Plan's implementation.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in the Plan if, as has been established here based upon the record in the Chapter 11 Case and the evidence presented at the Confirmation Hearing, such provisions (a) were integral to the agreement among the various parties in interest and are important and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (b) confer substantial benefits on the Debtor's Estate and creditors, (c) are fair and reasonable, and (d) are in the best interests of the Debtor, its Estate, and parties in interest. Further, the exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order by a court of competent jurisdiction to have constituted fraud, gross negligence or willful misconduct.  Based upon the record of the Chapter 11 Case and the evidence proffered or adduced at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Sections 11.5, 11.6, 11.7, 11.8, and 11.9 of the Plan are consistent with the Bankruptcy Code and applicable law.

KK.     Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpations, and injunctions set forth in Sections 11.5, 11.6, 11.7,

11.8, and 11.9 of the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtor and the Debtor's Estate, creditors, and equity holders. The failure to include such provisions would seriously impair the Debtor's ability to confirm a consensual Plan in the Chapter 11 Case. Accordingly, this Court finds that the releases, exculpations, and injunctions set forth in Section 11 of the Plan are consistent with the Bankruptcy Code and applicable law.

LL.     Subordinated Claims.  The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise; *provided, however,* that pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to re-classify any Claim or Interest in accordance with any contractual, legal, or equitable subordination right relating thereto.

MM.     Retention of Jurisdiction.  On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including, but not limited to, jurisdiction over the matters set forth in Section 12 of the Plan.

NN.     Waiver of Stay.  Given the facts and circumstances of the Chapter 11 Case, it is appropriate that this Confirmation Order shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), or 6006(d).

## **ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.     Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any findings of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.     Confirmation Hearing Notice.  The Confirmation Hearing Notice complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

3.     Confirmation of Plan.  The Plan, as attached hereto as Exhibit B, and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Supplement, are hereby authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

4.     Settlement of Claims and Controversies.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies relating to the rights that a holder of a Claim may have with respect to such Claim or any distribution under the Plan on account thereof, including (i) the amount, value, and treatment of the Claims; (ii) the validity, extent, and priority

of any Liens securing the Claims; (iii) the value of the Debtor's encumbered and unencumbered Assets; (iv) any potential adequate protection or diminution in value Claim by the holders of Claims; (v) any potential Claim to surcharge Collateral under section 506(c) of the Bankruptcy Code; and (vi) the allocation of distributable value among the creditor classes.

5.      Objections.  All objections to confirmation of the Plan and other response or reservation of rights with respect to confirmation of the Plan or the Plan Supplement have been withdrawn, waived, or otherwise resolved by the Debtor prior to entry of this Confirmation Order. To the extent that any objections (including any reservations of rights contained therein) to confirmation of the Plan or the Plan Supplement or other responses or reservation of rights with respect to confirmation of the Plan or the Plan Supplement have not been withdrawn prior to entry of this Confirmation Order, such objections shall be, and hereby are, overruled on the merits.  All parties have had a full and fair opportunity to litigate all issues raised in the Objections, or which might have been raised, and the Objections have been fully considered by the Bankruptcy Court.

9.      Administrative Expense Claims Bar Date.   Except for Claims of Professionals, requests for payment of Administrative Expense Claims must be filed and served on the Debtor, as applicable, no later than the Administrative Expense Claims Bar Date.  Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims by the Administrative Expense Claims Bar Date, that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor or its Estate, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.  The notice of entry of this Confirmation Order shall include notice of the Administrative Expense Claims Bar Date and such notice is hereby approved as

reasonable and sufficient.

10.     Professional Fee Claims.   All Professionals seeking an award by the Bankruptcy Court of a Professional Fee Claim shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date.  All payments of Professional Fee Claims under the Plan shall be made in accordance with Section 2.2 of the Plan.

11.     Gap Period Claims.   All payments of Gap Period Claims under the Plan shall be made in accordance with Section 2.3 of the Plan and such method of payment is approved.

12.     Priority Tax Claims.   All payments of Priority Tax Claims under the Plan shall be made in accordance with Section 2.4 of the Plan and such method of payment is approved.

13.     Other Priority Claims.   All payments of Other Priority Claims under the Plan shall be made in accordance with Section 2.5 of the Plan and such method of payment is approved.

14.     Plan Classification of Claims and Interests.   The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The Court hereby holds that: (a) the classifications of Claims and Equity Interests under the Plan (i) are fair, reasonable, and appropriate and (ii) were not done for any improper purpose; (b) valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Equity Interests under the Plan; and (c) the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests. The classification set forth on the Ballots tendered or returned by the Debtor's creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to

23

modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtor, or any holder of a Claim against, or Equity Interest in, the Debtor for purposes other than voting on the Plan.

15.     <u>Treatment is in Full Satisfaction</u>.   The treatment of Claims and Equity Interests set forth in the Plan is in full satisfaction of the legal, contractual, and equitable rights (including any liens) that each Person holding a Claim or Equity Interest may have in or against the Debtor, the Estate, or their respective property.   This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtor, the Estate, or their respective property.

16.     <u>Implementation of the Plan</u>.  On the Effective Date, all actions contemplated by the Plan (including any action to be undertaken by the Litigation Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtor, or any other Person. The Debtor may take all actions as may be necessary or appropriate to affect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, as outlined in Section 5.1 of the Plan.

17.     <u>Cancellation of Existing Agreements Evidencing Claims and Equity Interests</u>.  Except as expressly provided in the Plan, on the Effective Date, all notes, instruments, certificates evidencing debt of, or Interests in, the Debtor shall be deemed surrendered and cancelled and obligations of the Debtor thereunder shall be discharged; *provided, however* that any surrender and/or cancellation of the notes, instruments, and certificates evidencing debt of, or Interests in, the Debtor shall only be with respect to the Debtor and shall not alter the rights or obligations of any parties other than the Debtor with respect to such agreements.

18.     <u>Closing of the Chapter 11 Case</u>.  When (a) all Disputed Claims have become Allowed Claims or Disallowed Claims, (b) the Litigation Trust has been dissolved pursuant to the Litigation Trust Agreement, (c) all remaining Available Cash has been distributed in accordance with the Plan, and (d) the Chapter 11 Case has been fully administered, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

19.     <u>Officers and Boards of Directors</u>.   The sole officer and manager of the Debtor was properly disclosed prior to the entry of this Confirmation Order to the extent required by section 1129(a)(5) of the Bankruptcy Code.

20.     <u>Wind Down</u>.   After the Effective Date, pursuant to the Plan, the Debtor shall, in an expeditious but orderly manner, wind down, sell, and otherwise liquidate and convert its Property to Cash, with no objective to continue or conduct a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation and orderly wind down of the Debtor, and shall not unduly prolong the duration of the Liquidation and the wind down.  Upon the Debtor's filing with the Bankruptcy Court of a certification stating that all duties of the Debtor under the Plan have been completed (save and except for those assigned to the Litigation Trustee under the Litigation Trust), the Debtor shall be dissolved without any further action or filing, including the filing of any documents with the secretary of state for the state in which the Debtor is formed or any other jurisdiction.

21.     <u>Distributions Under the Plan</u>.  All distributions under the Plan shall be made in accordance with Section 7 of the Plan and such methods of distribution are approved.  All distributions under the Plan made to holders of Allowed Claims in any Class are intended to be and shall be in full and final satisfaction of the Debtor's obligations under the Plan.  The

classifications of Claims for purposes of distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtor's creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect the actual classification of such Claims or Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtor or any holder of a Claim against the Debtor for purposes other than voting on the Plan.

22. <u>Undeliverable Distributions and Unclaimed Property</u>.  In the event that any distribution to any holder of a Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtor has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Distribution Date.  After such date, all unclaimed property or interests in property shall be redistributed (notwithstanding any applicable federal or state escheat, abandonment, or unclaimed property laws to the contrary) to holders of Allowed Claims pursuant to the Plan without the need for a further order by the Bankruptcy Court, and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

23. <u>Setoffs and Recoupments</u>.  Except for Claims that are expressly Allowed hereunder, and except as otherwise expressly provided in this Order, the Debtor may, but shall not be required to, setoff or recoup against any Claim or Interest (for purposes of determining the Allowed amount of such Claim or Interest on which distribution shall be made) any claims of any nature whatsoever that the Debtor may have against the holder of such Claim or Interest; *provided,*

*that* neither the Debtor's failure to enforce such a setoff or recoupment nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right the Debtor may have against the holder of such Claim or Interest.

24.    <u>Procedures For Disputed Claims Approved</u>. The procedures for resolving Claims outlined in Section 8 of the Plan are hereby approved.

25.    <u>Rejection of Executory Contracts and Unexpired Leases</u>.   Pursuant to Section 9.1 of the Plan, on the Effective Date, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) is subject to a pending motion to assume as of the Effective Date; (b) was previously assumed or assumed and assigned to a third party during the pendency of the Chapter 11 Case, including, but not limited to, the Executory Contracts and Unexpired Leases assumed and assigned to the Buyer in connection with the Sale; (c) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (d) is a D&O Policy or an insurance policy; or (e) is the APA.

26.    Subject to the payment of any applicable Cure Amounts and the resolution of any dispute related to such Cure Amounts, the entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections, assumptions, and assumptions and assignments provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.   Unless otherwise indicated or provided in a separate order of the Bankruptcy Court, rejections or assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.   Each executory contract assumed pursuant to the Plan or by order of the Bankruptcy Court but not assigned to a third party

before the Effective Date shall vest in and be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

27.     Unless otherwise provided in the Plan, this Confirmation Order, or by separate order of the Bankruptcy Court, each executory contract that is assumed or assumed and assigned shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract, without regard to whether such agreement, instrument, or other document is listed in the Plan Supplement.

28.     <u>Rejection Damages</u>.  Unless an Order of the Bankruptcy Court otherwise provides for an earlier date, any proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be filed with the Bankruptcy Court and served on the Clerk of the Court and the Debtor no later than thirty (30) days after the Confirmation Date.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtor no later than the deadline to file objections to the Plan pursuant to the Bankruptcy Code and Bankruptcy Rules.  Any holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which a proof of Claim is not timely filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim or (b) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claim arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and unenforceable against the Debtor, the Estate, or the Property, and shall be deemed fully compromised, settled, and released,

notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by Order of the Bankruptcy Court.

29. <u>APA</u>. The Debtor's assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Buyer's rights and obligations, including any cure obligations assumed by the Buyer pursuant to the APA, with respect to any Executory Contract or Unexpired Lease assigned to the Buyer pursuant to the terms of the APA and the Sale Order. For the avoidance of doubt, the APA is being assumed and ratified by the Debtor and will remain enforceable by the parties thereto.

30. <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contracts or Unexpired Leases, or the validity, priority, or amount of any Claims that may arise in connection therewith.

31. <u>Insurance Policies</u>. All insurance policies to which the Debtor is a party as

of the Effective Date, including any D&O Policy, shall be deemed to be and treated as Executory Contracts, unless such insurance policy previously was rejected by the Debtor pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and shall vest in the Debtor and continue in full force and effect thereafter in accordance with their respective terms.   Coverage for defense and indemnity under any D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

32.   <u>Reservation of Rights</u>.   Neither the exclusion nor the inclusion of any contract or lease in the APA or the Sale Order, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that the Debtor or the Estate has any liability thereunder.   In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, assignment, or rejection, the Debtor shall have sixty (60) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

33.   <u>Vesting of Assets</u>.   On the Effective Date, except as provided pursuant to the Plan and this Confirmation Order, and pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Debtor's Estate shall vest in the Debtor and/or the Litigation Trust, as applicable, for the purpose of liquidating the Estate and consummating the Plan.

34.   <u>Release of Liens</u>.   Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Sale, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Property of the Debtor or the Estate shall be fully released, settled, and compromised in exchange for any right to a distribution from the Debtor as provided in this Plan, and all rights,

titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any Property of the Debtor or the Estate shall revert to the Debtor.

35.     <u>Subordinated Claims</u>.  The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise; *provided, however,* that pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to re-classify any Claim or Interest in accordance with any contractual, legal, or equitable subordination right relating thereto.

36.     <u>Binding Effect</u>.  Subject to Section 11.4(b) of the Plan, the Confirmation Order does not provide the Debtor with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

37.     <u>Term of Injunctions or Stays</u>.  Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case, under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the date indicated in the order providing for such injunction or stay and the date the Chapter 11 Case is closed.

38.    <u>Release and Exculpation Provisions</u>.    All injunctions, releases, and exculpation provisions set forth in the Plan, including but not limited to those contained in Sections 11.5, 11.6, 11.7, 11.8, 11.9, and 11.10 of the Plan, are hereby approved and shall be effective and binding on all Persons, to the extent provided therein.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order is intended to affect the police or regulatory activities of governmental agencies.

39.    <u>Retention of Causes of Action/Reservation of Rights</u>. Except as otherwise provided in the Plan, including Sections 11.6, 11.7, 11.8, and 11.9 of the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Debtor or the Litigation Trust, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person without the approval of the Bankruptcy Court, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim, and/or Claim for setoff seeking affirmative relief against the Debtor, or its officers, directors, or representatives; and (ii) the turnover of any Property of the Debtor or the Estate; *provided, however,* that the Debtor and the Litigation Trust shall not retain any Claims or Causes of Action against the Released Parties (other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence, or willful misconduct, which Claims or Causes of Action are hereby preserved).  The Debtor or the Litigation Trust, as applicable, may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor, the Estate, and the Parties in Interest.

40.    Except as otherwise provided in the Plan, including Sections 11.6, 11.7,

11.8, and 11.9 of the Plan, nothing contained in the Plan or in this Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately before the Voluntary Petition Date, against or with respect to any Claim left Unimpaired by the Plan; *provided, however,* that the Debtor and the Litigation Trust shall not retain any Claims or Causes of Action against the Released Parties (other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence, or willful misconduct, which Claims or Causes of Action are hereby preserved).  The Debtor or the Litigation Trust, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that they had immediately before the Voluntary Petition Date with respect to any Claim left Unimpaired by the Plan as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor or the Litigation Trust, as applicable, to the same extent as if the Chapter 11 Case had not been commenced.

41.     <u>Solicitation of the Plan.</u>  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

42.     <u>Plan Supplement</u>.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements

introduced into evidence by the Debtor at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtor, are authorized and approved when they are finalized, executed, and delivered, and are integral to, part of, and are incorporated by reference into, the Plan.  Without any further notice to, or action, order, or approval of, the Bankruptcy Court, the documents included in the Plan Supplement may be amended and supplemented, prior to execution, so long as such amendment or supplement does not materially and adversely change the treatment of holders of Claims or Equity Interests, and after execution in accordance with their respective terms.  Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

43.    Corporate Action.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtor and any corporate or limited liability company action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, managers, directors, officers, members, or partners of the Debtor.   The authorizations and approvals contemplated by Section 11.13 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

44.    Retention of Jurisdiction.  On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including, but not limited to, jurisdiction over the

matters set forth in Section 12 of the Plan.

45.     <u>Modifications of the Plan</u>.  The Plan may be altered, amended, modified, or supplemented by the Debtor before or after the Confirmation Date in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided, however, that the Committee shall have the right to be consulted on any proposed modifications of this Confirmation Order and the Plan.  A holder of an Allowed Claim or Allowed Interest that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

46.     <u>Payment of Statutory Fees</u>.  All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtor.  Post-confirmation, quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law, and the Debtor or liquidating trustee shall continue to file reports to show the calculation of such fees for the Debtor's Estate until the Chapter 11 Case is closed under section 350(a) of the Bankruptcy Code.

47.     <u>Post Confirmation Report</u>.  The Debtor or the liquidating trustee shall file the post-confirmation report with the U.S. Trustee in accordance with applicable law until the Chapter 11 Case is closed under section 350(a) of the Bankruptcy Code.

48.     <u>Dissolution of the Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee ("**Committee**") shall dissolve automatically, and the members of the Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case, except for the limited purpose of prosecuting requests for payment of

Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date by the Committee and any professionals and/or advisors to the Committee.

49.     <u>Substantial Consummation</u>.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

50.     <u>Immediate Binding Effect</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable, and deemed binding upon, and inure to the benefit of, the Debtor, the Litigation Trust, the holders of Claims and Interests (irrespective of whether holders of such Claims and Interests accepted or are deemed to have accepted the Plan), the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

51.     <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.   Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

52.     <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually</u>

<u>Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

53.     <u>Applicable Non-bankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

54.     <u>Notice of Entry of Confirmation Order and Effective Date</u>.  On or before the twentieth (20th) day following the date of entry of this Confirmation Order, the Debtor shall serve notice of entry of this Confirmation Order (which may be combined with the Notice of the Effective Date) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all known creditors and interest holders, the U.S. Trustee, and other parties in interest, by causing notice of entry of this Confirmation Order (the "**Notice of Confirmation**"), to be delivered to such parties by email notification if such parties have consented to email service of pleadings and papers filed in the Chapter 11 Case or by first-class mail, postage prepaid.  The Debtor shall also post the Notice of Confirmation on the website maintained by the Claims and Noticing Agent, at http://www.primeclerk.com/northstar/ (the "**Case Website**").  The notice described herein is adequate under the circumstances, no other or further notice is necessary, and such notice shall be deemed to have been "prompt" if it occurs on or before the twentieth (20th) day following the date of entry of this Confirmation Order.

55.     <u>Notice of Effective Date</u>.  On the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date ("**Notice of Effective Date**") with the Bankruptcy Court.  As soon as practicable after the occurrence of the Effective Date, the Debtor shall serve the Notice of Effective Date on all holders of Claims and Interests, the U.S. Trustee, and other

parties in interest, by causing the Notice of Effective Date to be delivered to such parties by email notification if such parties have consented to email service of pleadings and papers filed in the Chapter 11 Case or by first-class mail, postage prepaid.  The Debtor shall also post the Notice of Effective Date on the Case Website.

56.     <u>Inconsistency</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however,* that if there is any inconsistency between a Plan provision and a provision of this Confirmation Order, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern, and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

57.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

58.     <u>U.S. Release Carve-Out</u>.  Notwithstanding anything to the contrary in this Confirmation Order, the Plan, the Plan Supplement, the Litigation Trust Agreement, and/or in other Plan-related documents (collectively for purposes of paragraphs 58-66 of this Order, the "**<u>Confirmation Documents</u>**"), nothing shall release, discharge, exculpate, or immunize any third party or non-debtor entity from any debt, obligation, liability, claim, action, proceeding, defense or cause of action in connection with any claim, action, proceeding, defense or cause of action, brought, or that may be brought, by the United States of America or any or all of its agencies (collectively, the "**<u>United States</u>**") including, without limitation, as may otherwise be provided for elsewhere in the Confirmation Documents.

59.     For the avoidance of any doubt, the United States shall not be deemed to have opted into any releases, injunctions, or exculpations otherwise provided for elsewhere in the Confirmation Documents by the United States' abstention from voting on the Plan.

60.     For the further avoidance of any doubt, nothing in the Confirmation Documents shall alter, extinguish, waive, modify, or otherwise limit the obligations of non-debtor third parties for decommissioning obligations, maintenance and monitoring obligations, financial assurance obligations (including, without limitation, any sureties or other persons or entities that have posted bonding or other financial assurance on behalf of the Debtor (Northstar Offshore Group, LLC) and/or for any other obligations for which such non-debtor party is liable to the Department of the Interior ("**Interior**"), as may be provided for in applicable federal laws and regulations, or the rights of Interior to enforce such laws and regulations (the terms of this provision collectively shall be referred to as the "**U.S. Release Carve-Out**").  To the extent of any conflict between the Confirmation Documents and the terms of this U.S. Release Carve-Out, the U.S. Release Carve-Out as set forth herein (paragraphs 58 to 60) shall expressly supersede and control.

61.     <u>Rejection of Federal OCS Leases</u>.  Northstar Offshore Group, LLC's contractual interests in any unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on Exhibit A to this Confirmation Order (the "**Rejected OCS Leases and Grants**"), which have not been approved for transfer by this Court to Buyer, Northstar Offshore Ventures LLC, are hereby rejected pursuant to Section 365 of the Bankruptcy Code and Section 9.1 of the Plan expressly subject to the terms of paragraphs 62 to 66 below.

62.     Notwithstanding anything to the contrary elsewhere in this Confirmation Order, and/or any other Confirmation Document, nothing shall constitute a discharge, waiver, or

release of any regulatory or compliance obligations that the Estate, Northstar Offshore Group, LLC and/or the Litigation Trust, as successor to Northstar Offshore Group LLC's non-dischargeable regulatory obligations, have associated with maintenance, monitoring, decommissioning or any similar regulatory obligations (collectively, but without limitation, the "**Regulatory Obligations**") related to their Rejected OCS Leases and Grants (and, to the extent applicable, any related platforms, wells, pipelines, or equipment located on the Rejected OCS Leases and Grants), pursuant to applicable laws and regulations including, without limitation, those found in The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("**OCSLA**") and its implementing regulations found in, among other places, 30 C.F.R. Part 250, and any and all other laws reasonably designed to protect the public health or safety from identified hazards.  For the avoidance of any doubt, these Regulatory Obligations are, and shall remain, non-dischargeable and survive Northstar Offshore Group LLC's bankruptcy.

63.     The Estate, Northstar Offshore Group, LLC, and/or the Litigation Trustee, as successor to Northstar Offshore Group, LLC's Regulatory Obligations, as applicable, are authorized to: (i) relinquish the Estate's and the Debtor's interests in the Rejected OCS Leases and Grants pursuant to 30 C.F.R. § 556.1101 and 30 C.F.R. § 250.1019 to Interior; (ii) if requested by Interior or by other interest holders, assign any partial interests or rights in the Rejected OCS Leases and Grants to other interest holders pursuant to 30 C.F.R. § 556.701 and 30 C.F.R. § 556.801; and/or (iii) request the designation of a new operator or agent pursuant to 30 C.F.R. § 550.143 and 30 C.F.R. § 550.146, as applicable, for the Rejected OCS Leases and Grants and/or those federal OCS leases and grants that were approved by the Bankruptcy Court for sale to the Buyer but which still require Interior's approval for assignment to the Buyer.

64.     The Estate, Northstar Offshore Group, LLC and/or the Litigation Trustee,

as successor to Northstar Offshore Group LLC's Regulatory Obligations, as applicable, shall cooperate with The Bureau of Ocean Energy Management ("**BOEM**"), the Bureau of Safety and Environment ("**BSEE**"), and/or the appropriate Interior agency to complete and file with the BOEM, Adjudication Unit (Attn: Bernadette Thomas), BSEE, Pipelines Section (Attn: Angie Gobert, Chief), or the appropriate office of Interior, the proper forms to relinquish to Interior, and/or assign to other interest holders, Debtor's and/or the Estate's interests in the Rejected OCS Leases and Grants (and, to the extent applicable, any related platforms, wells, pipelines, facilities, or equipment located on the Rejected OCS Leases and Grants) and, if requested, cooperate with Interior to effectuate any required relinquishment or assignment before the Debtor's bankruptcy case is closed.

65.     Governmental Reservation of Rights.   Notwithstanding anything to the contrary in the Confirmation Documents, nothing shall preclude, discharge, bar, waive, or enjoin: (i) any liability of the Debtor or the Estate to any Governmental Unit that does not constitute a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any police or regulatory liability of any entity to a Governmental Unit including, without limitation, any police or regulatory liability that such entity would be subject to as the owner or operator of property after the Confirmation Date; (iv) the United States (including any or all of its agencies) from taking any and all actions to enforce its police or regulatory powers; and/or (v) the United States from asserting any setoff or recoupment rights it may have (all of which are expressly preserved).  For the avoidance of any doubt, the provisions of this paragraph expressly preserve, without limitation, the regulatory powers of the United States (including any and all of its regulatory agencies) to approve or disapprove any assignments of federal leases or rights-of-way on the Outer Continental Shelf in the United States' sole discretion in accordance with applicable

federal laws and regulations including, without limitation, as provided for in the Sale Order.  For the further avoidance of doubt, nothing in the Confirmation Documents shall preclude or enjoin the United States from performing any audit and/or compliance review as provided for in the Sale Order.  Such obligations shall be preserved in full, and the audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. § 1701, *et seq*., as amended) to the extent applicable under non-bankruptcy law.  The Debtor, the Estate and the Litigation Trustee, as applicable, shall retain all defenses and/or rights to challenge any such determinations made pursuant to any such audit provided for in the Sale Order, other than defenses and/or rights arising from the Debtor's bankruptcy, provided that any such challenge must be raised in the United States' administrative review process leading to a final agency determination by the United States.

66.     To the extent that there is any conflict between paragraphs 58 to 66 and any other provision of this Confirmation Order, and/or the Confirmation Documents (including, without limitation, paragraph 72), the terms of paragraphs 58 to 66 shall expressly supersede and control.

67.     <u>Energy XXI Entities, Nippon and Houston Energy Entities</u>. Notwithstanding anything to the contrary contained in the Plan, Disclosure Statement, the Confirmation Order, or otherwise, nothing in the Plan or Confirmation Order shall affect or otherwise impair findings of fact, conclusions of law, provisions or orders of the Court set forth in the Sale Order insofar as they affect, determine or impact the rights, claims or interests of M21K, LLC, Energy XXI, GOM, LLC, Energy XXI Pipeline II, LLC, and/or EPL Oil & Gas, Inc. (collectively, the "**Energy XXI Entities**"), JX Nippon Oil Exploration (U.S.A.) Limited ("**Nippon**") or Houston Energy, L.P. and/or HE&D Offshore, L.P. (collectively, the "**Houston**

**Energy Entities**").

68.     Notwithstanding anything to the contrary contained in the Plan, Disclosure Statement, the Confirmation Order, or otherwise, nothing in the Plan or the Confirmation Order shall affect or otherwise impair common law or contractual setoff or recoupment rights the Energy XXI Entities may possess against the Debtor (Northstar Offshore Group, LLC), or the rights or claims relating to Cure Amounts that may be owing by the Debtor to the Energy XXI Entities with respect to the Debtor's assumption and assignment of executory contracts to the Buyer pursuant to the APA dated as of August 1, 2017 and/or Sale Order.

69.     Notwithstanding anything to the contrary contained in the Plan, Disclosure Statement, the Confirmation Order, or otherwise, nothing in the Plan or the Confirmation Order shall affect or otherwise impair rights or claims that Nippon, the Energy XXI Entities, and/or the Houston Energy Entities may have against NOV subsequent to the Effective Date of the APA, including but not limited, among other things, for breach of NOV's obligations under the APA, breach of obligations of NOV relating to Assumed and Assigned Contracts identified in the APA, breach of obligations NOV has as operator of oil and gas properties acquired by NOV from Northstar pursuant to the APA, breach of obligations of NOV as owner of interests in oil and gas properties acquired by NOV from Northstar pursuant to the APA, or for setoff or recoupment.

70.     Notwithstanding anything to the contrary contained in the Plan, Disclosure Statement, the Confirmation Order, or otherwise, nothing in the Plan or the Confirmation Order shall affect or otherwise impair Nippon's rights and claims in or with respect to Bond nos. SUR0030280, SUR0030276 and SUR0030279 issued by Argonaut Insurance Company ("**Argonaut**") to Nippon, as obligee, on which Northstar is the principal.

71.     <u>Rosetta Resources Offshore LLC</u>. Nothing herein or in the Plan alters or

amends the Agreed Order resolving Rosetta Resources Offshore LLC's Objection to Notice of (I) Request for Authority to Assume and Assign Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts [ECF No. 903] entered by this Court on October 26, 2017.

72.     Notwithstanding any other provision in the Plan or this Confirmation Order to the contrary, the Debtor shall maintain its corporate existence, in good standing, for so long as it remains the record title owner or named operator for any OCS leases, RUE's or ROW to be assigned to NOV, including HI-A571 (OCS-G02391), in accordance with the APA and Sale Order and during such time the Debtor assumes and will continue to perform its obligations under that certain Transition Services Agreement between the Debtor and NOV dated August 1, 2017 (the "**TSA**").  Notwithstanding any other provision in the Plan or this Order to the contrary, NOV shall be responsible for providing all personnel, funding, insurance coverage, OSFR, SEMS and other operational support for the Debtor to carry out its duties as operator under its Operating Agreements and as required by applicable law and shall maintain the TSA until the approval by BOEM of the last assignment required under the APA.

73.     Notwithstanding anything in the Plan or this Order to the contrary, the Louisiana Department of Revenue ("LDR") (i) pursuant to the provisions of 11 USC section 593(b)(1)(B)-(C), shall not be required to file a request for payment of any administrative expense claim allowable under 11 USC section 503(b)(1)(D); and (ii) nothing in the Plan or this Order shall impair the LDR's valid right of setoff under applicable non-bankruptcy law and all valid rights of setoff the LDR may have are reserved.

74.     Nothing contained in the Plan, the Plan Declaration of James Katchadurian ("**Katchadurian Declaration**"), the Exhibit Attached to the Katchadurian Affidavit entitled "Liability Summary: Filed Claims and Schedules" ("**Liability Summary**"), or any other Exhibit

introduced at the Confirmation Hearing, or the Confirmation Order, shall impair the rights of the Louisiana Department of Revenue or any other Party's rights with respect to the Louisiana Department of Revenue's Claims, specifically, Prime Clerk Claim Nos. 179 and 194 ("**LDR Claims**"). The rights of all Parties with respect to the LDR Claims are reserved. Specifically, the Liability Summary's Company Estimation of $0 for the LDR Claims shall not be interpreted as and does not take the place of a filed claim objection, and same shall not be interpreted to mean that such claims would not be paid under the terms of the Plan in the event same were to become "**Allowed Claims**" under the terms of the Plan.

75.     Notwithstanding the Retained Causes of Action referenced in Exhibit C to the Plan Supplement, nothing herein or in the Plan, Disclosure Statement, or Plan Supplement modifies, alters or lifts any stay imposed for the benefit of: (i) the entities and their property subject to the protection of the Second Amended Order Appointing Receiver dated October 16, 2017 (as may be amended or supplemented, the "**Receiver Order**") of the United States District Court for the Eastern District of New York (the "**Receiver Court**"); (ii) the entities and their property subject to any orders entered by the U.S. Bankruptcy Court for the Southern District of New York (the "**Chapter 15 Court**") in connection with the pending chapter 15 proceedings of Platinum Partners Value Arbitrage Fund, L.P., et al. (collectively, "**PPVA**"), chapter 15 case no. 16-12925 (SCC), and any orders entered by the Grand Court of the Cayman Islands (the "**Grand Court**") with respect to the pending liquidation of PPVA, or applicable Cayman law. For the avoidance of doubt, all rights and defenses to any claims sought to be asserted against any entity or property subject to the protection of the Receiver Court, the Chapter 15 Court, the Grand Court, or Cayman law are not waived and are hereby preserved.

Signed:
        December 22, 2017

Marvin Isgur
United States Bankruptcy Judge

**Exhibit A**

**Rejected OCS Leases and Grants**

| Area | Block | Lease No. |
|---|---|---|
| East Cameron | 317 | OCS-G 5392 |
| East Cameron | 318 | OCS-G 5393 |
| South Marsh Island | 39 | OCS-G 16320 |
| South Marsh Island | 142 | OCS-G 1216 |
| South Marsh Island | 143 | OCS-G 1217 |
| South Pelto | 8 | OCS-G 3587 |
| South Pelto | 13 | OCS-G 3171 |
| Vermilion | 196 | OCS-G 19760 |
| Vermilion | 207 | OCS-G 19761 |
| West Cameron | 60 | OCS-G 9383 |
| West Cameron | 61 | OCS-G 9384 |
| West Cameron | 62 | OCS-G 25872 |
| West Cameron | 75 | OCS-G 22505 |
| West Cameron | 76 | OCS-G 9386 |
| West Cameron | 77 | OCS-G 9387 |

## Exhibit B

**Debtor's Second Amended Plan of Liquidation
Under Chapter 11 of the Bankruptcy Code**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | **Case No. 16-34028** |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

## DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION UNDER
## <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>

**WINSTON & STRAWN LLP**

Lydia T. Protopapas
Texas Bar No. 00797267
Southern Dist. of Texas Bar No. 21378
Jason W. Billeck
Texas Bar No. 24001740
Southern Dist. of Texas Bar No. 23802
1111 Louisiana, 25th Floor
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile:  (713) 651-2700

*Counsel for Northstar Offshore Group, LLC*

Dated: November 22, 2017

# TABLE OF CONTENTS

**Page**

SECTION 1. DEFINITIONS AND INTERPRETATION ............................................................ 1

    A.    Definitions........................................................................................... 1

    B.    Interpretation; Application of Definitions and Rules of Construction.................. 10

    C.    Controlling Document. ........................................................................ 11

SECTION 2. PROFESSIONAL FEE CLAIMS AND ADMINISTRATIVE EXPENSE
AND PRIORITY CLAIMS ............................................................................ 11

    2.1. Administrative Expense Claims................................................................ 11

    2.2. Professional Fee Claims......................................................................... 11

    2.3. Gap Period Claims. .............................................................................. 12

    2.4. Priority Tax Claims............................................................................... 12

    2.5. Other Priority Claims............................................................................ 12

SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS ...................................... 12

    3.1. Classification in General........................................................................ 12

    3.2. Summary of Classification...................................................................... 13

    3.3. Special Provision Governing Unimpaired Claims....................................... 13

    3.4. Elimination of Vacant Classes. ............................................................... 13

    3.5. Voting Classes; Presumed Acceptance by Non-Voting Classes................... 13

    3.6. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
Bankruptcy Code. ............................................................................... 14

    3.7. Controversy Concerning Impairment. ...................................................... 14

SECTION 4. TREATMENT OF CLAIMS AND INTERESTS .................................................. 14

    4.1. First Lien Claims (Class 1). ................................................................... 14

    4.2. Second Lien Claims (Class 2).................................................................. 15

    4.3. M&M Lien Claims (Class 3). .................................................................. 15

    4.4. General Unsecured Claims (Class 4).......................................................... 16

    4.5. Equity Interests (Class 5)....................................................................... 16

SECTION 5. MEANS OF IMPLEMENTATION....................................................................... 16

    5.1. Authority........................................................................................... 16

    5.2. Litigation Trust. .................................................................................. 17

    5.3. Corporate Action.................................................................................. 19

5.4. Withholding and Reporting Requirements. ................................................................ 19

5.5. Closing of the Chapter 11 Case. ............................................................................... 20

SECTION 6. CORPORATE GOVERNANCE ................................................................... 20

6.1. Board of Directors and Officers. ............................................................................... 20

6.2. Wind Down. ............................................................................................................... 20

6.3. LLC Agreement. ........................................................................................................ 20

SECTION 7. DISTRIBUTIONS ........................................................................................ 21

7.1. Distribution Record Date. .......................................................................................... 21

7.2. Date of Distributions. ................................................................................................. 21

7.3. Delivery of Distributions. .......................................................................................... 21

7.4. Manner of Payment Under the Plan. .......................................................................... 22

7.5. Minimum Cash Distributions. .................................................................................... 22

7.6. Setoffs and Recoupment. ........................................................................................... 22

7.7. Payment of Disputed Claims. ..................................................................................... 22

7.8. Allocation of Distributions Between Principal and Interest. ..................................... 22

SECTION 8. PROCEDURES FOR DISPUTED CLAIMS ................................................ 22

8.1. Allowance of Claims. ................................................................................................. 22

8.2. Objections to Claims. ................................................................................................. 23

8.3. Estimation of Claims. ................................................................................................. 23

8.4. No Distributions Pending Allowance. ....................................................................... 23

8.5. Preservation of Claims and Right to Settle Claims. .................................................. 23

SECTION 9. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 24

9.1. Rejection of Executory Contracts and Unexpired Leases. ......................................... 24

9.2. Claims Based on Rejection of Executory Contracts and Unexpired Leases. ............ 24

9.3. APA. ........................................................................................................................... 24

9.4. Modifications, Amendments, Supplements, Restatements, or Other
Agreements. ............................................................................................................... 25

9.5. Insurance Policies. ..................................................................................................... 25

9.6. Reservation of Rights. ................................................................................................ 25

SECTION 10. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ..................... 25

10.1. Conditions Precedent to the Effective Date. ............................................................ 25

10.2. Waiver of Conditions Precedent. ............................................................................. 26

10.3. Effect of Failure of Conditions to Effective Date. .................................................. 26

SECTION 11. EFFECT OF CONFIRMATION ........................................................ 26

    11.1. Vesting of Assets. ............................................................................. 26

    11.2. Release of Liens. .............................................................................. 26

    11.3. Subordinated Claims. ....................................................................... 27

    11.4. Binding Effect. ................................................................................. 27

    11.5. Term of Injunctions or Stays............................................................ 27

    11.6. Injunction Against Interference with the Plan. ................................. 27

    11.7. Releases by the Debtor...................................................................... 27

    11.8. Releases by Holders of Claims and Interests. ................................... 28

    11.9. Exculpation. ..................................................................................... 29

    11.10. Retention of Causes of Action/Reservation of Rights. ..................... 29

    11.11. Solicitation of the Plan...................................................................... 30

    11.12. Plan Supplement. .............................................................................. 30

    11.13. Corporate Action............................................................................... 30

SECTION 12. RETENTION OF JURISDICTION ............................................... 30

SECTION 13. MISCELLANEOUS PROVISIONS ............................................... 32

    13.1. Modification of the Plan. .................................................................. 32

    13.2. Revocation or Withdrawal of the Plan............................................... 33

    13.3. Payment of Statutory Fees. ............................................................... 33

    13.4. Post Confirmation Report. ................................................................ 33

    13.5. Dissolution of the Committee. .......................................................... 33

    13.6. Substantial Consummation. .............................................................. 33

    13.7. Severability of Plan Provisions. ........................................................ 33

    13.8. Governing Law. ................................................................................ 34

    13.9. Time. ................................................................................................ 34

    13.10. Immediate Binding Effect................................................................. 34

    13.11. Successors and Assigns...................................................................... 34

    13.12. Exhibits/Schedules ........................................................................... 34

    13.13. Entire Agreement .............................................................................. 34

    13.14. Notices ............................................................................................. 35

## SECTION 1. **DEFINITIONS AND INTERPRETATION**

**A.**    Definitions.

1.1.    ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Case pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(a)(2) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred from and after the Voluntary Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

1.2.    ***Administrative Expense Claims Bar Date*** means the first Business Day that is thirty (30) days following the Effective Date, except as otherwise specifically set forth in the Plan.

1.3.    ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 90 days following the Effective Date, except as otherwise specifically set forth in the Plan; *provided, however,* that the Administrative Claims Objection Bar Date may be extended pursuant to an Order of the Bankruptcy Court upon a motion filed by the Debtor after notice and a hearing.

1.4.    ***Allowed*** means, with respect to any Claim, (a) any Claim against the Debtor that has been listed in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and for which no timely proof of Claim has been filed; (b) any Claim listed on the Schedules or included in a timely filed proof of Claim as to which no objection to allowance has been, or subsequently is, interposed prior to the expiration of any applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; (c) any Claim listed on the Schedules or included in a timely filed proof of Claim as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder; or (d) any Claim expressly allowed by a Final Order or pursuant to the terms of the Plan.

1.5.    ***Allowed Administrative Expense and Priority Claims*** means Allowed Administrative Expense Claims, Allowed Gap Period Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims.

1.6.    ***APA*** means that certain Asset Purchase Agreement by and between the Debtor and the Buyer, which provides for the sale of substantially all of the Debtor's Property to the Buyer pursuant to the Sale Order.

1.7.    ***Argonaut Claim*** means any Claim asserted directly or indirectly by Argonaut Insurance Company or any related entity against the Debtor and/or the Estate with the exception of claims relating to bonds issued in favor of JX Nippon Oil Exploration (U.S.A.) Limited and/or Fieldwood Energy, LLC.

1.8.    ***Available Cash*** means (i) all Cash of the Debtor realized from its business operations, the Sale, any other sale or disposition of any of its Property, the interest earned on invested funds, or from any other source or otherwise, and (ii) all Cash recovered by the Litigation

1

Trustee on Causes of Action and available for distribution, less (iii) the amount of Cash (a) necessary to satisfy or discharge Allowed Professional Fee Claims, Allowed Administrative Expense and Priority Claims and Allowed Secured Claims, to the extent such Claims have not been settled, released, or otherwise discharged, and (b) estimated and retained by the Debtor to (I) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, and (II) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code.  Available Cash shall include the applicable portions of (i) excess amounts retained for Disputed Claims that become available in accordance with Section 8 of the Plan or (ii) amounts represented by undeliverable distributions in accordance with Section 7.3 of the Plan.

1.9.    ***Avoidance Actions*** means all Causes of Action commenced, or that may be commenced, by the Debtor pursuant to chapter 5 of the Bankruptcy Code, including without limitation, sections 544, 545, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

1.10.    ***Bankruptcy Code*** means title 11 of the United States Code.

1.11.    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas or such other court having jurisdiction over the Chapter 11 Case.

1.12.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

1.13.    ***Business Day*** means any day other than a Saturday, Sunday, or "legal holiday" as defined by Bankruptcy Rule 9006(a).

1.14.    ***Buyer*** means Northstar Offshore Ventures LLC.

1.15.    ***Cash*** means legal tender of the United States of America.

1.16.    ***Cause of Action*** means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Voluntary Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law, including, without limitation: (a) any right of setoff, counterclaim, or recoupment, and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including Avoidance Actions); (c) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (d) any state law fraudulent transfer claim; and (e) any claim against the Debtor's current or former managers, officers, or directors for damage to the Debtor or the Estate, including for breach of any duty owed to the Debtor or the Estate by any of its current or former managers, officers, or

2

directors; *provided, however,* that Causes of Action shall not include the right to object to Claims and Interests.

    1.17.    **Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code which was initially commenced in the Bankruptcy Court as an involuntary proceeding on August 12, 2016 and styled *In re Northstar Offshore Group, LLC*, Case No. 16-34028.

    1.18.    **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

    1.19.    **Claims Objection Bar Date** means, with respect to a Claim, the first Business Day that is 90 days after the later of (a) the Effective Date or (b) the date that a proof of Claim is filed or amended, or a Claim is otherwise asserted or amended in writing, by or on behalf of a holder of such Claim; *provided, however,* that the Claims Objection Bar Date may be extended pursuant to an Order of the Bankruptcy Court upon a motion filed by the Debtor.

    1.20.    **Class** means any group of Claims or Interests classified by the Plan pursuant to section 1122 of the Bankruptcy Code.

    1.21.    **Committee** means the statutory committee of unsecured creditors appointed in the Chapter 11 Case.

    1.22.    **Confirmation** means the approval of the Confirmation Order by the Bankruptcy Court.

    1.23.    **Confirmation Date** means the date on which the Bankruptcy Court approves the Confirmation Order.

    1.24.    **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

    1.25.    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be consistent in all respects with this Plan.

    1.26.    **D&O Policy** means any and all primary and excess insurance policies of the Debtor, the Estate or any other Person currently or formerly affiliated with, or a shareholder of, the Debtor as of the Effective Date, that provides for, among other things, coverage for liability related to the actions or omissions of the Debtor's directors, members, trustees, or officers including, but not limited to, the ACE Express Private Company Management Indemnity Package issued to the Debtor by Westchester Fire Insurance Company.

    1.27.    **Debtor** means Northstar Offshore Group, LLC, before, on, and after the Effective Date.

    1.28.    **DIP Agent** means Arena Limited DIP I, LLC in its capacity as agent under the DIP Credit Agreement, and any predecessor or successor in interest thereto.

1.29.   ***DIP Credit Agreement*** has the meaning set forth in the Final DIP Order.

1.30.   ***Disallowed*** means, with respect to any Claim or Interest, disallowed by a Final Order.

1.31.   ***Disclosure Statement*** means the disclosure statement for the Plan, which is prepared and distributed in accordance with sections 1125 and/or 1126(b) of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, and/or other applicable law.

1.32.   ***Disputed Claim*** means, with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, on or before the Confirmation Date; or (b) for which a proof of Claim or Interest for payment has been made, to the extent the Debtor or any Party in Interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.33.   ***Distribution Date*** means the date or dates, including the Initial Distribution Date, as determined by the Debtor in accordance with the terms of the Plan, on which the Debtor makes a distribution to holders of Allowed Claims.

1.34.   ***Distribution Record Date*** means the Effective Date of the Plan.

1.35.   ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.36.   ***Eleanor*** means Eleanor Fiduciary Services, LLC in its capacity as Fiscal Agent and Collateral Agent under the Fiscal Agency Agreement, together with any of its successors or assigns.

1.37.   ***Eleanor Gift Distribution*** means any Cash to which Eleanor and/or any holder of an Allowed Second Lien Claim is entitled, which Cash shall be distributed Pro Rata as follows: first to holders of Allowed Professional Fee Claims, if any, second to holders of Allowed Administrative Expense and Priority Claims (in accordance with the priority scheme of the Bankruptcy Code), if any, and third to holders of Allowed General Unsecured Claims; *provided, however*, that after all Allowed Professional Fee Claims, Allowed Administrative Expense and Priority Claims and Allowed General Unsecured Claims have otherwise been satisfied, settled, released, and/or discharged, any remaining Available Cash shall be distributed to Eleanor.

1.38.   ***Equity Interests*** means Class A Preferred Units in the Debtor, Class B Preferred Units in the Debtor, and Common Units in the Debtor.

1.39.   ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.40.   ***Exculpated Parties*** means (a) the Debtor; (b) the Debtor's current and former officers, directors, and managers; (c) each of the foregoing Persons' respective predecessors,

successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, affiliates, and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, restructuring advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such; and (d) the Committee and each of the Committee's agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case solely in their capacity as such; *provided, however*, that notwithstanding the foregoing, the Platinum Equity Holders and all of their current and former members, managers, equity holders, employees, agents, professionals, trustees, principals, partners, parents, directors, and/or officers and each of the foregoing's predecessors, successors and assigns, are expressly excluded from this definition notwithstanding the fact that such Persons may have also been shareholders, members, managers, directors, or officers of, or otherwise related to, the Debtor.

1.41.   ***Executory Contract*** means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

1.42.   ***Final DIP Order*** means that certain *Final Order (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Modifying Automatic Stay* (ECF No. 326) signed by the Bankruptcy Court on February 2, 2017.

1.43.   ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion has been or may be filed with respect to such order or judgment pursuant to sections 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024.

1.44.   ***First Lien Claim*** means a Secured Claim or any other Claim arising in connection with the Letter of Credit Loan Agreement and/or the Letter of Credit Note as well as any other Claim granted to the First Lien Claim holder under the Final DIP Order.

1.45.   ***Fiscal Agency Agreement*** means that certain Amended and Restated Fiscal Agency Agreement, dated as of September 18, 2014, among Holdings, as the Company, P Administrative Services, LLC (predecessor to Eleanor), as Fiscal Agent and Collateral Agent, and each of the guarantors party thereto (including the Debtor).

1.46.   ***FNBCT*** means the First National Bank of Central Texas.

1.47.   ***FNBCT Gift Distribution*** means any Cash to which FNBCT is entitled as the holder of an Allowed First Lien Claim, which Cash shall be distributed Pro Rata as follows:  first to holders of Allowed Professional Fee Claims, if any, second to holders of Allowed Administrative Expense and Priority Claims (in accordance with the priority scheme of the Bankruptcy Code), if any, and third to holders of Allowed General Unsecured Claims.

1.48.   ***Gap Period*** means the period of time beginning on the Involuntary Petition Date and concluding immediately before the Voluntary Petition Date.

1.49.   ***Gap Period Claim*** means a Claim arising in the ordinary course of the Debtor's business or financial affairs during the Gap Period and entitled to priority under section 507(a)(3) of the Bankruptcy Code.

1.50.   ***General Unsecured Claim*** means any Claim against the Debtor which is not an Administrative Expense Claim, a Professional Fee Claim, a Gap Period Claim, a Priority Tax Claim, an Other Priority Claim, or a Secured Claim.  For the avoidance of doubt, General Unsecured Claims include deficiency Claims.

1.51.   ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code

1.52.   ***Holdings*** means Northstar GOM Holdings Group, LLC.

1.53.   ***Impaired***, with respect to a Claim, Interest, or Class of Claims or Interests, has the meaning set forth in sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.54.   ***Indenture*** means that certain Indenture, dated as of September 18, 2014, between Holdings, as Issuer, U.S. Bank National Association, as Trustee and Collateral Agent, and each of the guarantors party thereto (including the Debtor), which was subsequently replaced by the Fiscal Agency Agreement.

1.55.   ***Initial Distribution*** means the first distribution that the Debtor makes to holders of Allowed Claims.

1.56.   ***Initial Distribution Date*** means the date selected by the Debtor on or as soon as reasonably practicable after the Effective Date; *provided, however*, that the Initial Distribution Date shall in no event occur more than 30 days after the Effective Date.

1.57.   ***Interest*** means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all common stock or units, preferred stock or units, or other instruments evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interests in the Debtor, that existed immediately before the Effective Date.

1.58.   ***Involuntary Petition Date*** means August 12, 2016.

1.59.   ***Letter of Credit Loan Agreement*** means that certain Loan Agreement, dated as of April 2, 2015, by and between Holdings, as Borrower, the Debtor, as Guarantor, and FNBCT, as

Bank, the obligations under which are secured by a first lien and security interest in favor of FNBCT on all assets of Holdings and the Debtor.

1.60.    ***Letter of Credit Note*** means the promissory note issued primarily for and by Holdings in favor of FNBCT in the principal amount of $30 million, with an interest rate of 6% per annum and a maturity date of March 31, 2017, and secured by a first lien and security interest in favor of FNBCT on all assets of Holdings and the Debtor.

1.61.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.62.    ***Litigation Trust*** means a trust to be established on the Effective Date to hold and prosecute the Causes of Action pursuant to the Litigation Trust Agreement.

1.63.    ***Litigation Trust Agreement*** means the agreement in form and substance, reasonably acceptable to the Committee and substantially in the form included in the Plan Supplement governing the Litigation Trust, including the responsibilities of the Litigation Trustee pursuant to Section 5.2 of the Plan, which shall be approved in the Confirmation Order and entered into by the Litigation Trustee on behalf of the Litigation Trust beneficiaries on the Effective Date pursuant to the terms of the Plan.

1.64.    ***Litigation Trust Committee*** means the committee which, pursuant to the terms of the Litigation Trust Agreement, shall oversee the Litigation Trust and the Litigation Trustee.

1.65.    ***Litigation Trustee*** means James Katchadurian of CR3 Partners, LLC in his capacity as administrator of the Litigation Trust, or any of his successors in interest in such capacity, pursuant to the Litigation Trust Agreement.

1.66.    ***Liquidation*** means the proposed liquidation of the Debtor pursuant to and in accordance with this Plan.

1.67.    ***LLC Agreement*** means that certain Amended and Restated Limited Liability Company Agreement of the Debtor dated February 13, 2012, and all subsequent amendments thereto.

1.68.    ***M&M Lien*** means a mechanic's or materialman's lien and/or mineral lien on the Property that is not a Senior Statutory Lien but that is otherwise (a) valid, enforceable, and non-avoidable as of the Voluntary Petition Date and perfected under non-bankruptcy law; and (b) timely perfected as permitted by section 546(b) of the Bankruptcy Code.

1.69.    ***M&M Lien Claim*** means a Secured Claim arising in connection with an M&M Lien that is not payable by the Buyer pursuant to the Sale Order.

1.70.    ***Order*** means a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

1.71.    ***Other Priority Claim*** means a Claim against the Debtor, other than an Administrative Expense Claim, Professional Fee Claim, Gap Period Claim, or Priority Tax Claim, which is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.72.   ***Party in Interest*** means a Person with a legal, equitable, or beneficial interest at issue in the Chapter 11 Case.

1.73.   ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other entity.

1.74.   ***Plan*** means this chapter 11 plan of liquidation, including the exhibits hereto (including the Plan Supplement), as may be amended or modified from time to time in accordance with the terms hereof.

1.75.   ***Plan Supplement*** means a supplemental appendix to the Plan containing, among other things, the Litigation Trust Agreement and the list of Causes of Action to be retained by the Debtor and/or the Litigation Trust; *provided, that* through the Effective Date, the Debtor shall have the right to amend the Plan Supplement as long as such amendment is consistent with the Plan in all respects.

1.76.   ***Platinum Equity Holders*** means Holdings; PPVA Oil and Gas, LLC; PPCO; Platinum Partners Liquid Opportunity Master Fund LP; and PPVA.

1.77.   ***Post-August 25, 2016 PPVA*** means PPVA on and after August 25, 2016, which is the date on which Matthew James Wright and Christopher Barnett Kennedy of RHSW (Caribbean) Limited were appointed as joint official liquidators for PPVA.

1.78.   ***Post-December 19, 2016 PPCO*** means PPCO on and after December 19, 2016, which is the date on which of Bart Schwartz was appointed as receiver for PPCO.

1.79.   ***PPVA*** means Platinum Partners Value Arbitrage Fund, LP.

1.80.   ***PPCO*** means Platinum Partners Credit Opportunities Master Fund LP.

1.81.   ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.82.   ***Pro Rata*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

1.83.   ***Professional*** means (a) any professional retained in the Chapter 11 Case pursuant to an Order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code, (b) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code, or (c) any Person whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to section 1129(a)(4) of the Bankruptcy Code.

1.84.   ***Professional Fee Claim*** means a Claim for services rendered or costs incurred by a Professional on or after the Voluntary Petition Date through the Effective Date.

1.85.  **Property** means all property of the Estate and the Debtor, whether tangible or intangible, and, without limitation, any and all real or personal property, including all Cash and cash equivalents, licenses, certifications, tax refunds, accounts receivable, inventory, Causes of Action, and equipment.

1.86.  **Released Parties** means collectively: (a) the Debtor; (b) the Committee; (c) the DIP Agent; (d) the Buyer; (e) Eleanor; (f) New Mountain Finance Corporation; (g) Post-August 25, 2016 PPVA; (h) Post-December 19, 2016 PPCO; and (i) with respect to each of the foregoing entities in clauses (a) through (h), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts, or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, restructuring advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees in their capacity as such; *provided, however,* that, notwithstanding the foregoing, and except as set forth in (a), (g) and (h), the Platinum Equity Holders and all of their current and former members, managers, equity holders, employees, agents, professionals, trustees, principals, partners, parents, directors, and/or officers, and each of the foregoing's predecessors, successors, assigns, heirs, executors, estates, agents, servants, and professionals, are expressly excluded from this definition notwithstanding the fact that such Persons may have also been shareholders, members, managers, directors, officers or predecessors of, or otherwise related to, the Debtor, Post-August 25, 2016 PPVA and/or Post-December 19, 2016 PPCO.

1.87.  **Sale** means the sale of substantially all of the Debtor's Property to the Buyer pursuant to the Sale Order.

1.88.  **Sale Order** means that certain *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (ECF No. 792) signed by the Bankruptcy Court on August 2, 2017.

1.89.  **Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.90.  **Second Lien Claim** means any Secured Claim or other Claim arising in connection with the Indenture, the Fiscal Agency Agreement, and/or the Second Priority Notes as well as any other Claim granted to the Second Lien Claim holders under the Final DIP Order.

1.91.  **Second Priority Notes** means the 12% Second Priority Senior Secured Notes due September 18, 2019 issued by Holdings in the principal amount of $80 million pursuant to the Indenture and the Fiscal Agency Agreement.

1.92.  **Secured Claim** means a Claim to the extent (a) secured by property of the Debtor or the Estate, the amount of which is equal to or less than the value of such property (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtor, or (iii) as determined by

a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.93. **Senior Statutory Lien** shall have the meaning assigned to it in Paragraph 6(a) of the Final DIP Order.

1.94. **Tax** means any federal, state, local, or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under § 59A of the Internal Revenue Code of 1986, as amended), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not, and including any liability under Treasury Regulation § 1.1502-6 or any analogous or similar state, local, or non-U.S. law or regulation.

1.95. **Unexpired Lease** means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.96. **Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.97. **U.S. Trustee** means the office of the United States Trustee for Region 7 located at 515 Rusk, Houston, Texas 77002.

1.98. **Voluntary Petition Date** means December 2, 2016.

**B.** Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or on those terms and conditions, and in each case shall include any amendment, restatement, or other modification made in accordance herewith; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.**     Controlling Document.

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan Supplement shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however,* that if there is any inconsistency between a Plan provision and a provision of the Confirmation Order, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2. PROFESSIONAL FEE CLAIMS AND ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

2.1.     *Administrative Expense Claims.*

Except to the extent that the holder of an Allowed Administrative Expense Claim and the Debtor agree to a different treatment, the Debtor shall pay to each holder of an Allowed Administrative Expense Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on the later of (a) a date that is not more than thirty (30) days after the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided by Section 2.2 hereof, requests for payment of Administrative Expense Claims must be filed and served on the Debtor no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve requests for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor or its Estate, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.

The Debtor must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.2.     *Professional Fee Claims.*

All Professionals seeking an award by the Bankruptcy Court of a Professional Fee Claim shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date.  Except to the extent that a holder of an Allowed Professional Fee Claim and the Debtor agree to a different treatment, the Debtor shall pay to each holder of a Professional Fee Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim,

11

Cash in such amounts as are Allowed by the Bankruptcy Court on the later of (a) a date that is not more than thirty (30) days after the Effective Date and (b) within five (5) days of the date upon which the Order relating to any such Allowed Professional Fee Claim is entered; *provided, however*, that this provision must be construed in a manner consistent with Section 7.2 of the Plan.

### 2.3. *Gap Period Claims.*

Except to the extent that a holder of an Allowed Gap Period Claim and the Debtor agree to a different treatment, each holder of an Allowed Gap Period Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, at the sole option of the Debtor, (a) Cash in an amount equal to such Allowed Gap Period Claim on the later of (i) a date that is not more than thirty (30) days after the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Gap Period Claim becomes an Allowed Gap Period Claim; or (b) such lesser amount as to which the holder of an Allowed Gap Period Claim may agree, in writing.

### 2.4. *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtor agree to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, at the sole option of the Debtor, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (i) a date that is not more than thirty (30) days after the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; *provided, however*, that the Debtor may elect to provide the holder of Allowed Priority Tax Claim with regular installment payments pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (b) such lesser amount as to which the holder of an Allowed Priority Tax Claim may agree, in writing.

### 2.5. *Other Priority Claims.*

Except to the extent that a holder of an Allowed Other Priority Claim and the Debtor agree to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, at the sole option of the Debtor, (a) Cash in an amount equal to such Allowed Other Priority Claim on the later of (i) a date that is not more than thirty (30) days after the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Other Priority Claim becomes an Allowed Other Priority Claim; or (b) such lesser amount as to which the holder of an Allowed Other Priority Claim may agree, in writing.

## SECTION 3. <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

### 3.1. *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided, however,* that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest

is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, discharged, or otherwise settled prior to the Effective Date.

3.2.    ***Summary of Classification.***

The following table designates the Classes of Claims against and Interests in the Debtor, and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, Gap Period Claims, Priority Tax Claims, and Other Priority Claims have not been classified and are therefore excluded from the Classes of Claims and Interests set forth in this Section 3.  All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | First Lien Claims | Impaired | Yes |
| 2 | Second Lien Claims | Impaired | Yes |
| 3 | M&M Lien Claims | Unimpaired | No (deemed to accept) |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

3.3.    ***Special Provision Governing Unimpaired Claims.***

Except as otherwise provided herein, nothing under the Plan shall affect the rights of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.4.    ***Elimination of Vacant Classes.***

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.5.    ***Voting Classes; Presumed Acceptance by Non-Voting Classes.***

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

3.6.     ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.***

The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify the Plan in accordance with Section 13.1 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

3.7.     ***Controversy Concerning Impairment.***

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## SECTION 4.   <u>TREATMENT OF CLAIMS AND INTERESTS</u>

4.1.     ***First Lien Claims (Class 1).***

(a)     <u>Classification</u>:  Class 1 consists of the First Lien Claims.

(b)     <u>Allowance</u>:  Notwithstanding any other provision of this Plan to the contrary, on the Effective Date, the First Lien Claims shall be Allowed as Secured Claims pursuant to section 506(b) of the Bankruptcy Code having first lien priority on account of unpaid principal, accrued and unpaid interest, letters of credit obligations, plus additional amounts for unpaid Additional Obligations (as defined below) on account of any fees, costs, expenses, disbursements, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtor's obligations pursuant to the Letter of Credit Loan Agreement, the Letter of Credit Note, and/or the Final DIP Order (the foregoing, collectively, the "<u>Additional Obligations</u>"), in each case, not subject either in whole or in part to offset, disallowance, or avoidance under chapter 5 of the Bankruptcy Code or otherwise, or any legal, contractual, or equitable theory for Claims or Causes of Action (including, without limitation, subordination, recharacterization, recoupment, or unjust enrichment) that any Person, including, but not limited to, the Debtor and its Estate, may be entitled to assert against FNBCT or the First Lien Claim.

(c)     <u>Treatment</u>:  Except to the extent that the holder of an Allowed First Lien Claim agrees to a less favorable treatment, the holder of an Allowed First Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed First Lien Claim and any Additional Obligations, one of the following treatments, at the discretion of the Debtor: (i) payment of such Allowed First Lien Claim in full in Cash, including the payment of any interest required under section 506(b) of the Bankruptcy Code; (ii) payment of such Allowed First Lien Claim in full in equal installments over a period not to exceed five (5) years after the Effective Date, with interest (if applicable) at a rate to be determined by the Bankruptcy Court; (iii) such other treatment necessary to satisfy

14

section 1129(b)(2)(A) of the Bankruptcy Code; or (iv) such other treatment as may be agreed to by the holder of an Allowed First Lien Claim; *provided, however,* that any Cash or other distribution to which the holder of an Allowed First Lien Claim is entitled pursuant to this paragraph shall be distributed as an FNBCT Gift Distribution.

(d)    <u>Voting</u>:  Class 1 is Impaired, and the holder of the First Lien Claim is entitled to vote to accept or reject the Plan.

### 4.2.  *Second Lien Claims (Class 2).*

(a)    <u>Classification</u>:  Class 2 consists of the Second Lien Claims.

(b)    <u>Treatment</u>:  To the extent that a Second Lien Claim is determined to be an Allowed Second Lien Claim, the holder of such Allowed Second Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Second Lien Claim, one of the following treatments, at the discretion of the Debtor: (i) payment of such Allowed Second Lien Claim in full in Cash, including the payment of any interest required under section 506(b) of the Bankruptcy Code; (ii) payment of such Allowed Second Lien Claim in full in equal installments over a period not to exceed five (5) years after the Effective Date, with interest (if applicable) at a rate to be determined by the Bankruptcy Court; (iii) such other treatment necessary to satisfy section 1129(b)(2)(A) of the Bankruptcy Code; or (iv) such other treatment as may be agreed to by the holder of an Allowed Second Lien Claim; *provided, however,* that any Cash or other distribution to which the holder of an Allowed Second Lien Claim is entitled pursuant to this paragraph shall be distributed as an Eleanor Gift Distribution.  To the extent that all or any portion of a Second Lien Claim is determined to be an Allowed General Unsecured Claim, the holder of such Second Lien Claim shall be entitled to the treatment accorded to Class 4.

(c)    <u>Voting</u>:  Class 2 is Impaired, and the holders of the Second Lien Claims are entitled to vote to accept or reject the Plan.

### 4.3.  *M&M Lien Claims (Class 3).*

(a)    <u>Classification</u>:  Class 3 consists of the M&M Lien Claims.

(b)    <u>Treatment</u>:  Except to the extent that the holder of an Allowed M&M Lien Claim agrees to a less favorable treatment, the holder of an Allowed M&M Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed M&M Lien Claim payment of such Allowed M&M Lien Claim in full in Cash, including the payment of any interest required under section 506(b) of the Bankruptcy Code.

(c)    <u>Voting</u>:  Class 3 is Unimpaired, and the holders of the M&M Lien Claims are deemed to accept the Plan.

4.4.    ***General Unsecured Claims (Class 4).***

(a)    <u>Classification</u>:  Class 4 consists of the General Unsecured Claims.

(b)    <u>Treatment</u>:  Provided that there are no holders of Allowed Professional Fee Claims or Allowed Administrative Expense and Priority Claims or Allowed Secured Claims whose claims have not been settled, satisfied, discharged, and/or released, the holders of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claims, their Pro Rata share of the FNBCT Gift Distribution, if any, the Eleanor Gift Distribution, if any, and/or Available Cash, if any.

(c)    <u>Voting</u>:  Class 4 is Impaired, and the holders of the General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.5.    ***Equity Interests (Class 5).***

(a)    <u>Classification</u>:  Class 5 consists of the Equity Interests.

(b)    <u>Treatment</u>:  On the Effective Date, all Equity Interests shall be deemed cancelled, and the holders of the Equity Interests shall not receive or retain any property under the Plan on account of such Interests.

(c)    <u>Voting</u>:  Class 5 is Impaired, and the holders of the Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of the Equity Interests are not entitled to vote to accept or reject the Plan.

## SECTION 5. <u>MEANS OF IMPLEMENTATION</u>

5.1.    ***Authority.***

The Debtor shall have the authority and right, without the need for Bankruptcy Court approval (unless otherwise expressly indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(a)    control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any and all Claims against the Debtor (except to the extent Claims have been previously Allowed);

(b)    make distributions to holders of Allowed Claims in accordance with the Plan;

(c)    exercise its reasonable business judgment to direct and control the wind-down, liquidation, sale, and/or abandonment of the remaining Property of the Debtor under the Plan and in accordance with applicable law as necessary to maximize distributions to holders of Allowed Claims;

(d)    prosecute all Causes of Action on behalf of the Debtor, elect not to pursue any such Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Debtor may determine is in the best interests of the Debtor and the holders of Allowed Claims; *provided, however,* that the Debtor shall transfer all Causes of Action to the Litigation Trust pursuant to Section 5.2 herein and, as further provided therein, the Litigation Trust shall govern the ultimate disposition of the Causes of Action;

(e)    make payments to any professionals who may continue to perform in their current capacities;

(f)    retain professionals to assist in performing duties under the Plan;

(g)    maintain books, records, and accounts;

(h)    obtain any prudent or necessary insurance;

(i)    invest its Cash and any income earned thereon;

(j)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals;

(k)    administer tax obligations, including (i) filing tax returns and paying tax obligations; (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of the Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of the Debtor ending after the Voluntary Petition Date through the Liquidation, as determined under applicable tax laws; and (iii) representing the interest and account of the Debtor or its Estate before any taxing authority in all matters, including, without limitation, any action, suit, proceeding, or audit;

(l)    prepare and file any and all informational returns, reports, statements, returns, or disclosures relating to the Debtor that are required hereunder by any Governmental Unit or applicable law;

(m)    pay statutory fees in accordance with Section 13.3 of the Plan; and

(n)    perform such other duties and functions as are necessary and/or advisable.

5.2.    ***Litigation Trust.***

(a)    <u>Transfer of Causes of Action</u>. On the Effective Date, the Debtor and the Estate shall preserve, irrevocably transfer, and assign all Causes of Action to the Litigation Trust, with good, clean title to such property, free and clear of all Liens, charges, Claims, claims, encumbrances, Interests, and interests.  On the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all Causes of Action, as well as the rights and powers of the Estate applicable to the Causes of Action, shall automatically vest in the Litigation Trust.  The Litigation Trust shall be established

for the sole purpose of prosecuting the Causes of Action and distributing the proceeds thereof in accordance with the Plan and the Litigation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business.

(b)   <u>Management and Oversight</u>.  The Litigation Trust shall be administered by the Litigation Trustee and overseen by the Litigation Trust Committee, the latter of which shall be identified prior to the conclusion of the Confirmation Hearing.

(c)   <u>Beneficiaries and Distributions</u>.  Upon the creation of the Litigation Trust, holders of Allowed Claims shall become the beneficiaries of the Litigation Trust pursuant to the Litigation Trust Agreement, as their respective interests may appear in accordance with the terms of the Plan.  The Litigation Trustee may, pursuant to the Litigation Trust Agreement and the Plan, make interim distributions to holders of Allowed Claims in the exercise of reasonable business judgment.  Upon the settlement, conclusion of litigation, and collection of all of the Causes of Action in the Litigation Trust, after the payment of all costs and expenses of collection, the Litigation Trustee must distribute the corpus of the Litigation Trust Pro Rata to the holders of Allowed Claims in accordance with the Plan and the Litigation Trust Agreement.

(d)   <u>Authority</u>.  The Litigation Trustee shall, subject to the terms of the Litigation Trust Agreement and the Litigation Trust Committee, have full power, authority, and standing to prosecute, compromise, or otherwise resolve the Causes of Action.  The Litigation Trust, acting by and through the Litigation Trustee pursuant to the Litigation Trust Agreement, shall be authorized to exercise and perform all rights and powers held by the Debtor and the Estate with respect to the Litigation Trust, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, representative appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Estate, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Causes of Action.  Neither the Debtor nor the Estate shall be subject to any counterclaims with respect to the Causes of Action.

(e)   <u>Retention of Professionals</u>.  The Litigation Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties on such terms as the Litigation Trustee deems appropriate without Bankruptcy Court approval.  The Litigation Trustee may retain any Professional who represented any Party in Interest in the Chapter 11 Case if he deems it an appropriate exercise of his business judgment.

(f)   <u>Funding</u>.  In no event later than ten (10) days after the Effective Date, pursuant to Paragraph 2.1(iv) of the APA, the Buyer shall transfer $150,000.00 in Cash to the Debtor or the Litigation Trust to pay the expenses of the Litigation Trustee and his professionals for administering the Litigation Trust and prosecuting the Causes of

Action in accordance with the Plan and the Litigation Trust Agreement. The Litigation Trustee may be able to supplement this initial funding through settlement payments and the collection of judgments, by borrowing funds to finance litigation, or by retaining contingent fee counsel.

(g)    <u>Party in Interest</u>. For the avoidance of doubt, the Litigation Trust is a Party in Interest with respect to all objections to any Claim relating to a Cause of Action and all compromises of such objections.

(h)    <u>Binding Effect of Litigation Trust Agreement</u>. For the avoidance of doubt, the Debtor, the Litigation Trustee, and the Litigation Trust Committee shall be bound by the terms of the Litigation Trust Agreement.

### 5.3.   *Corporate Action.*

On the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Litigation Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtor, or any other Person. All matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect without any requirement of further action by the Debtor or the Estate.

Upon the Effective Date or as soon as reasonably practicable thereafter, the existing board of managers of the Debtor shall be dissolved without any further action required on the part of such entities, their members, their managers, or their officers, and any and all remaining officers, members or managers of the Debtor shall be dismissed without any further action required on their part. The members, managers, and officers of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of the Plan.

The authorizations and approvals contemplated by this Section 5.3 shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

### 5.4.   *Withholding and Reporting Requirements.*

(a)    <u>Withholding Rights</u>. In connection with the Plan, any party making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any Taxes, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party making any distribution pursuant to the Plan has the right, but not the obligation, to

19

not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)     Forms.  Any Person entitled to receive a distribution under the Plan shall, upon request, deliver to the Debtor an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt and so notifies the Debtor.  If such request is made by the Debtor and such Person fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtor, and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtor and its Property.

### 5.5.     *Closing of the Chapter 11 Case.*

When (a) all Disputed Claims have become Allowed Claims or Disallowed Claims, (b) the Litigation Trust has been dissolved pursuant to the Litigation Trust Agreement, (c) all remaining Available Cash has been distributed in accordance with the Plan, and (d) the Chapter 11 Case has been fully administered, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6.  **CORPORATE GOVERNANCE**

### 6.1.     *Board of Directors and Officers.*

On the Effective Date, James Katchadurian of CR3 Partners, LLC shall be appointed as the sole officer and manager of the Debtor.  The Debtor shall elect such additional manager(s) and officer(s) as it deems necessary to implement the Plan and the actions contemplated herein.

### 6.2.     *Wind Down.*

After the Effective Date, pursuant to the Plan, the Debtor shall, in an expeditious but orderly manner, wind down, sell, and otherwise liquidate and convert its Property to Cash, with no objective to continue or conduct a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation and orderly wind down of the Debtor, and shall not unduly prolong the duration of the Liquidation and the wind down.

Upon the Debtor's filing with the Bankruptcy Court of a certification stating that all duties of the Debtor under the Plan have been completed (save and except for those assigned to the Litigation Trustee under the Litigation Trust), the Debtor shall be dissolved without any further action or filing, including the filing of any documents with the secretary of state for the state in which the Debtor is formed or any other jurisdiction.

### 6.3.     *LLC Agreement.*

As of the Effective Date, the LLC Agreement shall be amended to the extent necessary to carry out the provisions of the Plan.  The amended LLC Agreement and any other necessary corporate documents shall be contained in the Plan Supplement.

## SECTION 7. **DISTRIBUTIONS**

7.1.     ***Distribution Record Date.***

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its respective agents shall be deemed closed, and there shall be no further changes in the record holders of any Claims or Interests.  The Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

7.2.     ***Date of Distributions.***

Except as otherwise provided herein, the Debtor shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date.  Thereafter, the Debtor shall from time to time determine the subsequent Distribution Dates, subject to the provisions of this Plan; *provided, that,* other than as discussed below, the Debtor is required to distribute to the holders of Allowed Claims, at least annually, all Available Cash on hand.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Notwithstanding the foregoing, the Debtor shall retain Available Cash sufficient to pay (i) reasonable and necessary professional fees and administrative costs and (ii) holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims; *provided, however*, that to the extent the holder of a Disputed Claim has filed duplicative claims (in the judgment of the Debtor), the Debtor shall be required to retain an amount equal to only one of the Disputed Claims.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Debtor shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim.

7.3.     ***Delivery of Distributions.***

In the event that any distribution to any holder of a Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtor has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Distribution Date. After such date, all unclaimed property or interests in property shall be redistributed (notwithstanding any applicable federal or state escheat, abandonment, or unclaimed property laws to the contrary) to holders of Allowed Claims pursuant to the Plan without the need for a further order by the Bankruptcy Court, and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

7.4. ***Manner of Payment Under the Plan.***

At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer.

7.5. ***Minimum Cash Distributions.***

The Debtor shall have no obligation to make a distribution that is less than Fifty Dollars ($50.00) in Cash.

7.6. ***Setoffs and Recoupment.***

Except for Claims that are expressly Allowed hereunder, the Debtor may, but shall not be required to, setoff or recoup against any Claim or Interest (for purposes of determining the Allowed amount of such Claim or Interest on which distribution shall be made) any claims of any nature whatsoever that the Debtor may have against the holder of such Claim or Interest; *provided, that* neither the Debtor's failure to enforce such a setoff or recoupment nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right the Debtor may have against the holder of such Claim or Interest.

7.7. ***Payment of Disputed Claims.***

As Disputed Claims are resolved pursuant to Section 8 hereof, the Debtor shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Debtor in the Debtor's sole discretion.

7.8. ***Allocation of Distributions Between Principal and Interest.***

Except as otherwise provided in the Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan comprises both indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim, and then to accrued but unpaid interest.

## SECTION 8. <u>PROCEDURES FOR DISPUTED CLAIMS</u>

8.1. ***Allowance of Claims.***

After the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until (a) such Claim is deemed Allowed under this Plan or the Bankruptcy Code, or (b) the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

8.2.     ***Objections to Claims.***

As of the Effective Date, only the Debtor may interpose and prosecute objections to Claims.  The Debtor must serve and file such objections on or before (a) the Claims Objection Bar Date or (b) such later date as ordered by the Bankruptcy Court.

8.3.     ***Estimation of Claims.***

On or before the Claims Objection Bar Date or such later date as ordered by the Bankruptcy Court, the Debtor may request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.

All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4.     ***No Distributions Pending Allowance.***

If the Debtor files an objection to a Claim as set forth in Section 8.2, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5.     ***Preservation of Claims and Right to Settle Claims.***

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims and Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, without the approval of the Bankruptcy Court, subject to the terms of Section 8.2 hereof, the Confirmation Order, the Litigation Trust Agreement, and any other contract, instrument, release, indenture, or other agreement entered into in connection herewith.

**SECTION 9. <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

9.1.    ***Rejection of Executory Contracts and Unexpired Leases.***

On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, including Section 9.5 herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) is subject to a pending motion to assume as of the Effective Date; (b) was previously assumed or assumed and assigned to a third party during the pendency of the Chapter 11 Case, including, but not limited to, the Executory Contracts and Unexpired Leases assumed and assigned to the Buyer in connection with the Sale; (c) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (d) is a D&O Policy or an insurance policy; or (e) is the APA.

9.2.    ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.***

Unless an Order of the Bankruptcy Court otherwise provides for an earlier date, any proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be filed with the Bankruptcy Court and served on the Clerk of the Court and the Debtor no later than thirty (30) days after the Confirmation Date.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtor no later than the deadline to file objections to the Plan pursuant to the Bankruptcy Code and Bankruptcy Rules.

Any holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which a proof of Claim is not timely filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim or (b) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claim arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and unenforceable against the Debtor, the Estate, or the Property, and shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by Order of the Bankruptcy Court.

9.3.    ***APA.***

The Debtor's assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Buyer's rights and obligations, including any cure obligations assumed by the Buyer pursuant to the APA, with respect to any Executory Contract or Unexpired Lease assigned to the Buyer pursuant to the terms of the APA and the Sale Order.  For the avoidance of doubt, the APA is being assumed and ratified by the Debtor and will remain enforceable by the parties thereto.

9.4.    ***Modifications, Amendments, Supplements, Restatements, or Other Agreements.***

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contracts or Unexpired Leases, or the validity, priority, or amount of any Claims that may arise in connection therewith.

9.5.    ***Insurance Policies.***

To the extent any insurance policy of the Debtor is an Executory Contract, the Debtor shall assume each such insurance policy, including any D&O Policy, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless (a) the Debtor previously rejected such insurance policy pursuant to an Order of the Bankruptcy Court or (b) such insurance policy is the subject of a motion to reject pending on the Effective Date.  Coverage for defense and indemnity under any D&O Policy shall remain available to all Persons falling within the definition of "Insured" in any such D&O Policy.

9.6.    ***Reservation of Rights.***

Neither the exclusion nor the inclusion of any contract or lease in the APA or the Sale Order, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that the Debtor or the Estate has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, assignment, or rejection, the Debtor shall have sixty (60) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## SECTION 10.  <u>CONDITIONS PRECEDENT TO THE EFFECTIVE DATE</u>

10.1.    ***Conditions Precedent to the Effective Date.***

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred, and the Confirmation Order shall not be subject to any stay;

(b)    all ancillary documents necessary to implement and confirm the Plan shall have been approved by the Debtor or waived in writing;

(c)     all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan shall have been effected or executed and delivered; and

(d)     all governmental and third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

### 10.2.   *Waiver of Conditions Precedent.*

Each of the conditions precedent in Section 10.1, other than the condition set forth in Section 10.1(a), may be waived in writing by the Debtor.

### 10.3.   *Effect of Failure of Conditions to Effective Date.*

Unless otherwise extended by the Debtor, if the Effective Date does not occur within thirty (30) days of the Confirmation Date, or if the Confirmation Order is vacated, (a) no distributions shall be made, (b) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) all of the Debtor's obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity, or to prejudice in any manner the rights of the Debtor or any other entity in any further proceedings involving the Debtor or otherwise.

## SECTION 11. <u>EFFECT OF CONFIRMATION</u>

### 11.1.   *Vesting of Assets.*

On the Effective Date, except as provided pursuant to this Plan and the Confirmation Order, and pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Debtor's Estate shall vest in the Debtor and/or the Litigation Trust, as applicable, for the purpose of liquidating the Estate and consummating the Plan.

### 11.2.   *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or documents created pursuant to the Plan or the Sale, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Property of the Debtor or the Estate shall be fully released, settled, and compromised in exchange for any right to a distribution from the Debtor as provided in this Plan, and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any Property of the Debtor or the Estate shall revert to the Debtor.

11.3.    ***Subordinated Claims.***

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise; *provided, however,* that pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to re-classify any Claim or Interest in accordance with any contractual, legal, or equitable subordination right relating thereto.

11.4.    ***Binding Effect.***

(a)    Subject to Section 11.4(b) below, confirmation of the Plan does not provide the Debtor with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan.

(b)    Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

11.5.    ***Term of Injunctions or Stays.***

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case, under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the date indicated in the order providing for such injunction or stay and the date the Chapter 11 Case is closed.

11.6.    ***Injunction Against Interference with the Plan.***

From and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, Cause of Action, interest, or remedy released or to be released pursuant to the Plan or the Confirmation Order.

11.7.    ***Releases by the Debtor.***

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties in facilitating and implementing the Liquidation, and the waiver and/or subordination of certain Claims by certain of the Released Parties as memorialized by the Eleanor Gift Distribution and the FNBCT Gift Distribution, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtor and the Estate from any**

27

and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), remedies, losses, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtor or the Estate, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, (a) the Debtor; (b) the Chapter 11 Case; (c) the purchase, sale, or rescission of the purchase or sale of any security of the Debtor; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan; (e) the business or contractual arrangements between any Debtor and any Released Party; (f) the Liquidation; (g) the restructuring of any Claim or Interest before or during the Chapter 11 Case; (h) the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, or preparation thereof; (i) the solicitation of votes with respect to the Plan; or (j) any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes fraud, gross negligence, or willful misconduct.

11.8.   *Releases by Holders of Claims and Interests.*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate and implement the Liquidation, and the waiver and/or subordination of certain Claims by certain of the Released Parties against the Debtor, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed forever released and discharged, to the maximum extent permitted by law and approved by the Bankruptcy Court, by (a) the holders of all Claims or Interests who elect to "opt-in" to a release in favor of such Released Parties on their respective Ballots, (b) the holders of all Claims or Interests who are Unimpaired under the Plan, and (c) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, in each case from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), remedies, losses, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtor or its Estate, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, (a) the Debtor; (b) its Estate; (c) the Chapter 11 Case; (d) the purchase, sale, or rescission of the purchase or sale of any security of the Debtor; (e) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan; (f) the business or contractual arrangements between the Debtor and any Released Party; (g) the Liquidation; (h) the restructuring of any Claim or Interest before or during the Chapter 11 Case; (i) the Disclosure Statement, the Plan, and related agreements, instruments, and other documents,

**and the negotiation, formulation, or preparation thereof; (j) the solicitation of votes with respect to the Plan; or (k) any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes fraud, gross negligence, or willful misconduct.**

11.9.  *Exculpation.*

**To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action (including Avoidance Actions), remedy, loss, and liability for any claim in connection with or arising out of (a) the administration of the Chapter 11 Case; (b) the negotiation and pursuit of the Disclosure Statement, the Liquidation, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (c) the funding of the Plan; (d) the occurrence of the Effective Date; (e) the administration of the Plan or the property to be distributed under the Plan; or (f) the transactions in furtherance of any of the foregoing; *provided, however,* that the exculpation provided in this paragraph shall not apply to an Exculpated Party's fraud, gross negligence, or willful misconduct.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

11.10.  *Retention of Causes of Action/Reservation of Rights.*

(a)  Except as otherwise provided herein, including Sections 11.6, 11.7, 11.8 and 11.9, pursuant to section 1123(b) of the Bankruptcy Code, the Debtor or the Litigation Trust, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person without the approval of the Bankruptcy Court, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim, and/or Claim for setoff seeking affirmative relief against the Debtor, or its officers, directors, or representatives; and (ii) the turnover of any Property of the Debtor or the Estate; *provided, however,* that the Debtor and the Litigation Trust shall not retain any Claims or Causes of Action against the Released Parties (other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence, or willful misconduct, which Claims or Causes of Action are hereby preserved).  The Debtor or the Litigation Trust, as applicable, may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor, the Estate, and the Parties in Interest.

(b)  Except as otherwise provided herein, including Sections 11.6, 11.7, 11.8 and 11.9, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately before the Voluntary Petition Date against or with respect to any Claim left Unimpaired by the Plan;

*provided, however,* that the Debtor and the Litigation Trust shall not retain any Claims or Causes of Action against the Released Parties (other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence, or willful misconduct, which Claims or Causes of Action are hereby preserved).  The Debtor or the Litigation Trust, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that they had immediately before the Voluntary Petition Date with respect to any Claim left Unimpaired by the Plan as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor or the Litigation Trust, as applicable, to the same extent as if the Chapter 11 Case had not been commenced.

11.11.  ***Solicitation of the Plan.***

As of and subject to the occurrence of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

11.12.  ***Plan Supplement.***

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court no less than five (5) days before the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours and will also be posted at http://cases.primeclerk.com/northstar.

11.13.  ***Corporate Action.***

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtor and any corporate or limited liability company action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, managers, directors, officers, members, or partners of the Debtor.  The authorizations and approvals contemplated by this Section 11.13 shall be effective notwithstanding any requirements under non-bankruptcy law.

## SECTION 12.  **RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)      to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification,

priority, compromise, estimation, or payment of Claims or Interests resulting therefrom;

(b)     to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)     to ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished as provided herein;

(d)     to consider Claims or Interests and the allowance, classification, priority, compromise, estimation, or payment of Claims or Interests;

(e)     to enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     to issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other Order;

(g)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, or to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, the Plan Supplement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by Professionals before the Confirmation Date;

(i)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the APA, the Sale Order, the Plan, the Confirmation Order, or any other agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     to take any action and issue any Order as may be necessary to construe, interpret, enforce, implement, execute, or consummate the Plan or to maintain the integrity of the Plan following consummation;

(k)     to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, or similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)    to adjudicate, decide, or resolve any Causes of Action (including Avoidance Actions);

(o)    to adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(p)    to resolve any cases, controversies, suits, disputes, or Causes of Action (including Avoidance Actions) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid;

(q)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(r)    to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, any bar date established in the Chapter 11 Case, or any deadline for responding or objecting to the amount of a payment to cure a monetary default to permit the Debtor to assume or assign an Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(s)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(t)    to enter a final decree closing the Chapter 11 Case;

(u)    to enforce all Orders previously entered by the Bankruptcy Court;

(v)    to recover all Property of the Debtor and the Estate, wherever located; and

(w)    to hear and determine any rights, Claims, or Causes of Action (including Avoidance Actions) held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13. **MISCELLANEOUS PROVISIONS**

### 13.1. *Modification of the Plan.*

This Plan may be altered, amended, modified, or supplemented by the Debtor before or after the Confirmation Date in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the

Bankruptcy Code; provided, however, that the Committee shall have the right to be consulted on any proposed modifications of the Confirmation Order and the Plan.  A holder of an Allowed Claim or Allowed Interest that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

### 13.2.    *Revocation or Withdrawal of the Plan.*

The Debtor, in consultation with the Committee, reserves the right to withdraw this Plan at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, or (iv) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

### 13.3.    *Payment of Statutory Fees.*

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtor.  Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law, and the Debtor shall continue to file reports to show the calculation of such fees for the Debtor's Estate until confirmation of the Plan according to section 1129 of the Bankruptcy Code.  Post-confirmation, quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law, and the Debtor or liquidating trustee shall continue to file reports to show the calculation of such fees for the Debtor's Estate until the Chapter 11 Case is closed under section 350(a) of the Bankruptcy Code.

### 13.4.    *Post Confirmation Report.*

The Debtor or the liquidating trustee shall file the post-confirmation report with the U.S. Trustee in accordance with applicable law until the Chapter 11 Case is closed under section 350(a) of the Bankruptcy Code.

### 13.5.    *Dissolution of the Committee.*

On the Effective Date, the Committee shall dissolve automatically, and the members of the Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date by the Committee and any professionals and/or advisors to the Committee.

### 13.6.    *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

### 13.7.    *Severability of Plan Provisions.*

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter

and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.8.  ***Governing Law.***

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

13.9.  ***Time.***

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.10.  ***Immediate Binding Effect.***

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable, and deemed binding upon, and inure to the benefit of, the Debtor, the Litigation Trust, the holders of Claims and Interests (irrespective of whether holders of such Claims and Interests are deemed to have accepted the Plan), the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

13.11.  ***Successors and Assigns.***

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or permitted assign, if any, of each Person.

13.12.  ***Exhibits/Schedules***

All exhibits and schedules to the Plan, the Plan Supplement, and the Exhibits to the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein.

13.13.  ***Entire Agreement***

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements,

understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

     13.14. ***Notices***

     All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission or e-mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Northstar Offshore Group, LLC
> 11 Greenway Plaza, Suite 2800
> Houston, Texas 77046
> Telephone: (713) 626-9696
> Attn:   Avery C. Alcorn
>         James Katchadurian
> Email:  AAlcorn@nstaroffshore.com
>         James.Katchadurian@cr3partners.com
>
> with a copy to:
>
> Winston & Strawn LLP
> 1111 Louisiana, 25th Floor
> Houston, TX 77002
> Telephone: (713) 651-2600
> Facsimile: (713) 651-2700
> Attn:   Lydia T. Protopapas, Esq.
>         Jason W. Billeck, Esq.
> Email:  LProtopapas@winston.com
>         JBilleck@winston.com

     After the Effective Date, the Debtor is authorized to send notice to Persons informing them of the need to file a renewed request for service if they wish to continue to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtor is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have filed such renewed requests.

Dated: November 22, 2017           Respectfully submitted,

                          Northstar Offshore Group, LLC

                          By: */s/ Avery C. Alcorn*_____
                          Name: Avery C. Alcorn
                          Title: Chief Financial Officer and Senior Vice President