**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: § | |
| § | |
| **NORTHSTAR OFFSHORE** § | Case No. 16-34028 |
| **GROUP, LLC,** § | |
| § | (Chapter 11) |
| DEBTOR. § | |

**DEBTOR'S OBJECTION TO THE SECOND AND FINAL APPLICATION FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
DIAMOND MCCARTHY LLP, AS GENERAL COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION FOR THE PERIOD DECEMBER 2, 2016
THROUGH JULY 20, 2017**
**(Relates to ECF No. 1116)**

Northstar Offshore Group, LLC and the Liquidating Trust for Northstar Offshore Group, LLC (collectively, the "Debtor" or "Northstar") file this *Objection to the Second and Final Application for Allowance of Compensation and Reimbursement of Expenses of Diamond McCarthy LLP, as General Counsel for the Debtor and Debtor-in-Possession for the Period December 2, 2016 Through July 20, 2017* (the "Objection") and submit the following:

**PRELIMINARY STATEMENT**

1.  The Debtor objects to a substantial portion of the professional fees sought by Diamond McCarthy LLP ("Diamond"). Throughout Diamond's retention as general bankruptcy counsel in this case, the Debtor has been dissatisfied with Diamond's services. Diamond failed to get key evidence admitted in support of the Debtor's motion for DIP financing, failed to obtain court approval of a key employee incentive plan ("KEIP") on multiple occasions, and made negligible progress toward achieving the crucial sale of substantially all of the Debtor's assets—culminating in the Debtor's substitution of undersigned counsel for Diamond just days before the sale hearing. As a result, the Debtor now objects to several categories of professional fees charged by Diamond that did not provide any benefit to this chapter 11 estate.

1

**JURISDICTION AND VENUE**

2. This Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

4. On August 12, 2016 (the "Involuntary Petition Date"), Alliance Offshore, LLC, Alliance Energy Services, LLC and Montco Oilfield Contractors, LLC filed an involuntary petition for relief against the Debtor under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). ECF No. 1.

5. On December 2, 2016 (the "Voluntary Petition Date"), the Debtor agreed to convert the involuntary case to a voluntary case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF No. 88.

6. On December 22, 2017, the Bankruptcy Court entered an order confirming the *Debtor's Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (the "Plan"). ECF No. 1078, Ex. B.

7. On January 19, 2018, the effective date of the Plan occurred. ECF No. 1092.

**A.    The Debtor's Retention of Diamond as General Bankruptcy Counsel**

8. As previously explained at length, the Debtor initially retained Winston & Strawn LLP ("Winston") to advise it on restructuring matters before the Involuntary Petition Date, and Winston continued to provide such advice between the Involuntary Petition Date and the Voluntary Petition Date (the "Gap Period"). *See* ECF No. 700 ¶ 11. Although the Debtor was fully satisfied with Winston's pre-Involuntary Petition Date and Gap Period restructuring services, the Debtor reasonably believed that its chapter 11 case could be handled by a smaller firm based on the status of the case and its operations as they existed at that time. *Id.* ¶ 13.

2

9. Accordingly, the Debtor chose to retain Diamond as its general bankruptcy counsel for the purpose of seeking voluntary chapter 11 relief. *Id.* ¶ 14. Diamond had previously familiarized itself with the Debtor's business operations during the Gap Period as it had begun advising the Debtor on a separate matter for which Winston had a conflict. *Id.* Before the Voluntary Petition Date, Winston and Diamond worked in coordination with each other to prepare the Debtor to move forward with seeking voluntary chapter 11 relief and to fully transition the matter to Diamond. *Id.* Shortly after the Voluntary Petition Date, the Debtor filed an *Application to Employ Diamond McCarthy LLP as Counsel for the Debtor and Debtor-in-Possession* (ECF No. 133), which the Court granted on December 29, 2016 (ECF No. 219).

10. Also on December 29, 2016, the Court entered its *Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses of Professionals* (ECF No. 217) (the "Compensation Procedures Order"). The Compensation Procedures Order provided, *inter alia*, that the Debtor would pay professional fees on a monthly basis, minus a 20 percent holdback, which the Debtor would become obligated to pay upon the Court's approval of an interim fee application. *See id.* ¶ 1. The Compensation Procedures Order further stated that for the avoidance of doubt, all fees and expenses paid pursuant thereto would be "subject to challenge and disgorgement until final allowance by this Court." *Id.* ¶ 2.

**B.  Diamond's Withdrawal and the Debtor's Substitution of Winston & Strawn LLP as General Bankruptcy Counsel**

11. As the case progressed further, problems arose with Diamond's retention, and the Debtor encountered a series of difficulties as a direct result of Diamond's work.

12. These difficulties ultimately led the Debtor to file its *Emergency Application Seeking Authorization to Retain and Employ Winston & Strawn LLP as Counsel to the Debtor*

3

*Nunc Pro Tunc to July 20, 2017* (ECF No. 700) (the "Winston Retention Application") on July 20, 2017.

### i. The DIP Motion

13. The Debtor first encountered problems in connection with its *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Obtain Priming and Superpriority Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and (IV) Granting Related Relief* (ECF No. 105) (the "DIP Motion"). In the DIP Motion, the Debtor sought, *inter alia*, to obtain debtor-in-possession financing from Arena Limited DIP I, LLC under a $16 million facility.

14. The issues of valuation and adequate protection were at the forefront of the dispute surrounding the DIP Motion, particularly during the hearings held by this Court on January 13 and 31, 2017. In connection with that dispute, the Debtor engaged Paul Dee Patterson of Moyes & Co. to serve as an expert witness. *See* ECF No. 349 at 161:13-14. However, Diamond was unable to have Mr. Patterson's expert report admitted into evidence in support of the DIP Motion, and the Court ultimately excluded his testimony from consideration in ruling on the DIP Motion, explaining:

> I have excluded from consideration of this ruling the testimony of the valuation expert. It was not helpful to the Court in reaching any conclusions. In my view, the valuation expert perhaps could have testified that using his judgment these were the values and he just had to do the best he can in the absence of good market data. That would've actually had some value to me. But the Report actually portrayed itself as being based on all sorts of market analysis. In the end it wasn't. In the end it was his best guess as to what it was and when it was sold to me as being based on market analysis but in the end, Mr. Harrison tore him apart. He just didn't have any basis for

4

>it and you couldn't get there. So I'm having to do this without having any decent valuation testimony.

ECF No. 329 at 103:1-104:14. Mr. Patterson's report should have been key evidence supporting the Debtor's efforts to prove that the second lien lenders' claims[1] were unsecured and that therefore, the second lien lenders should not be not entitled to receive adequate protection payments from the Debtor. But because counsel for the Debtor was unable to establish the proper foundation for Mr. Patterson's analysis, the report was not admitted, the Debtor was unable to establish these facts.

15. The Court also excluded the testimony of Durelle Allen, which Diamond offered regarding lien searches done on the Debtor's property. After concluding that Diamond was offering Mr. Allen as an expert but had failed to share his expert report with the other parties before the hearing (as required by Local Rule 9013-2(g) and Federal Rule of Civil Procedure 26(a)(2)(E)), the Court ruled that the report was not admissible under Federal Rule of Evidence 807. ECF No. 349 at 135:17-136:3. In other words, Diamond's failure to recognize that Mr. Allen's work would be considered an expert report, and to treat it as such during discovery in advance of the hearings on the DIP Motion, resulted in the exclusion of this evidence from the Court's consideration.

16. As a result, the Debtor has been obligated to make adequate protection payments to the second lien lenders of up to $30,000 per month. *See* ECF No. 326 ¶ 9(c). These payments have totaled $210,000 throughout the course of this chapter 11 case. *See, e.g.*, ECF No. 983 at 9 (indicating that $170,000.00 had been paid as of November 2017).

---

[1] A detailed description of the second lien lenders and their claims against the Debtor may be found in II.C.1.d of the *Second Amended Disclosure Statement for Debtor's Second Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code* (ECF No. 983).

### ii. The KEIP Motion

17. On April 18, 2017, the Debtor filed its *Motion for an Order Approving Key Employee Incentive Plan and Authorizing Payments Thereunder* (ECF No. 451) (the "KEIP Motion"). In the KEIP Motion, the Debtor sought to incentivize its management to achieve a successful sale of substantially all of its assets.

18. Despite numerous amendments and supplements to the KEIP Motion, *see* ECF Nos. 455, 484, 494, 495, 501, 512, Diamond was unable to obtain approval of the Debtor's proposed incentive plan. On May 11, 2017, the Court held a hearing on the KEIP Motion. During that hearing, the Court noted the ambiguity of the definition of a "Qualifying Sale" under the KEIP agreement. Specifically, in order to be a "Qualifying Sale," the sale had to generate sufficient cash proceeds to allow the Debtor to confirm a chapter 11 plan, but there was confusion as to whether all secured and nonpriority claimants had to be paid in full, or whether the employees would earn their KEIP incentives even if such claims were paid after negotiation. *See* ECF No. 517 at 141:19-25. As the Court observed, Diamond and its key witness in support of the KEIP offered differing interpretations of this definition. *Id.*

19. The following day, to address the Court's concerns, Diamond filed a *Notice of Revised Proposed Order Approving Key Employee Incentive Plan and Authorizing Payments Thereunder* (ECF No. 512), changing the definition of a "Qualifying Sale" to one in which the cash proceeds were sufficient to satisfy the DIP Obligations (as defined in ECF No. 326, as amended by ECF Nos. 410, 650). Nonetheless, on May 15, 2017, the Court denied the KEIP Motion, due to "the absence of evidence in support of the proposed plan." ECF No. 514. As the Court explained, the witness Diamond offered in support of the KEIP Motion had "testified that the incentives under the proposed incentive plan required that Northstar's secured and priority

claims would be paid in full under a qualifying plan." *Id.* Thus, Diamond's change to the definition of "Qualifying Sale" was no longer supported by the only testimony it had offered in support of the KEIP Motion at the hearing, and it offered no further testimony in support of its revisions to the KEIP agreement. Accordingly, the Court denied the KEIP Motion.

20. During the hearing on the KEIP Motion, the Court noted the time-sensitive nature of the issues raised by the KEIP. ECF No. 517 at 146:6-8 ("[T]his isn't going to go on some 30 day calendar for me. I don't think that treats management very fairly."). Nonetheless, Diamond waited over a month to file the *Debtor's Emergency Motion to Reopen Evidence on the Debtor's Motion for Order Approving Key Employee Incentive Plan and Authorizing Payments Thereunder* (ECF No. 627) ("Motion to Reopen"), in which it sought to reopen evidence on the KEIP Motion. By this time, several of the sale deadlines were already quickly approaching. The hearing on the Motion to Reopen was ultimately continued until August 21, 2017—multiple days after the sale of substantially all of the Debtor's assets was scheduled to close. ECF No. 699; *see also* ECF Nos. 504, 650 (scheduling the sale hearing for August 1, 2017 and the projected closing date for August 16, 2017). Eventually, Winston had no choice but to withdraw the Motion to Reopen, notwithstanding the demoralizing effect that this had on the Debtor's management. ECF No. 821.

### iii. The Sale of Substantially All of the Debtor's Assets

21. As this chapter 11 case progressed, the Debtor determined that a sale of substantially all of its assets pursuant to Bankruptcy Code § 363 would be appropriate. Accordingly, on May 11, 2017, the Court issued its *Order (A) Approving Sale and Bidding Procedures in Connection with Sale of Assets of the Debtor, (B) Approving Form and Manner of Notice, (C) Scheduling Auction and Sale Hearing, (D) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (E)*

7

*Granting Related Relief* (ECF No. 504, as amended by ECF No. 650) (the "Bidding Procedures Order"). The Bidding Procedures Order, as amended, set a series of deadlines and eventually scheduled a hearing on the proposed sale for August 1, 2017. ECF No. 650 ¶ 2.

22. Numerous parties filed objections to the proposed sale. *See* ECF No. 775 at 3-9 (listing approximately 80 objections). These objections raised various factual and legal issues and concerns that required investigation, negotiation, research, and briefing in advance of the sale hearing. The Debtor was convinced that none of the required activities to resolve the manifold objections had even begun to be undertaken, let alone progressed.

23. On July 20, 2017, the Debtor filed the Winston Retention Application. ECF No. 700. The overriding reason for the Debtor's decision to seek authorization to retain Winston at this time—less than two weeks before the scheduled sale hearing—was the Debtor's grave concern that none of the sale objections had been even minimally addressed and that Diamond would not be capable of procuring approval of the asset sale. *See id.* ¶ 19.

24. The Court approved the Winston Retention Application on July 26, 2017, less than one week before the sale hearing. ECF No. 723. Over the next six days (and the preceding week while the Winston Retention Application was pending), Winston was required to reach out to dozens of objectors, negotiate and document manifold settlements, research and prepare for contested issues which could not be resolved, prepare witnesses, and substantially revise the proposed sale order, essentially to the point of a complete rewrite—and conduct the sale hearing. *See, e.g.*, ECF No. 730 at Ex. B (reflecting Winston's initial revisions to the proposed order in redline). On August 2, 2017, the Court approved the sale, which closed on August 3, 2017. ECF Nos. 792, 800.

**C.      Diamond's Fee Applications**

25.     On May 26, 2017, Diamond filed the *First Interim Application for Allowance of Compensation and Reimbursement of Expenses of Diamond McCarthy LLP, as Counsel for the Debtor and Debtor-in-Possession for the Period December 2, 2016 Through March 31, 2017* (ECF No. 543) (the "First Application"). The First Application requested $805,842.50 in fees and $109,441.80 in reimbursable expenses. *Id.* at 2.

26.     On June 22, 2017, the Court issued its *Order Granting First Application for Allowance of Compensation and Reimbursement of Expenses of Diamond McCarthy LLP, as Counsel for the Debtor and Debtor-in-Possession for the Period December 2, 2016 through March 31, 2017*. ECF No. 622. That order awarded $902,992.50 in fees and $109,441.80 in expenses to Diamond on an interim basis and ordered the Debtor to pay the 20% holdback of $126,578.50 pursuant to the Compensation Procedures Order.

27.     On March 5, 2018, Diamond filed the *Second and Final Application for Allowance of Compensation and Reimbursement of Expenses of Diamond McCarthy LLP, as General Counsel for the Debtor and Debtor-in-Possession for the Period December 2, 2016 Through July 20, 2017* (ECF No. 1116) (the "Final Application"). The Final Application covers the period from April 1, 2017 to July 20, 2017 and requests an additional $545,371.00 in fees and $24,751.97 in expenses. *Id.* at 2.

28.     Thus, in the Final Application, Diamond is seeking final allowance of a total of $1,348,363.50 in fees and $134,193.80 in expenses. *Id.* Of this amount, Diamond has been paid all but $109,074.20. *Id.* at 29.[2]

---

[2]   In addition, Diamond received a $10,000.00 retainer from Northstar on a separate matter. Because Northstar asserts that it owes no additional payments to Diamond, Northstar requests that the Court order Diamond to return these funds.

29. The Debtor objects to $466,125.25 of Diamond's fees, as set forth herein. Therefore, the Debtor asserts that Diamond should be required to return $357,061.05, the total amount of excess payments it has received, to the Debtor's estate.

## ARGUMENT

30. Section 330 of the Bankruptcy Code provides that the Court may award "reasonable compensation for actual, necessary services" rendered by a professional employed under Section 327 of the Bankruptcy Code. 11 U.S.C. § 330(a)(1)(A). In determining the amount of such compensation, the Court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors." *Id.* § 330(a)(3). Such factors include "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title" and "with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field." *Id.* § 330(a)(3)(C), (D).

31. The Court "shall not allow compensation" for professional services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." *Id.* § 330(a)(4)(A). Thus, in order to establish that its services are compensable, a professional must establish that such services were "reasonable at the time" they were rendered. *In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015). To determine whether professional services meet this standard, the Court's considerations should include:

> [T]he probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor). ***Whether the services were ultimately successful is relevant to***, but not dispositive of, ***attorney compensation***.

10

*Id.* (emphasis added) (citations omitted). Additionally, bankruptcy courts have "broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors.'" *Id.* at 277 (quoting 11 U.S.C. § 330(a)(3)). Thus, where a bankruptcy court concludes that an applicant's performance was poor, it may reduce or disallow the fees requested by the applicant. *See, e.g.*, *In re Digerati Techs., Inc.*, 537 B.R. 317 (Bankr. S.D. Tex. 2015), *aff'd sub nom. Herrera v. Dishon*, No. 4:15-CV-227, 2016 WL 7337577 (S.D. Tex. Dec. 16, 2016), *aff'd*, 710 F. App'x 634 (5th Cir. 2018); *see also In re Terrill Mfg. Co., Inc.*, No. 16-60105-RLJ-7, 2018 WL 502525 (Bankr. N.D. Tex. Jan. 11, 2018) (reducing compensation where bankruptcy case reflected "many failings" and was "not well handled" by debtor's counsel).

**A.     The Fees Charged for the DIP Hearings Are Not Reasonable**

32.     The Debtor objects to the fees incurred by Diamond in relation to the DIP Motion between January 13 and January 31, 2017. The time spent by Diamond on the DIP Motion during this period was not "reasonably likely to benefit the estate" because Diamond failed to provide services at a minimally acceptable standard of performance. Even if the Debtor had ultimately failed to avoid the payment of adequate protection to the second lien creditors, Diamond failed in the most elementary first step permitting a Debtor to establish as much—that is, introducing admissible evidence going to the heart of the valuation issues considered in connection with a contested DIP Motion. Similarly, Diamond failed to introduce admissible evidence regarding the liens that existed on Northstar's property, yet another a key issue that arose in connection with the DIP Motion. Based on Diamond's failure to even minimally defend against the requests made by the second lienholders, the Debtor became obligated to make adequate protection payments totaling $210,000.

33.     Notwithstanding this rather spectacular failure, in the First Application, Diamond sought a total of $208,031.00 in professional fees for 441.8 hours that it spent working on the DIP

11

Motion between January 13 and January 31, 2017. *See* ECF No. 543-4 at Ex. C-11. Pursuant to the Compensation Procedures Order, these fees remain "subject to challenge and disgorgement until final allowance by this Court." ECF No. 217 ¶ 2.

34. The Court should decline to compensate Diamond for any of the time it spent on the DIP Motion between January 13 and January 31, 2017. The "value" of such services to the estate was actually negative, as the Debtor was required to make adequate protection payments due to the inadmissibility of the Patterson valuation report and Mr. Allen's testimony. *See* 11 U.S.C. § 330(a)(3); *see also In re Woerner*, 783 F.3d at 276 (noting that whether services "were ultimately successful" is relevant to compensation). Diamond cannot show that its services were reasonably likely to benefit the estate "because its courtroom performance . . . was woeful" and because of "the poor preparation and paucity of relevant convincing testimony . . . adduced" in connection with the DIP Motion. *In re Digerati Techs.*, 537 B.R. at 337 (declining to award fees where counsel's poor performance meant that services were not likely to benefit estate when rendered).

35. In addition, in evaluating "what services a reasonable lawyer or legal firm would have performed in the same circumstances," the Court should consider whether a reasonable firm in the same circumstances would have ensured that procedural requirements surrounding the admissibility of a key expert report were met, particularly where that firm spent over 400 hours in connection with the associated motion. *In re Woerner*, 783 F.3d at 276. Based on these factors, the Court should find that the fees sought by Diamond in connection with the DIP Motion are not reasonable under section 330 of the Bankruptcy Code.

**B.     The Fees Charged for the KEIP Motion Are Not Reasonable**

36. The Debtor objects to all fees that Diamond incurred in connection with the KEIP Motion and the Motion to Reopen. As detailed above, no KEIP was approved despite numerous

12

amendments and supplements that Diamond filed and presented in response to express requests by the Court. *See* ECF Nos. 455, 484, 494, 495, 501, 512. Ultimately, the adjudication of the KEIP Motion was deferred until after the very asset sale that the KEIP was intended to encourage the Debtor's management to achieve, and the Debtor essentially had no choice but to withdraw it.

37. Diamond spent a total of 27.4 hours in the First Application and 246.8 hours in the Final Application under the category of Employee Benefits & Pensions on the KEIP Motion, resulting in a total of $140,132.50 in fees. ECF No. 543-4 at Ex. C-8; ECF No. 1116-11, Ex. C-1. In addition, Diamond spent 4.8 hours totaling $2,016.00 under the category of Business Operations, 1.5 hours totaling $1,125.00 under the category of Case Administration, and 0.4 hours totaling $168.00 under the Category of Asset Disposition in connection with the KEIP Motion. ECF No. 1116-4, Ex. C-1; ECF No. 543-4, Ex. C-1; ECF No. 543-4, Ex. C-4. Thus, Diamond has sought a total of $143,441.50 in professional fees in relation to the KEIP Motion.

38. The fees charged by Diamond for its work on the KEIP Motion were not reasonably likely to benefit the estate," because it failed to adhere to the Court's clear instructions concerning the demonstration that needed to be made to gain approval of the proposed KEIP. *See* 11 U.S.C. § 330(a)(3). As recounted above, after the Court expressed its doubts regarding one of the KEIP agreement's provisions, Diamond altered the terms of the agreement such that it was no longer supported by Diamond's own evidence. Diamond's failure "to put forth an acceptable effort to introduce sufficient evidence for the Debtor to meet its burden of proof" means that their services rendered in connection with the KEIP Motion were not reasonably likely to benefit the estate at that time. *In re Digerati Techs.*, 537 B.R. at 337. Moreover, the hundreds of hours that Diamond spent on these issues are excessive given the absence of any result achieved by it. And because sale deadlines were already approaching when Diamond sought to reopen evidence on the KEIP

Motion, "the probability of success at the time" was low, and its services were not reasonably likely to benefit the estate.  *In re Woerner*, 783 F.3d at 276.  Accordingly, the Court should conclude that the fees charged by Diamond in connection with the KEIP Motion (i.e., $143,441.50) are unreasonable and should be disallowed.

**C.     The Fees Charged for the Asset Sale Are Not Reasonable**

39.     The Debtor objects to the fees that Diamond incurred in connection with the sale of substantially all of the Debtor's assets.  As explained above, only minimal progress had been made when Winston replaced Diamond as counsel shortly before the sale hearing.  In particular, Diamond charged the Debtor for hundreds of hours of professional time between May 16, 2017—the date of the first objection to the Bidding Procedures Order—and July 20, 2017, when the Debtor filed the Winston Retention Application, yet the Debtor and undersigned counsel found that virtually no progress had been made toward resolving any of the dozens of objections filed. Indeed, the only reason the Debtor undertook to make the grave and risky decision to change counsel two weeks before the sale hearing was based on its firm conviction that Diamond would be unable to obtain court approval of the sale.  Consistent with the Debtor's conviction, replacement counsel was indeed required to resolve all of the sale objections in an unreasonably short period due to the failure of prior counsel.  The relatively consensual nature of the sale hearing was not the result of Diamond's efforts and the Debtor continues to believe that the sale would not have been achieved had it not elected to change counsel.

40.     Notwithstanding this, Diamond charged 423.9 hours totaling $208,000[3] relating to the asset sale, of which 224 hours totaling $107,425 were spent after May 16, 2017.  ECF No. 543-

---

[3]   Of this amount, Diamond spent approximately 196.2 hours totaling $91,382.25 on the Bidding Procedures Motion and Order.  *See* ECF No. 543-4 at Ex. C-3; ECF No. 1116-6, Ex. C-3.  The Debtor does not object to this portion of Diamond's fees.

14

4 at Ex. C-3; ECF No. 1116-6, Ex. C-3.  In addition, Diamond spent 3 hours totaling $1,344 in Business Operations.  ECF No. 1116-9 at Ex. C-6.  Thus, Diamond seeks a total of $209,344 in professional fees relating to the sale of the Debtor's assets, of which the Debtor objects to $117,961.75.

41.     The fees requested by Diamond in connection with the asset sale are not reasonable. Diamond's services were not "reasonably likely to benefit the estate" because Diamond was unable to make progress toward achieving the sale.  *In re Woerner*, 783 F.3d at 276.  Despite the numerous emails and phone calls described in Diamond's billing summaries, not one objection to the sale had been resolved when Winston was retained shortly before the sale hearing.  The "value" of Diamond's services in this category to the estate was minimal because retention of different counsel was ultimately necessary in order to ensure that the sale was approved and consummated. 11 U.S.C. § 330(a)(3).  As a result, the Court should conclude that $117,961.75 of Diamond's fees requested in connection with the asset sale are unreasonable.

## CONCLUSION

42.     For the foregoing reasons, the Debtor requests that the Court (i) sustain its Objection to the Final Application; (ii) disallow the Final Application in part in the total amount of $466,125.25 in fees, comprising $208,031.00 for the DIP Motion, $140,132.50 for the KEIP Motion, and $117,961.75 for the sale; (iii) allow the Final Application in part in the total amount of $882,238.25 in fees and $134,193.80 in expenses; and (iv) grant such other and further relief, in law and in equity, as is just and proper.

15

Dated:  April 4, 2018                          Respectfully submitted,

                **WINSTON & STRAWN LLP**

                */s/ Lydia T. Protopapas*
                Lydia T. Protopapas
                Texas Bar No. 00797267
                Southern Dist. of Texas Bar No. 21378
                Jason W. Billeck
                Texas Bar No. 24001740
                Southern Dist. of Texas Bar No. 23802
                1111 Louisiana, 25th Floor
                Houston, TX 77002
                Telephone: (713) 651-2600
                Facsimile:  (713) 651-2700

                *Counsel for Northstar Offshore Group, LLC*

## **CERTIFICATE OF SERVICE**

I, Rick Smith, hereby certify that, on April 4, 2018, all counsel of record who are deemed to have consented to electronic service were served with a copy of the *Debtor's Objection to the Second and Final Application for Allowance of Compensation and Reimbursement of Expenses of Diamond McCarthy LLP, as General Counsel for the Debtor and Debtor-in-Possession for the Period December 2, 2016 Through July 20, 2017* via the Court's CM/ECF system.

*/s/ Rick Smith*
Rick Smith
Paralegal