IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/14/2018

| | | |
|---|---|---|
| IN RE: | § | |
| NORTHSTAR OFFSHORE GROUP, LLC | § | CASE NO: 16-34028 |
| Debtor(s) | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Northstar Offshore Group, LLC initiated an adversary proceeding to collect unpaid debts it claims are owed under Production Handling Agreements with Peregrine Oil and Gas, LP and Peregrine Oil and Gas II, LLC. (*See* Case No. 17-03448; ECF No. 1 at 3).

In response, Peregrine filed counterclaims against Northstar alleging tortious interference with existing contracts and prospective business relationships. (ECF No. 12 at 3). Peregrine II also filed counterclaims against Northstar, asserting that Northstar breached the Offshore Operating Agreement between the parties. (ECF No. 12 at 10). To support these counterclaims, Peregrine filed a motion for leave to late-file a proof of claim while Peregrine II filed a motion to amend their timely filed Proof of Claim No. 146.

Peregrine's motion for leave to late-file its proof of claim is granted and Peregrine II's motion for leave to amend is denied.

## Background

Northstar is an oil and gas company headquartered in Houston, Texas, focused on offshore oil and gas exploration. (ECF No. 106 at 5). In 2012, Northstar shifted the focus of its business from actively producing oil and gas wells to the discovery of new oil fields, and began leveraging debt to finance its exploration and test drilling. (ECF No. 106 at 6–7).

During this time, Northstar entered into a Production and Handling Agreement ("PHA") in 2007 with Peregrine that obligated Peregrine to pay Northstar for the processing, handling,

and transportation of oil and gas produced from the High Island Area oil field. (Case No. 17-03448; ECF No. 1 at 3). Under the PHA, Northstar was to accept all of Peregrine's High Island production and route it through Northstar's six inch pipeline, which was the only option for Peregrine to send its production to shore. (Case No. 17-03448; ECF No. 12 at 4–5).

Northstar entered into a similar Offshore Operating Agreement ("OOA") with Peregrine II that covered the oil and gas recovered from the West Cameron oil field. (Case No. 17-03448; ECF No. 1 at 3). The OOA allowed Peregrine II to send production from its West Cameron well to Northstar's processing facility. (Case No. 17-03448; ECF No. 12 at 10). Northstar then contracted with the Starfish Pipeline Company ("Starfish Contracts") to use the Starfish Pipeline for transporting production from Northstar's processing facility to shore. (Case No. 17-03448; ECF No. 12 at 11).

Both the PHA and OOA required Peregrine and Peregrine II to pay Northstar's monthly invoices within 30 days or the amounts due would begin accruing interest. (Case No. 17-03448; ECF No. 1 at 3).

By the second half of 2014, oil prices began to drop, which also coincided with a criminal fraud investigation into the Platinum Partner entities that formed Northstar's parent organization. (ECF No. 106 at 25). These events caused Northstar to experience a liquidity crisis and made it difficult to continue its operations in the Gulf of Mexico. (ECF No. 106 at 25).

Northstar's financial situation came to a head on August 12, 2016, when three creditors filed an involuntary bankruptcy petition for Northstar pursuant to 11 U.S.C. § 303. (ECF No. 106 at 25). At Northstar's request, the Court granted relief and converted Northstar's case to a voluntary case under chapter 11 on December 2, 2016. (Case No. 17-03448; ECF No. 15 at 7).

Northstar subsequently filed an adversary proceeding, alleging that Peregrine owed $204,503.65 stemming from unpaid invoices due under the High Island PHA, and that Peregrine II owed $130,626.20 in unpaid invoices from the West Cameron PHA. (Case No. 17-03448; ECF No. 1 at 3–4). Northstar claims that these debts are "outstanding, matured, payable on demand and past due" and are therefore payable to Northstar under 11 U.S.C. § 542(b). (Case No. 17-03448; ECF No. 1 at 4).

In response, Peregrine filed a counterclaim against Northstar alleging that Northstar's termination of the High Island PHA forced Peregrine to shut in its production from its High Island well and tortiously interfered with its business relationships and existing contracts. (Case No. 17-03448; ECF No. 12 at 9). Peregrine seeks approximately $2,400,000.00 in damages for the alleged loss of the High Island oil and gas reserves. (Case No. 17-03448; ECF No. 12 at 8). Peregrine II also filed a counterclaim, claiming that Northstar breached its contractual obligations under West Cameron OOA after Northstar rejected the Starfish Pipeline Contracts during its bankruptcy proceedings. (Case No. 17-03448; ECF No. 12 at 13). Peregrine II argues that Northstar remains liable under the OOA despite rejecting the Starfish Contracts, and that Northstar's refusal to handle Peregrine II's production from West Cameron constitutes a breach of the OOA which may result in $2,000,000.00 in damages if Peregrine II's well cannot resume production. (Case No. 17-03448; ECF No. 12 at 13–14).

Northstar filed a motion to dismiss Peregrine and Peregrine II's counterclaims on February 1, 2018, claiming that the counterclaims fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Case No. 17-03448; ECF No. 15 at 11–12). Specifically, Northstar argues that Peregrine and Peregrine II's counterclaims are barred for failure to timely file a proof of claim. (Case No. 17-03448; ECF No. 15 at 11, 17). Peregrine

filed a motion for leave to late-file proofs of claim in support of its counterclaims, alleging that cause existed for the Court to grant Peregrine leave for the late-filed proofs of claim. (ECF No. 1101 at 5). Peregrine II filed a motion for leave to amend its existing Proof of Claim No. 146, which was timely filed on March 1, 2017 in order to add information regarding its counterclaims against Northstar. On April 4, 2018, the Court held a hearing on these motions and requested additional briefing before taking the matter under advisement.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## Analysis

### Amendment Versus Late Filing Proofs of Claim

As a threshold issue, Peregrine II seeks to amend Proof of Claim No. 146 which was timely filed on March 1, 2017. (ECF No. 1101 at 4; Proof of Claim No. 146 at 3). While it is true that leave to amend a timely filed proof of claim "shall freely be given when justice so requires," amendment may not be used as a mechanism for circumventing the bar date. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *In re Enron Corp.*, 328 B.R. 75, 86 (Bankr. S.D.N.Y 2005). As a result, the Court must first decide whether Peregrine II's motion seeks to amend its proof of claim or is attempting to recover on a new cause of action.

Amendments to proofs of claim are allowed to "cure a defect in the claim as originally filed, to describe the [original] claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." *In re Enron Corp.*, 328 B.R. at 86 (quoting *In re G.L. Miller & Co.*, 45 F.2d 115, 116 (2d Cir. 1930)). Amendments are not permitted if the purpose of the amendment is to create an entirely new claim. *Id*. at 87.

Peregrine II filed Proof of Claim No. 146 for an undetermined amount based on *prospective* plugging and abandonment liability. (Proof of Claim No. 146 at 2). An attached addendum estimated the plugging and abandonment liability for the JA-8 well in the West Cameron offshore field at $450,000.00. (Proof of Claim No. 146 at 1). However, the amendments Peregrine II seeks to include in its proof of claim involve breaches of the OOA related to Northstar's rejection of the Starfish pipeline contracts, which include failure to perform operations in a good and workman like manner, breach of the OOA due to billing for improper platform expenses, gross negligence, and willful misconduct for violating the OOA. (*See* Case No. 17-03448 at 14).

These asserted counterclaims involve new facts and new theories of recovery which diverge from the prospective plugging and abandonment liability established in the original proof of claim. Although amendments are allowed to cure defects and add detail, they are not allowed to create new claims. *In re Enron Corp.*, 328 B.R. at 86. Accordingly, the Court must consider whether Peregrine II may late-file proofs of claim rather than amend Proof of Claim No. 146.

### Late-Filing Proofs of Claim

Peregrine has filed a motion for leave to late-file proofs of claim relating to its counterclaims. (ECF No. 1101 at 4). As set forth above, Peregrine II filed a motion to amend Proof of Claim No. 146 (which was timely filed prior to the bar date) to include information regarding its alleged counterclaim which the Court considers as a motion to late-file a proof of claim. (ECF No. 1101 at 5–6).

Northstar urges the Court to deny this motion because Peregrine and Peregrine II failed to meet the standard for excusable neglect and allowing the motion would upset Northstar's confirmed plan of liquidation. (ECF No. 1101 at 1).

Leave to late-file a proof of claim is granted in cases where the moving party demonstrates excusable neglect. FED. R. BANKR. P. 9006(b)(1). To determine whether excusable neglect exists, courts examine four factors: (i) danger of prejudice to the debtor; (ii) length of delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Pioneer Inv. Serv. Co. v. Brunswick Assoc., L.P.*, 507 U.S. 380, 389 (1993).

*Prejudice to the Debtor*

Peregrine and Peregrine II argue that no prejudice to Northstar has occurred because Northstar was aware of its claims. (ECF No. 1101 at 5). Northstar responds that allowing a late-filed proof of claim and amendment would upset its confirmed plan of liquidation, which weighs in favor of the Court dismissing the motion.

The Fifth Circuit examined the first *Pioneer* factor in *In Re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737–39 (5th Cir. 1995). Several creditors in *Eagle Bus* attempted to late-file proofs of claim after the court ordered bar date. *Id.* at 736. Although the debtor in *Eagle Bus* had a confirmed plan of reorganization, the Fifth Circuit held that because the debtor had notice of the proposed claims and negotiated its plan of reorganization in light of them, the debtor was not prejudiced by the late-filed claims. *Id.* at 737–38.

Peregrine's motion summarily claims that "Northstar will not be prejudiced by a granting of Peregrine's motion" because Northstar "was aware of Peregrine II's claims." (ECF No. 1101 at 5). Northstar responds that allowing late-filed proofs of claim would add an additional $4,400,000.00 of claims against the estate after the Court approved Northstar's plan of liquidation. (ECF No. 1110 at 11–12).

At the April 9, 2018 hearing, testimony established that Northstar sent Peregrine a notice of termination regarding the High Island PHA, which would automatically terminate the PHA unless the parties agreed to a resolution within 90 days. (ECF No. 1221 at 16–17). Although this initial notice was sent on October 13, 2016, the parties continued negotiating into late April 2017, nearly two months after the claims bar date passed. (ECF No. 1221 at 33). During this negotiation period, Northstar continued providing some sporadic platform services to Peregrine, until May 1, 2017, when Peregrine's well was shut in. (ECF No. 1221 at 36–37). Given the fact that both parties saw potential for these negotiations to continue to an amicable resolution and performed under the PHA as negotiations continued, it would be inequitable to find prejudice to Northstar while it simultaneously negotiated in good faith with Peregrine past the claims bar date and anticipated that the failure to reach a compromise would lead to a dispute between the parties.

Northstar rejected the Starfish Contracts during its bankruptcy proceedings after the March 1, 2017 claims bar deadline had passed. (ECF No. 1221 at 39). Northstar's Confirmed Plan included a deadline of 30 days post confirmation for claimants to file proofs of claim for rejection damages. (*See* ECF No. 1078 at 28). While Peregrine II failed to meet this deadline, Northstar's plan specifically anticipated the possibility that a post-confirmation proof of claim could be filed. Accordingly, Peregrine and Peregrine II have carried their burden of demonstrating that late filing and amending its proofs of claim would not prejudice Northstar.

*Length of Delay and Impact on Judicial Proceedings*

The second *Pioneer* factor considers the length of the delay and the impact the delay has on judicial proceedings. Northstar argues that Peregrine and Peregrine II have failed to carry this

...
...

burden because their attempted amendment came nine months after the bar date. (ECF No. 1110 at 8–9).

Courts have held that the length of the delay matters less than the impact the delay has on judicial administration of the case. *In re Pilgrim's Pride Corp.*, 2011 WL 576070, at *4 (Bankr. N.D. Tex. February 9, 2011). In cases where a late-filed proof of claim would disrupt the expectations of a debtor's confirmed bankruptcy plan, this factor weighs against allowing leave to late-file a proof of claim. *In re Bison Holdings, Inc.*, 2012 WL 3230472, at *3 (Bankr. S.D. Tex. August 3, 2012).

The Court approved Northstar's confirmed plan of liquidation on December 22, 2017. (ECF No. 1092). Northstar's plan defines "Allowed Claims" as claims that were either listed on the bankruptcy schedules or had valid proofs of claim. (ECF No. 1078 at 52). It is undisputed that Peregrine failed to file a proof of claim and that Peregrine II's proof of claim was filed for an undisclosed amount based on potential plugging and abandonment liabilities rather than the counterclaim it now seeks to enforce. (*See* Proof of Claim No. 146). As a result, Northstar's plan was approved and voted on anticipating a potential liability of approximately $450,000.00. (Proof of Claim No. 146; Addendum at 1). This is a material difference compared to the approximately $4,400,000.00 that Peregrine and Peregrine II now seek to assert in their late-filed claims. (ECF No. 1110 at 11–12).

However, approximately $2,000,000.00 of Peregrine II's purported claim arose from the rejection of the Starfish Contracts under Northstar's Confirmed Plan. (Case No. 17-03448; ECF No. 12 at 14). Northstar's Plan was confirmed on December 22, 2017 and provided an additional 30 days for parties to file for rejection damages. (*See* ECF No. 1078 at 28). Although Northstar's Plan was negotiated based on Peregrine II's $450,000.00 proof of claim, the

Confirmed Plan specifically contemplated the filing of proofs of claim in support of rejection damages. Accordingly, Northstar cannot rely on Peregrine II's original proof of claim or the fact that its damages accrued post-confirmation to limit Peregrine II's rejection damages.

The principal issue is whether the delay will adversely and unexpectedly affect the administration of the bankruptcy case. *In re Pilgrim's Pride*, 2011 WL 576070, at *4. Although Peregrine II missed the rejection damages proof of claim, it filed this motion for leave to late file a proof of claim by January 30, 2018, which was only nine days after the bar date. The short amount of time that elapsed and the fact that Northstar's plan anticipated some proofs of claim to be filed in unknown amounts after confirmation of the plan weigh in favor of finding no major disruption to Northstar's bankruptcy case.

*Reason for the Delay*

The third *Pioneer* factor examines the reason for the delay. Peregrine and Peregrine II purport that their causes of action did not arise until after the bar date passed, making it impossible to provide notice of its claims to Northstar. (ECF No. 1101 at 5). In turn, Peregrine and Peregrine II assert that because they could not timely file a proof of claim, this *Pioneer* factor weighs in their favor. (ECF No. 1101 at 5). Northstar disputes this and argues that the asserted causes of action arose during the Gap Period after Northstar sent its termination letter to Peregrine in October 2016. (ECF No. 1110 at 5). In Northstar's view, the onus then rested on Peregrine to file a timely proof of claim describing their alleged causes of action. (ECF No. 1110 at 7).

The Bankruptcy Code broadly defines "claim" in 11 U.S.C. § 101(5)(A) as a "right to payment, whether or not such right is reduced to judgment, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured." The Fifth Circuit

established the pre-petition relationship test to determine whether a "future claimant may have a 'claim' under the Code." *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994) (*quoting In re Piper Aircraft Corp.*, 162 B.R. 619, 627 (Bankr. S.D. Fla. 1994)). Under this test, some pre-petition relationship must exist between the debtor's pre-petition conduct and the claimant to give rise to a claim under the Bankruptcy Code. *Id.* at 1277.

*Accrual of Peregrine's Cause of Action*

Peregrine's claim for tortious interference with existing contracts arises out of the High Island PHA. Peregrine alleges this cause of action accrued when Northstar finally shut-in the well on May 1, 2017, two months after the bar date passed. (ECF No. 1101 at 3). Northstar counters that this claim accrued in October 2016 when it notified Peregrine it was exercising its right to terminate the PHA. (ECF No. 1110 at 6).

Under the terms of the PHA, Peregrine relied on Northstar's processing facility to supply its existing contracts with natural gas. (Case No. 17-03448; ECF No. 12 at 9). Northstar first sent Peregrine notice of its intent to terminate the PHA on October 13, 2016, and according to the terms of the PHA, unless the parties settled on new terms, the PHA would automatically terminate 90 days after Northstar issued its notice of intent. (ECF No. 1110 at 6). However, the parties continued their negotiations and Northstar provided intermittent performance under the PHA past the 90-day deadline and into late-April 2017 when Peregrine sent its final offer to Northstar. (*See* ECF No. 1101 at 3; ECF No. 1221 at 36–37). Northstar never replied to this offer and on May 1, 2017, the High Island facility ceased operations, which in turn shut-in Peregrine's well. (ECF No. 1101 at 3).

The PHA formed the basis of the pre-petition relationship between Northstar and Peregrine and Northstar's notice regarding its intent to terminate the PHA fits squarely within the

pre-petition relationship test as pre-petition conduct giving rise to a claim. *Lemelle*, 18 F.3d at 1277. Since the terms of the PHA empowered Northstar to unilaterally terminate the PHA, Peregrine's right to payment began not later than Northstar's notification on October 13, 2016, under the broad definition of claim in 11 U.S.C. § 101(5). (ECF Nos. 1110 at 6; 1101 at 3).

Despite the pre-petition nature of the claim, it is undisputed that the parties continued both negotiations and performance under the PHA for several months beyond the claims bar date. (ECF No. 1221 at 16–17; 33; 36–37). It would be unfair to hold Peregrine to the claims bar date while Northstar simultaneously continued its negotiations with Peregrine and performance under the PHA. Peregrine has satisfied the burden of demonstrating a sufficient reason for its delay in filing its proof of claim.

*Accrual of Peregrine II's Cause of Action*

Peregrine II seeks to add a claim for breach of contract arising from the OOA entered into with Northstar. (ECF No. 1101 at 3). Peregrine II alleges that when Northstar rejected the Starfish pipeline contracts on March 14, 2017, after the claims bar date, Peregrine II was forced to shut-in its well. (ECF No. 1101 at 3–4). According to Peregrine II, this breach of the OOA led to damages and "may result in the loss of the oil and gas lease." (Case No. 17-03448; ECF No. 12 at 13). Specifically, Peregrine II asserts three counterclaims against Northstar: (i) breach of a Letter Agreement between the parties when Northstar invoiced Peregrine II for platform expenses; (ii) breach of the OOA due to failure to perform operations in a good and workman like manner; and (iii) Northstar's rejection of the Starfish contracts violated the OOA. (Case No. 17-03448 ECF No. 12 at 14). Northstar argues that Peregrine II's counterclaims all arose prior to the filing of Northstar's voluntary petition and as a result, Peregrine II should have filed timely proofs of claim. (ECF No. 1110 at 10).

Northstar alleges that Peregrine II's causes of action for breach of the Letter Agreement and failure to perform in a workman like manner accrued when Northstar sent Peregrine II a termination letter on September 11, 2015. (ECF No. 1110 at 9). Northstar claims that this letter "put Peregrine II on notice of the non-economic viability of the well, and that [Northstar] would only continue operating the well with agreement from the other partners to pay their fair share." (ECF No. 1110 at 9).

The terms of the Letter Agreement allowed Northstar to unilaterally terminate with 90-days notice to the parties unless the parties agreed on an alternative arrangement. (ECF No. 1110 at 8–9). The Letter Agreement between the parties established a pre-petition relationship between Northstar and Peregrine II and the pre-petition notice of intent to reject falls within the broad definition of a claim in the Bankruptcy Code. 11 U.S.C. § 101(5). However, unlike Peregrine's claims discussed earlier, it does not appear that the parties continued meaningful negotiations past the initial proposals circulated among the parties in September 2015. (*See* Case No. 17-03448 ECF No. 12 at 12–14). Accordingly, the contract terminated and the cause of action accrued not later than Northstar's notice of its intent to terminate, placing the accrual of the claim not later than September 2015, over one year before Northstar filed its voluntary petition in December 2016. (ECF No. 88). As a result, Peregrine II had sufficient notice and time to file proofs of claim detailing these counterclaims before the bar date passed. Peregrine II's motion is denied with respect to this counterclaim.

The second counterclaim Peregrine II asserts is Northstar's failure to perform in a good and workmanlike manner as required under the OOA. (Case No. 17-03448; ECF No. 12 at 14). Mirroring the breach of the Letter Agreement, the OOA forms the pre-petition relationship between the parties and Peregrine II was provided with notice in September 2015 that Northstar

refused to perform the work Peregrine II demanded, satisfying the broad definition of a claim. 11 U.S.C. § 101(5). Peregrine II was provided adequate time to file a timely proof of claim but failed to do so. (ECF No. 1110 at 10). Although Peregrine II claims to have made offers and counterproposals to Northstar in the interim, these negotiations do not mirror those regarding the PHA where the parties had a realistic opportunity to resolve their dispute and continued performing under the contract. (*See* Case No. 17-03448; ECF No. 12 at 14). Accordingly, Peregrine II's motion for leave to late-file a proof of claim regarding Northstar's failure to perform in a good and workmanlike manner is denied.

Peregrine II's third claim involves the Starfish Pipeline Contracts, which Northstar rejected on March 14, 2017. (ECF No. 1101 at 4). Peregrine II argues that these rejected contracts made transportation of production from its West Cameron well impossible and forms the basis of its proof of claim. (ECF No. 1101 at 4). Peregrine II argues that this cause of action accrued after the bar date when Northstar rejected these contracts on March 14, 2017. (ECF No. 1101 at 4).

Northstar maintains that Peregrine II received notice of this rejection in November 2016 before the filing of the voluntary petition but failed to file a timely proof of claim. (ECF No. 1110 at 10). Alternatively, even if the cause of action accrued after the bar date, Northstar claims that Peregrine II's counterclaim remains barred because the agreement was assumed and assigned as part of the Court approved Sale Order on August 2, 2017, which released Northstar from liability under assigned contracts. (ECF No. 1110 at 10–11).

Unlike the Letter Agreement, Peregrine II was not a party to the rejected contract between Northstar and Starfish. (*See* ECF No. 382). As a result, no pre-petition relationship existed between Peregrine II and Northstar regarding the Starfish Contracts sufficient to yield a

claim under the Bankruptcy Code. *Lemelle*, 18 F.3d at 1277. Northstar provided Peregrine II with notice of its intent to reject the Starfish Contracts in November 2016, yet Peregrine II failed to file a timely proof of claim based on the rejection of the Starfish Contracts. Ultimately, the fact that Peregrine II was advised of Northstar's intent to reject these contracts yet still failed to file a timely proof of claim weighs against allowing leave to late-file a proof of claim.

*Good Faith*

Although Northstar disputes whether Peregrine and Peregrine II's motion was filed in good faith, its basis for suggesting that it was not arises from the fact that "Peregrine has not offered any reasons for its delay" and "failed to carry its burden on this or any factor." (ECF No. 1110 at 14). Contrary to Northstar's assertion, the Court finds no evidence in the record suggesting that Peregrine has failed to act with good faith in filing its motion.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **September 14, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE