UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 16-34028 |
| | * | |
| NORTHSTAR OFFSHORE GROUP, LLC | * | CHAPTER 11 |
| | * | |
| | * | |
| * * * * * * * * | | |

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MOTION ON TUESDAY, JUNE 11, 2019, AT 3:00 P.M. IN COURTROOM 404, 515 RUSK, HOUSTON, TX 77002.**

### AMENDED APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF MEDCO ENERGI US LLC

**MAY IT PLEASE THE COURT:**

Medco Energi US LLC ("Medco") files this amended application (the "Amended Application") for the allowance and payment of an administrative expense claim against Northstar Offshore Group, LLC ("Northstar"), pursuant to Section 503(b)(1) of the Bankruptcy Code. Medco, as operator of the East Cameron Block 317 and East Cameron Block 318 Leases

1

(collectively the "EC 317/318 Leases") has now completed the decommissioning of the EC 317/318 Leases and all costs have been fully paid. The obligation of Northstar, as a 25% co-owner of the operating rights of the EC 317/318 Leases, to Medco to pay its 25% share of these costs as described below qualifies as an administrative expense. In support of the Amended Application, Medco represents the following:

**I.      THE NORTHSTAR BANKRUPTCY CASE**

1.

An involuntary petition under Section 304 of the Bankruptcy Code was filed against Northstar on August 12, 2016.

2.

A voluntary petition under Chapter 11 was filed by Northstar on December 2, 2016.

3.

Northstar administered its bankruptcy estate as debtor-in-possession from December 2, 2016, until January 19, 2018.

4.

The Debtor's Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (the "Plan of Liquidation") was confirmed pursuant to this Court's Finding of Facts, Conclusions of Law, and Order Approving Debtor's Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order") (Doc. No. 1078), which was entered on December 22, 2017.

5.

January 19, 2018 was the Effective Date of the Plan of Liquidation. *See* Notice of Effective Date (Doc. No. 1092).

6.

Pursuant to Sections 1.2 and 2.1 of the Plan of Liquidation, all applications for administrative expense were required to be filed within thirty days of the Effective Date.

7.

Medco filed its original proof of claim relating to the EC 317/318 Leases, on March 1, 2017 (the "Proof of Claim"). Medco filed with this Court the Administrative Expense Claim of Medco Energi US LLC on January 31, 2018 (the "Original Application").[1]

## II. THE OWNERSHIP INTERESTS OF MEDCO AND NORTHSTAR IN EAST CAMERON BLOCKS 317 AND 318 LEASES

8.

On July 1, 1983, the United States Department of the Interior through the Minerals Management Service granted a mineral lease to Mobil Oil Exploration & Production Southeast, Inc. and Sohio Petroleum Company covering EC Block 317. This lease bears Serial No. OCS-G 5392 (the "EC 317 Lease").

---

[1] The Proof of Claim bears claim number 82-1 on this Court's claims register; the claims agent's website denominates the Proof of Claim as claim number 143. The Original Application bears claim number 111-1 on the claims register, while the agent's website utilizes claim number 213. The Proof of Claim was disallowed as duplicative in favor of the Original Application in this Court's Order Granting First Amended Omnibus Objection to the Allowance of Certain Late-Filed, Duplicate, and Amended or Superseded Claims, entered on March 22, 2018 (Doc. No. 1140).

3

4921089_3

9.

On July 1, 1983, the Department of the Interior through the Minerals Management Service granted a mineral lease to Mobil Oil Exploration & Production Company and Sohio Petroleum Company covering EC Block 318.  This lease bears Serial No. OCS-G 5393 (the "EC 318 Lease").

10.

The EC 317/318 Leases are located on the Outer Continental Shelf and are adjacent to the State of Louisiana.

11.

Pursuant to the Outer Continental Shelf Lands Act, Louisiana law governs the EC 317/318 Leases as surrogate federal law.

12.

As of August 12, 2016 (*i.e.*, the filing date), Medco and Northstar each owned operating rights in the EC 317/318 Leases.  Medco owned 75% of the operating rights, while Northstar owned 25%.

13.

The operations of the EC 317/318 Leases were, at all times pertinent to this application, subject to the Amended and Restated Offshore Operating Agreement for the EC 317/318 Leases (the "Operating Agreement").

14.

When it acquired its interest in the EC 317/318 Leases, Northstar became a party to the Operating Agreement and assumed the obligations of its predecessor in title.  Medco was designated as the operator of the EC 317/318 Leases and Northstar consented to this designation.

15.

Pursuant to this Court's Order Granting Debtor's First Omnibus Motion to Reject Executory Contracts and Unexpired Lease (Doc. No. 846) the Operating Agreement was rejected by Northstar effective August 18, 2017.

### III.      THE TERMINATION AND DECOMISSIONING OF EC 317/318 LEASES

16.

The EC 318 Lease terminated on April 13, 2012 due to non-production. All wells located on the EC 318 Lease were then plugged and abandoned. However, Medco as operator was granted a Right of Use and Easement (the "RUE") for the platform located on the EC 318 Lease for the period during which the EC 317 Lease remained active.

17.

As a result of the granting of the RUE, the obligation to decommission the platform, which accrued when the platform was placed on the EC 318 Lease, did not come due at the time of the termination of the EC 318 Lease.

18.

The last day of production from EC 317 Lease was August 1, 2016.

19.

On February 27, 2017, the EC 317 Lease expired due to non-production.

20.

As a consequence of the expiration of the EC 317 Lease, the RUE expired on May 29, 2017 (ninety days after the lease expired).

## IV. SATISFACTION OF DECOMMISSIONING OBLIGATIONS

21.

Pursuant to 30 C.F.R. § 250.1710 the obligation to decommission the platform and wells located on the EC 317 Lease and the platform on the EC 318 Lease had to be satisfied within one year of the termination of the EC 317 Lease.

22.

Medco and Northstar's obligation to decommission the EC 317 Lease and the EC 318 platform became enforceable February 27, 2017.

23.

As owners of operating rights in the EC 317/318 Leases, Medco and Northstar are jointly and severally liable to the United States for decommissioning. *See* 30 C.F.R. § 250.146 and 30 C.F.R. § 250.1701.

24.

30 C.F.R. § 1701 provides:

> a. Lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases, including the obligations related to lease-term pipelines, as the obligations accrue and until each obligation is met.
>
> b. All holders of a right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met.
>
> c. In this subpart, the terms "you" or "I" refer to lessees and owners of operating rights, as to facilities installed under the authority of a lease, and to right-of-way holders as to facilities installed under the authority of a right-of-way.

25.

Medco provided Northstar an Authority for Expenditure ("AFE") to "P&A the EC 317 A wells, decommission the five associated pipelines and decommission the EC 317 A and the EC 318 B Platforms" on or about August 9, 2017. The AFE estimated the projected cost of satisfying this decommissioning obligation at $6,600,000.

26.

Northstar's estimated proportionate share of the decommissioning obligation amounted to $1,650,000.00 based upon the forgoing estimate of the projected cost.

27.

Northstar failed to sign the AFE.

28.

On March 7, 2017 Medco, as operator of the EC 317 Lease and EC 318 Lease, filed with the Bureau of Safety and Environmental Enforcement, United States Department of Interior ("BSEE") applications to decommission pipeline segments 8867 and 12251. On April 6, 2017, Medco filed with BSEE applications to decommission pipeline segments 15287 and 15288. On July 19, 2017, Medco filed with BSEE applications to decommission the EC 317 A platform and the EC 318 B platform. On July 20, 2017, Medco filed with BSEE an application to decommission pipeline segment 17954. On August 1, 2017, Medco filed with BSEE applications to permanently abandon the EC 317 A001, A003, A004 and A005 wells and the EC 318 A002 well.

29.

On July 31, 2017, BSEE approved the applications to decommission pipeline segments 8867 and 12251. On August 31, 2017, BSEE approved the application to decommission pipeline segment 17954. On October 6, 2017, BSEE approved the application to decommission the EC

7

317 A platform and approved the application to decommission the EC 318 B platform on December 27, 2017. On January 24, 2018, the applications to decommission pipeline segments 15287 and 15288 were approved.

30.

BSEE approved the applications to permanently abandon the EC 317 wells as follows: A001 approved on September 21, 2017; A003 approved on October 12, 2017; A004 approved on September 20, 2017 and A005 approved on August 10, 2017. BSEE approved the application to permanently abandon the EC 318 A002 well on September 14, 2017.

31.

As of December 31, 2018, Medco completed the decommissioning of the EC 317/318 Leases. On January 7, 2019, Medco filed the final site-clearance verification reports with BSEE.

32.

The total amount incurred by Medco to decommission the EC 317 Lease and the platform located on the EC 318 Leases was $6,049,221. Northstar's 25% share of the decommissioning costs is, therefore, $1,512,305.

33.

A schedule summarizing the decommissioning costs is attached hereto as Exhibit 1.

34.

Medco received BSEE final approval in January 2019 for the decommission. BSEE thereafter authorized cancellation of the bonds securing the decommissioning obligations of Medco and Northstar for the EC 317 Lease and EC 318 Lease.

## V. NORTHSTAR'S 25% PROPORTIONAL SHARE OF THE COST OF DECOMMISSIONING THE LEASES CONSTITUTES AN ADMINISTRATIVE EXPENSE OF THE ESTATE

35.

The obligation of Medco and Northstar to decommission the EC 317/318 Leases is joint and several *vis-à-vis* the United States. 30 C.F.R. § 250.1701; s*ee also* 30 C.F.R. § 250.146.

36.

Pursuant to 30 C.F.R. § 250.1703, when facilities are no longer useful for operations, they must be decommissioned. Decommissioning includes permanently plugging wells, removing platforms and other facilities, decommissioning pipelines, and clearing the seafloor of obstructions. *Id.*

37.

30 C.F.R. § 250.1710 requires that wells on a lease must be permanently plugged within one year after the lease has terminated. If the decommissioning requirements are not satisfied, BSEE may issue and serve a notice of noncompliance upon the lessees identifying the violations. 30 C.F.R. § 250.1451.

38.

If violations are not timely corrected, BSEE may levy penalties of as much as $5,000 per violation per day beginning with the date of the notice of noncompliance. 30 C.F.R. § 250.1453.

39.

The requirement to decommission the facilities on the EC 317/318 Leases became enforceable post-petition on February 27, 2017, the date on which the EC 317 Lease terminated. Medco and Northstar would have been exposed to potential post-petition fines and penalties of

tens of thousands of dollars per day if the required decommissioning work was not performed by Medco.

40.

Article 806 of the Louisiana Civil Code provides:

> A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.
>
> If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

41.

Medco is, thus, entitled to reimbursement from Northstar as a result of the co-ownership of the EC Lease 317 and EC Lease 381 post-petition.

42.

The Louisiana rules of solidary liability also lead to the conclusion that Medco is entitled to recover Northstar's 25% share of the decommissioning expenses. Article 1804 of the Civil Code provides, in relevant part:

> A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

43.

A party paying for decommissioning work is subrogated to the claim and priority granted a governmental agency to the extent the co-debtor has paid the creditor. *See* La. Civ. Code art.

1829(3); *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 622-23 (Bankr. S.D.Tex. 2004); *see also In re ATP Oil & Gas Corporation*, 2014 WL 1047818 (Bankr. S.D. Tex. 2014).

44.

The United States Supreme Court held in *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 507, 106 S.Ct. 755 (1986) that the trustee may not abandon property in contravention of a state law reasonably designed to protect public health or safety. *See also* 28 U.S. C. §959(b).

45.

Thus, as a solidary obligor with Medco, Northstar owes Medco contribution/reimbursement for its 25% share of the decommissioning cost.

46.

While this Court affirmed Northstar's rejection of its contractual interests in the EC 317 Lease and the EC 318 Lease in paragraph 61 of the Confirmation Order, it did so expressly subject to paragraph 62 thereof. Paragraph 62 provides that rejection did not discharge or release Northstar from its decommissioning obligations under the Outer Continental Shelf Lands Act, 43 USC §1331, *et seq*. ("OCSLA") and its implementing regulations, including CFR Part 250, and any other laws reasonably designed to protect the public health or safety from identified hazards. Further, paragraph 62 of the Confirmation Order provides that these (decommissioning) obligations shall remain, are non-dischargeable and shall survive the bankruptcy case.

47.

In *In the Matter of H.L.S. Energy Co., Inc*., 151 F.3d 434, 436 (5th Cir. 1998) the court of appeal held that costs incurred by the State of Texas in satisfying the bankruptcy estate's post-petition decommissioning obligations constituted administrative expenses under section

503(b)(1)(A) of the Bankruptcy Code; s*ee also In re American Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009) (holding that the claim of the Texas Railroad Commission which had spent state funds to remediate environmental risks qualified as an administrative expense even when the claim could be deemed to have "arisen" pre-petition). Northstar's obligation to decommission is likewise an administrative expense and Medco, as subrogee, is entitled have its administrative expense claim allowed.

48.

The claim of Medco against Northstar either in reimbursement or by virtue of subrogation constitutes an administrative expense pursuant to Section 503(b)(1)(A) of the Bankruptcy Code.

**NOW WHEREFORE**, Medco prays that its amended application for the allowance and payment of an administrative expense claim be granted and that:

A. This Court order recognition and allowance of an administrative expense claim in favor of Medco in this case equal to 25% of the decommissioning costs of the EC 317 Lease and the EC 318 Lease, including related wells and platforms, *i.e.*, an administrative expense claim in the amount of $1,512,305.00, plus interest at the statutory rate from the date that the obligation of Northstar came due;

B. This Court order that Northstar retain sufficient funds to pay this administrative expense pending its final quantification and allowance; and

C. This Court award to Medco further all legal or equitable relief to which it is entitled.

Respectfully submitted,

*/s/ Michael D. Rubenstein*
Michael D. Rubenstein (Tx. Bar #24047514)
Liskow & Lewis, APLC
1001 Fannin Street
Houston, TX  77002
Telephone:      (713)651-2953
Facsimile:      (713) 651-2952
Email: mdrubenstein@liskow.com

Philip K. Jones, Jr. (La. Bar #7503)
Dena L. Olivier (La. Bar #17731)
Liskow & Lewis, APLC
701 Poydras Street, Suite 5000
New Orleans, LA  70139
Telephone:      (504) 581-7979
Facsimile:      (504) 556-4108
Email: pkjones@liskow.com

Joseph P. Hebert (Tx. Bar #00789095)
Liskow & Lewis, APLC
822 Harding St.
Lafayette, LA  70503
Telephone:  (337) 232-7424
Fax:  (337) 267-2399
Email:  *jphebert@liskow.com*

*Attorneys for Medco Energi US LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing *Amended Application for Allowance and Payment of Administrative Expense Claim of Medco Energi US LLC* was sent (i) via electronic mail to Lydia T. Protopapas, Esq., counsel to the debtor, Vincent P. Slusher, counsel to the Official Committee of Unsecured Creditors, and Kelly Greenwood Prather, counsel to the Litigation Trustee and (ii) to all parties or counsel of record who have registered to receive electronic service by operation of the Court's electronic filing system.

Dated this 1st day of May, 2019.

                                                  */s/ Michael D. Rubenstein*