IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| **NORTHSTAR OFFSHORE** § | Case No. 16-34028 |
| **GROUP, LLC,** § | |
| § | (Chapter 11) |
| **DEBTOR.** § | |

**DEBTOR'S OBJECTION TO THE AMENDED APPLICATION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF
MEDCO ENERGI US LLC**

[Related to ECF No. 1342]

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

Northstar Offshore Group, LLC (the "Debtor") and the Litigation Trust for Northstar Offshore Group, LLC (together with the Debtor, "Northstar") file this *Debtor's Objection to the Amended Application for Allowance and Payment of Administrative Expense Claim of Medco Energi US LLC* (the "Objection") and in support thereof respectfully represent as follows:

## BACKGROUND

A. The Chapter 11 Case

1. On August 12, 2016 (the "Involuntary Petition Date"), Alliance Offshore, LLC, Alliance Energy Services, LLC, and Montco Oilfield Contractors, LLC filed an involuntary petition for relief against the Debtor under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). ECF No. 1.

2. On December 2, 2016, the Debtor agreed to convert the involuntary case to a voluntary case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF No. 88.

1

3. The Debtor previously operated as an oil and gas exploration and production company. On August 2, 2017, the Court entered an *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Sale Order"). ECF No. 792.

4. On August 3, 2017, pursuant to the Sale Order, the Debtor sold substantially all of its assets free and clear to Northstar Offshore Ventures LLC ("NOV"). ECF Nos. 792 and 800.

5. On September 11, 2017, the Court entered an order authorizing the Debtor to reject its executory contracts and unexpired leases related to the remaining property that was not sold to NOV (the "Rejection Order"). ECF No. 846.

6. On December 22, 2017, the Bankruptcy Court entered an order confirming the *Debtor's Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (the "Plan"). ECF No. 1078, Exh. B.

7. On January 19, 2018, the effective date (the "Effective Date") of the Plan occurred. ECF No. 1092.

B. The Claims Bar Date

8. On December 6, 2016, the Court entered an *Order Granting Complex Chapter 11 Bankruptcy Case Treatment and Setting Bar Date for Proofs of Claim* (the "Bar Date Order"). ECF No. 131. Pursuant to the Bar Date Order, the Court established (a) March 1, 2017 as the deadline by which proofs of claim were required to be filed by holders of claims other than governmental units (the "Bar Date"); and (b) May 31, 2017 as the deadline by which proofs of claim were required to be filed by governmental units (the "Government Bar Date").

9. In addition, the Plan established an Administrative Expense Claims Bar Date[1] of February 18, 2018, and a bar date for Administrative Expense Claim Objections and other Claim Objections of April 19, 2018.

10. James Katchadurian of CR3 Partners, LLC (the "Litigation Trustee") was approved under the Plan to oversee the implementation of the Plan and the liquidation of the Debtor's estate, including the filing of claim objections.

11. On April 2, 2018, the Debtor moved to extend the deadline for objecting to all proofs of claim (the "Claim Objection Deadline"), and on April 10, 2018, the Court entered an order extending the Claims Objection Deadline from April 19, 2018 to July 18, 2018, without prejudice to the Debtor's ability to seek further extensions. ECF Nos. 1154 and 1185. Thereafter, the Debtor sought and obtained orders further extending the Claims Objection Deadline from July 18, 2018 until October 31, 2018, from October 31, 2018 until March 31, 2018, and from March 31, 2019 until September 30, 2019. ECF Nos. 1239, 1300, and 1340.

C. The Medco Prepetition Contracts

12. Prior to the Involuntary Petition Date, the Debtor and Medco Energi US LLC ("Medco") co-owned operating rights in certain oil and gas leases located on the Gulf of Mexico Outer Continental Shelf (the "OCS") known as East Cameron Block 317 (the "EC 317 Lease") and East Cameron Block 318 (the "EC 318 Lease," and together with the EC 317 Lease, the "EC Leases"). The parties' rights and interests in the EC Leases were conveyed by the U.S. Bureau of Ocean Energy Management ("BOEM"), which also established provisions governing the parties' operating activities on the leases. The U.S. Bureau of Safety and Environmental

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

3

Enforcement ("BSEE") regulates the decommissioning activities required under the EC Leases pursuant to the myriad regulations codified in Title 30 of the Code of Federal Regulations.

13. The Debtor owned a 25% working interest in each of the EC Leases and Medco owned a 75% working interest in each of the EC Leases. Medco was the designated operator of each lease. In connection with the EC Leases, the Debtor and Medco were parties to the following agreements:

   a. Offshore Operating Agreement effective August 27, 2004, between Novus Louisiana LLC and Darcy Energy, Ltd.;

   b. First Amended and Restated Offshore Operating Agreement between Medco Energi US LLC and Leed Petroleum LLC, effective April 1, 2008, whereby the parties "amend and restate the Original Agreement" (Offshore Operating Agreement dated August 27, 2004) and reflect further amendments as well; and

   c. First Amendment to and Ratification of Memorandum of Operating Agreement and Financing Statement, effective May 17, 2011 by and between Medco Energi US LLC and Marlin GOM I, L.L.C. recorded in Cameron Parish under File No. 323030 in the Conveyance and Mortgage Books.

14. On or about April 13, 2012, the EC 318 Lease terminated due to non-production and the wells located on the lease were subsequently plugged and abandoned. Medco was granted a Right of Use and Easement (the "EC 318 RUE") for the platform located on the EC 318 Lease. The last day of production from the EC 317 Lease was on or about August 1, 2016 and the lease expired due to non-production on February 27, 2017.

15. Effective August 18, 2017 (the "Rejection Date"), the Debtor rejected the EC Leases because the costs associated with the leases were greater than the profits attributable to those properties, and therefore, did not benefit the estate.[2] *See* ECF Nos. 828 and 846.

---

[2] On July 12, 2017, the Debtor and Medco filed an *Amended Joint Motion to Assume Executory Contract and Modify Stay to Permit Setoff* (the "Main Pass/East Cameron Joint Motion") related to the EC Leases and, separate leases known as Main Pass Blocks 64 and 65. *See* ECF No. 682. Pursuant to the Main Pass/East Cameron Joint

D.Medco's Application for Administrative Expense Claim

16.On March 1, 2017, Medco filed its original proof of claim, Claim No. 143. Thereafter, on January 31, 2018, Medco filed Claim No. 213, which amended and superseded Claim No. 143. Accordingly, Claim No. 143 was disallowed and expunged as an amended and superseded claim, and Claim No. 213 remained as the surviving claim. ECF No. 1140. Claim No. 213 asserted a priority claim for an estimated $1,650,000.00, or 25% of the actual decommissioning costs for the EC Leases. Claim No. 213 noted that Medco had obtained BSEE approval for the decommissioning work for the EC Leases, but "Medco intends to request and extension from BSEE to perform the EC 317 and 318 field decommissioning project in the late spring or early summer of 2018." Claim No. 213 at ¶ 30.

17.On May 1, 2019, Medco filed its *Amended Application for Allowance and Payment of Administrative Expense Claim of Medco Energi US LLC* (the "Medco Claim") seeking allowance of an administrative expense claim equal to $1,512,305.00, plus interest, for the Debtor's 25% proportional share of the decommissioning costs attributable to the EC 317 Lease and the EC 318 Lease.

**OBJECTION**

**A.Claims Asserting Section 503(b)(1) Administrative Expense Priority Status Must Be Narrowly Construed**

18.Section 503(a) of the Bankruptcy Code permits entities to timely file a request for payment of administrative expenses. 11 U.S.C. § 503(a). Following proper notice and a hearing on such request, "there shall be allowed administrative expenses, . . . including . . . the actual,

---

Motion, the parties agreed that the Debtor would assume the operating agreement related to Main Pass Blocks 64 and 65, but not the operating agreement related to the EC Leases. *See id.* In addition, the parties agreed that the Debtor would seek modification of the automatic stay to permit Medco to offset amounts due the Debtor against amounts due Medco under the operating agreement related to the EC Leases. *Id.* ¶ 17. The Court granted the Main Pass/East Cameron Joint Motion on August 1, 2017. ECF No. 784. Accordingly, when the Debtor later rejected the EC Leases, it was subject to the Court's order on the Main Pass/East Cameron Joint Motion.

necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A). If an administrative expense is allowed pursuant to section 503(b)(1)(A), such expense is afforded second priority over other debts pursuant to section 507(a) of the Bankruptcy Code. *See* 11 U.S.C. § 507.

19. In analyzing the statutory requirements imposed by section 503 of the Bankruptcy Code, the Fifth Circuit has held: "[i]n order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate." *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001) (citing *Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992), which held that a "prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in- possession's business to function"). Accordingly, claims arising from a prepetition right to payment do not qualify as administrative expense priority claims. *See Chiasson v. J. Louis Matherne & Assocs. (In the Matter of Oxford Mgmt. Inc.)*, 4 F.3d 1329, 1335 n.7 (5th Cir. 1993) ("If a right to payment becomes vested prior to commencement of the bankruptcy case, the claim becomes a pre-petition claim.").

20. Courts have held that section 503 priorities are to be construed narrowly "because of the presumption that the debtor has limited resources to equally distribute among creditors." *In re Kmart Corp.,* 290 B.R. 614, 621 (Bankr. N.D. Ill. 2003) (citing *In re Amarex*, 853 F.2d 1526, 1530 (10th Cir. 1988); *see also In re Mammoth Mart, Inc*., 536 F.2d 950, 953 (1st Cir. 1976) ("To give priority to a claimant not clearly entitled thereto is inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress

intended to prefer."); *Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir. 1988) ("The terms 'actual' and 'necessary' are construed narrowly so as 'to keep fees and administrative costs at a minimum'") (internal citations omitted). The claimant has the burden of establishing whether an expense is entitled to administrative priority. *Kmar*t, 290 B.R. at 621.

21. Medco has failed to establish that the asserted $1,512,305.00 in decommissioning costs is entitled to administrative expense priority. Accordingly, the Medco Claim should not be allowed as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

**B.   Medco Cannot Incur an Administrative Expense for Decommissioning Leases that Were Not Property of the Estate**

22. Medco asserts that its decommissioning costs for the EC Leases constitute administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code, even though the costs were incurred after the Debtor rejected the EC Leases. Medco Claim at ¶¶ 46-47. In support of its argument, Medco relies on the Fifth Circuit's holding in *State of Tex. v. Lowe (In re H.L.S. Energy Co., Inc.)*, 151 F.3d 434, 436 (5th Cir. 1998) and this Court's holding in *In re Am. Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009). Medco's reliance on these cases is misplaced.

23. In *H.L.S. Energy*, the debtor's obligation to decommission inactive wells arose postpetition and the bankruptcy estate did not have sufficient funds to pay the decommissioning costs. The trustee and the State of Texas agreed that the State would plug the wells and charge the costs to the bankruptcy estate. When the State asserted an administrative expense claim, the trustee objected, arguing that the claim was not entitled to administrative expense status. The Fifth Circuit held that the State's claim was entitled to administrative expense priority because the obligation to plug the wells arose postpetition and the trustee was required to operate the

7

bankruptcy estate in accordance with state law, which required the wells to be plugged. *In re H.L.S. Energy*, 151 F.3d at 438. The court further reasoned that expenses incurred to comply with state law were actual and necessary costs of managing and preserving the estate. *Id.*

24. In *Am. Coastal,* the debtor owned and operated eight wells that became inactive prior to its bankruptcy filing. The Texas Railroad Commission plugged the wells, and sought reimbursement from the debtor as an administrative expense claim. Citing federal and state law, the debtor argued that, because the liability arose prepetition, the plugging expense did not qualify as an administrative expense, but rather, was a general, unsecured claim. The Court rejected the debtor's argument and held that the Texas Railroad Commission's claims were administrative expense claims because the expenses benefitted the estate by remedying violations of environmental and safety laws, regardless of whether the liability for the violation first occurred prepetition or postpetition. *In re Am. Coastal*, 399 B.R. at 811.

25. As an initial matter, in both *H.L.S. Energy* and *Am. Coastal* the administrative expense claim was asserted by a state agency burdened with the costs of cleaning up the debtor's environmental obligations, rather than a private party such as Medco. Indeed, the *Am. Coastal* Court made it clear that "its analysis is limited to environmental remediation claims made by a governmental unit for postpetition remediation." *In re Am. Coastal*, 399 B.R. at 817, n.4.

26. More importantly, in both *H.L.S. Energy* and *Am. Coastal*, the debtor continued to have an ownership and/or operating interest in the wells when the plugging costs were incurred. This ownership interest was central to each court's determination that the plugging expenses were actual and necessary in light of the debtors' continuing postpetition duty under state law to plug the wells. In reaching this determination, the *H.L.S. Energy* and *Am. Coastal* courts relied on the statutory language in 28 U.S.C. § 959(b) requiring a debtor-in-possession to "manage and

operate the property in his possession" in accordance with state laws. *See In re H.L.S. Energy*, 151 F.3d at 438; *In re Am. Coastal*, 399 B.R. at 810-12. Notably, however, these cases only require a debtor to incur administrative expenses for decommissioning costs related to property *in the debtor's possession*. In other words, only those decommissioning costs incurred in connection with property in which the Debtor has an interest can qualify as an administrative expense. As the *Am. Coastal* court noted:

> Opinions that have denied administrative expense characterization of postpetition expenditures to remediate pre-petition environmental liabilities involved expenditures on property that was no longer property of the bankruptcy estate. *In re Dant & Russell, Inc.*, 853 F.2d 700, 709 (9th Cir.1988) ("*Kovacs* and *Johnson Bronze* are significant in that they involved assertions of administrative expense priority by a lessor for cleanup costs resulting from property not owned by the bankruptcy estate"). *See also Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); *Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir.1985). Since the property was no longer estate property, the expenditure was not necessary to preserve the estate.

*In re Am. Coastal*, 399 B.R. 805, n.4. Other courts have reached similar conclusions. *See, e.g.*, *In re McCrory Corp*, 188 B.R. 763, 769-70 (Bankr. S.D.N.Y. 1995) (holding that a debtor had appropriately abandoned a leasehold interest by rejection of the relevant lease, that such leasehold interest was no longer property of the estate, and that any postpetition cleanup costs would not benefit the estate); *In re Insilco Techs., Inc.,* 309 B.R. 111, 115 (Bankr. D. Del. 2004) ("In general, only those costs incurred to cleanup property for which an estate has an interest in or owns may qualify as administrative expenses."); *In re Mahoney-Troast Constr. Co.*, 189 B.R. 57, 62 (Bankr. D.N.J. 1995) ("Finally, as the trustee points out, the debtor did not own the property and cleanup was effected almost two years after the lease was rejected and the trustee returned the property."). Indeed, the rationale behind these holdings is that the estate does not benefit from remediation costs incurred postpetition once the property in question is no longer property of the estate.

27.     Here, the Debtor rejected its interests in the EC Leases effective August 18, 2017, and, as a result, the leases were no longer property of the estate. Medco has presented no evidence suggesting that the Debtor continued to use the EC Leases following the Rejection Date. As such, Medco's environmental expenses incurred in connection with the Debtor's prepetition ownership of the EC Leases are not administrative expenses. Rather, the Medco's claim for decommissioning property that did not belong to the estate is entitled to no more than general unsecured claim status. *See, e.g.*, *In re McCrory Corp*, 188 B.R. at 765; *Johnson Bronze Co.*, 758 F.2d at 141.

28.     Moreover, nothing in the Medco Claim suggests that Medco undertook any decommissioning work on the EC Leases between the Petition Date and the August 18, 2017 Rejection Date. Medco was required to submit decommissioning applications to BSEE and receive approval of those applications before beginning any decommissioning work on the EC Leases. 30 C.F.R. §§ 250.1703, 250.1704. According to Medco, it submitted five separate decommissioning applications to BSEE for approval. Medco Claim at ¶ 28. Three of the five applications were approved *after* the Rejection Date, and one was approved after the January 18, 2018 Effective Date when the Debtor's bankruptcy estate no longer existed. Medco Claim at ¶ 29 (stating that the final four applications to decommission were approved on August 31, 2017, October 6, 2017, December 27, 2017 and January 24, 2018). The one application to decommission that was approved before the Rejection Date was approved on July 31, 2017, just 18 days before the Rejection Date. There is no evidence in the Medco Claim (or otherwise) that Medco undertook any decommissioning work during such 18-day period. As such, Medco's decommissioning costs could not have been actual and necessary costs that benefitted the estate since the costs were incurred in connection with property that was not part of the Debtor's estate.

**C.      The Costs Associated with Decommissioning the EC 318 Lease are Prepetition Expenses**

29.     In addition to the foregoing basis for denying the Medco Claim, there is yet another basis for denying administrative expense priority status to the portion of the Medco Claim attributable to the EC 318 Lease.  Although the EC 318 Lease terminated prepetition, Medco asserts that because of the EC 318 RUE, the obligation to decommission the platform on the EC 318 Lease did not become due until the EC 317 Lease expired during the postpetition period (*i.e.*, on February 27, 2017).  Medco Claim at ¶¶ 22, 39.  Medco further asserts that its expenditures for decommissioning the platform on the EC 318 Lease qualify as administrative expenses of the estate.  However, Medco cites no authority for its position, and the applicable regulations do not support Medco's arguments.

30.     Under applicable laws and regulations, all prior and current interest holders in an OCS lease are jointly and severally liable to BOEM and BSEE for the decommissioning obligations related to a lease.  30 C.F.R §§ 250.146, 250.1701.  In particular, 30 C.F.R. § 250.1701 provides that:

>  (a) Lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases, including the obligations related to lease-term pipelines, as the obligations accrue and until each obligation is met.
>
> (b) All holders of a right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met.
>
> (c) In this subpart, the terms "you" or "I" refer to lessees and owners of operating rights, as to facilities installed under the authority of a lease, and to right-of-way holders as to facilities installed under the authority of a right-of-way.

31.     The term "decommissioning" is defined as:

> (1) Ending oil, gas, or sulphur operations; and

11

> (2) Returning the lease or pipeline right-of-way to a condition that meets the requirements of regulations of BSEE and other agencies that have jurisdiction over decommissioning activities.

30 C.F.R § 250.1700.  Decommissioning obligations include permanently plugging all wells on the lease, removing all platforms and other facilities, decommissioning all pipelines, and clearing the seafloor of all obstructions created by the lease.  30 C.F.R § 250.1703.  In particular, wells must be plugged and abandoned within one year after the lease terminates.  30 C.F.R § 250.1710.  In addition, the platforms and other facilities must be removed and the site must be remediated within one year after the lease terminates.  30 C.F.R § 250.1725.

33. The obligation to decommission an OCS lease first occurs when the owner and/or operator:

> (a) Drills a well;
>
> (b) Installs a platform, pipeline or other facility;
>
> (c) Creates an obstruction to other users of the OCS;
>
> (d) Are or becomes a lessee or the owner of operating rights of a lease on which there is a well that has not been permanently plugged according to this subpart, a platform, a lease term pipeline, or other facility or an obstruction;
>
> (e) Are or becomes the holder of a pipeline right-of-way on which there is a pipeline, platform, or other facility, or an obstruction; or
>
> (f) Re-enters a well that was previously plugged according to this subpart.

30 C.F.R § 250.1702.

33. Here, the EC 318 Lease terminated in 2012 and, pursuant to 30 C.F.R. § 250.1710, the wells on the lease were plugged and abandoned in 2013.  Similarly, 30 C.F.R. § 250.1725 imposed a requirement to decommission the facilities on the lease and remediate the site within one year after the lease terminated.  The Debtor and Medco became obligated to perform these decommissioning obligations related to the EC 318 Lease when they first became

parties to the lease, which occurred during the prepetition period. Nothing in the regulations or other applicable laws suggests that the EC 318 RUE tolled the decommissioning obligations for the platform on the EC 318 Lease until the EC 317 Lease terminated. Accordingly, the decommissioning obligations related to the EC 318 Lease were prepetition obligations and any claims arising from Medco's satisfaction of such prepetition decommissioning obligations constitute prepetition claims against the estate.

D. **Medco Cannot Subrogate to an Administrative Priority Claim Where No Such Administrative Priority Claim Exists**

34. Medco further argues that Louisiana law permits an independent basis for recovering its decommissioning costs as an administrative priority claim because it is subrogated to the claim and priority afforded BSEE to the extent that it has paid BSEE for the Debtor's proportional share of the decommissioning obligations. Medco Claim at ¶ 43. Medco's argument fails, however, because (as discussed above) the Debtor's ownership interest in the EC Leases ceased to exist once the leases were rejected on August 18, 2017. Any decommissioning expenses incurred by a party following the Rejection Date—whether incurred by a governmental entity or private party—would not qualify as an administrative expense. Accordingly, because there is no administrative expense claim to which Medco can subrogate, the Medco Claim cannot be allowed as an administrative expense of the estate.

35. Moreover, neither of the bankruptcy court decisions on which Medco relies considered whether subrogation rights existed as a matter of law. In *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 622-23 (Bankr. S.D. Tex. 2004), the "parties *agree[d]* that payment by the Respondents to the MMS to satisfy the P&A Obligations subrogates the paying parties to the MMS's claim and priority for the amounts funded," 314 B.R. at 622 (emphasis added). In *In re ATP Oil & Gas Corp.*, 2014 WL 1047818 (Bankr. S.D. Tex. 2014), subrogation was not at issue.

13

Accordingly, Medco has no subrogation rights and is not entitled to an administrative expense claim as a subrogee.

## CONCLUSION

36. Medco has failed to carry its burden of demonstrating that its decommissioning costs qualify as administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code. For the reasons set forth above, the Debtor requests that the Court enter an order, substantially in the form annexed hereto as Exhibit A, denying Medco's request for an administrative expense claim, and granting such other and further relief as is just and appropriate under the circumstances.

Dated: May 22, 2019

Respectfully submitted,

PROTOPAPAS PLLC

/s/
Lydia T. Protopapas
Texas Bar No. 00797267
Southern Dist. of Texas Bar No. 21378
2009 North Durham Dr.
Houston, TX 77008
Telephone: (832) 495-1086

*Counsel for Northstar Offshore Group, LLC and the Litigation Trust for Northstar Offshore Group, LLC*

**CERTIFICATE OF SERVICE**

I, Renee Wells, hereby certify that, on May 22, 2019, a true and correct copy of the foregoing *Debtor's Objection to the Amended Application for Allowance and Payment of Administrative Expense Claim of Medco Energi US LLC* was served (1) to Michael D. Rubenstein, counsel to the Medco Energi US LLC, via electronic mail, and (2) all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Renee Wells*
Renee Wells

## Exhibit A

**Proposed Form of Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | Case No. 16-34028 |
| **GROUP, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

## ORDER DENYING THE AMENDED APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF MEDCO ENERGI US LLC

[Related to ECF No. 1342]

Upon the *Amended Application for Allowance and Payment of Administrative Expense Claim of Medco Energi US LLC* [ECF No. 1342] (the "Amended Application")[1] filed by Medco Energi US LLC ("Medco") for allowance and payment of an administrative expense claim against Northstar Offshore Group, LLC, pursuant to Section 503(b)(1) of the Bankruptcy Code; and the Court having reviewed the Amended Application and the objections thereto; and upon the pleadings filed with the Court, the evidence presented at the hearing before the Court, and the entire record herein; and after due deliberation thereon; it is hereby

ORDERED, ADJUDGED, AND DECREED that

1. The relief sought in the Amended Application is denied.

2. This Court shall retain jurisdiction over Medco and the Debtor with respect to any matters related to or arising from the implementation of this Order.

Dated: _____, 2019

_____
HON. MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Amended Application.