UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 16-34028 |
| | * | |
| NORTHSTAR OFFSHORE GROUP, LLC | * | CHAPTER 11 |
| | * | |

**POST-HEARING MEMORANDUM IN SUPPORT OF THE
AMENDED APPLICATION FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM OF MEDCO ENERGI US LLC**

MAY IT PLEASE THE COURT:

On July 17, 2019, the Court conducted a hearing on the Amended Application for Allowance and Payment of Administrative Expense Claim of Medco Energi US LLC (the "Administrative Expense Claim") (Doc. 1342) and the objections of Northstar Offshore Group, LLC ("Northstar") (Docs. 1346 and 1370). As a result of its payment of the entire cost of decommissioning the East Cameron Blocks 317 and 318 Leases (collectively, the "EC 317/318 Leases"), Medco Energi US LLC ("Medco") is subrogated to the rights of the Bureau of Safety and Environmental Enforcement ("BSEE") against Northstar, including the right to assert an administrative expense claim in the amount of Northstar's twenty-five percent share of the decommissioning expenses. At the conclusion of the hearing, the Court ordered both parties to submit post-hearing briefs addressing Section 509(a) of the Bankruptcy Code and its applicability to the issues before the Court.[1]

---

[1]  See Transcript of Hearing, July 17, 2019 ("Transcript") (Doc. 1375), at 46-52. The Court ordered the post-hearing briefs to be submitted by July 31, 2019, after which the matter would be taken under submission

1

## I. THE UNDISPUTED FACTS

The July 17 hearing, including the exhibits entered into evidence and the testimony of Martin Bech, Medco's President, made clear that the following facts are not in dispute:

- As of August 12, 2016 (*i.e.,* the involuntary filing date), Medco and Northstar were co-owners of the operating rights at 75% and 25%, respectively, of the EC 317/318 Leases located on the Outer Continental Shelf adjacent to the State of Louisiana;[2]

- When Northstar acquired its interest in the EC 317/318 Leases, it became a party to the Amended and Restated Offshore Operating Agreement (the "Operating Agreement") for the EC 317/318 Leases under which Medco was designated as the operator. Northstar consented to this designation.[3]

- On April 13, 2012, the EC 318 Lease terminated due to non-production. All wells located on the EC 318 Lease were then plugged and abandoned in accordance with applicable regulations. By correspondence dated March 12, 2014, the Bureau of Ocean Energy Management ("BOEM") approved the grant of a Right of Use and Easement ("RUE") relative to the platform located on the EC 318 Lease for the period during which the EC 317 Lease remained active. The RUE deferred the obligation to decommission the platform located on the EC 318 Lease until the EC 317 Lease was terminated;[4]

- On February 27, 2017, the EC 317 Lease terminated due to non-production;[5]

- The RUE relative to the EC 318 Lease expired on account of the termination of the EC 317 Lease (*i.e.,* ninety days after the EC 317 Lease terminated).[6]

---

[2]   Administrative Expense Claim, ¶¶10, 12; Exhibits A, B, C and D; testimony of Mr. Bech, Transcript, at 5-11.

[3]   Administrative Expense Claim, ¶¶13-14; Exhibits C and D; testimony of Mr. Bech, Transcript, at 5-11.

[4]   Administrative Expense Claim, ¶¶16, 17; Exhibit E; testimony of Mr. Bech, Transcript, at 10-11.

[5]   Administrative Expense Claim, ¶19; Exhibit C; testimony of Mr. Bech, Transcript, at 11.

[6]   Administrative Expense Claim, ¶20; Exhibit E; testimony of Mr. Bech, Transcript, at 11.

- As of February 27, 2017, the BSEE was able to demand the decommissioning of the EC 317/318 Leases and could assess penalties upon Medco and Northstar for their failure to perform this obligation of up to $5,000 per day.[7]

- Following the termination of the EC 317 Lease and RUE relative to the EC 318 Lease, Medco, as operator, applied to and received approval from BSEE to decommission the various pipeline segments, wells and platforms of the EC 317/318 Leases;[8]

- On or around August 9, 2017, Medco submitted to Northstar an Authority for Expenditure ("AFE") to "P&A the EC 317 A wells, decommission the five associated pipelines and decommission the EC 317 A and the EC 318 B Platforms." The AFE estimated the projected cost of satisfying this decommissioning obligation at $6,600,000 and Northstar's proportionate share at $1,650,000. Northstar failed to sign the AFE.[9]

- Effective August 18, 2017, the Operating Agreement was rejected by Northstar pursuant to this Court's Order Granting Debtor's First Omnibus Motion to Reject Executory Contracts and Unexpired Lease (Doc. 846).[10]

- As of December 31, 2018, Medco had completed the decommissioning of the EC 317/318 Leases at a total cost of $6,049.221. Northstar's 25% share of the decommissioning costs is, therefore, $1,512,305.[11]

- By correspondence dated February 15, 2019 and February 28, 2019, respectively, BOEM approved the decommissioning of the EC 317/318 Leases and the cancellation of the supplemental bonds securing the decommissioning obligations.[12]

---

[7] Administrative Expense Claim, ¶39; testimony of Mr. Bech, Transcript, at 12.

[8] Administrative Expense Claim, ¶¶28-30; Exhibit F; testimony of Mr. Bech, Transcript, at 13-14

[9] Administrative Expense Claim, ¶¶25-27; testimony of Mr. Bech, Transcript, at 14

[10] Administrative Expense Claim, ¶15.

[11] Administrative Expense Claim, ¶¶31-32; Exhibits H and I; testimony of Mr. Bech, Transcript, at 12-16.

[12] Administrative Expense Claim, ¶34; Exhibits J and K; testimony of Mr. Bech, Transcript, at 16-18.

3

## II. NORTHSTAR'S SHARE OF THE DECOMMISIONING COSTS IS AN ADMINISTRATIVE EXPENSE OF THE ESTATE

### A. Medco's Right of Subrogation is Based on Well-Established Principles of Law

Subrogation is founded on the notion that "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against the other." *American Surety Co. v. Bethlehem Nat'l Bank*, 62 S. Ct. 226, 228 (1941). Subrogation has also long been recognized as applicable in bankruptcy proceedings and has been codified in Section 509 of the Bankruptcy Code. Section 509 provides a general rule that to the extent a guarantor, surety, co-signor, joint venturer, joint tortfeasor, or *other co-debtor* satisfies a creditor, he or she becomes subrogated to the rights that creditor has against the debtor. This right includes any priority to which the claim is entitled for the "priority is attached to the debt, and not to the person of the creditor; to the claim and not to the claimant." *Shropshire, Woodliff & Co. v. Bush*, 27 S. Ct. 178, 179 (1907); *see also In re Denby Stores*, 86 B.R. 768, 775 (Bankr. S.D.N.Y. 1988) (*citing Pearlman v. Reliance Ins. Co.,* 83 S. Ct. 232, 235 (1962) ("The doctrine of subrogation enables one who pays the debt of another to stand in the shoes of the latter party and assert whatever rights that party held.")). Section 509 itself does not say that the co-debtor is subrogated to the creditor's claim, but, rather, to the creditor's rights. *See In re Wingspread Corp.*, 116 B.R. 915, 931 (Bankr. S.D.N.Y. 1990). In this case Northstar's obligation to BSEE to decommission the EC 317/318 Leases is an administrative expense and Medco, as subrogee of the rights of BSEE, is entitled have its administrative expense claim allowed.[13]

---

[13]  In *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 436 (5th Cir. 1998) the court of appeal held that costs incurred by the State of Texas in satisfying the Chapter 7 bankruptcy estate's post-petition

4

**B.      Section 509 is not the Exclusive Source of Medco's Subrogation Rights**

While Section 509 provides a bankruptcy-based right of subrogation, Section 509 is not the exclusive source of subrogation rights in bankruptcy. That is, Section 509 does not preempt state law nor does it preclude this Court's use of its equitable powers. In the words of one court:

> ***Case law under the Code does not consider section 509 to be the exclusive source of subrogation rights.*** . . . It appears that section 509 is not even the exclusive subrogation provision under the Code itself. Section 507(d) [also provides for subrogation and] refers to subrogation without any reference to those specific subrogation rights set forth in section 509. . . .
>
> Section 507(d) refers to general subrogation rights that arise from the Code itself, state statutes, and the common law. As section 507(d) neither defines subrogation, nor refers to section 509 of the Code for a definition, the logical conclusion is not to limit subrogation rights to those described in section 509. This conclusion is especially compelling where, as in this case, subrogation rights would otherwise be available."
>
> . . .
>
> If Congress meant to codify all subrogation rights into section 509 it would have done so explicitly. The legislative history of section 509 makes no mention of the common law doctrine of equitable subrogation. ***As a result, this court finds that the doctrine of equitable subrogation is separate and distinct from the subrogation rights afforded by section 509, and that section 509 is an additional, but not exclusive, remedy in bankruptcy.***

---

decommissioning obligations constituted administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code; s*ee also In re American Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009) (holding that the claim of the Texas Railroad Commission which had spent state funds to remediate environmental risks qualified as an administrative expense even when the claim could be deemed to have "arisen" pre-petition). Thus, the claim of BSEE for the decommissioning costs of the EC 317/318 Leases, which became enforceable post-petition against Northstar, indisputably constitutes an administrative expense of the estate that is a responsibility of the Liquidating Trust.

5

*In re* Spirtos, 103 B.R. 240, 244-45 (Bankr. C.D. Cal. 1989) (emphasis added); *see also In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002); *In re Shavers*, 418 B.R. 589, 605 (Bankr. S.D. Miss. 2009) (holding that "State law subrogation is distinguishable from statutory subrogation under 11 U.S.C. § 509, [which] is not exclusive authority for equitable subrogation in bankruptcy proceedings") (citing *In re Missionary Baptist Found. of Am., Inc.*, 667 F.2d 1244 (5th Cir.1982)). Similarly, the Fifth Circuit has routinely looked to applicable state law in its decisions regarding subrogation in the context of the Bankruptcy Code. *In re Fields*, 926 F.2d 501, 504 (5th Cir. 1991) (applying provision of the Texas Business and Commerce Code and holding that the surety, having paid the debtor's taxes, would be subrogated to all of the rights of the creditor, the State of Texas, including its right to assert nondischargeability); *In re Kizzee-Jordan*, 626 F.3d 239 (5th Cir. 2010) (applying Texas law and holding that third-party creditor that paid property taxes on debtor's behalf was subrogated to the taxing authorities claim). There would be no need to look to state law if Section 509 were the only basis for subrogation in bankruptcy.

In this case, Louisiana law is the applicable non-bankruptcy law. The leases in question are located on the Outer Continental Shelf and the OCS Lands Act makes clear that the law of the adjacent state, Louisiana, applies as surrogate federal law.[14] Thus, Louisiana law is determinative of the subrogation rights of Medco. But the source of governing law is not material in this case.

---

[14] Under the Outer Continental Shelf Lands Act (OCSLA) Congress extended the application of federal law to the OCS "as if the [OCS] were an area of exclusive Federal jurisdiction located within a State." 43 U.S.C. §1333(a)(1). Also, "[t]o the extent that they are applicable and not inconsistent with [federal law]," the laws of the adjacent states are "the law[s] of the United States" on the OCS. *Id.* §1333(a)(2)(A); *see Cutting Underwater Technologies USA, Inc. v. ENI U.S., L.L.C.,* 671 F.3d 512, 517 (5th Cir. 2012).

Whether this Court applies Louisiana law, the common law, or Section 509, the result is the same: Medco is subrogated to the rights and priority of BSEE. Thus, even if Medco was somehow not able to look to Section 509 as the basis for subrogation, otherwise applicable non-bankruptcy would mandate allowance of Medco's claim on the basis of subrogation.

### C.    Medco is Subrogated to BSEE's Claim by Virtue of Section 509(a)

Section 509(a) of the Bankruptcy Code provides:

> Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. §509(a). Thus, the Bankruptcy Code provides two paths to subrogation: (i) by being liable with the debtor on a claim of a creditor against the debtor and paying it, or (ii) by securing such a claim and paying it. The first path provides for Medco's subrogation to the rights of BSEE.

Medco was clearly "liable with the debtor on" BSEE's claim for decommissioning. The applicable federal regulations make clear that the obligation of Medco and Northstar to decommission the EC 317/318 Leases is joint and several *vis-à-vis* the lessor/regulator (*i.e.*, BSEE). 30 C.F.R. § 250.1701 provides:

(a)    Lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases, including the obligations related to lease-term pipelines, as the obligations accrue and until each obligation is met.

(b)    All holders of a right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met.

7

> (c) In this subpart, the terms "you" or "I" refer to lessees and owners of operating rights, as to facilities installed under the authority of a lease, and to right-of-way holders as to facilities installed under the authority of a right-of-way.

As Medco and Northstar were joint and several obligors for the whole decommissioning obligation, BSEE could have made demand upon either Medco or Northstar to perform the decommissioning.[15] Similarly, Louisiana law provides that a joint and several (or solidary, in Louisiana parlance) obligor (who pays the whole debt) is subrogated to the rights of the creditor against the co-obligor to the extent of the latter's share of the debt.[16] A solidary obligation arises

---

[15] *See* James M. Auslander, *What Goes Up Must Come Down: Decommissioning Facilities on the Federal Outer Continental Shelf* -- Rocky Mountain Mineral Law Foundation, Federal Offshore Regulatory Enforcement, January 20-21, 2016, Paper 8 ("In essence, 'joint and several liability' [under 30 C.F.R. §250.1701(a) and (b)] means anyone with liability has full liability, and the government can pick and choose against whom to enforce for the total cost of decommissioning."). This Court recognized the forgoing principle in *In re ATP Oil & Gas Corporation*, 2013 WL 3157567, *1 (Bankr. S.D. Tex. 6/19/2013) when it stated:

> Anadarko E&P Onshore LLC is a predecessor-in-interest to ATP with respect to a portion of the Gomez Properties. As a predecessor-in-interest, Anadarko has potential liability for all or a portion of the decommissioning costs. ATP's abandonment of the property prior to decommissioning may force Anadarko to absorb all or a portion of the more than $100,000,000 cost.

[16] Article 1794 of the Civil Code provides:

> An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.

Article 1804 of the Civil Code provides in pertinent part:

> Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. …

8

from the clear expression of the parties' intent or from the law. *See* La. Civ. Code art. 1796. In this case, the federal regulations quoted above impose solidarity as a matter of law. The Fifth Circuit recognized these principles in *Aguiluz v. Bayhi* (*In re Bayhi*), 528 F.3d 393, 407 (5th Cir. 2008), where it held:

> Pursuant to § 523(a)(1)(A), we acknowledged that Field's debt to Texas was and remained non-dischargeable. Next, we determined that *state law* (not the provisions of the surety bond) subrogated Hartford to the State's rights as a creditor. This allowed Hartford to pursue reimbursement from Fields in its own right. The essence of our holding in *Fields* can be succinctly put: A joint and several obligor in Texas (like a solidary obligor in Louisiana) who pays *or is liable for* his co-obligor's statutorily non-dischargeable debt is subrogated to the rights of the creditor/subrogor as a matter of law, provided the relevant state law recognizes principles of subrogation, as do both Texas and Louisiana. As a Louisiana solidary co-obligor is legally subrogated to the rights of the creditor, he may seek contribution (if he is a co-principal) or reimbursement (if he is a surety) to the same extent as could the creditor from the otherwise discharged debtor who is not, however, discharged on that particular debt.

> A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

Article 1826 of the Civil Code provides in pertinent part:

> A. When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor, but is extinguished for the original obligee.

Article 1829 of the Civil Code provides in pertinent part:

> Subrogation takes place by operation of law:
> ***
> (3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment;
> ***

9

In this case Medco and Northstar are solidary obligors to BSEE under 30 C.F.R. §250.1701. Louisiana law applies to this matter under the OCSLA. Medco and Northstar are co-lessees and co-owners of the EC 317/318 Leases, as assignees from their predecessors in interest, in the proportion of 75% and 25%, respectively. Thus, their virile portions of the decommissioning costs are 75% and 25%, respectively, as between themselves for purposes of subrogation. Based upon Louisiana law, applicable to this case pursuant to the OCSLA, Medco was clearly "liable with" Northstar under Section 509(a). As Medco paid the entire amount of the decommissioning costs, Medco is entitled to be subrogated to BSEE's rights against Northstar to the extent of Northstar's 25% co-ownership portion under Bankruptcy Code §509(a).[17] Northstar's arguments to the contrary are wholly without merit.

Northstar attempts to evade the clear mandate of subrogation by arguing in that Medco's duty was *primary as opposed to secondary* or was *independent and separate* from the duty of the debtor.[18] Northstar is wrong as a matter of law. Medco was not the primary obligor for the satisfaction of the decommissioning of the EC 317/318 Leases. For that to be the case, this Court would have to find that Northstar was only secondarily liable for the decommissioning expenses. Northstar was not Medco's surety nor was it secondarily liable to BSEE. Medco and Northstar are jointly and severally liable to BSEE, meaning each is liable to BSEE for the whole obligation.

---

[17] Under applicable Louisiana law, Medco also has a claim of contribution directly against Northstar which arose when Medco satisfied the entire decommissioning obligation related to the EC 317/318 Leases. *See* La. Civ. Code arts. 806 and 1804; *see also* Transcript at 52 (noting that Medco is asserting a statutory contribution right under Louisiana law).

[18] See Northstar's supplemental opposition, at 6-7 & n.3.

10

If Northstar had performed the decommissioning, then it would have had a claim against Medco for 75% of the cost of the decommissioning.

Northstar cited *In re East Texas Steel Facilities, Inc.*, 117 B.R. 235 (Bankr. N.D. Tex. 1990), to support its argument, but that case is inapposite.[19] There, subrogation was denied to the issuer of a letter of credit who had paid the beneficiary who was the original creditor of the debtor. However, unlike Medco's and Northstar's joint and several liability for the same obligation (*i.e.,* decommissioning the EC 317/318 Leases) the issuer of the letter of credit in *East Texas Steel Facilities* was not liable with the debtor. Its liability was independent from that of the debtor. In denying subrogation to the issuer under the Bankruptcy Code, Texas law, or the doctrine of equitable subrogation the *East Texas Steel* court stated:

> …BHF [the issuer] was never jointly liable [with the debtor]. Furthermore, BHF was primarily liable when the conditions of the letter of credit were met. Because of a prepetition agreement, BHF was obligated to pay Mannesman [beneficiary] when presentation was made in accordance with the documentary requirements on the face of the letter of credit. … the obligations and duties created by the contract between the issuer and the beneficiary are completely separate and independent from the underlying transaction between the beneficiary and the bank's customer.

117 B.R. at 241. It is well established that the issuer of a letter of credit has an independent obligation, which is wholly distinct from the obligation of the debtor. The Fifth Circuit has held:

> Under the independence principle, an issuer's obligation to the letter of credit's beneficiary is independent from any obligation between the beneficiary and the issuer's customer. All a beneficiary has to do to receive payment under a letter of credit is to show that it has performed all the duties required by the letter of credit. Any disputes

---

[19]   See *Id.*

>between the beneficiary and the customer do not affect the issuer's obligation to the beneficiary to pay under the letter of credit.

*In re Compton Corp.*, 831 F.2d 586, 590 (5th Cir. 1987), *on reh'g*, 835 F.2d 584 (5th Cir. 1988). The other cases cited by Northstar simply do not support the proposition that where parties are jointly and severally liable for the same debt, one of the parties is primarily liable.[20] The very fact that Medco and Northstar were, as a matter of law, jointly and severally liable itself disproves Northstar's argument.

Contrary to Northstar's other arguments, courts routinely recognize subrogation pursuant to Section 509(a) upon payment by a party who was jointly and severally liable with the debtor to the extent of the debtor's share of the debt. *See, e.g., In re Bugos*, 760 F.2d 731 (7th Cir. 1985) (permitting subrogation where owner, who held property as a co-tenant in common with the debtor, paid entire debt owed jointly and severally by both parties); *In re Hall*, 477 B.R. 74, (Bankr. N.D. Ill. 2012) (debtor's obligation was secured by mortgage on property debtor owned in indivision with his brother; the court allowed subrogation as the brother was jointly and severally liable, albeit *in rem*, with the debtor.)[21]

---

[20] *Id.*

[21] The Trustee may point to the Eleventh Circuit's *Celotex* decision to support its argument that Medco is not entitled to subrogation under Section 509(a). *Fibreboard Corp. v. Celotex Corporation (In re Celotex Corp.)*, 472 F.3d 1318 (8th Cir. 2006). Medco submits that *Celotex* is wrongly decided, lacks any analytical framework, and should not be considered persuasive. But more importantly, *Celotex* is counter to Fifth Circuit precedent. In *In re Missionary Baptist Found. of Am., Inc.*, 667 F.2d 1244 (5th Cir. 1982), the Fifth Circuit considered Section 509(a) and stated that "509(a) establishes that co-debtors and sureties are subrogees, but it does not necessarily follow from this that others are not subrogees. *Id.* at 1246. Under *Celotex,* co-debtors are not covered by Section 509(a) and that decision is, thus, in conflict with Fifth Circuit precedent.

### III. CONCLUSION

Regardless of the applicable law, the result is the same. Medco is entitled to subrogation to the rights of BSEE against Northstar including its entitlement to an administrative expense priority for its claim. Assuming that Section 509(a) governs, Section 509(a) expressly provides that an entity that is liable with the debtor on a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment. As Medco and Northstar were jointly and severally liable for the decommissioning of the EC 317/318 Leases, *see* 30 C.F.R. §250.1701, and Medco has paid that obligation in full, there cannot be any doubt that Medco is subrogated, by operation of Section 509(a) and applicable non-bankruptcy law, to BSEE's claim and its status as an administrative expense priority. There is simply no support for Northstar's argument that a jointly and severally liable party has an obligation that is primary and independent of the other party's obligation. BSEE could have made demand on any of the jointly and severally liable parties for the entirety of the decommissioning obligation. Thus, Medco was indisputably liable "with the debtor" for the decommissioning costs. Medco is clearly entitled to an administrative expense priority for its undisputed claim against Northstar.

[Remainder of page intentionally left blank.]

Respectfully submitted,

_____
Michael D. Rubenstein (Tx. Bar #24047514)
Liskow & Lewis, APLC
1001 Fannin Street
Houston, TX  77002
Telephone:     (713) 651-2953
Facsimile:      (713) 651-2952
Email: mdrubenstein@liskow.com

Philip K. Jones, Jr. (La. Bar #7503)
Dena L. Olivier (La. Bar #17731)
Liskow & Lewis, APLC
701 Poydras Street, Suite 5000
New Orleans, LA  70139
Telephone:     (504) 581-7979
Facsimile:      (504) 556-4108
Email: pkjones@liskow.com

Joseph P. Hebert (Tx. Bar #00789095)
Liskow & Lewis, APLC
822 Harding St.
Lafayette, LA  70503
Telephone:     (337) 232-7424
Facsimile:      (337) 267-2399
Email:  jphebert@liskow.com

*Attorneys for Medco Energi US LLC*

14

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing *Post-Hearing Memorandum In Support Of The Amended Application for Allowance and Payment of Administrative Expense Claim of Medco Energi US LLC* was sent to all parties or counsel of record who have registered to receive electronic service by operation of the Court's electronic filing system.

Dated this 31st day of July, 2019.

*/s/ Michael D. Rubenstein*