United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 07, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 16-34028 |
| NORTHSTAR OFFSHORE § | |
| GROUP, LLC, § | |
| § | |
| Debtor. § | |
| § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

This contested matter involves an objection to a proof of claim and a motion for leave to file an amendment to the proof of claim. ANKOR E&P Holdings Corporation seeks to file an untimely amendment to its proof of claim to substitute ANKOR Energy, LLC for itself as the proper claimant. The proposed amendment also seeks to adjust the amount of the claim. Northstar Offshore Group, LLC objects to both the motion for leave and the proof of claim. ANKOR E&P's motion for leave is denied. ANKOR E&P's claims are disallowed.

## BACKGROUND

### I.  FACTUAL HISTORY

Northstar Offshore Group, LLC was as an oil and gas exploration and production company operating out of the Gulf of Mexico Outer Continental Shelf and the U.S. Gulf Coast. Prior to the petition date, Northstar, ANKOR E&P Holdings Corporation, and other parties held non-operating interests in three offshore oil and gas leases: (1) Lease No. OCS-G 3587, covering South Pelto Block 8 (the "South Pelto Block 8 Lease"); (2) Lease No. OCS-G 3171, covering South Pelto Block 13 (the "South Pelto Block 13 Lease"); and (3) Lease No. OCS-G 3241, covering

High Island Block A 443 (the "High Island Block Lease").[1]  ECF No. 1720-22 at 6–7.

The parties to the leases entered into operating agreements to govern their rights and obligations.  ECF Nos. 1721-7, 1721-8.  The parties designated ANKOR Energy LLC to serve as the operator of the South Pelto leases.  ECF Nos. 1709-1 at 10–11, 1709-2 at 34–40.  As operator, ANKOR Energy conducted and managed operations on the leases in accordance with the operating agreements.  ECF Nos. 1721-7 at 4, 1721-8 at 4.

The South Pelto leases terminated on May 23, 2018 (South Pelto 13) and June 19, 2018 (South Pelto 8).  ECF Nos. 1709-1 at 12, 1709-2 at 42.  The termination of the South Pelto leases triggered federal plugging and abandonment responsibilities pursuant to 30 CFR § 250.1710.  Decommissioning of the wells was completed in 2019 (South Pelto 8) and 2020 (South Pelto 13).  ECF No. 1720-22 at 29–30.

## II.  PROCEDURAL HISTORY

On August 12, 2016, an involuntary petition for relief was filed against Northstar under chapter 11 of the Bankruptcy Code.  ECF No. 1.  On December 2, 2016, Northstar converted the involuntary case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  ECF No. 88.  The Court confirmed Northstar's second amended plan of liquidation on December 22, 2017.  ECF No. 1078.

On August 2, 2017, the Court entered an order approving the sale of substantially all of Northstar's assets to Sanare Energy Partners, LLC (f/k/a Northstar Offshore Ventures LLC).  ECF No. 792.  The sale

---

[1] ANKOR E&P no longer asserts claims relating to the High Island Block Lease.  Only the South Pelto Block leases are at issue.

closed on August 3, 2017. ECF No. 800. Following the sale, Northstar rejected executory contracts and unexpired leases related to certain assets remaining after the sale. ECF Nos. 846, 948, 1078 at 75. This included the rejection of the South Pelto leases. ECF No. 846 at 3.

On December 6, 2016, the Court entered an order setting the bar date for proofs of claim. ECF No. 131. Under the order, the Court established May 31, 2017, as the deadline for governmental units to file a proof of claim and March 1, 2017, as the deadline for all other entities to file a proof of claim. ECF No. 131 at 3. The Court entered several orders extending the deadline for Northstar to object to proofs of claim. ECF Nos. 1185, 1239, 1300, 1340, 1394, 1402, 1564. On November 8, 2022, the Court entered an order setting November 10, 2022, as the deadline for objecting to, among other claims, ANKOR E&P's proof of claim. ECF No. 1668.

ANKOR E&P timely filed its proof of claim on February 23, 2017. Claim No. 39-1.[2] The amount on the proof of claim is $12,969,507.90. Claim No. 39-1 at 2. The claim seeks (1) $1,017,900.90 with respect to the South Pelto 8 lease, consisting of $458,176.90 as Northstar's outstanding balance owed to ANKOR E&P and $559,724.00 of Northstar's share of plugging and abandonment liabilities; (2) $4,238,222.00 with respect to the South Pelto 13 lease consisting solely of Northstar's share of plugging and abandonment liabilities; and (3) $7,713,385.00 with respect to the High Island Block Lease consisting

---

[2] ANKOR E&P's proof of claim is listed as Claim No. 39-1 on the Court's claims register and Claim No. 70 on the claim agent's claims register.

solely of Northstar's share of plugging and abandonment liabilities.[3] Claim No. 39-1 at 4.

On November 10, 2022, Northstar filed an objection to ANKOR E&P's claim, arguing that the claim should be disallowed in full. ECF No. 1671. On February 23, 2023, the Court held a hearing on the claim objection. ECF No. 1701. At the conclusion of the hearing, the Court requested that the parties file a joint submittal on the contested legal issues with a proposed discovery and briefing schedule. The parties filed the joint submittal on April 6, 2023, and the Court entered the scheduling order consistent with the joint submittal that same day. ECF No. 1705. The parties submitted briefing pursuant to the scheduling order. ECF Nos. 1709, 1712.

On June 28, 2023, ANKOR E&P filed a motion seeking leave of court to file an amendment to its original proof of claim. ECF No. 1710. ANKOR E&P seeks to amend its claim over six years after the bar date for the filing of proofs of claim and over five years after plan confirmation. The motion seeks to substitute ANKOR Energy for ANKOR E&P as the proper claimant, withdraw portions of the claim related to the High Island Block Lease, and make adjustments to the decommissioning claims as a result of the claimed amounts now being "fixed" after completion of decommissioning operations. ECF Nos. 1710 at 3, 1710-1 at 1–4. The proposed amended claim seeks a total of $3,505,901.66. ECF No. 1710-1 at 2. The claim seeks (1) $1,134,060.34 with respect to the South Pelto 8 lease, consisting of $453,342.55 as Northstar's outstanding balance owed to ANKOR Energy and

---

[3] On April 6, 2023, Northstar and ANKOR E&P stipulated to the withdrawal of portions of the proof of claim related to the High Island Block Lease because Northstar sold its interest in the lease to Sanare pursuant to the August 2017 sale. ECF Nos. 1684 at 2, 1705 at 3.

$680,717.79 of Northstar's share of plugging and abandonment liabilities; and (2) $2,371,841.32 with respect to the South Pelto 13 lease consisting solely of Northstar's share of plugging and abandonment liabilities. ECF No. 1710-1 at 4. Northstar filed a motion to strike ANKOR E&P's motion for leave on July 19, 2023. ECF No. 1717.

The Court held a hearing on the claim objection on August 9, 2023. ECF No. 1725. The hearing was continued to August 14, 2023. ECF No. 1729. At the August 14 hearing, the Court requested further briefing on the issue of a proper claimant seeking substitution for an entity that, although does not hold the claim asserted in its proof of claim, may nevertheless have an interest in the case. The Court also permitted briefing on other issues. The parties submitted the supplemental briefing. ECF Nos. 1732, 1733. The Court held a hearing on October 6, 2023. ECF No. 1734. The Court took the claim objection, motion for leave, and motion to strike under advisement.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

### I. ANKOR E&P'S MOTION FOR LEAVE IS NEITHER UNTIMELY NOR REDUNDANT

Northstar moves to strike ANKOR E&P's motion for leave on grounds that the motion "is both (a) redundant of other pleadings filed in the Rule 9014 contested matter and (b) untimely and in violation of the parties' agreements under the Court's Scheduling Order." ECF No. 1717 at 4.

Once a debtor objects to a proof of claim, it becomes a "contested matter" under Federal Rule of Bankruptcy Procedure 9014. *In re*

*Gilbreath*, 395 B.R. 356, 365 (Bankr. S.D. Tex. 2008), *as amended* (Nov. 19, 2008). "Bankruptcy Rule 9014(c) states that the bankruptcy court 'may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply.'" *In re GDC Technics, LLC*, 643 B.R. 417, 428 (Bankr. W.D. Tex. 2022) (citing Fed. R. Bankr. P. 9014(c)). Rule 9014(c) permits the application of both Bankruptcy Rules 7012 and 7015 to contested matters. *See In re Cloud*, 214 F.3d 1350, 2000 WL 634637, at *2 (5th Cir. 2000) (permitting the bankruptcy court's application of Bankruptcy Rule 7012 to a claims objection); *Gilbreath*, 395 B.R. at 365 (applying Bankruptcy Rule 7015 to a claims objection).

"Bankruptcy Rule 7015 incorporates Federal Rule of Civil Procedure 15, which requires claimants to obtain 'the opposing party's written consent or the court's leave' to amend a claim after being served with a response—in this case, a written objection." *In re DePugh*, 409 B.R. 125, 137 (Bankr. S.D. Tex. 2009) (citing Fed. R. Civ. P. 15(a)(2)). Federal Rule of Bankruptcy Procedure 7012(b) applies Federal Rule of Civil Procedure 12(b)–(i) to adversary proceedings. Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

### A. The Motion for Leave Is Not Redundant

One of the bases for ANKOR E&P's motion for leave is to substitute ANKOR Energy for itself in its proof of claim. ECF No. 1710 at 6. Northstar argues that the motion for leave is redundant because ANKOR E&P's prior briefings have asserted a contrary position that ANKOR E&P is the proper party to bring its claim. ECF No. 1717 at 4–5. Northstar argues that the "parties have briefed the issue and the Debtor should not be called upon to expend its extremely limited resources responding to ANKOR's ever-changing factual and legal positions." ECF No. 1717 at 5. A change in position is not the proper standard for redundancy.

"'Redundant' matter consists of allegations that constitute 'a needless repetition of other averments in the pleadings.'" *Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 470 (M.D. La. 2020) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2004)). If found redundant, the Court will strike a pleading "*only if* the moving party can show that doing so would prevent significant prejudice to the moving party or expedite the judicial decision making process." *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 5310194, at *2 (Bankr. S.D. Tex. Sept. 18, 2013). Matters challenged under Rule 12(f) should be stricken "only where they possess 'no possible relation to the controversy.'" *Gilchrist v. Schlumberger Tech. Corp.*, 321 F.R.D. 300, 301–02 (W.D. Tex. 2017) (citing *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012)).

ANKOR E&P's prior briefings present two alternative arguments with respect to the party substitution issue. Neither of these arguments warrant a finding that ANKOR E&P's motion for leave is redundant. ANKOR E&P's first argument in prior briefings is that it is the proper claimant. ECF No. 1709 at 15. This is a position entirely different than the one asserted in its motion for leave and cannot be said to be a "needless repetition of other averments in the pleadings." ANKOR E&P's next argument is that, if it is an improper claimant, it should be granted leave to amend in order to substitute for the proper claimant. ECF No. 1709 at 16. This is the same argument presented in ANKOR E&P's motion for leave. Nevertheless, a finding of redundancy is not justified. ANKOR E&P's motion for leave goes into more detail than prior briefings in presenting its position on the standard for party substitution and its application to the facts of this case. ECF No. 1710 at 6–7. The motion is not a needless repetition of prior arguments.

The motion for leave is not redundant.

### B. The Motion for Leave Is Not Untimely

Northstar next argues that ANKOR E&P's motion for leave is untimely under the Court's scheduling order. ECF No. 1717 at 5–6.

Northstar claims that ANKOR E&P failed to inform the Court that an amendment was forthcoming and instead asserted a contrary position that no amendment was necessary. ECF No. 1717 at 5–6. Northstar also claims that the motion for leave addresses arguments raised in Northstar's claim objection in violation of the scheduling order. ECF No. 1717 at 6. Neither of these arguments are a basis for striking ANKOR E&P's motion for leave.

The Court's scheduling order set deadlines for the parties to file briefing following the close of additional discovery. ECF No. 1705 at 3–4. The scheduling order limited the briefing to an additional brief filed by ANKOR E&P and a response brief filed by Northstar. ECF No. 1705 at 4. The schedule did not set any deadlines for filing a motion for leave to file an amendment to a proof of claim.

The purpose of ANKOR E&P's motion for leave is to remedy its proof of claim by proposing an amendment that addresses the arguments raised by Northstar in its claim objection and briefings. ECF No. 1710 at 2. The proposed amended claim seeks to substitute ANKOR Energy, LLC as the proper claimant and adjust claimed amounts. ANKOR E&P's motion for leave is the proper procedural tool under Bankruptcy Rule 7015 for making these proposed changes.

ANKOR E&P's motion for leave is not limited by the Court's scheduling order. The motion for leave will be considered on its merits.

## II.   ANKOR ENERGY MAY NOT BE SUBSTITUTED FOR ANKOR E&P

ANKOR E&P's proof of claim asserts a claim for decommissioning expenses associated with the South Pelto leases and the High Island

Block Lease,[4] as well as a claim for an outstanding balance owed under the South Pelto 8 operating agreement. ANKOR E&P seeks to file an untimely amendment to its proof of claim to substitute ANKOR Energy as the proper claimant. ANKOR E&P also seeks to make adjustments to the claim due to the sale of the High Island Block Lease and the decommissioning expenses becoming fixed after completion of the work. The Court finds that ANKOR E&P has failed to demonstrate compelling circumstances to justify the substitution of ANKOR Energy's claim for ANKOR E&P's claim.

### A. ANKOR E&P Does Not Have a Claim Against Northstar

"Properly filing a proof of claim constitutes *prima facie* evidence of the claim's validity and amount." *In re O'Connor (McGee v. O'Connor)*, 153 F.3d 258, 260 (5th Cir. 1998) (citing Fed. R. Bankr. P. 3001(f)). "The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail. . . . If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.'" *In re Fid. Holding Co., Ltd. (Cal. State Bd. of Equalization v. Official Unsecured Creditors' Comm.)*, 837 F.2d 696, 698 (5th Cir. 1988) (quoting *In re WHET, Inc.*, 33 B.R. 424, 437 (D. Mass. 1983)).

ANKOR E&P's claims are governed by the operating agreements associated with the South Pelto leases. Article IV of the South Pelto Block 8 operating agreement provides, "Except as hereinafter provided, all costs and expenses incurred hereunder shall be shared . . . by the Parties in the following percentages . . . . Should the Percentage Interest

---

[4] Since the parties have stipulated to withdraw the claims associated with the High Island Block Lease, the Court addresses only the South Pelto leases.

change at any time this Article IV shall automatically be amended to reflect such change." ECF No. 1712-2 at 7. Article V provides, "Except as hereinafter provided, Operator shall advance, pay and discharge all costs and expenses incurred hereunder and shall charge each of the Parties the same percentage thereof as said Party's Percentage Interest stated in Article IV." ECF No. 1712-2 at 7. Article VI deals with payment delinquencies. That section provides,

> In the event of neglect or failure of any party promptly to pay its share of the costs and expenses of development and operation when due, the other Parties, within forty-five (45) days after rendition of statements therefor by Operator, shall in proportion to their Percentage Interest contribute to the payment of such delinquent indebtedness and the Parties so contributing shall be entitled to the same lien rights as are granted herein to Operator. Upon the payment by such delinquent or defaulting Non-Operator to Operator of any amount or amounts on such delinquent indebtedness, or upon any recovery on behalf of the Parties under the lien conferred above, the amount or amounts so pay or recovered shall be distributed and paid by Operator to the Non-Operators proportionately in accordance with the contributions theretofore made by them.
>
> If any Party fails to advance funds or pay bills in the amounts within the time period provided for in this Article VI and in Article V, Operator, or any Non-Operator if Operator is in default, after a ninety (90) day period, ay at its election, place such Party in default by giving written notice to the other Parties of such default, containing a statement of such default. If the defaulting Party fails to remedy its default within ninety (90) days after receipt of written notice, the Party giving such notice shall at its option (1) take the necessary action to collect the amount

> due plus interest, damages, and costs, or (2) declare the interest of the defaulting party in the Joint Property forfeited and the defaulting Party shall cease to be a Party hereto; each such remaining Party shall have the right to receive the same portion of the forfeited interest that its participating interest bears to the combined participating interest of all the non-defaulting Parties if they elect to accept; and the defaulting Party shall forthwith and without consideration do and perform all necessary acts and things to evidence such forfeiture.

ECF No. 1712-2 at 10–11. The South Pelto 13 operating agreement contains the same provisions. ECF No. 1712-3 at 6–10.

The South Pelto operating agreements require the operator to expend all costs associated with operation of the wells and seek reimbursement from non-operators. Although Article VI of the operating agreements require ANKOR E&P, as a non-operator, to contribute to the payment of any delinquencies by other non-operators, the right of action to collect on delinquencies is reserved to ANKOR Energy, who, acting as operator, would pursue any claims against delinquent non-operators and provide reimbursement to contributing non-operators. ANKOR E&P's claim for decommissioning expenses and an outstanding balance are claims that fall pursuant to the operating agreements' reimbursement provisions. They may only be sought by ANKOR Energy.

ANKOR E&P is not the proper claimant to file a proof of claim for decommissioning costs and reimbursement pursuant to the South Pelto operating agreements. Unless ANKOR Energy may be substituted as the proper party, ANKOR E&P's proof of claim is invalid.

### B. ANKOR E&P May Not Substitute ANKOR Energy for Itself as the Proper Claimant

"A creditor who fails to file its proof of claim before the bar date, and who fails to request an extension of time to file, . . . may not file a

late claim and participate in the voting or distribution from the debtor's estate." *United States v. Kolstad (In re Kolstad)*, 928 F.2d 171, 173 (5th Cir. 1991). However, "amendments to timely creditor proofs of claim have been liberally permitted to 'cure a defect in the claim as originally filed, to describe a claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'" *Id.* (quoting *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir. 1985)). Amendments to proofs of claim relate back to the original filing they amend, whether the amendments are filed timely or tardily. *In re Friesenhahn*, 169 B.R. 615, 618 (Bankr. W.D. Tex. 1994).

"Amendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability." *Kolstad*, 928 F.2d at 175 (citing *First Nat'l Bank of Mobile v. Everhart (In re Commonwealth Corp.)*, 617 F.2d 415, 420 (5th Cir. 1980)). "[T]he court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of an amendment." *Int'l Horizons*, 751 F.2d at 1216 (citing *Commonwealth Corp.*, 617 F.2d at 420). "The deadlines have a purpose: they enable a debtor and his creditors to know, reasonably promptly, what parties are making claims against the estate and in what general amounts." *Kolstad*, 928 F.2d at 173. "[T]he principal concern of claims amendments [is] that no new claim be tardily asserted . . . ." *Id.* at 175.

The Fifth Circuit has recently held that a creditor must demonstrate "compelling circumstances" to amend a proof of claim post-confirmation. *In re Highland Cap. Mgmt. LP*, 102 F.4th 286 (5th Cir. 2024). "Post-confirmation amendments warrant a heightened showing because a confirmed plan of reorganization is equivalent to a final judgment in civil litigation." *Id.* "This potential res judicata effect justifies ratcheting up the legal standard because post confirmation amendments may 'mak[e] the plan infeasible,' 'disrupt the orderly process of adjudication,' and 'alter the distribution[s] to other creditors.'"

*Id.* (quoting *Holstein v. Brill*, 987 F.2d 1268, 1270–71 (7th Cir. 1993) and *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056 (11th Cir. 2011)).

The *Highland* court also found the factors announced by the Fifth Circuit in *Kolstad* relevant to the amendment analysis, but also stated that courts are permitted to take "a more holistic approach, which comports with the equitable nature of bankruptcy courts." *Id.* The *Kolstad* factors are:

> (1) whether [the creditor] is attempting to stray beyond the perimeters of the original proof of claim and effectively file a "new" claim that could not have been foreseen from the earlier claim or events . . . ; and
>
> (2) the degree and incidence of prejudice, if any, caused by [the creditor's] delay.

*Kolstad*, 928 F.2d at 176 n.7.

ANKOR E&P relies on *In re Kilgore Meadowbrook Country Club, Inc.*, 315 B.R. 412 (Bankr. E.D. Tex. 2004), to support its proposed amendment to substitute ANKOR Energy for itself. ECF No. 1732 at 9. *Kilgore* permitted the use of an untimely amended proof of claim to substitute the proper claimant. *Kilgore*, 315 B.R. at 421–23. Victoria Eggers, an officer and director of the debtor, was appointed as the debtor's president and general manager at a time the company was experiencing financial hardship. *Id.* at 416. Due to this hardship, Ms. Eggers "voluntarily placed personal funds into the general operating account of the Debtor enabling the Club to timely meet its financial obligations." *Id.* "The means by which such cash was tendered into the Debtor was through checks drawn upon the bank account of JVE Corporation, a corporation wholly owned by Ms. Eggers and her husband, Jim Eggers . . . ." *Id.* Although the directors of the debtor knew and accepted the cash deposits, the court noted that it "did not appear as if the Club's board knew (or perhaps cared) that the cash infusions were actually being accomplished through checks drawn on JVE's corporate bank account, even though copies of those checks were

maintained in the Club's offices and were available for inspection." *Id.* Prior to the bar date, a claim was filed by the Eggers "only in the name of JVE." *Id.* at 421. About two months after the bar date, "the claim was subsequently amended . . . to include the Eggers individually as co-claimants . . . ." *Id.*

The court first found that the indebtedness reflected in the proofs of claim were actually owed to Ms. Eggers, not to JVE. *Id.* at 420. The court determined that it was "presented with the question of whether to allow the amendment of the claim timely filed by JVE in order to allow the designation of the proper claimant, Ms. Eggers, notwithstanding the intervening passage of the claims bar date. *Id.* at 421. The debtor objected to the proposed amendment, "arguing its reliance upon the bar date and that the amendment would cause actual prejudice to its interests." *Id.*

The *Kilgore* court first addressed the question of whether Ms. Eggers was attempting to file a new claim as to which "the debtor estate was not fairly alerted by the original proof of claim." *Id.* at 422. The court found that the same right of payment was being asserted by both the JVE claim and Ms. Egger's amendment. *Id.* Although the claimant was different, "[i]ts *content* has not been altered by the requested amendment," such that there "is no credible argument that the Debtor's estate was not 'fairly alerted' to the existence of this singular claim and its liability thereunder." *Id.* The court found that it was Ms. Eggers who was contributing the funds and it was immaterial that "there were not formal transfers from JVE to Ms. Eggers and then correspondingly from Ms. Eggers to the Debtor's coffers." *Id.* The court considered the fact that "due to the existence of various financial crises, time was of the essence in each of those transfers and that Debtor readily accepted them and directly benefited from them." *Id.* The court also considered the fact that Ms. Eggers was the party who agreed to deposit the funds and had control and custody over the JVE bank account. *Id.* Ultimately, the court concluded that the debtor could not "escape the recognition and

the treatment of this debt by characterizing it as a new right of payment from that originally set forth in the JVE claim." *Id.*

Having found that no new claim was being asserted, the court then considered the prejudice caused by the amendment. *Id.* at 423. The court first dismissed the debtor's argument that "unfair prejudice can be established merely by the fact that the estate will be required to pay a claim that it might have otherwise eluded." *Id.* The court held that there was no unfair prejudice caused by the substitution because "[i]t is a legitimate unsecured claim against this estate and no solicitation of any proposed treatment of any unsecured claim has yet been sought or authorized." *Id.* The court also found no unfair prejudice to the debtor "since it was not deprived of its ability to fully and fairly defend the Eggers' claim." In light of these factors, the court held that "Ms. Eggers' amended claim #42 should be permitted unless the collection of that debt is otherwise precluded by applicable law." *Id.*

There are substantial differences between *Kilgore* and the present case that justify a departure from its findings. Under *Kolstad*, the Court first considers whether the creditor is attempting to file a new claim that could not be foreseen from the earlier claim or events. *Kolstad*, 928 F.2d at 176 n.7. The Court finds this factor highly relevant in determining whether to permit ANKOR E&P's amendment.

The *Kilgore* court found that Ms. Eggers' and JVE's claim were different in name only, regardless that JVE was the actual source of funds contributed to the debtor. The fundamental difference between *Kilgore* and this case is that ANKOR Energy and ANKOR E&P do not have the same claim against Northstar's estate. Any claim by ANKOR E&P against Northstar would be based on the parties' joint liability as non-operating co-owners of the South Pelto leases. On the other hand, ANKOR Energy's claim is based on its position as operator of the South Pelto leases. Northstar's claim objection is based on ANKOR E&P's and Northstar's non-operating co-owner relationship, where Northstar objected to ANKOR E&P's claim from the perspective that the two "co-owed interests" in the leases and are "jointly and severally liable for

plugging and abandonment of the leases." ECF No. 1671 at 7–8. Although both ANKOR E&P and ANKOR Energy allege that Northstar is liable under the South Pelto leases, their claims arise out of their respective positions under the leases. The record reflects that Northstar had treated ANKOR E&P's claim as ANKOR E&P's claim, not ANKOR Energy's claim.

ANKOR E&P's original claim sought amounts for both the South Pelto leases and the High Island Block Lease. Northstar was the operator of the High Island Block Lease and ANKOR E&P was a non-operating co-owner. ECF No. 1712 at 11 n.19. The existence of the High Island Block claim placed Northstar on notice that ANKOR E&P alleged liabilities on its own claims. ANKOR E&P's non-operator claim against Northstar as operator of the High Island Block Lease and ANKOR Energy's operator claim against Northstar as a non-operator in the South Pelto leases are entirely different bases of liability from different claimants. Northstar would not be expected to assume that a proof of claim filed by a single claimant is asserting the claims of multiple claimants. The Court cannot conclude that Northstar could have foreseen the substitution of ANKOR Energy's claim for ANKOR E&P's claim. *See Highland*, 102 F.4th (affirming rejection of post-confirmation amended proof of claim where the "second amended proof of claim asserted a claim on the same basis as the first amended proof of claim . . . but advanced a new theory of recovery.").

The prejudice to Northstar and other creditors caused by ANKOR E&P's delay in seeking an amendment further departs from *Kilgore* and provides an independent basis for denying the amendment. In *Kilgore*, amendment was sought about two months after the bar date and prior to any solicitation of treatment of unsecured claims. ANKOR E&P's amendment is sought over five years after plan confirmation and after substantial progress in the administration of Northstar's estate.

"[T]he type of prejudice which would bar a creditor from amending its proof of claim typically involves an irrevocable change in position or some other detrimental reliance on the status quo." *In re*

*Dietz*, 136 B.R. 459, 469 (Bankr. E.D. Mich. 1992); *see also In re Garner*, 113 B.R. 352, 357 (Bankr. N.D. Ohio 1990) ("Allowance of the amended claim would deprive secured creditors of a payment arrangement agreed to by them and would deprive unsecured creditors of the opportunity to realize even a small portion of their claims against the debtor.").

ANKOR E&P argues that the Court should disregard the fact that it attempts to amend its claims so late in the timeline of the case because Northstar did not file an objection until over five years after confirmation. ECF No. 1732 at 8. Northstar objected to ANKOR E&P's claim on November 10, 2022, after being provided a deadline extension for objecting to the claim. ANKOR E&P may not allege that Northstar delayed asserting its rights. Northstar also placed ANKOR E&P on notice that it was not the proper party to file its claim in its reply in support of its claim objection. ECF No. 1695 at 4–5 n.3. ANKOR E&P did not make any attempt to remedy its error for almost five months following Northstar's reply. Even prior to being placed on notice, ANKOR E&P is responsible for asserting a valid claim and has failed to explain why it did not attempt to correct its error in the six years since it filed its proof of claim. *See Highland*, 102 F.4th ("CLO HoldCo did not identify any appropriate reason—let alone a compelling reason—for its nearly year-long delay in seeking a post-confirmation amendment. This unexcused delay would have been sufficient by itself for the bankruptcy court to deny the post-confirmation amendment.").

Northstar relied on the filed proofs of claim to plan the administration of the estate and distributions under its plan. ECF No. 1712 at 16. Administering the case and preparing for creditor distributions required Northstar to estimate the validity and amounts of claims and determine which claims warranted expending limited resources to pursue objection litigation. Throughout this process, Northstar had assumed ANKOR E&P was asserting a non-operating co-owner claim and planned its litigation and eventual creditor distributions based on that assumption. ECF No. 1712 at 16. Northstar has paid or settled all administrative, priority, and gap claims. ECF No.

1712 at 11. It has resolved the majority of all disputed unsecured claims necessary to commence final distributions to unsecured creditors. ECF No. 1712 at 11. Permitting ANKOR E&P to substitute ANKOR Energy's operator claim for ANKOR E&P's non-operator claim five and a half years after plan confirmation would hinder Northstar's efforts in administering the estate. *See In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 739 (5th Cir. 1995) (finding that a six-to-eight-month delay in filing of an untimely claim "seems egregious").

ANKOR E&P has failed to demonstrate compelling circumstances to justify its substantial delay in attempting to amend its proof of claim. *See Holstein*, 987 F.2d at 1271 ("Without excluding the possibility of a post-confirmation amendment of a claim for cogent reason, we conclude that a creditor's inattention to the case or careless error in calculation does not suffice."); *In re G-I Holdings, Inc.*, 514 B.R. 720, 760–61 (Bankr. D.N.J. 2014), *subsequently aff'd sub nom. In re G–I Holdings Inc*, 654 F. App'x 571 (3d Cir. 2016) ("NYCHA offers no reason—much less a compelling one—for waiting three years after Plan confirmation to purport to amend its Proof of Claim."); *In re George*, 426 B.R. 895, 900 (Bankr. M.D. Fla. 2010) ("The plan, treating NCB as a fully secured creditor, was confirmed in March 2008. . . . NCB had the opportunity to establish it was or was not secured, but NCB failed to act timely.").

ANKOR E&P's motion for leave to amend its proof of claim is denied. Because ANKOR E&P is not the proper claimant, its proof of claim is disallowed.

## CONCLUSION

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED 06/07/2024

_____
Marvin Isgur
United States Bankruptcy Judge